## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**Tawanda Hall, Carolyn Miller,**
**American Internet Group, LLC, Anthony Akande,**
**Curtis Lee and Coretha Lee, Marcus Byers and Kristina Govan**
individually and all those similarly situated
in the City of Southfield

Plaintiffs,

|  |  |
|---|---|
|  | **Case No.** |
| v | **Honorable** |

**Oakland County Treasurer Andrew Meisner,**
 in his official and individual capacities, **Oakland County**,
**Southfield Neighborhood Revitalization Initiative LLC,**
**City of Southfield**, **Frederick Zorn** in his official and individual
capacities, **Southfield Mayor Kenson Siver** in his official and
individual capacities, **Southfield Non-Profit Housing Corporation**,
**Habitat for Humanity of Oakland County Inc.,**
**Susan Ward - Witkowski** in her former official and individual capacities,
**Gerald Witokowski** in his official and individual capacities,
**Treasurer Irvin Lowenberg** and in his official and
individual capacities,
**Mitchell Simon,** and
**E'Toile Libbett**,

Defendants.

**\*\*CLASS ACTION\*\***

_____/
SCOTT F. SMITH, (P-28472)
SMITH LAW GROUP
30833 Northwestern Highway, Suite 200
Farmington Hills, MI   48334
Phone: 248-302-7181
smithsf.law@gmail.com
/

## COMPLAINT

NOW COME Plaintiffs Tawanda Hall, Carolyn Miller, American Internet Group, LLC,

Anthony Akande, Curtis Lee and Coretha Lee, Marcus Byers and Christina Govan

individually and as class representatives, by and through counsel Smith Law Group PLLC and for their Complaint states as follows:

## PARTIES

1. Plaintiffs, Tawanda Hall, Carolyn Miller, American Internet Group, LLC, Anthony Akande, Curtis Lee and Coretha Lee ,Marcus Byers and Christina Govan are named in their individual capacities and as proposed class representatives all being the former title holders and/or owners of property in Southfield, Michigan, in which all of their equity and surplus equity were foreclosed upon due to a delinquency of property taxes which caused them all injury and monetary damages by unconstitutional acts and other statutory and common law violations which included the taking and retention of surplus equity.

2. Defendant Andrew Meisner Treasurer (sometimes referred to as "Treasurer") is and has been the Treasurer of Oakland County since 2008; he is sued in his official and personal capacity. Defendant Andrew Meisner also has served on the Board of Habitat for Humanity for Oakland County, Inc. since 2016.

3. Defendant City of Southfield (Southfield) is a municipal entity formed under the laws of the State of Michigan.

4. Defendant Oakland County is a political subdivision of the State of Michigan which is delegated the responsibility to collect delinquent property taxes.

5. Defendant Southfield Neighborhood Revitalization Initiative, LLC, (SNRI) is a for-profit private corporation organized under the laws of the State of Michigan.

6. Defendant Southfield Non-profit Housing Corporation (SNPHC), is a 501(c) 3 non-profit corporation organized under the rules of the IRS and incorporated in the State of Michigan.

7. Defendant Fred Zorn (Zorn) is the current City Administrator for the City of Southfield; Zorn is Southfields Chief Executive directing all day to day activities; and is a managing member of SNRI and Zorn is also a board member of SNPHC; and is sued in his official and personal capacities.

8. Defendant Habitat for Humanity of Oakland County Inc. (Habitat) is a 501(c) 3 non-profit corporation organized under the rules of the IRS incorporated as a non-profit corporation and is incorporated in the State of Michigan. Defendant Meisner, the Oakland County Treasurer sits on the Habitat Board of Directors and impacts its operations.

9. Defendant Jerry Witkowski is/or was employed by the City of Southfield and is the project manager for SNRI and is sued in his official and personal capacities.

10. Defendant Mitchell Simon is a CPA and the Treasurer of the SNPHC and Board member of SNPHC.

11. Defendant E'toile Libbett is a real estate broker and board member of SNRI.

12. Defendant Mayor Ken Siver is the Mayor of the City of Southfield and is being sued in his official and individual capacities.

13. City of Southfield Treasurer Irvin Lowenberg is named in his official and individual capacities.

## JURISDICTION

14. This is a civil action brought seeking unpaid "just compensation" and other monetary damages against Defendants for violation of the Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

15. This Court has jurisdiction pursuant to 28 U.S.C.§ §1331, which authorizes federal courts to decide cases concerning federal question jurisdiction; 28 U.S.C.§ §1343, which authorizes federal courts to hear civil rights cases, 28 U.S.C.§ §2201, which authorizes declaratory judgments via the Declaratory Judgment Act; 28 U.S.C. §1367, which authorizes supplemental state law claims, and Title 18, Section§ 1961, and 42 U.S.C.§1983.

16. Jurisdiction also arises under the Fifth and Fourteenth Amendments to the United States Constitution and as a result jurisdiction is proper pursuant to 28 U.S.C §1331.

