## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**Tawanda Hall, Carolyn Miller,**
**American Internet Group, LLC, Anthony Akande,**
**Curtis Lee and Coretha Lee, Marcus Byers and Kristina Govan**
individually and all those similarly situated
in the City of Southfield
      Plaintiffs,

                                      **Case No. 20-cv-12230-PDB-EAS**

v                                   **Honorable Paul D. Borman**

**Oakland County Treasurer Andrew Meisner,**
sued in his official and individual capacities, **Oakland County,**
, **Southfield Neighborhood Revitalization Initiative LLC,**
**City of Southfield**, **Fredrick Zorn** in his official and individual capacities,
**Southfield Mayor Kenson Siver** in his official and individual capacities,
**Southfield Non-Profit Housing Corporation**,
**Habitat for Humanity of Oakland County Inc.,**
**Susan Ward - Witkowski** in her former official and individual capacities,
**Gerald Witokowski** in his official and individual capacities,
**Treasurer Irvin Lowenberg** and in his official and
individual capacities,
**Mitchell Simon,** and
**E'Toile Libbett**,
      Defendants.

                              **\*\*CLASS ACTION\*\***

                                                            /

| Smith Law Group | Williams, Williams, Rattner & Plunkett, P.C. |
|---|---|
| Scott F. Smith (P28472) | Gayle S. Mcgregor (P43500) |
| Attorney for Plaintiffs | Attorney for Defendant Habitat for Humanity |
| 30833 Northwestern Hwy., Suite 200 | 380 N. Old Woodward, Suite 300 |
| Farmington Hills, MI 48334 | Birmingham, MI  48009 |
| (248) 626-1962 | (248) 642-0333 |
| Smithsf.law@gmail.com | gsm@wwrplaw.com |

**PENTIUK, COUVREUR & KOBILJAK, P.C.**
 Joseph G. Couvreur (P41836)
Attorneys for Defendants Southfield Non-
Profit Housing Corp., Southfield
Neighborhood Reviatalization Initiativce,
LLC, Mitchell Simon, and Etoile Libbett,
only
2915 Biddle Ave, Ste 200
Wyandotte, MI  48192
(734) 281-7100
jcouvreur@pck-law.com
mnicols@pck-law.com

**SEWARD HENDERSON PLLC**
Michael A. Knoblock (P77544)
Attorney for Defendants City of
Southfield, Siver, Zorn, Ward-Witkowski,
Witkowski, and Lowenberg, only
210 E 3rd Street, Suite 212
Royal Oak, MI  48067
(248) 733-3580
mknoblock@sewardhenderson.com

**GIANMARCO, MULLINS & HORTON**
William H. Horton (P31567)
Attorneys for Defendants Meisner, and
Oakland County, only
101 W Big Beaver Rd, 10th Floor
Troy, MI  48084
(248) 457-7000
bhorton@gmhlaw.com

_____/

## PLAINTIFFS' RESPONSE TO DEFENDANTS CITY OF SOUTHFIELD'S, FREDERICK ZORN'S, KENSON SIVER'S, SUE WARD-WITKOWSKI'S, AND IRWIN LOWENBERG'S MOTION TO DISMISS

Plaintiffs' Tawanda Hall, Carolyn Miller, American Internet Group, LLC,

Anthony Akande, Curtis Lee and Coretha Lee, Marcus Byers and Kristina Govan

individually and all those similarly situated in the City of Southfield (Plaintiffs) by

and through their undersigned counsel submit the following in Response to

Defendants City of Southfield's, Frederick Zorn's, Kenson Siver's, Sue Ward-

Witkowski's, and Irwin Lowenberg's Motion to Dismiss. In Support of this

Response, Plaintiffs rely on the attached brief and exhibits.

Respectfully submitted,
Smith Law Group, PLLC

/s/ Scott F. Smith (P28472) _____
**By: SCOTT F. SMITH (P28472)**
Attorney for Plaintiffs
30833 Northwestern Hwy., Suite 200
Farmington Hills, MI   48334
(248)626-1962
Smithsf.law@gmail.com

Dated: December 30,2020

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**Tawanda Hall, Carolyn Miller,**
**American Internet Group, LLC, Anthony Akande,**
**Curtis Lee and Coretha Lee, Marcus Byers and Kristina Govan**
individually and all those similarly situated
in the City of Southfield
      Plaintiffs,

                                          **Case No. 20-cv-12230-PDB-EAS**

v                                      **Honorable Paul D. Borman**

**Oakland County Treasurer Andrew Meisner,**
sued in his official and individual capacities, **Oakland County,**
**Southfield Neighborhood Revitalization Initiative LLC,**
**City of Southfield**, **Fredrick Zorn** in his official and individual capacities,
**Southfield Mayor Kenson Siver** in his official and individual capacities,
**Southfield Non-Profit Housing Corporation**,
**Habitat for Humanity of Oakland County Inc.,**
**Susan Ward - Witkowski** in her former official and individual capacities,
**Gerald Witokowski** in his official and individual capacities,
**Treasurer Irvin Lowenberg** and in his official and
individual capacities,
**Mitchell Simon,** and
**E'Toile Libbett**,
      Defendants.

                                **\*\*CLASS ACTION\*\***

_____/

| | |
|---|---|
| **Smith Law Group** | **Williams, Williams, Rattner &** |
| Scott F. Smith (P28472) | **Plunkett, P.C.** |
| Attorney for Plaintiffs | Gayle S. Mcgregor (P43500) |
| 30833 Northwestern Hwy., | Attorney for Defendant Habitat for |
| Suite 200 | Humanity |
| Farmington Hills, MI 48334 | 380 N. Old Woodward, Suite 300 |
| (248) 626-1962 | Birmingham, MI  48009 |
| Smithsf.law@gmail.com | (248) 642-0333 |
| | gsm@wwrplaw.com |

**PENTIUK, COUVREUR & KOBILJAK, P.C.**
 Joseph G. Couvreur (P41836)
Attorneys for Defendants Southfield Non-
Profit Housing Corp., Southfield
Neighborhood Reviatalization Initiativce,
LLC, Mitchell Simon, and Etoile Libbett,
only
2915 Biddle Ave, Ste 200
Wyandotte, MI  48192
(734) 281-7100
jcouvreur@pck-law.com
mnicols@pck-law.com

**SEWARD HENDERSON PLLC**
Michael A. Knoblock (P77544)
Attorney for Defendants City of
Southfield, Siver, Zorn, Ward-Witkowski,
Witkowski, and Lowenberg, only
210 E 3rd Street, Suite 212
Royal Oak, MI  48067
(248) 733-3580
mknoblock@sewardhenderson.com

**GIANMARCO, MULLINS & HORTON**
William H. Horton (P31567)
Attorneys for Defendants Meisner, and
Oakland County, only
101 W Big Beaver Rd, 10th Floor
Troy, MI  48084
(248) 457-7000
bhorton@gmhlaw.com

/

---

## PLAINTIFFS' BRIEF IN SUPPORT OF RESPONSE TO DEFENDANTS CITY OF SOUTHFIELD'S, FREDERICK ZORN'S, KENSON SIVER'S, SUE WARD-WITKOWSKI'S, AND IRWIN LOWENBERG'S MOTION TO DISMISS

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES ....................................................................iv

