UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAWANDA HALL, et al.,

               Plaintiffs,                     Case No. 20-12230

v.                                        Paul D. Borman
                                        United States District Judge

OAKLAND COUNTY TREASURER
ANDREW MEISNER and OAKLAND
COUNTY, et al.,

               Defendants,

_____/

## OPINION AND ORDER GRANTING DEFENDANTS OAKLAND COUNTY AND OAKLAND COUNTY TREASURER ANDREW MEISNER'S MOTION TO DISMISS (ECF NO. 32)

On August 18, 2020, Plaintiffs, former real property owners in the City of Southfield, Michigan, filed a proposed class action complaint against 13 defendants. The defendants can be separated into four groups: (1) Oakland County Treasurer Andrew Meisner ("Treasurer") and Oakland County (collectively, the "Oakland County Defendants"); (2) City of Southfield ("Southfield"), City Manager Frederick Zorn, Mayor Ken Siver, Former City Attorney Susan Ward-Witkowski, Gerald Witkowski (Code Enforcement and Eviction Administrator for SNRI), and Treasurer Irvin Lowenberg (collectively, the "Southfield Defendants"); (3) Southfield

Neighborhood Revitalization Initiative ("SNRI"), Southfield Nonprofit Housing Corporation ("SNPHC"), Director E' Toille Libbett ("Director SNRI"), and Mitchel Simon ("Treasurer SNPHC") (collectively, the "SNRI Defendants"); and (4) Habitat for Humanity of Oakland County, Inc. ("Habitat"). (ECF No. 1, Complaint.)

The Complaint contains seven counts: Count I – Taking Without Just Compensation – Fifth Amendment, under 42 U.S.C. § 1983, against the Oakland County Defendants and Southfield Defendants only; Count II – Inverse Condemnation – Fifth Amendment; Count III – Violation of the Takings Clause of the Michigan Constitution; Count IV – Eighth Amendment Violation – Excessive Fine Forfeiture, against Oakland County only; Count V – Procedural Due Process, against Southfield and Oakland County Treasurer only; Count VI – Substantive Due Process, against Southfield and Oakland County Treasurer only; and Count VII (mislabeled "Count VI") – Unjust Enrichment, against all Defendants except Oakland County. (Compl.) Plaintiffs ask the Court to award them the "taken and/or forfeited equity" in their foreclosed properties along with money damages for the alleged constitutional violations and claim of unjust enrichment. (*Id.*, Relief Requested, PgID 30-31.)

Now before the Court is the Oakland County Defendants' Motion to Dismiss (ECF No. 32).[1] The Court held a hearing using Zoom videoconference technology on May 18, 2021, at which counsel for Plaintiffs and Defendants appeared. For the reasons that follow, the Court GRANTS Oakland County Treasurer Andrew Meisner and Oakland County's Motion to Dismiss.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

The eight named Plaintiffs in this action allege that they previously owned real property located in the City of Southfield, Michigan. All named Plaintiffs failed to pay property taxes and their properties were foreclosed by Defendant Oakland County Treasurer on the basis of non-payment of taxes pursuant to Michigan's General Property Tax Act ("GPTA"), Mich. Comp. Laws § 211.1 *et seq.* (ECF No. 1, Compl. ¶ 1, PgID 2.)

The GPTA permits the recovery of unpaid real-property taxes, penalties, interest, and fees through the foreclosure and sale of the property on which there is a tax delinquency. *See* Mich. Comp. Laws § 211.1 *et seq.* Under the Act, the county

---

[1] The three other groups of Defendants also filed separate motions to dismiss. The Court granted Defendant Habitat of Humanity's Motion to Dismiss on April 20, 2021. (ECF No. 58.) The remaining two motions to dismiss will be addressed separately by the Court. (See ECF No. 31, SNRI Defendants' Motion to Dismiss; ECF No. 34, Southfield Defendants' Motion to Dismiss.)

treasurer may elect to act as the collection agent for the municipality where the property is located when taxpayers become delinquent on their property taxes. Mich. Comp. Laws § 211.78(8). After three years of delinquency, multiple notices and various hearings, tax-delinquent properties are forfeited to the county treasurer; foreclosed on after a judicial foreclosure hearing by the circuit court, and title to the forfeited property is transferred to the county treasurer; and, if the property is not timely redeemed by March 31 of that year, fee simple title is vested absolutely in the county treasurer, without any further redemption rights available to the delinquent taxpayer. Mich. Comp. Laws § 211.78 *et seq.* As the Act applied during the time periods relevant to this action, after foreclosure, the property is then disposed of as follows:

(1) The state or municipality where the property is located has the right to claim the property in exchange for the payment to the county of unpaid taxes, interest and other costs (the "minimum bid");[2] or

---

[2] The longstanding ability for municipalities to purchase tax foreclosed properties for an amount equal to the taxes and penalties due and owing has since been eliminated as a result of a recent amendment to the GPTA, Mich. Comp. Laws § 211.78m, which became effective on January 1, 2021. The amended GPTA now allows the state and/or municipalities to purchase tax foreclosed properties "at the greater of the minimum bid or its fair market value[.]" Mich. Comp. Laws § 211.78m(1). While this amendment will affect the manner in which future tax foreclosure sales are handled, it does not provide a basis for liability against the defendants in this action. The Act provides that any retroactive effect is dependent upon a decision of the Michigan Supreme Court that "its decision in Rafaeli, LLC v. Oakland County, docket no. 156849, applies retroactively." Mich. Comp. Laws § 211.78t(1)(b)(i). There has been no such decision from the Michigan Supreme Court.

(2) If the state or municipality does not exercise their right of first refusal, the property is put up for sale at a public auction in July and, if not sold, again in October.

Mich. Comp. Laws § 211.78m.

Plaintiffs in this case plead that a judgment of foreclosure was entered against each of them and pertaining to each Plaintiff's property, by the Oakland County Circuit Court. (Compl. ¶¶ 21-28, PgID 5-7.) Specifically, Plaintiffs allege:

- Plaintiff **Tawanda Hall** owed $22,642.00 in delinquent property taxes.[3] The Oakland County Treasurer foreclosed, issued a tax deed in favor of the City of Southfield for the minimum amount due under the GPTA, and the City quit claimed the property to SNRI for $1.00. The property was subsequently sold for $308,000.00.

- Plaintiff **Carolyn Miller** owed $29,759.00 in delinquent property taxes. The Oakland County Treasurer foreclosed, issued a tax deed in favor of the City of Southfield for the minimum amount due under the GPTA, and the City quit claimed the property to SNRI for $1.00. The property was subsequently sold for $120,000.00.