17. Plaintiffs both individually and as class representatives do not contest the tax assessed or attempt to interfere with its collection under state law but only seek compensation for the taking of their equity/ surplus equity and injuries other than tax collection.

18. Plaintiffs individually and as class representatives seek damages in excess of $75,000.

19. Venue is proper in this Court as Defendants, individually and collectively, conduct their business in the City of Southfield in the Eastern District of Michigan and Plaintiffs and class members were injured in the Eastern District of Michigan.

## GENERAL ALLEGATIONS

20. Plaintiffs Tawanda Hall, Carolyn Miller, American Internet Group, LLC, Anthony
    Akande, , Curtis Lee and Coretha Lee, Marcus Byers and Kristina Govan and the
    class members were the owners of the real property that was situated in the City of
    Southfield as more fully described in **Exhibit A.**

21. Plaintiff Tawanda Hall and her deceased husband owed $22,642.00 in delinquent
    property taxes, interest penalties and fees (herein after "delinquent property taxes" is
    defined as including taxes, interest, penalties and fees) On June 29, 2018 the
    Treasurer issued a tax deed in favor of Southfield. Southfield paid the Treasurer the
    minimum amount due under the statute (MCL 211.78m) On October 23, 2018 the
    home was conveyed by quit claim deed conveyed to SNRI for $1.00. Finally, the
    home was sold for fair market value of $308,000. **Exhibit B**

22. Plaintiff Carolyn Miller owed $29,759.00 in delinquent property taxes. On July
    7,2016, the Treasurer issued a tax deed in favor of Southfield. In a prearranged
    transaction Southfield reimbursed the Treasurer the minimum amount due under the
    statute. On October 23, 2018, the home was conveyed by quit claim deed to SNRI for
    $1.00. Finally, on January 17, 2018 the home was sold for fair market value of
    $120,000. **Exhibit C**

23. Plaintiff American Internet Group LLC (AIG) owed $9,974.00 in delinquent property
    taxes on its property located at 25927 McAlister, Southfield, Michigan AIG is a
    federal contractor and provider of high -speed fiber internet and networking services
    to schools and colleges. AIG used the property as its principal office. On July 7, 2016,

the Treasurer issued a tax deed in favor of Southfield. In a prearranged transaction Southfield reimbursed the Treasurer the amount of the delinquent taxes. On January 11, 2018, the property was conveyed by quit claim deed conveyed to SNRI for $1.00. Finally, the home was sold for fair market value of $149,900. **Exhibit D**

24. Plaintiff Anthony Akande a Pharmacist owed only $2,415.00 in delinquent property taxes. On July 7, 2016. the Treasurer issued a tax deed in favor of Southfield. Thereafter Southfield reimbursed the Treasurer $2,415.00. On September 22, 2018, **t**he home was conveyed by quit claim deed conveyed to SNRI for $1.00. Finally, the home was sold for fair market value of $152,500. **Exhibit E**

25. Plaintiffs Curtis Lee and Coretha Lee owed $30,547.00 in delinquent property taxes. Lee works for the IRS. On July 7, 2016, the Treasurer issued a tax deed in favor of Southfield**.** On September 22, 2016, the home was conveyed by quit claim deed to SNRI for $1.00. Finally, the home was sold for fair market value of $155,000.

   **Exhibit F**

26. Plaintiff Marcus Byers owed $4,113.00 in delinquent property taxes, On June 29, 2018 the Treasurer issued a tax deed in favor of Southfield. Since 1995 Marcus Byers has suffered from a traumatic brain injury and holds equitable title with his court appointed guardian. On October 13, 2018, the condominium was then by quit claim deed conveyed to SNRI for $1.00. SNRI still holds title to the Property which has a fair market value of $90,000. **Exhibit G**

27. Plaintiff Kristina Govan owed $45,350.00 in delinquent property taxes, Ms. Govan has nine (9) children and has been employed by the Detroit Department of

Community Health for 20 years On July 31, 2017, the Treasurer issued a tax deed in favor of Southfield. On October 2018, the home was conveyed by quit claim deed to SNRI for $1.00. SNRI still holds title to the property which is worth in excess of the amount owed in taxes. **Exhibit H**

28. Oakland County is the Foreclosing Governmental Unit (FGU) in each one of the tax foreclosures that affected each co- class representative and putative class member.

29. Oakland County Defendants Oakland County and Treasurer Andrew Meisner seized ownership of all the 138 properties formerly owned by plaintiffs and class members, transferring all the real estate to the City of Southfield for the delinquent taxes.

30. Defendants planned, schemed, and conspired to utilize a statutory right of first refusal MCL 211.78m to acquire the properties for the minimum bid from Oakland County.

31. Most of the Plaintiffs had entered into delinquent property installment agreements and had made a payment to the Treasurer with the promise that such payment would prevent tax foreclosure.

32. The Treasurer knew the Circuit Court had already entered a Judgment of foreclosure prior to entering the delinquent property tax payment plans with Plaintiffs and Class Members which purportedly prevented foreclosure.