STATEMENT OF ISSUES PRESENTED ...............................................ix

STATEMENT OF CONTROLLING AUTHORITY ................................x

INTRODUCTION .................................................................................1

STATEMENT OF FACTS......................................................................3

STANDARD REVIEW...........................................................................6

LEGAL ARGUMENT ...........................................................................7

    I.   Res Judicata Does Not Bar the Claims of Hall, Miller, Akande,
       and American Internet Group, LLC ........................................7

       A. *Res Judicata* ........................................................................7

       B.  Lack of Standing – Byers.....................................................10

       C.  Hall's Dismissal was Without Prejudice ...........................11

    II.  Plaintiffs Have Stated A Fifth Amendment Takings Claim
       and a Claim Under the Michigan Constitution......................17

    III.  Plaintiffs Have Stated an Unjust Enrichment
       Claim Against the Southfield Defendants .............................21

    IV.  If the Municipalities Conduct Did Not
       Violate the Fifth Amendment, then they
       Violated Plaintiffs' Rights to Substantive Due Process .......27

    V.  If There Was Not A Taking, Southfield
       Defendants' Conduct Violates the Eighth
       Amendment's Excessive Fines Clause..................................28

CONCLUSION AND REQUEST FOR RELIEF ....................................................28

CERTIFICATE OF SERVICE................................................................................29

INDEX OF EXHIBITS .........................................................................................30

# INDEX OF AUTHORITIES

*Adair v. State*,
    470 Mich.105; 680 N.W.2d 386 (2004) ............................................................8

*Armstrong v United States*,
    364 U.S. 40, 44-46; 80 S. Ct. 1563 (1960)......................................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662, 679, 129 S. Ct. 1937 (2009) ........................................................7

*Austin v. United States*,
    509 U.S. 602, 622-23; 113 S. Ct. 2801 (1993)..................................................27

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 555; 127 S. Ct. 1955 (2007) ........................................................6

*Browning v. Clinton*,
    292 F.3d 235, 242 (D.C. Cir. 2002) ....................................................................6

*Cleveland v. Detroit*,
    322 Mich. 172, 179; 33 N.W.2d 747 (1948) ....................................................15

*Coleman v D.C.*,
    70 F. Supp. 3d 58, 80 (D.C. Cir. 2014) ............................................................14

*Conroe Creosoting Co. v. Montgomery County*,
    249 F.3d 337 (5th Cir. 2001) ............................................................................23

*County of Sacramento v. Lewis*,
    523 U.S. 835, 845; 118 S. Ct. 1708 (1998) ................................................21, 24

*Dean v Mich. Dep't of Natural Resources*,
    399 Mich. 84; 247 N.W.2d 876 (1976) ............................................................20

*Edwards v. Meisner,*
    U.S. E.D. Mich. Case No. 19-10047, ECF No. 57, Page Id 1437-1455 ..............9

-v-

*Ewolski v. City of Brunswick,*
    287 F.3d 492, 510 (6th Cir. 2002) .......................................................................25

*Freed v Thomas*
    976 F.3d 729 (6th Cir. 2020) ...............................................................................8

*Gustave-Schmidt v. Chao,*
    226 F. Supp. 2d 191, 196 (D.C. Cir. 2002) .....................................................6, 7

*Hall v. Spencer County, Ky.,*
    583 F.3d 930, 933 (6th Cir. 2009) .......................................................................7

*Hoving v. Transnation Title Ins. Co.,*
    545 F. Supp .2d 662, 670 (E.D. Mich. 2008) ....................................................19

*In re: Minton Group Inc.,*
    28 B.R. 774 (Bankr. S.D.N.Y. 1983) ................................................................11

*Johnson v. Meisner*
    U.S. E.D. Mich. Case No. 19-11569 ECF No. 68 Page Id 1346 ........................9

*Jackson v. Southfield Neighborhood Revitalization Initiative,*
    unpublished Opinion per curiam of the Michigan Court
    of Appeals, decided December 19, 2019 (Docket No. 344058)....................5, 22

*Karaus v. Bank of N.Y. Mellon,*
    300 Mich. App. 9, 22; 831 N.W.2d 897 (Mich. Ct. App. 2012) .................18, 19

*Kerrigan v Visalus, Inc,*
    112 F. Supp. 3d 580 (E.D. Mich. 2015) ............................................................19

*Knick v. Twp. of Scott, Penn.,*
    139 S. Ct. 2162 (2019) ..................................................................................9, 15

*Lingle v. Chevron U.S.A. Inc.,*
    544 U.S. 528; 125 S. Ct. 2074 (2005) .........................................................25, 26

*Livonia Twp. School Dist. v Wilson*,
   339 Mich. 454, 460; 64 N.W.2d 563 (1954) ...................................................15

*Louisville Joint Stock Land Bank v. Radford*,
   295 U.S. 555, 589-602; 55 S. Ct. 854 (1935)....................................................21

*Mennonite Bd. of Missions v. Adams*
   462 U.S. 791; 103 S. Ct. 2706 (1983) ...............................................................22

*Morris Pumps v. Centerline Piping, Inc.*,
   273 Mich. App. 187; 729 N.W. 2d 898, 904 (2006) ........................................18

*Mullane v. Central Hanover Bank & Trust Co.*
   339 U.S. 306, 314; 70 S. Ct. 652 (1950).........................................................22

*Nectow v. City of Cambridge*,
   277 U.S. 183, 188-89; 48 S. Ct. 447 (1928)....................................................25

*Parkway Garage, Inc. v. City of Phila.*,
   5 F.3d 685, 692 (3d Cir. 1993) .........................................................................26

*Peterman v Dept. of Natural Resources*,
   446 Mich. 177; 521 N.W.2d 499 *(*1994) .........................................................15

*Poe v Ullman*,
   367 U.S. 497, 543; 81 S. Ct. 1752 (1961) ........................................................23

*Rafaeli, LLC V Oakland County*,
   Opinion of the Michigan Supreme Court to be published,
   decided July 17, 2020 (Docket No. 156849)
   2020 Mich. LEXIS 1219 ..............................................8, 9, 12, 13, 14, 15, 16, 20

*Reid v Bank of Am.*,
   2019 U.S. Dist. Lexis 13805 (E.D. Mich. 2019)...............................................20

*Rosewell v La Salle Nat'l Bank*
   450 U.S. 503, 515; 101 S. Ct. 1221 (1981) ......................................................20

-vii-

*Timbs v. Indiana,*
    139 S. Ct. 682 (2019) ...........................................................27

*United States v. Bajakajian,*
    524 U.S. 321, 334; 118 S. Ct. 2028 (1998) ........................27

*United States v. Certain Real Prop.*
*Located at 11869 Westshore Drive,*
*Putnam Twp., Livingston Cty. Mich.,*
    70 F.3d 923, 927 (6th Cir. 1995)........................................27

*United States v. Lawton,*
    110 U.S. 146; 3 S. Ct. 545 (1884) ...............................14, 17

*Village of Euclid Co. v. Ambler Realty Co.,*
    272 U.S. 365, 395; 47 S. Ct. 114 (1926) ...........................24

*Washington v. Glucksberg,*
    521 U.S. 702; 117 S. Ct. 2258 (1997) ..........................22, 23

*Wayside Church v Van Buren Co,*
    847 F.3d 812, 823 (6th Cir. 2017) ...........................9, 10, 17

*Wayside Church v County of Van Buren,*
    U.S. Disctict Court Case No. 14-01274, ECF No. 64,
    PageID 643 filed March 26, 2019 ......................................10