- Plaintiff **American Internet Group, LLC** owed $9,974.00 in delinquent property taxes. The Oakland County Treasurer foreclosed, issued a tax deed in favor of the City of Southfield for the minimum amount due under the GPTA, and the City quit claimed the property to SNRI for $1.00. The property was subsequently sold for $149,900.00.

- Plaintiff **Anthony Akande** owed $2,415.00 in delinquent property taxes. The Oakland County Treasurer foreclosed, issued a tax deed in favor of the City of Southfield for the minimum amount due under the

---

[3] Plaintiffs plead that this amount includes the "delinquent property taxes, interest penalties, and fees." (Compl. ¶ 21, PgID 5.)

GPTA, and the City quit claimed the property to SNRI for $1.00. The property was subsequently sold for $152,500.00.

- Plaintiffs **Curtis Lee** and **Coretha Lee** owed $30,547.00 in delinquent property taxes. The Oakland County Treasurer foreclosed, issued a tax deed in favor of the City of Southfield for the minimum amount due under the GPTA, and the City quit claimed the property to SNRI for $1.00. The property was subsequently sold for $155,000.00.

- Plaintiff **Marcus Byers** alleges he had "equitable title with his court appointed guardian" in the subject property and owed $4,113.00 in delinquent property taxes. The Oakland County Treasurer foreclosed, issued a tax deed in favor of the City of Southfield for the minimum amount due under the GPTA, and the City quit claimed the property to SNRI for $1.00, which still holds title to the property. Plaintiffs allege the property has a fair market value of $90,000.00.

- Plaintiff **Kristina Govan** owed $45,350.00 in delinquent property taxes. The Oakland County Treasurer foreclosed, issued a tax deed in favor of the City of Southfield for the minimum amount due under the GPTA, and the City quit claimed the property to SNRI for $1.00, which still holds title to the property. Plaintiffs allege the property "is worth in excess of the amount owed in taxes."

(Compl. ¶¶ 21-27, PgID 5-7.)

Plaintiffs assert that "[m]ost of the Plaintiffs had entered into delinquent property installment agreements [with the County]," even though "[t]he Treasurer knew the Circuit Court had already entered a Judgment of foreclosure prior to entering the delinquent property tax payment plans with Plaintiffs ... which purportedly prevented foreclosure." (Compl. ¶¶ 31-32, PgID 7.) Plaintiffs claim that they "made a payment to the Treasurer with the promise that such payment would

prevent tax foreclosure," and "in many instances ... made substantial payments of 1-2 years of property taxes prior to March 31st of the year of foreclosure," but that the County still foreclosed on their properties. (*Id.* ¶¶ 31, 33-34, PgID 7.)

As a result of the foreclosures, Plaintiffs lost all title and interest in their properties, and title in fee vested in the foreclosing government unit ("FGU"), in this case, the Oakland County Treasurer. (Compl. ¶¶ 21-28, PgID 5-7.) *See* Mich. Comp. Laws § 211.78k(6). Pursuant to Mich. Comp. Laws § 211.78m(1) (as it existed at that time), the Oakland County Treasurer offered the properties to the City of Southfield under the City's right of first refusal. (Compl. ¶ 29, PgID 7.) In each case, the City paid the Treasurer the minimum amount due under the statute – the delinquent property tax amount – with funds provided by Defendant Southfield Nonprofit Housing Corporation ("SNPHC"). (Compl. ¶¶ 21-27, 83(e), PgID 5-7, 16.) The City in turn conveyed each of the properties to Defendant Southfield Neighborhood Revitalization Initiative, LLC ("SNRI") for $1.00. (*Id.*)

SNRI was created by Defendant SNPHC, and the SNPHC is the sole member of SNRI. (ECF No. 31, SNRI's Mot. at p. 3, PgID 182.) SNRI was formed for the purpose of purchasing tax foreclosed and other properties, improving such properties, selling such properties to persons of low to moderate income when possible, and improving housing and homeownership opportunities in the City of

Southfield, and to otherwise restore tax-foreclosed properties on the tax-roll. (*Id.*, citing ECF No. 31-2, SNRI Operating Agreement.)

According to Defendants, under this initiative, SNRI entered into an agreement to work with Defendant Habitat for Humanity ("Habitat"), to rehabilitate the homes that are salvageable. (SNRI Mot. at p. 3, PgID 182; Habitat Mot. at p. 1, PgID 145.) Plaintiffs allege that Habitat received "close to $300,000 in funds from SNRI in 2016, [and] was paid over 1 million dollars from SNRI since its inception in June of 2016 by being the recipient of often needless repairs, as well as the conveyance of property from SNRI, City of Southfield, and the SNPHC for less than full consideration." (Compl. ¶ 46, PgID 9.)

### B. The Michigan Supreme Court's Decision in *Rafaeli, LLC v. Oakland County*

On July 17, 2020, the Michigan Supreme Court issued its opinion in *Rafaeli, LLC v. Oakland County*, 505 Mich. 429 (2020). In *Rafaeli*, two former property owners brought an action against Oakland County and its Treasurer, Andrew Meisner, alleging due process and equal-protection violations as well as an unconstitutional taking by selling their tax-foreclosed properties at public auction in satisfaction of their tax debts and then retaining the surplus proceeds from that sale of their properties. *Id.* at 438-40.

The Oakland County Circuit Court had granted summary disposition to defendants, finding that defendants did not "take" plaintiffs' properties "because plaintiffs forfeited all interests they held in their properties when they failed to pay the taxes due on the properties." *Id.* at 440. Plaintiffs appealed, and the Michigan Court of Appeals affirmed the circuit court's opinion and "rejected plaintiffs' argument that the GPTA's 'scheme' allows for unconstitutional takings," holding that "defendants acquired their interest in plaintiffs' properties 'by way of a statutory scheme that did not violate due process' and thus defendants were not required to compensate plaintiffs for property that was lawfully obtained." *Id.* at 441. Plaintiffs sought leave to appeal to the Michigan Supreme Court, which granted plaintiffs' application and ordered the parties to address the issue of "whether defendants violated the Takings Clause of the United States Constitution, the Michigan Constitution, or both by retaining the proceeds from the sale of tax-foreclosed property that exceeded the amount of the taxes, penalties, interest, and fees owed on the property." *Id.*

The Michigan Supreme Court concluded that a property owner does not lose all rights to the property during the tax foreclosure proceedings. The Court first explained that "forfeiture" under the GPTA simply permits the county and county treasurer to seek a judgment of foreclosure, but "does not affect title, nor does it give

the county treasurer ... any rights, titles, or interests to the forfeited property. Therefore, we reject the premise that plaintiffs 'forfeited' all rights, titles, and interests they had in their properties by failing to pay their real-property taxes." *Id*. at 448-49.