33. In many instances the Plaintiffs' and the class members made substantial payments of 1-2 years of property taxes prior to March 31st of the year of foreclosure, being advised by the Treasurer or his staff that such payments would prevent foreclosure

34. FGU foreclosed despite the existence of the delinquent property tax payment plan agreements.

35. Plaintiffs had in actuality no redemption period as they did not learn of the tax foreclosure until after March 31st of the tax year.

36. There was not any notice or recording of the tax foreclosure until after March 31st of the year of foreclosure.

37. Plaintiffs and potential class members did not have any mortgage liens on their properties.

38. The properties were particularly selected by Zorn and his staff based on profit motive.

39. Defendant Andrew Meisner formulated policies and conduct which allowed the conversion of the Plaintiffs and class members equity when seizing the entirety of the plaintiffs and class members equity in excess of the delinquent taxes owed, injuring the Plaintiffs and Class Members without any "adequate, certain or reasonable procedure" to obtain just compensation for the taking of their property.

40. Defendant Andrew Meisner, as Treasurer and/or on behalf of Oakland County, wrongfully took the equity and /or surplus when transferring the Plaintiffs and Class Members' properties to Southfield.

41. In *Rafaeli v. Oakland County*, Case No.156849 (2020) Michigan's Supreme Court has held that property owners have a constitutional right under the Michigan Constitution to the surplus equity of their property above the amount of the delinquent tax; at least when there is a tax auction.

42. Plaintiffs have no "reasonable, certain, and adequate remedy" to obtain the return of their equity under the United States Constitution and its Amendments.

43. Plaintiffs have no reasonable, certain, complete, or efficient remedy in the Courts of the State of Michigan to enforce their Fifth amendment property rights and /or their rights under the Michigan Constitution

44. Defendants Southfield and their officials schemed multiple times to remove properties from the tax rolls which created a pool of funds so Defendants could enrich themselves through the affiliated SNRI and SNPHC.

45. Defendants who were officials of Oakland County and Southfield violated MCL 750.478 and committed unlawful acts under the laws of the State of Michigan both statutorily and under the common law. It was Southfields official policy to obtain Plaintiffs and Class Members properties without paying just compensation.

46. Habitat (of which Oakland County Treasurer Andrew Meisner is a board member) received close to $300,000 in funds from SNRI in 2016,was paid over 1 million dollars from SNRI since its inception in June of 2016 by being the recipient of payments   for often needless repairs ,as well as the conveyance of property from SNRI, City of Southfield, and the SNPHC for less than full consideration.

47. Habitat's role in this scheme is a conflict of interest for Treasurer Andrew Meisner with his duties as Treasurer and an official of Oakland County.

48. There is no transparency in the finances of SNRI and SNPHC and there is a need to shed light on the Defendant entities to determine the extent of financial irregularities and the unjust enrichment caused by the by their illegal conduct.

49. SNPHC Board members (Frederick Zorn, Kenson Siver and Michael Mandelbaum) have a conflict of interest being elected officials with Southfield as well as simultaneously serving as Board Members the SNPHC.

50. The SNPHC was used for private and political gain, and that the SNPHC should be shuttered as it has been a vehicle who fits the pattern and practice of a continuing unlawful enterprise that allows its board members, employees, contractors, and other insiders to benefit privately with funds from a charitable nonprofit which amounts to private inurement and is actionable under IRS rules.

51. Appellate Judges in both the Michigan Court of Appeals as well as in the United States Court of Appeals for the Sixth Circuit (Judges Shapiro and Kethledge) in similar cases have labeled the taking of equity tantamount to theft.

52. Defendant Andrew Meisner and the County of Oakland refuses to pay just compensation for the taking of equity above any lawful monies owed for property taxes.

53. There has not been any restoration of the equity or surplus equity provided by Defendants Andrew Meisner or Oakland County.

54. There has not been any restoration of the equity or surplus equity provided by Southfield.

55. Defendants Oakland County Treasurer, Oakland County, and Southfield have not initiated any condemnation action or proceedings for the amounts in excess of the tax delinquency.

56. Defendants have, in an identical fashion as described above, seized the excess equity from other pieces of real properties within the territorial limits of the City of Southfield which Plaintiffs , Tawanda Hall, Christina Govan, Carolyn Miller, American Internet Group, LLC, Curtis And Coretha Lee, Marcus Byers and Anthony Akande, are seeking compensation .

57. This practice is governance for profit and includes many of the City of Southfield Elected and Appointed Officials, for Profit corporations, and a non-profit where the City of Southfield Mayor is president.

58. This case seeks to establish that these actions are violations of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

59. This is a civil action brought pursuant to 42 U.S.C.§ 1983 seeking monetary damages and declaratory relief against Defendants for violations of the Fifth, Eighth, and Fourteenth Amendments.