*Webb's Fabulous Pharmacies, Inc. v. Beckwith,*
    449 U.S. 155, 164; 101 S. Ct. 446 (1980) .........................17

*Wolff v McDonnell*
    418 U.S. 539; 94 S. Ct. 2963 (1974) ................................21

## FEDERAL RULES OF CIVIL PROCEDURE

Rule 12(b)(6) ...............................................................................6

## **CONSTITUTIONAL PROVISIONS**

Fifth Amendment of the United States Constitution ........................................ 11-16
Eighth Amendment of the United States Constitution ............................................27
Article X Section 2 of the Michigan Constitution............................................ 11-16

## **STATE STATUTES**

MCL 211.78(M) (PA 0255' 2020) ...................................................................2, 3, 22
MCL 211.78(t)(2) ....................................................................................................3

## STATEMENT OF ISSUES PRESENTED

I.  Whether *res judicata* bars Plaintiffs Hall, Miller, American Internet Group and Akande's claims?

   Plaintiffs' Answer: ...............................................................................No
   Defendants' Answer:.............................................................. Yes

II.  Whether Plaintiff Byers has standing?

   Plaintiffs' Answer: ............................................................... Yes
   Defendants' Answer:.............................................................................No

III.  Whether Plaintiffs have stated a "takings" claim under the Fifth Amendment to the United States Constitution or the Michigan Constitution?

   Plaintiffs' Answer: ............................................................... Yes
   Defendants' Answer:.............................................................................No

IV.  Whether Plaintiffs have stated an unjust enrichment claim against the Southfield Defendants?

   Plaintiffs' Answer: ............................................................... Yes
   Defendants would Answer:...................................................................No

V.  If the Municipalities' conduct did not violate the Fifth Amendment did it violate Plaintiffs' rights to substantive due process?

   Plaintiffs' Answer: ............................................................... Yes
   Defendants' Answer:.............................................................................No

VI.  If there was not a Taking, has Southfield Defendants' conduct violated the Eighth Amendment's Excessive Fines Clause?

   Plaintiffs' Answer: ............................................................... Yes
   Defendants' Answer: .............................................................................No

## <u>STATEMENT OF CONTROLLING AUTHORITY</u>

Pursuant to E.D. Mich. LR 7.1(d)(2)), the controlling or most appropriate authority for the relief sought is:

I.   **Res Judicata Does Not Bar Plaintiffs Hall, Miller, American Internet and Akande's Claims nor Does Byers Lack Standing**. *Adair v. State,* 470 Mich. 10 (2004); *Johnson v. Meisner,* U.S. District Court E.D. Mich. Case No. 19-11569, ECF 68, Page Id 1346; *Edwards v. Meisner*, U.D. District Court E.D. Mich. Case No. 19-10047, ECF ___ Page Id 1437-1455 (6th Cir. 2020).

II.   **Plaintiff Byers has standing.** *In re Minton Group, Inc*, 28 B.R. 774 (Bankr. S.D.N.Y. 1983).

III.   **Plaintiffs have Stated a Fifth Amendment Takings claim and a Claim under the Michigan Constitution.** *Rafaeli, LLC v. Oakland County*, Oakland County Case No. 156849, 2020 WL 4037642, (Mich. July 17, 2020); Fifth Amendment of the United States Constitution; Art. 10, Sec 2 of the Michigan Constitution; *Knick v. Twp. of Scott,* 139 S. Ct. 2162 (2019)*; Coleman v Dist of Columbia*, 70 F. Supp. 3d 58 (D DC 2014).

IV.   **Plaintiffs have Stated an Unjust Enrichment Claim against Southfield Defendants.** *Kerrigan v Visalus, Inc*, 112 F. Supp. 3d 580 (E.D. Mich., 2015); *Hoving v. Transnation Title Ins. Co*., 545 F. Supp. 2d 662 (E.D. Mich. 2008); *Rafaeli, LLC v. Oakland County,* Oakland County Case No. 156849; *Reid v Bank of Am.,* 2019 U.S. Dist. Lexis 13805 (E.D. Mich. 2019); *Dean v Dep't of Natural Resources*, 399 Mich. 84 (1976).

V.   **If the Municipalities conduct did not violate the Fifth Amendment, then it Violated Plaintiffs' rights to Substantive Due Process.** *Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528 (2005); *Sacramento v. Lewis* 523 U.S. 835 (1998).

VI.   **If there was not a Taking Southfield Defendants' Conduct Violated the Eighth Amendment's Excessive Fines Clause**. *Austin v. United States*, 509 U.S. 602, (1993): *Timbs v. Indiana*, 139 S. Ct. 682 (2019)

## **INTRODUCTION**

The Complaint has a total of thirteen (13) Defendants that can be separated into four (4) groups, as follows: 1) Oakland County Treasurer Andrew Meisner ("OCT") and Oakland County (collectively referred to as "Oakland County Defendants"); 2) City of Southfield ("Southfield"), City Manager Frederick Zorn, Mayor Ken Siver, Former City Attorney Susan Ward-Witkowski, Gerald Witkowski (Code Enforcement and Eviction Administrator for Southfield Neighborhood Revitalization Initiative) and Treasurer Irvin Lowenberg (collectively referred to as "Southfield Defendants"); 3) Southfield Neighborhood Revitalization Initiative ("SNRI") and the Southfield Non-Profit Housing Corporation ("SNPHC") and Frederick Zorn (Director of both SNRI and SNPHC), Director E' Toile Libbett ("Director SNRI") and Mitchel Simon ("Treasurer SNPHC") (collectively referred to as "SNRI Defendants"); and 4) Habitat for Humanity ("Habitat").

The City of Southfield, SNPHC and the SNRI have identical and inter-changeable governance.  The President of the SNPHC is Defendant Mayor Siver, City Manager Zorn is the Vice- President, City Council Members, and the City Treasurer Defendant Lowenberg populate the Board of Directors. Likewise, the SNRI has as its three members Zorn, Siver and a politically connected Realtor Defendant L'Etoile Libbett.

The Complaint consists of seven (7) Counts: I- Taking 5th Amendment; II-Inverse Condemnation; III- Taking Clause Michigan Constitution of 1963, Art. 10 § 2; IV- 8th Amendment Violation; V- Procedural Due Process; VI- Substantive Due Process; and VII- Unjust enrichment. This Response is directed at the Motion to Dismiss filed by Southfield Defendants.

On December 22, 2020, the Governor of Michigan signed into law PA 0255'20 (which began as two Senate Bills: SB0676 and SBl137), which states:

> Enacting section 3. This amendatory act is curative and intended to codify and give full effect to the right of a former holder of a legal interest in property to any remaining  proceeds resulting from the foreclosure and sale of the property to satisfy delinquent real property taxes under the general property tax act, 1893 PA 206, MCL 211.1to 211.155, as recognized by the Michigan supreme court in *Rafaeli, LCC v Oakland County*, docket no. 156849, consistent with the legislative findings and intent under section 78 of  the general property tax act, 1893 PA 206, MCL 211.78.

MCL 211.78m, as amended, December 22, 2020 (**Exhibit A**).