The Court next addressed plaintiffs' due process concerns, noting that "the GPTA explicitly states its intent to comply with minimum requirements of due process and not create new rights beyond those prescribed in the Constitutions of our nation or this state." *Id.* at 451. The Court stated:

> As long as defendants comply with these due-process considerations, plaintiffs may not contest the legitimacy of defendants' authority to foreclose on their properties for unpaid tax debts, *nor may plaintiffs contest the sale of their properties to third-party purchasers*.

*Id.* (emphasis added); *see id.* at 451 ("The remedy for a taking of private property is just compensation, while the remedy for being deprived of property without due process of law is the return of the property.").

The Michigan Supreme Court held that Michigan's "common law recognizes a former property owner's property right to collect the surplus proceeds that are realized from the tax-foreclosure sale of the property." *Id*. at 470. The Court also found that Michigan's 1963 Constitution "protects a former owner's property right to collect the surplus proceeds following a tax-foreclosure sale under Article 10, § 2." *Id*. at 473. Because the common-law interest was protected by Michigan's

Takings Clause, the GPTA could not abrogate that common law interest. *Id*. (explaining that "[w]hile the Legislature is typically free to abrogate the common law, it is powerless to override a right protected by Michigan's Takings Clause.").

Finally, the Supreme Court held that Oakland County's retention of the proceeds of the auction sale that exceeded the amount of property taxes owed and other charges and fees constituted an unconstitutional taking.

> Once defendants foreclosed on plaintiffs' properties, obtained title to those properties, and sold them to satisfy plaintiffs' unpaid taxes, interest, penalties, and fees related to the foreclosures, any surplus resulting *from those sales* belonged to plaintiffs. That is, after the sale proceeds are distributed in accordance with the GPTA's order of priority, any surplus that remains is the property of plaintiffs, and defendants were required to return that property to plaintiffs. Defendants' retention of those surplus proceeds under GPTA amounts to a taking of a vested property right requiring just compensation. To the extent the GPTA permits defendants to retain these surplus proceeds and transfer them into the county general fund, the GPTA is unconstitutional as applied to former property owners whose properties were sold at a tax-foreclosure sale for more than the amount owed in unpaid property taxes, interest, penalties, and fees related to the forfeiture, foreclosure, and sale of their properties.

*Id*. at 474-75 (emphasis added). *See also id.* at 476 (stating that the surplus proceeds of the sale "is a separate property right that survives the foreclosure process"). The Court clarified that "a former property owner has a compensable takings claim *if and only if* the tax-foreclosure sale produces a surplus." *Id.* at 477 (emphasis added).

The Michigan Supreme Court defined "just compensation" as "the amount of surplus proceeds generated from the tax foreclosure sale." *Id.* at 481-82 ("mak[ing] clear, the property 'taken' is the surplus proceeds from the tax-foreclosure sale of plaintiffs' properties to satisfy their tax debts"). The Court expressly "reject[ed] the premise that just compensation requires that plaintiffs be awarded the fair market value of their properties so as to be put in as good of [a] position had their properties not been taken at all" because "this would run contrary to the general principle that just compensation is measured by the value of the property *taken*," and "plaintiffs are largely responsible for the loss of their properties' value by failing to pay their taxes on time and in full" and "[i]f plaintiffs were entitled to collect more than the amount of the surplus proceeds, not only would they be taking money away from the public as a whole, but they would themselves benefit from their tax delinquency." *Id.* at 483 (emphasis in original); *see also id.* fn. 134 ("[W]e are unaware of any authority affirming a vested right to equity held in property generally.").

> Accordingly, when property is taken to satisfy an unpaid tax debt, just compensation requires the foreclosing governmental unit to return any proceeds from the tax-foreclosure sale in excess of the delinquent taxes, interest, penalties, and fees reasonably related to the foreclosure and sale of the property – *no more, no less*.

*Id.* at 483-84 (emphasis added); *see id.* at 477 ("Indeed, a former property owner *only* has a right to collect the surplus proceeds from the tax-foreclosure sale; that is,

a former property owner has a compensable takings claim *if and only if* the tax-foreclosure sale produces a surplus.") (emphases added).

The Michigan Supreme Court then held:

> Plaintiffs, former property owners whose properties were foreclosed and sold to satisfy delinquent real-property taxes, have a cognizable, vested property right to the surplus proceeds resulting from the tax-foreclosure sale of their properties. This right continued to exist even after fee simple title to plaintiffs' properties vested with defendants, and therefore, defendants' retention and subsequent transfer of those proceeds into the county general fund amounted to a taking of plaintiffs' properties under Article 10, § 2 of our 1963 Constitution. Therefore, plaintiffs are entitled to just compensation, which in the context of a tax-foreclosure sale is commonly understood as the surplus proceeds.

*Id.* at 484-85.

## C. The Oakland County Defendants' Motion to Dismiss

The Oakland County Defendants filed a motion to dismiss in this case, arguing that Plaintiffs' claims against them are legally and factually deficient and must be dismissed under Fed. R. Civ. P. 12(b)(6). (ECF No. 32, Oakland County Mot.) The Oakland County Defendants initially argue that Plaintiffs Carolyn Miller, American Internet Group, LLC, and Anthony Akande's claims are barred by res judicata for having previously litigated post-foreclosure claims against the Oakland County Defendants relating to the loss of their properties, and that Plaintiff Marcus Byers lacks standing to bring any claims, because he did not own the subject property. The

13

Oakland County Defendants contend that Counts I through IV of the Complaint fail to state a claim against them because Plaintiffs plead that the Oakland County Defendants received only that which Plaintiffs admit was due, the unpaid taxes. And, Plaintiffs' procedural due process claim fails because Plaintiffs have failed to allege a failure of notice related to the foreclosure proceedings and they were not entitled to further notice. The Defendants allege that Plaintiffs' substantive due process claim fails because the Oakland County Defendants simply followed the GPTA and Plaintiffs have failed to plead that they took any actions that "shock the conscience." Finally, the Oakland County Defendants argue that, to the extent Plaintiffs seek to assert an unjust enrichment claim against them, they only received that which they were statutorily entitled – the minimum bid – and thus they were not unjustly enriched.

Plaintiffs filed a Response in opposition to the Oakland County Defendants' motion to dismiss. (ECF No. 43, Pls.' Resp.) Plaintiffs argue that Plaintiffs Miller, American Internet Group, and Akande's claims are not barred by res judicata, and that Plaintiff Byers does have standing in this action because he had an "equitable interest" in the subject property. Plaintiffs further assert that they have stated a Fifth Amendment Takings claim and a claim under the Michigan Constitution against the Oakland County Defendants. Plaintiffs argue that if Oakland County Defendants'

conduct did not violate the Fifth Amendment, they violated the substantive due process rights of Plaintiffs. Plaintiffs contend that they have stated a procedural due process claim against the Oakland County Defendants based on the Plaintiffs' "tax foreclosure avoidance agreements." Finally, Plaintiffs argue that if there was not a taking, then the Oakland County Defendants' conduct violates the Eighth Amendment's Excessive Fines clause.