60. In a similar case involving all the named Defendants the Michigan Court of Appeals said that the Southfield elected officials conduct was "shocking to the conscious" stating in pertinent part **"This type of behavior is not only shocking to the conscience, but also rightly breeds distrust among their electorate"** Jackson v. Oakland County et al. Case no. 344058 (Michigan Court of Appeals,2019).This "shocking to the conscious" standard arises the Defendants actions to one that offends any semblance of normalcy, decency, or equity and further impinges any notion of fairness ,due process and ordered liberty.

61. There exists a clear conflict of interest regarding the elected officials' involvement with SNRI and SNPHC.

62. Defendant Treasurer as the Foreclosing Government Unit sought and obtained a tax foreclosure judgment from the Oakland County Circuit Court taking the property interests of Plaintiffs due to unpaid taxes and administrative expenses, costs, and interest.

63. Defendants Siver, Zorn, and Susan Ward Witkowski wrongfully used their offices and implemented the scheme under color of official right and title.

64. Defendants Siver, Zorn, Gerald Witkowski, and the City Attorney Susan Ward Witkowski used power under the GPTA for personal economic gain and to augment their power, both political and financial.

65. The conduct of the Southfield officials consists of usurping the powers granted to the City of Southfield under MCL 211.78m and bestowing the spoils upon the SNRI to enhance the Defendants power, obtain economic advantage, and favors amounting to graft.

66. SNRI was formed to engage and participate in the equity stripping scheme.

67. There was understanding between Defendants Siver, Zorn, Susan Ward- Witkowski and Gerald Witkowski that they would personally benefit and utilize their power to benefit the SNRI and SNPHC.

68. Defendants Zorn, Siver, Libbett entered into a conspiracy which to engage in a scheme that conducted a pattern of unlawful activity affecting interstate commerce.

69. Andrew Meisner did not administer his office to insure the use of the Oakland County

Treasurer's power under the GPTA to convey property by use of the right of first refusal granted to Southfield (pursuant to MCL 211.78m) was used for "Public Purpose."

70. The scheme which involves over 10 million dollars of real estate affects interstate commerce.

71. Meisner, Zorn, Simon, Susan Ward - Witkowski and Siver knew that their acts would remove the subject properties from the tax rolls of Southfield for the gain of SNRI.

72. Such conduct violates the Fifth Amendment made applicable to the states via the Fourteenth Amendment to the United States Constitution which requires the payment of just compensation upon a taking by those Defendants. See *Knick v. Twp. of Scott* 588 US (2019)

73.  Defendants since 2016 have taken more than 138 homes from similarly situated families in the City of Southfield and has retained all of the equity and /or surplus equity in these takings and have given the funds to other Defendants without any meaningful way for prior homeowners to reacquire their properties for the taxes owed.

74. Michigan is in a minority of states that allowed this form of tax foreclosure, while at least 38 other states specifically forbid the taking of all the equity in the former homeowner's home without just compensation.

75. The conduct of Defendants was reckless and undertaken with complete indifference to Plaintiffs federal rights to be free from violation of the Fifth and Fourteenth

Amendments to the United States Constitution as applied against municipalities and those acting under color of law.

76. Defendant Andrew Meisner, Southfield and the other Defendant public officials refused to return the excess equity beyond the tax debt and administrative expenses, penalties and interest and have appropriated the Plaintiffs' property's equity and/or surplus equity without just compensation.

## CLASS ALLEGATIONS

77. Plaintiffs repeat, reallege and reincorporate herein by reference paragraphs 1-76 above.

78. Plaintiffs and Class Representatives bring this action against Defendants on Plaintiffs' own behalf and pursuant to Rule 23(a) and 23(b)1) (A), (B) and 23 (b)(3) of the Federal Rules of Civil Procedure on behalf of all titleholders of real property and associated property rights including equity and/ or surplus proceeds generated by the involuntary transfers orchestrated by Defendants in the City of Southfield during the relevant statutorily-limited time period who were subject to the unconstitutional conduct and concerted actions which resulted in the taking and/or unconstitutional forfeiture of their surplus or excess equity beyond the tax debt owing and due.

79. The proposed class consists of all eligible property owners who during the relevant statutorily limited period, had a property seized by the Oakland County Treasurer

which was transferred to the Southfield and thereafter transferred to the SNRI for $1.00 for unpaid property taxes. **Exhibit I**

80. The number of injured individuals who have been constitutionally injured is sufficiently numerous to make class action status the most practical method to secure redress for injuries sustained and class wide equitable relief.

81. The class is so numerous that in 2016 ,2017 and 2018 alone the class is composed of 165 members which involves 138 parcels of real property and associated equity. There are additional putative members from 2019.

82. Defendants through a more insidious scheme obtained all the surplus equity in the Plaintiffs and Class Member's homes without any meaningful remedy for retrieving the surplus that the Michigan Supreme Court called an unconstitutional taking in the *Rafaeli v. Oakland County* decision.