Under the amended general property tax act ("AGPTA"), if a property owner files a claim, a city can only purchase the property for the greater of the minimum bid or the **fair market value** of the property (emphasis added). This is a tacit

-2-

admission that the only way to fix the unconstitutional taking under the Michigan Constitution in this case is to mandate that a municipality pay fair market value.[1]

Unfortunately, the new legislation does not completely resolve the issues in this case because the new section, M.C.L. § 211.78(t)(2), states that any retroactive effect (prior to July 18, 2020) is dependent upon a decision of the Michigan Supreme Court. The AGPTA highlights that this attempt to make the AGPTA viable under the Michigan Constitution may still fall short of the requirements under the Fifth Amendment to the United States Constitution.

## STATEMENT OF FACTS

Plaintiffs were deprived of their property rights by a series of prearranged transactions in which Defendant SNPHC provided Southfield with the funds to pay the delinquent property taxes in order to obtain properties at a deep discount from fair market value.  Southfield Defendants Zorn, Siver, Witkowskis and Lowenberg in their official and individual capacities arranged for or aided Southfield to use its right of first refusal under MCL 211.78m to purchase the Plaintiffs' tax foreclosed property directly from OCT for the minimum bid (consisting of the delinquent taxes plus penalties, interest, and statutory fees – generally far less than the fair

---

[1] The amended version of MCL 211.78m effectively abrogates that which was referred to as the "right of first refusal" in the prior version of MCL 211.78m. ( *See* **Exhibit A**, pp.1-2).

market value of the property) without any competitive bidding whatsoever. After the properties were transferred to Southfield following payment the minimum bid, the properties were then transferred to the SNRI for $1.00. The taxes are generally a fraction of the value of the home.

SNRI is a Michigan limited liability company that has SNPHC as its sole member and is controlled by City of Southfield officials Zorn and Siver. Former Southfield official Gerald Witkowski as well as SNPHC Treasurer Mitchell Simon received proceeds from the equity of Plaintiffs' properties. (**Exhibit B**, SNRI Bank Statements). Defendants SNRI and SNPHC coordinated their efforts with Southfield to obtain title of properties with large amounts of equity by putting up the funds to purchase the properties utilizing Southfield's former right of first refusal under the GPTA (**Exhibit C**, list of properties). The Southfield Defendants passed several resolutions for Defendant SNPHC to put up a minimum bid to purchase 200 properties under the guise of arresting blight in the neighborhood (**Exhibit D**, Resolutions). Southfield Defendants contend that the city was getting into the tax foreclosure game purportedly to reduce rental properties and blight, although most of the Plaintiffs' properties were not blighted in the least. Additionally, this scheme was only used on properties with either small or no mortgage on the property. In other words, properties with large amounts of equity.

-4-

In their "attempt to reduce blight," the Southfield Defendants masterminded the non-contemplated use of the GPTA's former right of first refusal subverting its purpose to their advantage and collectively created a windfall of millions of dollars in surplus equity from Plaintiffs' properties -- and have garnered more than $25 million from properties. Plaintiffs have suffered greatly by the Defendants' extraction and conversion of the Plaintiffs' equity/surplus proceeds.

The factual underpinnings of the instant case include pled allegations of abuse of the public trust by which Defendants enabled SNRI to obtain title and all the equity (including "surplus proceeds") from the Plaintiffs' real property interests.  Plaintiffs' real estate properties did not have mortgages or other liens of record with a higher priority than the delinquent property taxes.  The Michigan Court of Appeals noted in an opinion regarding identical circumstances **"the fact that elected officials were using their political status for private gain is at minimum troubling."** *Jackson v. Southfield Neighborhood Revitalization Initiative*, unpublished Opinion per curiam of the Michigan Court of Appeals, decided December 19, 2019 (Docket No. 344058) (**Exhibit E**).  The Court further noted that the conduct had the "**appearance of impropriety**" and was "**shocking to the conscience.**" *Id.*

-5-

As it pertains to the present case, it is fair to say the above referenced transfers were not arms-length and the result was the de facto conversion of Plaintiffs' property rights into private funds without "just compensation." The transactions were attempted to be justified as blight mitigation; however, the substance of the transactions is akin to inverse condemnation.

## **STANDARD OF REVIEW**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton,* 292 F.3d 235, 242, 352 U.S. App. D.C. 4 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555; 127 S. Ct. 1955 (2007). While detailed factual allegations are not necessary, a plaintiff must plead enough facts "to raise a right to relief above the speculative level."  When ruling on a Rule 12(b)(6) motion, the court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao,* 226 F. Supp. 2d 191, 196 (D.C. Cir. 2002). The Court must construe the complaint liberally in plaintiff's favor and grant plaintiff the benefit of all reasonable

inferences deriving from the complaint. We "must view all facts and inferences in the light most favorable to the non-moving party." *Id*. at 474; *see also, Hall v. Spencer Cty*., 583 F.3d 930, 933 (6th Cir. 2009). The court must not accept inferences that are "unsupported by the facts set out in the complaint." *Id*. "Nor must the court accept legal conclusions cast in the form of factual allegations." *Id*. "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal,*556 U.S. 662, 679; 129 S. Ct. 1937 (2009).

## **LEGAL ARGUMENT**

I.    **Res Judicata Does Not Bar Plaintiffs Hall, Miller, American Internet Group and Akande's Claims nor Does Byers Lack Standing**

A.    *Res judicata*

The claims made in state court do not provide the foundation for *res judicata*. The prior state case was an unfair housing case based on racial discrimination in 2018.

The present claims, which are based on concerted conduct of Defendants in a "scheme to strip Plaintiffs' equity," were not known at the time of the state suit. Furthermore, the landscape of the law has shifted. This action could have not been resolved at the time of the state court case because the Michigan Constitution had not established the right to the equity/surplus proceeds from a tax foreclosure. Also, the parties were not identical.

-7-

Under the exact same facts applied in *Adair v. State* 470 Mich. 105; 680 N.W.2d 386 (2004), Oakland County Circuit Judge Jarbou ruled the new Constitutional claims were not the same transaction and occurrence and were not related in time, space, origin, or motivation, nor did they form a convenient trial unit (**Exhibit F**, Jarbou's Opinion).

In the state court proceeding the precise issues were not raised nor actually litigated. Next, the only parties to the judgment of tax foreclosure were the Oakland County Treasurer and certain of the Plaintiffs. Before the decision in *Rafaeli, LLC v. Oakland County,* opinion of the Michigan Supreme Court to be published, decided July 17, 2020 (Docket No. 156849) (2020 Mich LEXIS 1219) (**Exhibit G**), there were no common law property rights that existed unambiguously in the equity/surplus proceeds after a property tax foreclosure, therefore it would have been largely futile to bring most of the present claims. There still is no adequate remedy or procedure to address the unlawful conduct in this case until the Michigan Legislature finds *Rafaeli, LLC*, *supra*, retroactive. Even then, ambiguity will persist (*see* Justice Vivano's Concurrence in *Rafaeli, LLC, supra*).

Moreover, Judge Tarnow found even before *Freed v. Thomas,* 976 F.3d 729 (6th Cir. 2020) and *Rafaeli, LLC, supra*, were decided that the "legal

-8-

landscape of the issues raised have shifted to allow a second look" and decided *res judicata* was not a bar to claims.  *See*, *Johnson v. Meisner*, U.S. District Court E.D. Mich. Case No. 19-11569, ECF 68, Page Id 1346 (**Exhibit H**).