The Oakland County Defendants filed a reply brief in support of their motion to dismiss. (ECF No. 49, Oakland County Reply.) The Oakland County Defendants reassert that res judicata bars Plaintiffs Miller, American Internet Group, and Akande's claims, and that Plaintiff Byers lacks standing. They contend that Plaintiffs admit that the Oakland County Defendants only received what Plaintiffs acknowledge was owed – the unpaid taxes – and thus their takings and excessive fines claims fail. The Oakland County Defendants further assert that they provided Plaintiffs all the process due under the GPTA.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does

not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Id.* at 539 (internal citations and quotation marks omitted); *see also Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is

the defendant who "has the burden of showing that the plaintiff has failed to state a claim for relief." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015).

In ruling on a motion to dismiss, the Court may consider the complaint as well as: (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims; (2) matters of which a court may take judicial notice; (3) documents that are a matter of public record; and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (internal quotation marks and citations omitted); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings…. [C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies."); *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the

pleadings). Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co*., 258 F.Supp.2d 718, 721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner v. Klais and Co., Inc*., 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002).

### III.  ANALYSIS

### A.  Plaintiffs Miller, American Internet Group, and Akande's Claims Against the Oakland County Defendants are Barred by Res Judicata

The Oakland County Defendants argue that the claims of three of the eight named Plaintiffs – Carolyn Miller, American Internet Group, LLC, and Anthony Akande – are barred by res judicata because those plaintiffs have previously litigated post-foreclosure claims against the Oakland County Defendants "regarding the foreclosure and lost." (Oakland County Mot. at pp. 4-6, PgID 340-42.) Plaintiffs respond that these Plaintiffs' claims are not barred by res judicata, asserting that the prior litigation "was an unfair housing case based on racial discrimination in 2018"

and that the "scheme to strip Plaintiffs' equity" alleged in this case was "not known at the time of the state suit." (Pls.' Resp. at p. 6, PgID 952.)

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). "The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action." *Adair v. State*, 470 Mich. 105, 121 (2004). Under Michigan law, "the doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Id.* Michigan thus "take[s] a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.*

In this case, Plaintiff Miller claims her property was foreclosed on for a $29,759.00 tax debt. (Compl. ¶ 22, PgID 5.) After foreclosure the City purchased the property from Oakland County for the $29,759.00 tax debt amount and deeded the property to the SNRI for $1.00. (Compl. PgID 39.) Plaintiff American Internet Group claims its property was foreclosed on for $9,974.00 of delinquent property

taxes. (Compl. ¶ 23, PgID 5-6.) The City also purchased this property from Oakland County for the tax debt and transferred it to the SNRI for $1.00. (Compl. PgID 42.) Similarly, Plaintiff Akande's property was allegedly foreclosed for $2,415.00, and the City purchased the property from Oakland County for that amount and transferred it to the SNRI for $1.00. (Compl. ¶ 24, PgID 6, 45.)

The Oakland County Defendants explain that, after the foreclosures and transfers in 2016, Miller, AIG and Akande, and others, filed suit in Oakland County Circuit Court in 2017 against Defendants Oakland County Treasurer, the City of Southfield, and the SNRI, alleging various discriminatory housing practices claims in relation to the foreclosure of their properties. (Oakland County Mot. at pp. 2-3, PgID 338-39, citing Ex. B, ECF No. 32-3, State Court Complaint, PgID 355-87.) That state court complaint was based on the same premise as this case – that the County, City, and SNRI created a "scheme" to divest Southfield citizens of their homes and procure a profit through application of Michigan's tax-foreclosure process. (*See* State Court Complaint, PgID 358.) That complaint alleged that "once certain properties owned by African-Americans were foreclosed upon for non-payment of delinquent real estate taxes, systematically the officials of the City of Southfield that designed this discriminatory scheme made sure that these properties were requested to be held-back from public auction by the Oakland County

Treasurers Office and subsequently designated for purchase by the City of Southfield, Non-Profit Housing Corporation," and "[t]hat immediately upon the City of Southfield reacquiring the real estate foreclosed upon ... then after placed the properties out-of-the-reach of the previous owners by transferring by Quit Claim Deed to an agency known as the Southfield Neighborhood Revitalization Initiative, LLC, a for profit limited liability company...." (*Id.* ¶¶ 9-10, PgID 360 (emphasis in original).) The complaint further alleged "the City of Southfield through the scheme alleged in the common allegations ... targeted [plaintiff's] homes for designation for non-bid transfer to the Southfield Non-Profit Housing Commission" and that "the transfer of these non-bid homes ... were actually transferred to a 'for profit' organization-SNRI, LLC, for the ultimate personal gain of yet to be exposed individuals." (*Id.* ¶¶ 43-44, PgID 367-68.) The complaint sought, in part, "the loss of equity (FMV) in their residential properties." (*Id.* PgID 369.)

Those state court plaintiffs then moved to amend the complaint to "remove the discrimination counts and add allegations that Plaintiffs made timely payments that were rejected by Defendant Oakland County Treasurer[.]" (Oakland County Mot. at p. 3, PgID 339, citing Ex. C, ECF No. 32-4, State Court Motion to Amend, PgID 389-90.) In that motion to amend, the plaintiffs alleged that "Southfield did not purchase the property for the minimum bid. Southfield quit claimed its interest

21

to SNRI for no consideration. SNRI's Directors and/or Officers are City of Southfield officials who used their inside knowledge about these mortgage-free properties to acquire the properties for their own personal benefit and not for public purpose." (*Id.* PgID 394.)

All of the state court defendants moved to dismiss that action, and the state court judge dismissed the case with prejudice because "the claims alleged are clearly unenforceable as a matter of law," and denied the plaintiffs' motion to amend because the plaintiffs failed to provide the court with a proposed amended complaint and because any amendment would be futile. (Oakland County Mot. at p. 3, PgID 339, citing Ex. D, ECF No. 32-5, Order on Summary Disposition, PgID 396-98.) This dismissal constitutes an adjudication on the merits for purposes of res judicata. *Chakan v. City of Detroit*, 998 F. Supp. 779 (E.D. Mich. 1998); *ABB Paint Finishing v. Nat'l Fire Ins.*, 223 Mich. App. 559 (1997).

The Oakland County Defendants contend that "[t]he claims of Miller, American Internet and Akande in this case and the claims they made in the state court case are related in time, space, origin and motivation" and "both originate from the foreclosure of their properties." (Oakland County Mot. at p. 5, PgID 341.)