83. There are clear questions of fact raised by the named Plaintiff's claims common to, and typical of, those raised by the Class they seek to represent, including:

    a)    Oakland County through its Treasurer Andrew Meisner has been voluntarily and purposefully utilizing an unconstitutional statute MCL 211.78m which he has undertaken pursuant to his discretion to transfer properties to the City of Southfield;

    b)    Each class member's property prior to tax foreclosure was worth more than the total tax delinquency owed to Oakland County;

c)    Oakland County through its Treasurer Andrew Meisner transferred each class member's property to Southfield for the amount of the delinquent taxes;

d)    Southfield through its officials then transferred Plaintiffs and Class Members properties by quit claim deed to Defendant SNRI;

e)    Southfield was paid the amount of the transfer price paid to Oakland County by the SNPHC or SNRI;

f)    SNRI then sold the properties or intends to sell the properties for fair market value to third parties;

g)    Oakland County Treasurer Andrew Meisner, Oakland County, and the other Defendant government entities refuses to pay just compensation, failed to initiate any form of condemnation proceedings, and to date failed to have or undertake a process to return the surplus equity, physical possession of Plaintiffs and Class Member's former homes, and equitable damages to Plaintiffs and Class Members; and

h)    The unjust enrichment and collision of the SNRI and certain individual Defendants.

84. There are clear questions of law raised by the named Plaintiff's claims common to, and typical of those raised by the Class they seek to represent, including:

a) Whether the Defendants committed an unconstitutional taking by refusing to pay just compensation when seizing property in the form of equity and/or monies

16

beyond the amount of unpaid taxes and administrative expenses, costs and interest owed in a tax delinquency, and have appropriated property in the form of excess or surplus equity for public use without the payment of just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution;

b. Whether the defendants committed an inverse condemnation by destroying equity via the seizure process and/or the later sale of property at a highly reduced, below fair market price and then retaining the remaining proceeds from the sale of tax foreclosed property that exceeded the amount of the tax delinquency ;

c. Whether the Treasurer and Southfield can utilize MCL 211.78m to deny Plaintiffs and Class Members just compensation in violation of the Fifth Amendment takings clause;

d.   Whether the Plaintiffs and Class Members have an "adequate, certain and reasonable" or complete and efficient remedy under Michigan Law; and

e.   If deemed a forfeiture, whether the defendants violated either the Excessive Fines Clause of the United States Constitution, by retaining proceeds from the sale of tax foreclosed property that exceeded the amount of the tax delinquency;

85. The violations of law and resulting harms alleged by the named Plaintiff are typical of the legal violations and harms suffered by all Class members.

86. Plaintiff, as Class representative, will fairly and adequately protect the interests of the Class members and will robustly prosecute the suit on behalf of the Class; and is represented by sufficiently experienced counsel.

87. Defendants have acted, failed to act, and/or are continuing to act on grounds generally against Plaintiff and all members of the Class in the same manner.

88. The maintenance of the action as a class action will be superior to other available methods of adjudication and will promote the convenient administration of justice, preventing possible inconsistent or varying adjudications with respect to individual members of the Class and/or one or more of the Defendants. .

## COUNT I

**TAKING WITH OUT JUST COMPENSATION-FIFTH/14[TH] AMENDMENT 42 U.S.C.§§s 1983(AGAINST OAKLAND COUNTY, ANDREW MEISNER, CITY OF SOUTHFIELD FRED ZORN KEN SIVER, SUSAN WITKOWSKI AND GERALD WITKOWSKI ONLY)**

89. Plaintiffs repeat, reallege and reincorporate herein by reference paragraphs 1-88 above.

90. Defendant Andrew Meisner, Defendant Oakland County and the Defendants who are or were officials of Oakland County and the Southfield have taken property in the form of equity and/or monies beyond the amount of unpaid taxes and administrative expenses, costs and interest and have appropriated said monies for public use without the payment of just compensation.

91. Plaintiffs' and class members' constitutional right to just compensation upon the taking of their property is a fundamental right deeply rooted in Anglo -American legal traditions and essential to the framers' concept of ordered liberty.

92. This claim is being made pursuant to 42 U.S.C.§1983 which provides:

**Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated, or declaratory relief was unavailable.**

93. No state court inverse condemnation or takings procedure is available by operation of Michigan case law that pertains to the circumstances of this case.

94. Defendants are persons under 42U.S.C.§1983.

95. Despite the Michigan Supreme Court in *Rafaeli v. Oakland County* finding that there exists a property right of a taxpayer in a commercial foreclosure under the Michigan Constitution to the surplus from a tax auction, there still exists "no reasonable , certain and adequate remedy" under the Fifth Amendment takings clause of the United States Constitution as to the Plaintiffs and Class Members.

96. *Rafaeli*, supra also did not uphold the constitutional standard enunciated in *Knick v. Township of Scott* that a" property owner has an actionable claim when the government takes property without paying for it.". *Knick* at 2167

97. Prior to the recent United States Supreme Court ruling *in Knick v Township of Scott Williamson County* a Plaintiff suing in federal court had to first exhaust remedies in state court before bringing an inverse condemnation action. In *Knick,* the United States Supreme Court held that plaintiffs did not have to wait to exhaust state remedies but there was federal court jurisdiction as soon as a taking of private property for public use without just compensation occurred.