Finally, the full extent of the scheme to deprive Plaintiffs of their equity had not even been revealed at the time the state foreclosure judgment was entered. The injury was not ripe until the properties were transferred to Southfield. Since this Court's Order Staying a related case pending decisions in *Rafaeli, LLC, supra,* and *Freed, supra, (Edwards v. Meisner*, U.S. District Court E.D. Mich. Case No. 19-10047, ECF No. 57 Page Id1437-1455, **(6/26/2020**))(**Exhibit I),** the jurisprudence has dramatically shifted in favor of not only establishing a common law right in the equity or surplus proceeds under *Rafaeli, LLC, supra,* as well as under the Michigan Constitution, but also, in removing any subject matter jurisdictional bar to federal jurisdiction under *Freed v. Thomas, supra*.

Similarly, in the U.S. District Court for the Western District of Michigan Judge Paul Maloney reopened a challenge to the GPTA, relying upon the dissent in *Wayside Church v. County of Van Buren*, 847 F.3d 812, 823 (6th Cir. 2017), the decision in *Knick v. Twp of Scott, Penn.,*139 S. Ct. 2162 (2019), and the Michigan Supreme Court granting leave to appeal in *Rafaeli, LLC, v. Oakland County,* 919 N.W.2d 401 (Mich. 2018), on the issue of whether Oakland County violated either

the takings clause of the United States Constitution or the Michigan Constitution,

or both, by "retaining proceeds  from the tax foreclosed property that exceeded the

amount of the tax delinquency under the GPTA."  Judge Maloney, a transformed

jurist who had previously dismissed the case, allowed reopening holding:

> The Court is persuaded that there is such a special circumstance in
> light of the potential for inequity of Michigan's General Property Tax
> Act., *See, e.g.*, *Wayside Church*, 847 F.3d at 823 (Kethledge, J.,
> dissenting) (likening the tax collection system to 'theft' and viewing it
> as a 'gross injustice') …. ('It is unconscionable that the Michigan
> legislature has seen fit to adopt a property taxation system that not
> only permits but requires county treasurers to take title to real
> property when the taxes thereon are not timely paid and to then retain
> all of the proceeds obtained for the property at auction, returning
> nothing to the former property owner regardless of the amount of the
> 'surplus' or 'overage.') *Rafaeli,* 2017 WL 4803570, at*6.

*Wayside Church v County of Van Buren*, U.S. Disctict Court Case No. 14-01274,
ECF No. 64, PageID 643 filed March 26, 2019 (**Exhibit J**).

The reasoning of Judges Tarnow and Maloney apply equally in the present

case.

**B.**     *Lack of Standing – Byers*

Marcus Byer has had a closed head injury since 1998. His ex-wife

purchased a house with his money and has been his legal guardian (**Exhibit K**,

Guardianship papers, Quit Claim Deed). The equity in or from the property

belongs to Mr. Byer. Byer's equitable interest meets the threshold for standing as

-10-

an injury in fact. *See, In re Minton Group, Inc.*, 28 B.R. 774 (Bankr. S.D.N.Y. 1983).

**C.      *Hall's Dismissal was Without Prejudice***

While it is true that the Plaintiff Hall signed a stipulation to dismiss with prejudice (under the advice of a legal intern who is now employed by Southfield Defendants' Counsel), the actual Order of the Court was without prejudice. In any event, for the same reasons *res judicata* does not apply to the other aforementioned Defendants referenced in Subsection A (with the additional factor of the stipulation being ethically suspect), Plaintiff Hall should not be precluded from pursuing her claims.

**II.    Plaintiffs have Stated a Fifth Amendment Takings claim and a Claim under the Michigan Constitution.**

The takings claim is brought in three separate counts (I-III) under the Fifth Amendment of the U.S. Constitution and the Michigan Constitution against all Southfield Defendants. Southfield Defendants' arguments to dismiss the takings claims consist of the following: 1) There was not "a cognizable property interest under state law; 2) no taking of private property occurred; and 3) Southfield Defendants contend they did not permanently retain the equity/surplus proceeds, so there were no taking violations.

-11-

Recently, the Michigan Supreme Court in *Rafaeli, LLC, supra,* interpreted the takings clause under the Michigan Constitution Art. 10 Sec 2.  In *Rafaeli, LLC,* the court found that Michigan common law recognizes a former property owner's right to collect the "surplus proceeds" that are realized from property tax foreclosure sales. The court in *Rafaeli, LLC, supra,* further found that the "surplus proceeds" are free from unlawful interference from governmental entities. *Id.* at p. 26.; *see also, Rafaeli, LLC, supra,* p. 32, note 93). Also, the court in *Rafaeli, LLC* held that under the Michigan Constitution the government retention of "surplus proceeds" was a "taking without just compensation."  *Id*. at p. 32. The fundamental principle—that the government shall not collect more taxes than are owed, nor shall it take more property than is necessary to serve the public—protect taxpayers and property owners alike from government overreach and has remained a lodestar in Michigan's jurisprudence since the early years of statehood.  *Id*. at p. 29.

Southfield Defendants make several arguments that do not comport with *Rafaeli, LLC*. First Southfield contends that because Oakland County foreclosed on Plaintiffs' properties it extinguished any constitutionally protected property right. The express language of *Rafaeli, LLC* (ECF No. 85-1, Page Id 1724) belies such legal theory. Next, Southfield Defendants characterizes the protected "surplus proceeds" as "forfeited equity," (Southfield Defendants' Brief ECF 34 Page

ID.445).  *Rafaeli, LLC, supra,* totally overrules any case that relies on forfeiture theory to take constitutional protected property without just compensation. *Id.* at p.15.

Finally, Southfield argues *Rafaeli, LLC* rejects the supposition that "Plaintiffs retain a property right in the equity of the property following a tax foreclosure." ECF N0.34, Page *Id*. 445. Perhaps this is just semantics but the court in *Rafaeli, LLC* held that a property owners' interest in the property right/surplus proceeds survive the tax foreclosure sale.  Defendants argue a tax sale that transfers title eviscerates the right to all property rights intertwined with the taxpayer's property so that the right to surplus proceeds/equity disappears. *Rafaeli, LLC* specifically found the opposite.[2]

---

[2] *Rafaeli, LLC, Id.* At 39-41 "Defendants rely on a line of Michigan cases to argue that plaintiffs held no rights, titles, or interests in their properties once foreclosure occurs and fee simple title vests with the state. None of these decisions, however, involved a claim for the surplus proceeds after a foreclosure sale. Rather, these cases all addressed the former property owners' ability to retain or convey an interest in the land that had been foreclosed. Indeed, one of these cases even noted that the primary and inducing purpose of the legislation was to secure *a portion of the unpaid taxes, rather than nothing*, and to restore lands to a taxpaying basis, instead of supinely allowing them to accumulate tax delinquencies with no hope of ever recovering them." In this case, Defendants recovered the entire amount of plaintiffs tax debts *and more* by way of a surplus. Plaintiffs had a cognizable, vested property right to collect those surplus proceeds. This vested right does not simply **"vanish into thin air."**(emphasis added) In the same way that the foreclosure process does not eliminate the former property owner's interest in the personal property that sits on the foreclosed land, the vesting of fee simple title to

-13-

The Fifth Amendment has been applied to property tax sales in *Coleman v Dist. of Columbia*, 70 F. Supp. 3d 58, 80 (D.C. Cir. 2014), which ruled that once a state recognizes a property interest in the taxpayer, it cannot summarily remove that interest. The court relied upon *United States v. Lawton*, 110 U.S. 146; 3 S. Ct. 545 (1884). Although the court in *Rafaeli, LLC* held under the Michigan law that a taxpayer had a vested property right in the "surplus proceeds" and it was unconstitutional for state government entities to interfere with the former property owners' rights in such property without providing "just compensation," *Rafaeli, LLC, supra,* does not address the exact fact situation that is presented by the instant case because it did not opine on the remedy for a taking violation when there is no auction. Furthermore, it should be noted that the court in *Rafaeli, LLC*, expressly stated that it was ruling pursuant to the Michigan Constitution. However, it would be difficult and illogical to conceive after the ruling in *Rafaeli, LLC*, that the present Plaintiffs would not have the same property rights and the same rights to

---

the real property does not extinguish the property owner's right to collect the surplus proceeds of the sale. This is a separate property right that survives the foreclosure process. Accordingly, like any other creditor, Defendants were required to return the surplus.