Plaintiffs respond that their present claims "were not known at the time of the state suit," that "the landscape of the law has shifted" and "[t]his action could have

not been resolved at the time of the state court case because the Michigan Constitution had not established the right to the equity/surplus proceeds from a tax foreclosure," and that "the parties were not identical." (Pls.' Resp. at pp. 6-7, PgID 952-53.)[4]

First, as explained above, Plaintiffs' state court lawsuit was based on essentially the same alleged "scheme" to induce tax foreclosures and transfer properties to SNRI for a profit. (ECF No. 32-3, State Court Complaint, PgID 357 (alleging the "scheme" was to "re-direct foreclosure upon homes to a private 'for profit organization' – Southfield Neighborhood Revitalization Initiative, LLC so as to deny African-Americans to bid at a public auction an opportunity to reacquire their homes") (emphasis in original).) That state court complaint alleged that "the

---

[4] Plaintiffs rely, in part, on a state court order declining to accept reassignment of a class action from another court, to support their argument against res judicata in this case. (Pls.' Resp. at p. 6, PgID 952, citing ECF No. 43-3, Case No. 18-162877-NZ Opinion and Order, PgID 996-97.) However, that state court order is not persuasive authority. In that case, the defendants moved to have the case reassigned from Judge Denise Langford-Morris to Judge Hala Jarbou because Judge Jarbou handled the 2017 foreclosure case. Judge Jarbou declined reassignment as improper under the local court rule regarding assignment of cases, finding "the instant action does not arise out of the same transaction and occurrence that was before th[at] Court in 2016 [a bulk foreclosure action]" because "not all of the Plaintiffs' properties were foreclosed in 2017 by this Court" and thus "the instant action does not 'arise out of the same transaction and occurrence.'" (ECF No. 43-3, PgID 996-97.) In this case, the properties at issue are identical.

City of Southfield through the scheme alleged in the common allegations ... targeted [plaintiff's] homes for designation for non-bid transfer to the Southfield Non-Profit Housing Commission" and that "the transfer of these non-bid homes ... were actually transferred to a 'for profit' organization-SNRI, LLC, for the ultimate personal gain of yet to be exposed individuals." (*Id.* ¶¶ 43-44, PgID 367-68.) The complaint sought as relief, in part, "the loss of equity (FMV) in their residential properties." (*Id.* PgID 369.) Moreover, when those state court plaintiffs moved to amend the complaint, the plaintiffs alleged that "Southfield did not purchase the property for the minimum bid. Southfield quit claimed its interest to SNRI for no consideration. SNRI's Directors and/or Officers are City of Southfield officials who used their inside knowledge about these mortgage-free properties to acquire the properties for their own personal benefit and not for public purpose." (ECF No. 32-4, Mot. to Amend, PgID 343.)

The Michigan Supreme Court "has taken a broad approach" to the question of whether the claims precluded were or could have been decided in the prior action, embracing the "transactional" test, under which res judicata "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair*, 470 Mich. at 121, 124. "[T]he determinative question is whether the claims in the instant

case arose as part of the same transaction as did the claims in" the first action. *See id.* at 125. "Whether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time, space, origin or motivation*, [and] whether they form a convenient trial unit...." *Id.* (citation omitted). Applying this framework, the Court here finds that the prior state court lawsuit and this suit involve the same core set of facts, and the issues in this case were, or could have been, raised in the prior suit.

Second, the parties in the two actions are substantially identical. Parties are substantially identical when a party in a second suit is "so identified in interest with [a party from the first suit] that he or she represents the same legal right." *Viele v. D.C.M.A.*, 167 Mich. App. 571, 580 (1988) (citation omitted). The Court finds that Oakland County and the Oakland County Treasurer are substantially identical for purposes of res judicata. *See Lyons v. Washington*, No. 212516, 2000 WL 33407429, at *1 (Mich. App. Aug. 18, 2000) (a company and its employees are in privity through agency principles and identical for purposes of res judicata) (citing *Viele v. DCMA*, 167 Mich. App. 571, 580 (1988)).

Third, Plaintiffs argue that "the landscape of the law has shifted" and "[t]his action could have not been resolved at the time of the state court case because the Michigan Constitution had not established the right to the equity/surplus proceeds

25

from a tax foreclosure." (Pls.' Resp. at p. 6, PgID 952.) Plaintiffs contend that, before the Michigan Supreme Court's decision in *Rafaeli, LLC v. Oakland County*, 505 Mich. 429 (2020), "there were no common law property rights that existed unambiguously in the equity/surplus proceeds after a property tax foreclosure," and "it would have been largely futile to bring most of the present claims." (*Id.* at p. 7, PgID 953.) However, "an intervening change of law" precludes the application of res judicata only when it "alters the legal principles on which the court will resolve the subsequent case.'" *In re Bibi Guardianship*, 315 Mich. App. 323, 334 (2016) (citation omitted). As discussed more fully *infra*, *Rafaeli* does not recognize a right to recover alleged equity in property after a foreclosure, and thus does not represent a change to the legal landscape regarding Plaintiffs' claims in this case.

Interestingly, in a seeming admission of the failure of their takings claim in this case, Plaintiffs admit in their Response that:

> There still is no adequate remedy or procedure to address the unlawful conduct in this case until the Michigan Legislature finds *Rafaeli, LLC, supra*, retroactive. Even then, ambiguity will persist (see Justice Viviano's Concurrence in *Rafaeli, LLC, supra*.[)]

(Pls.' Resp. at p. 7, PgID 953.) As will be discussed further *infra*, Justice Viviano recognized in his concurrence in *Rafaeli* that "the majority's view of the case would seemingly be that if the property does not sell at auction and is simply transferred to a governmental unit, the taxpayer is out of luck: no proceeds, let alone a surplus,

have been produced or retained by the government." *Id.* at 518 (Viviano, J., concurring).[5]

Based on all the above, the Court finds that Plaintiffs Miller, American Internet Group, and Akande's claims against the Oakland County Defendants are barred by res judicata. Even if these plaintiffs' claims were not barred by res judicata, they would nevertheless fail for the reasons stated *infra*.

### B. Plaintiff Marcus Byers Lacks Standing

Plaintiff Marcus Byers alleges that he held "equitable title" with his guardian in property that was foreclosed on for $4,113.00 in delinquent taxes. (Compl. ¶ 26, PgID 6.) However, the records Plaintiffs attach to the Complaint indicate that the subject property was owned by, and foreclosed under, the ownership of Debbie Byers, who is not a named Plaintiff in this case. (Compl. PgID 51.) After the foreclosure, the property was sold to the City for the tax debt amount, and then transferred to SNRI for $1.00. (*Id.*)

---

[5] In addition, Plaintiffs' citation to Judge Tarnow's May 31, 2020 decision in *Johnson v. Meisner*, Case No. 19-11569 (E.D. Mich.), is misplaced because Judge Tarnow declined to apply res judicata to the plaintiffs' claims in that case because the prior dismissal was under Rule 12(b)(1), for lack of jurisdiction, not Rule 12(b)(6), and Rule 12(b)(1) dismissals are not dismissals on the merits and thus do not have preclusive effect. (ECF No. 43-5, PgID 1099-1100.)