98. It is clear, by the *Rafaeli* decision, that Defendants Oakland County, Oakland County Treasurer and Southfield and their officers and created/empowered entities, including do not intend to be required or otherwise will pay just compensation by or via any procedures, making any such procedures unavailable or inadequate

99. This claim is ripe without exhaustion of state compensation remedies or lack of subject matter jurisdiction for prudential reasons because the State of Michigan's courts recently and clearly failed to recognize such a taking as existing as a matter of state law and failed to address a taking under the Fifth Amendment of the U.S. Constitution; and only applied the property right to surplus funds generated by a tax auction and thus has not provided an adequate reasonable process for obtaining return of surplus equity after a tax foreclosure.

100. It is the policy, custom, and/or practice of Defendants Oakland County and Southfield and the named officials and/or its final policymaker to utilize MCL 211.78m to deprive Plaintiffs' and represented Plaintiffs, of their property of equity and/ or surplus funds a taken from them without just compensation . This draconian policy and conduct are sufficient to impose damages and other relief pursuant to *Monell v New York City Department of Social Services* and its progeny.

90. Plaintiffs continue to suffer great and material damages pursuant to 42U.S.C.§1983.

91. Plaintiff and represented Plaintiffs have and/or be entitled to an award of damages as result of Defendants' violation of their rights under the United States Constitution, Amendment V.

**COUNT II**

**POST TAKING CLAIM FOR JUST COMPENSATIONFOR JUST COMPENSATION UNDER THE FIFTH AMENDMENT-INVERSE CONDEMNATION**

92. Plaintiffs repeat, reallege and reincorporate herein by reference paragraphs 1-91 above.

93. The Fifth Amendment to the United States Constitution provides in pertinent part that "…. nor shall private property be taken for public use, without just compensation" U.S. Const., Amend. V said constitutional prohibition is known jurisprudentially as the "Takings Clause" of the United States Constitution.

94. The Takings Clause is applicable as to all states of United States and by extension to all political subdivisions, instrumentalities, counties, and cities including Oakland County and Southfield.

95. The principle embodied by the Takings Clause is to prohibit the government from mandating that a few people solely bear a disproportionate share of the public burden which shall be borne by the public as a whole.

96. MCL 211.78 by its terms, disregards equity and/or surplus equity and was utilized to achieve a taking of private property without just compensation.

97. A legislature cannot constitutionally enact a law that it calls a tax statute which on its face effects a taking of private property without just compensation. *Cf.*

*Acker v Commissioner of Internal Revenue,* 258 F. 2d 568 (6th Cir., 1958), *aff'd* 361U.S. 87 (1959).

99. The common law of the State of Michigan recognizes that any surplus proceeds arising from a mortgage foreclosure sale are personalty and a person with an ownership interest in, or who succeeds to an ownership interest in the foreclosed real property has a right to claim ownership of the personalty. *Smith v Smith*, 13 Mich 258(1865); also see *Rossman v Marsh,* 287 Mich 720 (1939) (proceeds from the sale of lands are personal property and not real property).

100. The judicial and non-judicial mortgage foreclosure statutes of the State of Michigan recognize that any surplus proceeds arising from a mortgage foreclosure sale of real property is, unless subject to subordinate secured creditors are the private property of the former owner of the real property. MCL 600.3125 (judicial foreclosure); MCL 600.3257 (foreclosure by advertisement).

101. By requiring that surplus proceeds arising generated from the sale of delinquent property tax forecloses to be delivered to the former owners other States including, but not limited to, the States of Idaho, California, Alabama, Florida, Georgia, and Indiana, New York, Illinois and New Jersey recognize that not to do so would violate the Takings Clause of the Fifth Amendment of the Constitution.

102. Plaintiffs individually and as class representatives have an interest in the windfall for which the properties were sold above the amount of the delinquent taxes as protected by the Fifth Amendment of the United States Constitution and the Takings Clause by the Defendants.

103. Neither Defendants Oakland County, nor Southfield offered to pay in advance of the taking(s), nor contemporaneously therewith, nor at any time thereafter, Plaintiffs or Class Members just compensation for said taking(s).

104. Neither Plaintiffs, nor Class Members, have been provided by Defendants Oakland County or Southfield any procedure of any kind, and therefore no adequate procedure whatsoever, to seek just compensation for said taking(s), and absolutely no procedure or remedy exists under the General Property Tax Act (GPTA), or any Michigan Statute, for Plaintiffs and Class Members, to obtain just compensation for said takings within an inverse condemnation proceeding provided for and allowed by State law.

105. Plaintiffs' and represented Plaintiffs' claims of inverse condemnation under the Takings clause are mature and ripe.

106.  Plaintiffs, and Class Members, have suffered great and material damages and injuries proximately caused by Defendants' conduct and the Takings Clause requires Defendants Oakland County and Southfield and, to pay Plaintiffs, and Class Members money damages tantamount to and consisting of just compensation for the taking(s) of their private property under the pretext of public use.