"surplus proceeds" (and certainly "just compensation" under the Fifth

Amendment).[3]

This is especially compelling because the municipal Defendants wish to

justify their deprivation of Plaintiffs' Fifth Amendment rights in terms of a "public

purpose" or "essential state" interest." In the wake of *Rafaeli LLC*, *supra*, *Freed*,

*supra,* and *Knick v. Twp. of Scott Penn, supra,* there can be no credible justification

under those precepts.[4] Once having established a property right under state law,

Plaintiffs contend that the federal courts are not bridled to a watered downed

---

[3] The asserted Fifth amendment violation through the concerted action of Oakland County, City of Southfield and other Defendants may give rise to additional considerations especially concerning remedies for the conduct. Plaintiffs contend their Fifth amendment rights were violated when their surplus equity - the amount in excess of amount due for their tax liability - was foreclosed upon with no adequate remedy to keep the equity and such equity was constructively fraudulently transferred to the City of Southfield and then to the SNRI for $1.00 dollar to be sold at fair market value. Also, *Rafaeli, LLC* concerned commercial property, so the Michigan Supreme Court did not consider awarding 125% of fair market value pursuant to the Michigan Constitution Art. 10, §2.

[4] . See *Peterman v. Mich. Dep't of Natural Resources*, 446 Mich. 177, 201, 202 n36; 521 N.W.2d 499 *(*1994)  ("As an unnecessary taking of property, defendant's actions violated the strict dictates of the constitutional guarantee that private property may be taken only when necessary for public purposes."); *Livonia Twp. Sch Dist. v Wilson*, 339 Mich. 454, 460; 64 NW2d 563 (1954) ("It is a general principle that the legislature cannot authorize the taking of property in excess of that required for public use."); *Cleveland v Detroit*, 322 Mich. 172, 179; 33 N.W.2d 747 (1948) ("In acquiring property for public use it is not permissible for the city to take additional property not necessary for that public use for private purposes.").

-15-

interpretation of the 5th amendment to accommodate a ruling under the Michigan Constitution.

In sum, it is clear the Plaintiffs had a property right under Michigan law and further the equity, or the usually more limited value "surplus funds," was retained initially by Oakland County and was intentionally transferred to Southfield with funds provided by SNPHC. Thereafter the property was transferred to SNRI, which was created by the conflicted Southfield officials to receive title to the Plaintiffs' properties for wholly inadequate consideration.The transfers were planned to avoid a public sale but, in most cases, ended with a sale for fair market value which was a windfall retained by the Southfield Defendants, then often transferred to SNPHC and to the individual Defendants in their personal capacities (**Exhibit B**).

The Court is left with the issue of whether these Plaintiffs have forfeited their rights to the surplus proceeds because their government officials (elected and appointed) plotted to deny them any mechanism to retain their constitutionally protected property rights by a scheme that ensured that there was no public auction? As stated by the court in *Rafaeli, LLC, supra*:

> But a taking can, and often does, encompass more than just the physical deprivation of real, tangible property; it also includes the government's interference with one's personal, intangible property" ECF No, 85-1, Page Id 1724

-16-

If, as the court in *Rafaeli, LLC*, found, defendants may not in the guise of tax

collection seize property valued far in excess of the amount owed "and convert that

surplus into a public benefit."  It is equally true that the foreclosing authorities

cannot convert the proceeds into a windfall for nongovernment entities. (See ECF

No. 85-1, Page Id 1748). The government cannot avoid the just compensation

requirement by redefining a preexisting private interest as public property. *See,*

*Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155; 101 S. Ct. 446

(1980).  Government may regulate property rights, but it "by *ipse dixit* may not

transform private property into public property without compensation." *Id.* at 164.

Finally, several well-respected judges have opinioned that the taking of all

the equity to pay a proportionally small amount of taxes was an injustice. The

Judges made these statements based on claims that contended the GPTA was

constitutionally defective and led to an unfair result, in cases not even as extreme

as this case where there is a scheme to strip the equity by the current Defendants.

*See Wayside Church, supra.* Plaintiffs were injured by losing title to their homes

and having their respective properties' equity converted for an alleged public

purpose secretly devised by scheming government officials with blatant conflicts

of interest. *See, Lawton* 110 U.S.at 150; and *Webb's Fabulous Pharmacies*, 449

U.S. at 164.  Plaintiffs have pled taking claims against the Southfield Defendants

-17-

under the United States and Michigan Constitutions.

III.   **Plaintiffs have Stated an Unjust Enrichment Claim against the Southfield Defendants**

To state a claim of unjust enrichment, a plaintiff must allege:

(1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant.

*Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187; 729 N.W.2d 898, 904 (Mich. Ct. App. 2006).

Southfield Defendants reliance on *Karaus v. Bank of N.Y. Mellon*, 300 Mich. App. 9, 22; 831 N.W.2d 897 (Mich. Ct. App. 2012) is misplaced. The facts in *Karaus* are easily distinguishable from the instant case. In *Karaus*, a homeowner borrowed money from a bank to finance construction on his house and, in return, the homeowner granted a mortgage to the bank. The plaintiff performed construction work on the home, but the homeowner did not pay the plaintiff in full. The plaintiff then brought an unjust enrichment claim against the bank that held the mortgage. The Michigan Court of Appeals affirmed judgment in favor of the bank on the ground that the bank did not obtain a benefit directly from the plaintiff. *See, Karaus*, 300 Mich. App. at 23. The court noted that the bank was "completely uninvolved" with the agreement between the plaintiff and the homeowner, and it found no evidence that the bank "requested any of the work performed by plaintiff or misled plaintiff to receive any benefit." *Id.* ("The mere fact that a third person

-18-

benefits from a contract between two other persons does not make such third person liable in quasi-contract, unjust enrichment, or restitution"). However, notwithstanding the above quote from *Karaus*, the opinion does not stand for the proposition that when a defendant receives a benefit from a third party, and not from the Plaintiff directly, there cannot be an unjust enrichment claim. *See, Kerrigan v Visalus, Inc*, 112 F. Supp. 3d 580 (E.D. Mich. 2015).

The instant case is completely juxtaposed to the facts in *Karaus*, as it is asserted in the Complaint that the recipients of the "unjust consideration" were not only involved with the transfer of the surplus proceeds/equity from Plaintiffs, but also orchestrated and participated in a scheme or a conspiracy to strip the equity of Plaintiffs' properties through concerted action.