To satisfy the Article III standing requirement in a civil forfeiture action, "a claimant must alleged a colorable ownership, possessory, or security interest in a least a portion of" the property in interest. *U.S. v. Real Prop. Located at 4527-4535 Michigan Ave., Detroit, Mich.*, 489 F. App'x 855, 857 (6th Cir. 2012) (citing *U.S. v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir. 1998)). The courts generally look to "the law of the jurisdiction that created the property right to determine the petitioner's legal interest." *U.S. v. Salti*, 579 F.3d 656, 668 (6th Cir. 2009) (citation omitted). In Michigan, "an interest in real property can only be created 'by act or operation of law, or by a deed or conveyance in writing.'" *Real Prop.*, 489 F. App'x at 857 (citing Mich. Comp. Laws § 566.106 and finding that the claimants lacked standing because the deed to the clubhouse property was not in their name and no other writing existed showing their interest in the property).

The Oakland County Defendants assert that Plaintiff Marcus Byers lacks standing to bring suit against them because he was not the owner of the foreclosed property. (Oakland County Mot. at pp. 6-7, PgID 342-43.) Rather, all former title and interest in that property prior to the tax foreclosure in 2018 was held by Marcus Byers' former spouse, Debbie Byers, who purchased the property from Wells Fargo Bank in 2008 (and who, according to the SNRI Defendants, is presently litigating claims in Bankruptcy Court related to that property). (*Id.* citing Ex. E, ECF No. 32-

6, Deed, PgID 400.) Without an ownership interest, Plaintiff Marcus Byers was not injured and lacks standing.

Plaintiffs respond only that Marcus Byers has a closed head injury since 1998 and his ex-wife Debbie Byers "purchased a house with his money and has been his legal guardian," that "[t]he equity in or from the property belongs to Mr. Byer[s]," and "Byers' equitable interest meets the threshold for standing as an injury in fact." (Pls.' Resp. at p. 9, PgID 955.) Plaintiffs rely on expired guardianship papers naming "Kiara Napier" as Byers' guardian and an unrecorded Quit Claim deed from Debbie Byers to herself and Marcus Byers, dated July 30, 2020, to try to assert that Byers somehow had an interest in the property in 2018. (*Id.* citing Ex. H, ECF Nos. 43-8, 43-9, PgID 1127-30).

However, as Defendants point out in their Reply brief, Debbie Byers could only convey the property interest she had in 2020, which, following the 2018 foreclosure of the property, was none. (Oakland County Reply, at p. 4, PgID 1920.) Without an interest in the subject property when the foreclosure and transfers occurred, the Court finds that Plaintiff Marcus Byers lacks standing in this case and dismisses his claims with prejudice.

## C.     Counts I - IV

The Oakland County Defendants state that Count I through IV of the Complaint "make the same fundamental allegation: Defendants took more than what was due." (Oakland County Mot. at p. 7, PgID 343.) Counts I through III assert takings claims under the United States and Michigan Constitutions, and Count IV asserts an Eighth Amendment – Excessive Fine claim. The Oakland County Defendants argue that Plaintiffs cannot state a claim against them under Counts I through IV because Plaintiffs acknowledge in their Complaint that the Oakland County Defendants received only the "minimum bid amount which Plaintiffs acknowledge was due:"

| PLAINTIFF | AMOUNT DUE | SOLD AMOUNT |
|---|---|---|
| Hall | $22,642 (Compl. ¶ 21) | $22,642 (ECF No. 1, PgID 36) |
| Miller | $29,759 (Compl. ¶ 22) | $29,759 (ECF No. 1, PgID 39) |
| American Internet | $9,974 (Compl. ¶ 23) | $9,974 (ECF No. 1, PgID 42) |
| Akande | $2,415 (Compl. ¶ 24) | $2,415 (ECF No. 1, PgID 45) |
| Lee | $30,547 (Compl. ¶ 25) | $30,547 (ECF No. 1, PgID 48) |
| Byers | $4,113 (Compl. ¶ 26) | $4,113 (ECF No. 1, PgID 51) |
| Govan | $45,350 (Compl. ¶ 27) | $45,350 (ECF No. 1, PgID 54) |

30

(Oakland County Mot. at p. 8, PgID 344.) They assert that Plaintiffs therefore concede that the Oakland County Defendants did not receive any "surplus proceeds" when the Treasurer sold the properties to the City of Southfield.

The Oakland County Defendants explain that the Michigan Supreme Court in *Rafaeli* limited the plaintiffs' claim to the excess proceeds realized from the tax foreclosure sale (the auction) (i.e., the proceeds realized in excess of the delinquent taxes, interest, penalties, and fees), "no more, no less." *Rafaeli*, 505 Mich. at 484; *see also id.* at 477 ("[A] former property owner has a compensable takings claim *if and only if* the tax-foreclosure sale produces a surplus.") (emphasis added). The Michigan Supreme Court expressly rejected "the premise that just compensation requires that plaintiffs be awarded the fair market value of their properties so as to be put in as good of position had their properties not been taken at all." *Id.* at 483.

In this case, the Plaintiffs' properties were not sold at auction, but were purchased from Oakland County, the FGU, by the City of Southfield for the minimum bid – the amount of the delinquent taxes, interest, penalties, and fees. Accordingly, it is undisputed that no "surplus proceeds" were generated from the tax foreclosure with regard to any of the subject properties, and Plaintiffs have failed to demonstrate a vested property right or amount that was "unjustly" taken from them by the Oakland County Defendants. The City of Southfield exercised its statutory

right of first refusal to acquire the properties for the minimum bid under the GPTA, and paid that amount to the Oakland County Treasurer. Plaintiffs' counsel conceded at the hearing on this motion that the facts in this case are different than those before the Michigan Supreme Court in *Rafaeli*, because the subject properties were never sold at auction and thus there are no "surplus proceeds" like in *Rafaeli*, and he contends instead that this case would represent an extension or the next step of that Michigan Supreme Court decision.