107. In material part 28 U.S.C.§ § 2201 (a) provides, that " In a case of actual controversy within its jurisdiction .... . .any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

## COUNT III

**Violation of the Takings Clause of the Michigan Constitution of 1963, Article 10, § 2**

108. Plaintiffs repeat, reallege, and incorporate herein by reference paragraphs 1 through 107above.

109.Under Article 10, § 2, of the Michigan Constitution of 1963, the government may not take private property for public use without just compensation therefore being first made or secured in a manner prescribed by law.

110.   This state constitutional provision protects intangible property, including equity in homes and land.

111.Plaintiffs and represented plaintiffs owned equity in their respective properties that exceeded the value of their respective debts to the County.

112.   By taking absolute title to Plaintiffs' properties and represented plaintiffs' properties and retaining profits from the auction of their properties, over and above the amount of unpaid taxes and administrative expenses, costs, and interest owed by each debtor, the County violated the Michigan Constitution's Takings Clause.

113. The County has appropriated this protected property interest without using the mandatory process outlined under the Uniform Condemnation Procedures Act, MCL 213.51, et seq.

114. Michigan in *Rafaeli* established a constitutional right in surplus equity but Plaintiffs and Class Members under state law still have no "reasonable, certain or adequate" remedy.

115. Plaintiffs and Class Members pursuant to the Michigan Constitution's Takings Clause are entitled to fair market value for just compensation and 125% of fair market value for takings of residential properties

## COUNT IV
## EIGHTH AMENDMENT VIOLATION
## 42 U.S.C.§ 1983
## EXCESSIVE FINE FORFEITURE (AGAINST OAKLAND COUNTY ONLY)

116. Plaintiffs repeat, reallege and reincorporate herein by reference paragraphs 1-115 above.

117. The Eighth Amendment to the United States Constitution is the part of the United States bill of Rights prohibiting the government from imposing excessive fines, which the US Supreme Court has applied to actions(s) involving forfeitures.

118. To the extent the actions of Defendants Oakland County and Southfield conduct is found to be a forfeiture the Eighth Amendment is applicable.

119. By imposing and retaining all the surplus equity in Plaintiffs' property Defendants violated the Eighth Amendment right to be free of excessive fines.

120. Plaintiffs have suffered injury and/or be entitled to an award of damages as result of Defendants' violation of their rights under the United States Constitution.

121. The conduct of Defendants was reckless, surreptitious with complete indifference to Plaintiffs constitutional rights to be free from violations of the Eighth Amendment to the United States Constitution.

## COUNT V
## DUE PROCESS
## (AGAINST SOUTHFIELD AND OAKLAND COUNTY TREASURER ONLY)

122.   Plaintiffs repeat, reallege and reincorporate herein by reference paragraphs 1-121 above.

123.   It is unconstitutional to deprive a person of property without due process of law.

124.   The GPTA is intended to provide delinquent taxpayers with the minimum due process recognized by the United States and State of Michigan Constitutions. Delinquent taxpayers must be afforded the right of adequate notice which is reasonably calculated as reaching its recipient prior to the county taking their property for unpaid tax bills.

125.   Procedural due process requires reasonable measures to be taken when the County knows that their efforts at providing notice have failed and they have or should have information which could be utilized to effectuate actual notice.

126.   The Treasurer entered into tax foreclosure avoidance agreements or delinquent property tax installment plans with Plaintiffs and Class Members under MCL 211.78q(2) or MCL 211.78(q).

127.   Oakland County Treasurer policy of mailing and posting notices but orally informing taxpayers to ignore such notices if Plaintiffs or Class Members participate in the installment plans violates the "due process clause" of the 14th Amendment to the United States Constitution.

128.   The treasurer in many instances had prior to tax foreclosure or the expiration of the redemption period had established forfeiture/purchase agreement with Southfield.

129.   The Treasurer's acceptance of late or payments for less than the full amount, make-up payments or no payments was a course of conduct that modified any written agreements.

130.   The installments agreements were valid until March 31of the following year.

131.   Oakland County Treasurer signed installment property tax payment agreements which portended to halt tax foreclosure and indicated Plaintiffs and Class Members would continue to get notice of tax foreclosures

132.   Despite those constitutional duties, Oakland County did not take additional reasonable steps when it knew its efforts at providing notice had failed or had entered into an agreement to halt tax foreclosure.

133.   As a matter of policy and practice, the County failed to take such additional measures to provide adequate notice, such as notifying the Class Representatives and Members of the default on a tax payer installment agreement and for the re-activation of a tax foreclosure.

134.   The failure of Oakland County and its Treasurer to take such sufficient measures to provide the Class members with notice prior to taking their property and/ or to

mislead them and /or to act without authority deprived the property owners of their

constitutionally mandated rights to due process.