In *Kerrigan, supra,* the court held:

> Thus, the plaintiff in *Karaus* does *not* demonstrate — as the Plaintiffs allege here — that the defendant indirectly received a benefit from the plaintiff through its participation in, or knowledge of, a fraudulent scheme. *Karaus* does not stand for the proposition that a plaintiff may prevail against a defendant on an unjust enrichment theory only if the plaintiff directly conferred a benefit upon the defendant. **On the contrary, the court in *Karaus* recognized the possibility that a plaintiff may recover from a defendant upon whom he did not confer a benefit if the defendant has engaged in misleading conduct that led to the plaintiff's loss."**

*Kerrigan*, 112 F. Supp. 3d at 614 (emphasis added)

-19-

Moreover, "numerous cases have held that a benefit may be unjustly obtained by a defendant through an intermediary, especially if there is some wrongdoing on the defendant's part." *Hoving v. Transnation Title Ins. Co*., 545 F. Supp. 2d 662, 670 (E.D. Mich. 2008). In accord is the matter of *Reid v Bank of Am.,* 2019 U.S. Dist. Lexis 13805 (*E.D. Mich. 2019) (**Exhibit L**).

Finally, the court in *Rafaeli, LLC* addressed the right of a former owner to bring a claim for unjust enrichment. A property owner's right to collect the surplus proceeds from the tax-foreclosure sale of his or her property has also transcended the most recent ratification of the Michigan Constitution. *See, Dean v Mich. Dep't of Natural Resources*, 399 Mich. 84; 247 N.W.2d 876 (1976), which recognized a right to collect those proceeds under the common-law claim of unjust enrichment.

The court in *Rafaeli, LLC*, *supra*, stated:

> *Dean* stands for more than just a recognition of the plaintiff's right to
> bring a claim under unjust enrichment for the surplus proceeds;
> inherent in *Dean*'s holding is Michigan's protection under the
> common law of a property owner's right to collect the surplus
> proceeds that result from a tax-foreclosure sale.

Michigan's common law recognizes a former property owner's right to collect the surplus proceeds that are realized from the tax-foreclosure sale of property, and this right is vested such that it is to remain free from unlawful governmental interference. *Rafaeli, LLC*, *supra*.

-20-

In the unique circumstances of this case, there is not and still does not exist "a plain, speedy and efficient remedy" in the state courts.  *See, Rosewell v LaSalle Nat'l Bank*, 450 U.S. 503, 515 n.19; 101 S. Ct. 1221 (1981).  Accordingly, Defendants have not shown that Plaintiffs fail to state an unjust enrichment claim on this basis. Although Southfield did noy directly retain the proceeds the SNRI's (Bank Statements ,Exhibit B) show payments to Southfield employees

## IV.    If the Municipalities' conduct did not violate the Fifth Amendment, then they Violated Plaintiff's Rights to Substantive Due Process.

The Supreme Court has recognized on numerous occasions that property interests in intangibles, similar to equity in property, exists under state law. *See, e.g., Armstrong v United States,* 364 U.S. 40, 44-46; 80 S. Ct. 1563 (1960) (materialman's lien is a compensable property interest); and *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 589-602; 55 S. Ct. 854 (1935) (the impairment of a real estate lien amounted to "the taking of substantive rights in specific property).

In the seminal case of *County of Sacramento v. Lewis,* 523 U.S. 835, 845; 118 S. Ct. 1708 (1998), *quoting Wolff v McDonnell* 418 U.S. 539; 94 S. Ct. 2963 (1974), the Supreme Court of the United States stated:

> The touchstone of due process is protection of the individual against arbitrary action of government.

-21-

Although the Defendants do not embrace the concept, substantive due process restrains the government's inexorable power to collect taxes without violating fundamental property rights. The courts have recognized substantive due process limitations on government's actions and decisions that affect peoples' property rights. Government officials that act with intent or deliberate indifference to property rights have been found to engage in conduct that "shocks the conscience" in violation of the constitutional guarantee of due process. *See, Mullane v. Central Hanover Bank & Trust Co*. 339 U.S. 306, 314; 70 S. Ct. 652 (1950); and *Mennonite Board of Missions v. Adams*, 462 U.S. 791; 103 S. Ct. 2706 (1983).

In *Jackson v. Southfield Neighborhood Revitalization Initiative, supra,* (**Exhibit E**) the Michigan Court of Appeals found in identical circumstances, that the same Southfield Defendants' conduct against others "shocked the conscience." (*Id.* at p.11-12). In the present case, it is asserted that Southfield officials, under the "color of law," intentionally and brazenly formulated and executed a plan to use the municipalities right of first refusal under M.C.L. § 211.78m to act as a conduit to transfer the properties to SNRI for $1.00. It is very important to note that most of the homes were in marketable condition and were then sold for fair market value or remarkably close to such amount after the initial sale. The money was

-22-

temporarily retained by SNRI and then transferred to either SNPHC or other

Southfield insiders, some of which are Defendants. The intended and obtained

result was that Plaintiffs' properties were taken without "just compensation" and

by means of intentional conduct by officials.

In *Washington v. Glucksberg,* 521 U.S. 702; 117 S .Ct. 2258 (1997), Justice

David Souter stated that Justice Harlan's dissent in *Poe v Ullman*, 367 U.S. 497,

543; 81 S. Ct. 1752 (1961) (Harlan, J., Dissenting), provided the basis for the

modern doctrine of substantive due process and un-enumerated rights. Justice

Souter stated:

> Justice Harlan explained that even if the Magna Carta contemplated
> only procedural safeguards, the denial of substantive rights, despite
> the availability of significant procedural safeguards, would lead to the
> deprivation of life, liberty, or property. He advised that judges should
> balance competing interests in light of the "traditions from which this
> country developed as well as the traditions from which it broke.

*Glucksberg*, 521 U.S. at 762 (Souter, J., concurring). *See also, Poe*, 367 U.S. at
542.

The type of misconduct that supports the kinds of gross misconduct that

have shocked the judicial conscience can be found in *Conroe Creosoting Co. v.*

*Montgomery County*, 249 F. 3d 337. (5th Cir. 2001). In *Conroe Creosoting Co.*,

the Fifth Circuit Court of Appeals determined that whether a plaintiff's substantive

due process had been violated by local officials was a triable allegation. The

plaintiffs charged that the officials fraudulently converted a tax levy for a $75,000

-23-

deficiency into an unauthorized seizure and forced sale and destruction of an $800,000 ongoing business. Like the facts in this case, there were allegations of self-dealing. In effect, the court found that the facts asserted amounted to a claim of an unconstitutional "taking" without just compensation in violation of the Fifth Amendment, or an improper seizure, in violation of the Fourth Amendment. *Id*. at 340 n.9.  Even applying the stringent shocks-the-conscience standard, the Supreme Court in *County of Sacramento v. Lewis, supra* clarified that where government officials have time to deliberate yet act with deliberate indifference to individual rights, they have engaged in conscience-shocking behavior that triggers liability. The numerous cases in which courts have recognized that substantive due process protection in land use regulation have found that government officials acted arbitrarily, capriciously, or for improper motives, confirms the importance of this safeguard.