Plaintiffs argue in a footnote in their Response brief that their constitutional rights were violated when their "surplus equity" "was foreclosed upon with no adequate remedy to keep the equity and such equity was constructively fraudulently transferred to the City of Southfield and then to the SNRI for $1.00 to be sold at fair market value." (Pls.' Resp. at p. 13, n. 3, PgID 959.) Plaintiffs' counsel emphasized at the hearing on this motion that the focus of this case in on the alleged lost equity in the properties, and not whatever proceeds may have been ultimately realized, if any, by later sale of those properties by the SNRI Defendants. However, the Michigan Supreme Court made clear in *Rafaeli* that a plaintiff's only "property interest" surviving a tax-foreclosure is not in the real property itself, but only in the surplus proceeds resulting from the tax-foreclosure sale, if any, resulting from the sale of the property at an auction. The *Rafaeli* court stated that it is "unaware of any

authority affirming a vested property right to equity held in property generally." *Id.* at 484 n. 134; *see also Freed v. Thomas*, No. 17-CV-13519, 2021 WL 942077, at *3-4 (E.D. Mich. Feb. 26, 2021) ("Plaintiff has failed to cite any law – Constitutional, statutory, precedential, or otherwise – that supports his equity-based argument" "that the property taken was the home's equity minus the debt owed"). Justice Viviano recognized in his concurrence that "the majority's view of the case would seemingly be that if the property does not sell at auction and is simply transferred to a governmental unit, the taxpayer is out of luck: no proceeds, let alone a surplus, have been produced or retained by the government." *Rafaeli*, 505 Mich. at 518 (Viviana, J. concurring).

The Michigan Supreme Court in *Rafaeli* expressly "reject[ed] the premise that just compensation requires that plaintiffs be awarded the fair market value of their properties so as to be put in as good of [a] position had their properties not been taken at all" because "this would run contrary to the general principle that just compensation is measured by the value of the property *taken*," and "plaintiffs are largely responsible for the loss of their properties' value by failing to pay their taxes on time and in full" and "[i]f plaintiffs were entitled to collect more than the amount of the surplus proceeds, not only would they be taking money away from the public

as a whole, but they would themselves benefit from their tax delinquency." *Rafaeli*, 505 Mich. at 483 (emphasis in original).

Plaintiffs also complain that the transfers of the properties "were planned to avoid a public sale." (Pls.' Resp. at p. 14, PgID 960.) However, it is undisputed that the properties were properly foreclosed on by the Oakland County Defendants and then transferred to the City of Southfield pursuant to and in full compliance with the express provisions of the GPTA. Plaintiffs' conclusory allegations of some "scheme" to the contrary are insufficient. Moreover, the County Treasurer was not required to offer the tax-foreclosed properties for public auction before transferring them to the City under the GPTA. *See Rental Props. Owners Ass'n of Kent Cnty. v. Kent Cnty. Treasurer*, 308 Mich. App. 498, 508 (2014) (explaining that the foreclosing governmental unit is required to hold public auctions to sell foreclosed properties only if the state, city, village, township, or county did not first purchase the properties for the minimum bid, and the county purchased the properties from the treasurer for the minimum bids).

In *Nelson v. City of New York*, 352 U.S. 103 (1956), the United States Supreme Court recognized that former property owners have an interest in surplus only to the extent it is provided under some other source, such as state law, and that federal law does not recognize a former property owner's property interest in

potential equity that exists after a tax foreclosure. *See id.* at 110 ("What the City of New York has done is to foreclose real property for charges four years delinquent and, in the absence of timely action to redeem or to recovery any surplus [as provided in the state statute], retain the property or the entire proceeds of its sale. We hold that nothing in the Federal Constitution prevents this where the record shows adequate steps were taken to notify the owners of the charges due and the foreclosure proceedings.").[6] In *Rafaeli*, the Michigan Supreme Court found that Michigan's common law recognizes a former property owner's property right to collect the surplus proceeds that are realized from the tax-foreclosure sale of property, "no more, no less." *Rafaeli*, 505 Mich. at 470, 484.

---

[6] The Supreme Court in *Nelson* recognized that the New York law was a "harsh statute," but explained that "relief from the hardship imposed by a state statute is the responsibility of the state legislature and not of the courts, unless some constitutional guarantee is infringed." *Nelson*, 352 U.S. at 111.

 As explained *supra*, since the Michigan Supreme Court's decision in *Rafaeli*, the Michigan Legislature has amended the GPTA, which now allows the state and/or municipalities to purchase tax foreclosed properties "at the greater of the minimum bid or its fair market value[.]" Mich. Comp. Laws § 211,78m(1). While this amendment will affect the manner in which future tax foreclosure sales are handled, it does not provide a basis for liability against the Defendants in this action. The Act provides that any retroactive effect is dependent upon a decision of the Michigan Supreme Court that "its decision in Rafaeli, LLC v. Oakland County, docket no. 156849, applies retroactively." Mich. Comp. Laws § 211.78t(1)(b)(i). The Michigan Supreme Court has rendered no such decision.

Plaintiffs argue, in the alternative, that if there was not an unconstitutional "Taking," then the Oakland County Defendants' conduct violates that Eight Amendment's Excessive Fines clause because "the forfeiture of Plaintiffs' equity … is grossly disproportionate to any act or omission" and "forfeitures that are disproportionate and confiscate more than the amount owed are prohibited by the Eighth Amendment, even in the civil context." (Pls.' Resp. at pp. 27-28, PgID 973-74.) However, as the Oakland County Defendants only received the amount of the delinquent taxes due on the subject properties, they cannot be found to have imposed an "excessive fine."

The purpose of the Eighth Amendment generally is "to limit the government's power to punish." *Austin v. United States*, 509 U.S. 602, 609 (1993). "The Excessive Fines Clause limits the government's power to extract payments, whether in case or in kind, 'as punishment for some offense.'" *Id.* at 609-10 (citation omitted). Thus, when analyzing government actions under the Excessive Fines Clause, the issue is "whether it is punishment." *Id.* at 610. In *Rafaeli*, the Michigan Supreme Court addressed this issue and found that the GPTA "is not punitive in nature. Its aim is to encourage the timely payment of property taxes and to return tax-delinquent property to their tax-generating status, not necessarily to punish property owners for failing to pay their property taxes." *Rafaeli*, 505 Mich. at 449.

The District courts that have considered this same argument – that the forfeiture of proceeds/equity in foreclosed property is punitive in nature and therefore governed by the Excessive Fines Clause – have unanimously rejected such a claim, finding the Michigan Supreme Court's interpretation of the GPTA controlling. *See Arkona, LLC v. Cnty. of Cheboygan*, No. 19-CV-12372, 2021 WL 148006, at *9 (E.D. Mich. Jan. 15, 2021); *Fox v. Cnty. of Saginaw*, No. 19-CV-11887, 2021 WL 120855, at *13-14 (E.D. Mich. Jan. 13, 2021); *Grainger v. Cnty. of Ottawa*, No. 1:19-cv-501, 2021 WL 790771, at *12 (W.D. Mich. Mar. 2, 2021). This Court similarly finds that Plaintiffs fail to state an Eighth Amendment claim against the Oakland County Defendants.