**COUNT VI**
**SUBSTANTIVE DUE PROCESS**
**(AGAINST SOUTHFIELD AND OAKLAND COUNTY TREASURER)**

135.    Plaintiffs repeat, reallege and reincorporate herein by reference paragraphs 1-134

above.

136.    Defendants, Ken Siver, acting through the Mayor's office, for the City of

Southfield, Fred Zorn, and its official policymakers, and/or all acting in their official

capacities and pursuant to customs, policies and / or practices, denied Plaintiffs their

constitutional right to fair and just treatment during executive acts and deceptive

communications from site officials who intentionally acted and deprived Plaintiffs of

their property.

137.    The evidence of the denial of a fair and just treatment as required by 14th

Amendment of the United States Constitution is incumbent that government officials

including named Defendants herein engaged in an unconscionable fraud against

Plaintiffs, treating them with fundamental unfairness.

138.    Plaintiffs were led to believe by the Oakland County and by Southfield and their

respective officials that they had the ability to maintain their property rights.

139.    Defendants, Southfield, and the Oakland County Treasurer have violated the 14th

Amendment of the United States Constitution, as implemented through 42 USC

§1983.

28

140.    Defendants Oakland County, Oakland County Treasurer, Southfield, and their
officials in their individual and official capacities engaged in conduct that "shocked
the conscience" in the constitutional sense.

141.    Defendants conduct constitutes a conflict of interest and has no rational basis
violating Plaintiffs and Class Members rights to substantive due process.

## COUNT VI

### UNJUST ENRICHMENT
### (AGAINST ALL DEFENDANTS EXCEPT OAKLAND COUNTY)

142.    Plaintiffs repeat, reallege and reincorporate herein by reference paragraphs 1-141
above.

143.    Plaintiffs individually and as class representatives have a recognized constitutional
right to the surplus proceeds and /or equity of their tax foreclosed property.

144.    Plaintiffs' individually and as class representatives cannot have their property
rights vitiated by Defendants Oakland County and Southfield's involuntary transfer
without just and fair compensation.

145.    SNRI obtained the surplus equity and or equity from the tax foreclosure.

146.    SNRI obtained the surplus in a prearranged transfer for inadequate value.

147.    Plaintiffs individually and as class representatives have no adequate remedy at
law.

148.    The retention of the benefit by SNRI (or subsequent non -bona fide purchasers) of
the property rights, equity and/or surplus equity amounts to unjust enrichment to the
SNRI.

149.   The surplus equity and or equity in justice and equity belongs to the Plaintiffs'
individually and to the Class Members.

150.   Plaintiffs' individually and as class representatives have been damaged by their
loss of equity.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs and Class Members respectfully requests this Court to enter an
order–

A. Enter an order for damages in the amount of taken and/or forfeited equity and/or
funds in excess of the unpaid taxes and administrative expenses, costs, and interest
of and retained by Defendants by its illegal actions.

B. Enter an order for an award of consequential, nominal, and/or punitive damages as
appropriate by statute, law, and equity pursuant 42U.S.C.§1983 & §1988 .Further
enter an order for an award of actual and reasonable attorney fees and litigation
expenses including costs, interest pursuant to 42 U.S.C.§ § 1988 and all other
applicable laws, rules, or statutes.

C. Plaintiffs and represented Plaintiffs respectfully request this Honorable Court find
that the Defendants retention, use and takings of the surplus proceeds constitute a
taking of private property for public use without just compensation in violation of
the Fifth Amendment to the United States Constitution and the Michigan
Constitution.

D. Plaintiffs and represented Plaintiffs request the Honorable Court to enter a
judgment against Defendants Oakland County, SNRI and SNPHC , in an amount

of just compensation for the takings equal to the fair market value or in the amount of the surplus proceeds so taken from them, together with interest thereon from the date of foreclosure sale, costs and attorney fees.

E. Enter an order for all such other relief the court deems just and equitable.

## JURY DEMAND

151. For all triable issues, a jury is hereby demanded.

Respectfully submitted,

SCOTT F. SMITH LAW, PLLC

 /s/ Scott F. Smith (P28472) _____
**By: SCOTT F. SMITH (P28472)**
*Attorney for Plaintiffs*
30833 Northwestern Hwy., Suite 200
Farmington Hills, MI    48334
T: 248-626-1962
Smithsf.law@gmail.com

**LIST OF EXHIBITS**

EXHIBIT A      Legal Description of Plaintiff Class Representative's Properties

EXHIBIT B      Plaintiff Tawanda Hall Property Record Details

EXHIBIT C      Plaintiff Carolyn Miller Property Record Details

EXHIBIT D      Plaintiff American Internet Group Property Record Details

EXHIBIT E      Plaintiff Anthony Akande Property Record Details

EXHIBIT F      Plaintiff Curtis & Coretha Lee Property Record Details

EXHIBIT G      Plaintiff Marcus Byers Property Record Details

EXHIBIT H      Plaintiff Kristina Govan Property Record Details

EXHIBIT I      Partial List of Plaintiff's and Putative Class Member's Transactions