The United States Supreme Court in a long line of decisions has established the doctrine of substantive due process to allow challenges to egregious deprivations of property and liberty, whether perpetrated through legislative enactments or by the misconduct of government officials. The Supreme Court has broadly defined the term "liberty" to deter and punish abuses of government power and has continued to recognize substantive due process as an important guarantee

against arbitrary deprivations of property. In *Village of Euclid Co. v. Ambler Realty Co*, 272 U.S. 365, 395; 47 S. Ct. 114 (1926), the U.S. Supreme Court first held the government violates due process when its regulation of real property is "clearly arbitrary and unreasonable, having no substantial relation to the public, health, safety morals or general welfare." In the present case, there is no rational or proper purpose to deter rentals that result in a windfall for Defendants, especially where there are conflicts of interest and allegations of self-dealing. Furthermore, if there was a legitimate purpose to restrict rentals, it is irrational to displace homeowners with new homeowners under the guise of preventing rentals, particularly where the result is a windfall for the Defendants.

Substantive due process claims serve to deter such wrongdoing and to provide a remedy when wrongdoing occurs. *See, Nectow v. City of Cambridge*, 277 U.S 183,188-89; 48 S. Ct. 447 (1928); and *Ewolski v. City of Brunswick,* 287 F.3d 492, 510 (6th Cir. 2002).

In *Lingle v. Chevron U.S.A. Inc.,*544 U.S. 528; 125 S. Ct. 2074 (2005), the Court cited the above cases for the proposition that substantive due process prohibits land regulation that does not substantially advance a government interest:

> [A] regulation that fails to serve any legitimate governmental
> objective may be so arbitrary or irrational that it runs afoul of the Due
> Process Clause. In a concurring opinion, Justice Kennedy
> acknowledged that the rejection of the takings claim, "does not

foreclose the possibility that a regulation might be so arbitrary or irrational as to violate due process.

Southfield Defendants' justification is clearly rooted in the municipality's pretext that they are regulating housing to prevent rentals (*See* Zorn's Deposition, Exhibit M pp. 51-52).

In *Lingle, supra,* the Court reaffirmed that due process was viable, appropriate and prohibits land regulation that fails to advance any legitimate public interest. In fact, the minutes of the Southfield City Council reflect that its long time Mayor and former Councilman Donald Fracassi casts considerable doubt on the "public interest" of getting into the tax foreclosure game. *See also, Parkway Garage, Inc. v. City of Phila.,* 5 F.3d 685, 692 (3d Cir. 1993), *abrogated on other grounds*, (holding that a substantive due process violation is proven either if the government's actions are not rationally related to the government's interest or if the government's actions in a particular case are motivated by bias, bad faith, or improper motive).

Courts should give less deference to administrative decisions of those government officials who have not been elected, such as Defendant Zorn. In addition, decisions affecting individual property owners, rather than broad prospective policy-based determinations, raise a heightened risk of improper

-26-

motivation, warranting closer judicial scrutiny. In any event, arbitrary decisions that lack a legitimate basis or a proper motive violate substantive due process.

The Plaintiffs' substantive due process claims are not founded on a lack of proper notice, but rather a lack of fundamental fairness because Defendants' behavior "shocked the conscience." In the instant case, the Michigan Court of Appeals agreed in its decision that the conduct of Southfield's elected officials is at least a "conflict of interest" and "shocked the conscience." This "shocked the conscience" standard is one that has been used by the U.S. Supreme Court several times and speaks to the unconscionability of defendants' collective actions.

## V.    If there was not a Taking Southfield Defendants' Conduct Violates the Eighth Amendment's Excessive Fines Clause

The Excessive Fines Clause of the Eighth Amendment protects property owners in civil asset forfeitures where the "forfeiture" is punitive guarding against abuses by government overreach. *Austin v. United States*, 509 U.S. 602, 609-10 (1993); 113 S. Ct. 2801; and *Timbs v. Indiana*,139 S.Ct.682 (2019). The Clause forbids punitive forfeitures that are "grossly disproportional to the gravity of the offense that it is designed to punish." *See also, United States v. Bajakajian*, 524 U.S. 321, 334; 118 S. Ct. 2028 (1998); and *United States v. Certain Real Prop. Located at 11869 Westshore Drive*, *Putnam Twp., Livingston Cty., Mich.*, 70 F.3d 923, 927 (6th Cir. 1995).  If civil forfeiture law is inapplicable to the present case,

as contended by the Southfield Defendants, the Eighth Amendment's Excessive

Fines Clause prohibits the forfeiture of Plaintiffs' entire equity because it is grossly

disproportionate to any act or omission. *See, Timbs v. Indiana,* 139 U.S. 682

(2019); and *United States v. Bajakajian*, *supra* (A forfeiture is unconstitutional if it

is "grossly disproportionate" to the gravity of the offense giving rise to the

forfeiture.). In sum, forfeitures that are disproportionate and confiscate more than

the amount owed are prohibited by the Eighth Amendment, even in the civil

context.

## CONCLUSION AND REQUEST FOR RELIEF

For the reasons stated above, Plaintiffs respectfully request this Honorable

Court deny the Southfield Defendants' Motion to Dismiss with prejudice, or in the

alternative, allow Plaintiffs' to file an amended complaint.

Respectfully submitted,

Smith Law Group, PLLC

/s/ Scott F. Smith (P28472)
**By: SCOTT F. SMITH (P28472)**
*Attorney for Plaintiffs*
30833 Northwestern Hwy., Suite 200
Farmington Hills, MI   48334
(248)626-1962
Smithsf.law@gmail.com

-28-

## <u>CERTIFICATE OF SERVICE</u>

Scott F. Smith certifies that on December 30, 2020, he served this Plaintiffs'

Response and Brief in Support of Response in Opposition on all parties and attorneys

of record through the ECF/Pacer system.

Respectfully submitted,

 Smith Law Group, PLLC

/s/ Scott F. Smith (P28472)

**By: SCOTT F. SMITH (P28472)**

Attorney for Plaintiffs

30833 Northwestern Hwy., Suite 200

Farmington Hills, MI   48334

(248)626-1962

Smithsf.law@gmail.com

## INDEX OF EXHIBITS

A.   Amended MCL 211.78m, December 22, 2020).

B.   SNRI Bank Statements from Fred Zorn Deposition (2/6/2018) showing over $3,084,029 being transferred to Habitat for Humanity of Oakland County in 2016 and 2017.

C.   List of Properties Acquired by SNRI

D.   Southfield Resolutions

E.   *Jackson v. Southfield Neighborhood Revitalization Initiative*, unpublished Opinion per curiam of the Michigan Court of Appeals, decided December 19, 2019 (Docket No. 344058)

F.   Judge Hala Jarbou Opinion and Order

G.   *Rafaeli, LLC v. Oakland County,* unpublished opinion of the Michigan Supreme Court, decided July 17, 2020 (Docket No. 156849) (2020 Mich LEXIS 1219)

H.   Judge Arthur J. Tarnow's decision and order in (*Johnson v. Meisner*, U.S. District Court E.D. Mich. Case No. 19-11569, ECF 68 Page Id1346)

I.   *Edwards v. Meisner*, U.S. District Court W.D. Mich. Case No. 19-10047, ECF No. 57,s Page Id1437-1455

J.   *Wayside Church v County of Van Buren*, U.S. District Court Case No. 14-01274, ECF No. 64, Page ID 643 filed March 26, 2019

K.   Copies of Guardianship papers from Ms. Byers and her daughter (Co-Guardianship) and quit claim deed.

L.   *Reid v Bank of Am.,* 2019 U.S. Dist. Lexis 13805 (*E.D. Mich. 2019)

M.   Zorn's Deposition