For the reasons stated above, the Court dismisses Plaintiffs' claims in Counts I through IV of their Complaint against the Oakland County Defendants for failure to state a claim.

### D.      Plaintiffs' Procedural Due Process Claim (Count V)

Plaintiffs allege a procedural due process claims against the Oakland County Defendants. (Compl., Count V, PgID 26-28.) To establish a prima facie procedural due process claim, Plaintiffs must allege (1) a protected property interest, (2) the deprivation of that interest by the Oakland County Defendants, and (3) the failure of the Oakland County Defendants to afford "adequate procedural rights prior to"

deprivation. *Med Corp. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002). Plaintiffs allege that "[m]ost of the Plaintiffs had entered into delinquent property installment agreements" with the Oakland County Treasurer "which portended to halt tax foreclosure and indicated Plaintiffs and Class Members would continue to get notice of tax foreclosures," but that Oakland County Defendants "did not take additional reasonable steps when it knew its efforts at providing notice had failed," such as "notifying the Class Representatives and Members of the default on a tax payer installment agreement and for re-activation of a tax foreclosure." (Compl. ¶¶ 31, 131-33, PgID 7, 27.)

The Oakland County Defendants argue that no additional notice of default on the payment plans is required because the payment plans plainly state that if the person does not make payments in accordance with the plan, "I will lose my property," that the Treasurer "will continue the tax foreclosure process," the plan "is not a legal contract," and that the "property may be withheld from auction if all payments are made." (Oakland County Mot. at p. 9, PgID 345, citing Ex. A, ECF No. 32-2, 2018 Delinquent Property Tax Plan, PgID 353.) Plaintiffs do not claim that they made the required payments, and Defendants assert that Plaintiffs do not cite any statutory or constitutional provision requiring additional notice. (Oakland County Mot. at p. 10, PgID 346.)

The Court agrees that Plaintiffs' procedural due process claim in Count V of their Complaint fails to state a claim. Plaintiffs do not allege that Defendants failed to provide notice required under the GPTA, and Plaintiffs have failed to cite to any controlling authority requiring additional notice of default of the payment plans. At the hearing on this motion, Plaintiffs' counsel asserted the claim regarding the property installment agreements is not the claim they want to make for their procedural due process claim, and that the claim should be that the defendants did not provide notice to Plaintiffs that they would be "taking" the equity in the properties. However, as explained above, Michigan does not recognize a "property interest" in the alleged lost equity, and accordingly such a claim, even if made, would fail. Accordingly, Plaintiffs' procedural due process claim against the Oakland County Defendants is dismissed for failure to state a claim.

### E.      Plaintiffs' Substantive Due Process Claim (Count VI)

Plaintiffs allege, in the alternative to their taking claims, a substantive due process claim against the Southfield and Oakland County Defendants. (Compl, Count VI, PgID 28-29.) Plaintiffs allege that Defendants "denied Plaintiffs their constitutional right to fair and just treatment during executive acts and deceptive communications from site officials who intentionally acted and deprived Plaintiffs of their property." (*Id.* ¶ 136, PgID 28.) Plaintiffs further allege that they "were led

to believe by the Oakland County [sic] and by Southfield and their respective officials that they had the ability to maintain their property rights" and that "government officials including the named Defendants herein engaged in unconscionable fraud against Plaintiffs" and "engaged in conduct that 'shocked the conscience' in the constitutional sense." (*Id.* ¶¶ 138-40, PgID 28-29.)

The Oakland County Defendants first argue that Plaintiffs fail to "identify who, what, where or when these alleged communications occurred or the substance of the communications" and that "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." (Oakland County Mot. at p. 11, PgID 347, citing *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003).) Plaintiffs do not directly respond to this argument.

Plaintiffs instead contend that the Oakland County Defendants, with the Southfield officials, "intentionally and brazenly formulated and executed a plan to use the municipalities right of first refusal under M.C.L. § 211.78m to act as a conduit to transfer the properties to SNRI for $1.00." (Pls.' Resp. at pp. 17-18, 22, PgID 963-64, 968.) Plaintiffs continue that "[t]he money from the eventual fair market value sale of the home was temporarily retained by SNRI and then transferred

to either SNPHC or other Southfield insiders." (*Id.*) Tellingly, Plaintiffs do not allege here that Oakland County Defendants received or retained any money.[7]

The Oakland County Defendants argue that Plaintiffs' substantive due process claim is barred because they had another "available remedy" to maintain their property rights, through the GPTA. (Oakland County Mot. at pp. 11-12, PgID 347-48, citing *Range v. Douglas*, 763 F.3d 573 (6th Cir. 2014)). Defendants explain that pursuant to Mich. Comp. Laws 211.78l, a person who did not receive notice may bring an action in the Michigan Court of Claims within two years of the foreclosure. (Oakland County Mot. at p. 12, PgID 348.) Plaintiffs failed to avail themselves of this available remedy. The Oakland County Defendants further contend that they "simply followed the GPTA" with regard to the foreclosed properties, and accordingly, their actions cannot be considered "arbitrary" or an "abuse of power." (Oakland County Mot. at p. 12, PgID 348.)

Other courts that have recently considered similar substantive due process claims by tax-foreclosed plaintiffs have rejected such claims that "the defendants' conduct of 'destroying and/or seizing' his equity is arbitrary and shocks the

---

[7] Plaintiffs further allege that "Defendant Meisner was further conflicted by being a Board Member of Defendant Habitat, which received millions of dollars from the scheme." (Pls.' Resp. at p. 23, PgID 969.) However, they fail to develop this argument, and it is not clear how Mr. Meisner's membership on the Board of Habitat supports a substantive due process claim against the Oakland County Defendants.

conscience." *See Granger*, 2021 WL 790771, at *13 (dismissing substantive due process claim because "Plaintiff cannot meaningfully distinguish this substantive due process claim from his takings claim"); *Fox*, 2021 WL 120855, at *15 ("Plaintiff's substantive due process claim is precluded by his *prima facie* takings claim."). Plaintiffs here fail to plead that the Oakland County Defendants have engaged in conduct in foreclosing on Plaintiffs' properties under the GPTA that is "arbitrary" or "shocks the conscience," and Plaintiffs' substantive due process claim against these defendants is dismissed.

## IV.  CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Oakland County Defendants' motion to dismiss (ECF No. 32), and **DISMISSES** Plaintiffs' claims against Oakland County and Oakland County Treasurer Andrew Meisner **WITH PREJUDICE**.

This Opinion and Order does not resolve all pending claims and does not close this case.

IT IS SO ORDERED.

s/Paul D. Borman
Dated: May 21, 2021                       Paul D. Borman
                                          United States District Judge