UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAWANDA HALL, *et al.*,

                  Plaintiffs,                  Case No. 20-12230

v.                                     Paul D. Borman
                                     United States District Judge

OAKLAND COUNTY TREASURER
ANDREW MEISNER, OAKLAND
COUNTY, SOUTHFIELD NON-
PROFIT HOUSING CORPORATION,
and CITY OF SOUTHFIELD, *et al.*,

                  Defendants,

_____/

## OPINION AND ORDER GRANTING DEFENDANTS SOUTHFIELD NON-PROFIT HOUSING CORPORATION, SOUTHFIELD NEIGHBORHOOD REVITALIZATION INITIATIVE, LLC, MITCHELL SIMON, AND E'TOILE LIBBETT'S MOTION TO DISMISS (ECF NO. 31)

On August 18, 2020, Plaintiffs, former real property owners in the City of Southfield, Michigan, filed a proposed class action complaint against 13 defendants. The defendants can be separated into four groups: (1) Oakland County Treasurer Andrew Meisner ("Treasurer") and Oakland County (collectively, the "Oakland County Defendants"); (2) City of Southfield ("Southfield"), City Manager Frederick Zorn, Mayor Kenson Siver, Former City Attorney Susan Ward-Witkowski, Gerald

1

Witkowski (Code Enforcement and Eviction Administrator for SNRI), and Treasurer Irvin Lowenberg (collectively, the "Southfield Defendants"); (3) Southfield Neighborhood Revitalization Initiative ("SNRI"), Southfield Nonprofit Housing Corporation ("SNPHC"), Director E' Toile Libbett ("Director SNRI"), and Mitchel Simon ("Treasurer SNPHC") (collectively, the "SNRI Defendants"); and (4) Habitat for Humanity of Oakland County, Inc. ("Habitat"). (ECF No. 1, Complaint.)

The Complaint contains seven counts: Count I – Taking Without Just Compensation – Fifth Amendment, under 42 U.S.C. § 1983, against the Oakland County Defendants and Southfield Defendants only; Count II – Inverse Condemnation – Fifth Amendment; Count III – Violation of the Takings Clause of the Michigan Constitution; Count IV – Eighth Amendment Violation – Excessive Fine Forfeiture, against Oakland County only; Count V – Procedural Due Process, against Southfield and Oakland County Treasurer only; Count VI – Substantive Due Process, against Southfield and Oakland County Treasurer only; and Count VII (mislabeled "Count VI") – Unjust Enrichment, against all Defendants except Oakland County. (Compl.) Plaintiffs ask the Court to award them the "taken and/or forfeited equity" in their foreclosed properties along with money damages for the alleged constitutional violations and claim of unjust enrichment. (*Id.*, Relief Requested, PageID.30-31.)

Now before the Court is Defendants Southfield Non-Profit Housing Corporation, Southfield Neighborhood Revitalization Initiative, LLC, Mitchell Simon, and E'Toile Libbett's (the "SNRI Defendants") Motion to Dismiss Complaint. (ECF No. 31.)[1] The Court held a hearing using Zoom videoconference technology on Tuesday, September 28, 2021, at which counsel for Plaintiffs and Defendants appeared. For the reasons that follow, the Court GRANTS the SNRI Defendants' Motion to Dismiss Complaint.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

The eight named Plaintiffs in this action allege that they previously owned real property located in the City of Southfield, Michigan. All named Plaintiffs failed to pay property taxes and their properties were foreclosed by Defendant Oakland County Treasurer on the basis of non-payment of taxes pursuant to Michigan's General Property Tax Act ("GPTA"), Mich. Comp. Laws § 211.1 *et seq.* (Compl. ¶ 1, PageID.2.)

---

[1] The three other groups of Defendants also filed separate motions to dismiss. The Court granted Defendant Habitat for Humanity's Motion to Dismiss on April 20, 2021 (ECF No. 58), and the Oakland County Defendants' Motion to Dismiss on May 21, 2021. (ECF No. 62). The Southfield Defendants' motion to dismiss will be addressed separately by the Court. (See ECF No. 34, Southfield Defendants' Motion to Dismiss.)

The GPTA permits the recovery of unpaid real-property taxes, penalties, interest, and fees through the foreclosure and sale of the property on which there is a tax delinquency. *See* Mich. Comp. Laws § 211.1 *et seq*. Under the Act, the county treasurer may elect to act as the collection agent for the municipality where the property is located when taxpayers become delinquent on their property taxes. Mich. Comp. Laws § 211.78(8). After three years of delinquency, multiple notices and various hearings, tax-delinquent properties are forfeited to the county treasurer; foreclosed on after a judicial foreclosure hearing by the circuit court and title to the forfeited property is transferred to the county treasurer; and, if the property is not timely redeemed by March 31 of that year, fee simple title is vested absolutely in the county treasurer, without any further redemption rights available to the delinquent taxpayer. Mich. Comp. Laws § 211.78 *et seq*. As the Act applied during the time periods relevant to this action, after foreclosure, the property is then disposed of as follows:

(1) The state or municipality where the property is located has the right to claim the property in exchange for the payment to the county of unpaid taxes, interest and other costs (the "minimum bid");[2] or

_____

[2] The longstanding ability for municipalities to purchase tax foreclosed properties for an amount equal to the taxes and penalties due and owing has since been eliminated as a result of a recent amendment to the GPTA, Mich. Comp. Laws § 211.78m, which became effective on January 1, 2021. The amended GPTA now allows the state and/or municipalities to purchase tax foreclosed properties "at the

(2) If the state or municipality does not exercise their right of first refusal, the property is put up for sale at a public auction in July and, if not sold, again in October.

Mich. Comp. Laws § 211.78m.

Plaintiffs in this case allege that a judgment of foreclosure was entered against each of them and pertaining to each Plaintiff's property, by the Oakland County Circuit Court. (Compl. ¶¶ 21-28, PageID.5-7.) Specifically, Plaintiffs allege:

- Plaintiff **Tawanda Hall** owed $22,642.00 in delinquent property taxes.[3] The Oakland County Treasurer foreclosed, issued a tax deed in favor of the City of Southfield for the minimum amount due under the GPTA, and the City quit claimed the property to SNRI for $1.00. The property was subsequently sold for $308,000.00.

- Plaintiff **Carolyn Miller** owed $29,759.00 in delinquent property taxes. The Oakland County Treasurer foreclosed, issued a tax deed in favor of the City of Southfield for the minimum amount due under the GPTA, and the City quit claimed the property to SNRI for $1.00. The property was subsequently sold for $120,000.00.

---

greater of the minimum bid or its fair market value[.]" Mich. Comp. Laws § 211.78m(1). While this amendment will affect the manner in which future tax foreclosure sales are handled, it does not provide a basis for liability against the defendants in this action. The Act provides that any retroactive effect is dependent upon a decision of the Michigan Supreme Court that "its decision in Rafaeli, LLC v. Oakland County, docket no. 156849, applies retroactively." Mich. Comp. Laws § 211.78t(1)(b)(i). There has been no such decision from the Michigan Supreme Court.

[3] Plaintiffs plead that this amount includes the "delinquent property taxes, interest penalties, and fees." (Compl. ¶ 21, PageID.5.)

5

- Plaintiff **American Internet Group, LLC** owed $9,974.00 in delinquent property taxes. The Oakland County Treasurer foreclosed, issued a tax deed in favor of the City of Southfield for the minimum amount due under the GPTA, and the City quit claimed the property to SNRI for $1.00. The property was subsequently sold for $149,900.00.

- Plaintiff **Anthony Akande** owed $2,415.00 in delinquent property taxes. The Oakland County Treasurer foreclosed, issued a tax deed in favor of the City of Southfield for the minimum amount due under the GPTA, and the City quit claimed the property to SNRI for $1.00. The property was subsequently sold for $152,500.00.

- Plaintiffs **Curtis Lee** and **Coretha Lee** owed $30,547.00 in delinquent property taxes. The Oakland County Treasurer foreclosed, issued a tax deed in favor of the City of Southfield for the minimum amount due under the GPTA, and the City quit claimed the property to SNRI for $1.00. The property was subsequently sold for $155,000.00.

- Plaintiff **Marcus  Byers** alleges he had "equitable title with his court appointed guardian" in the subject property and owed $4,113.00 in delinquent property taxes. The Oakland County Treasurer foreclosed, issued a tax deed in favor of the City of Southfield for the minimum amount due under the GPTA, and the City quit claimed the property to SNRI for $1.00, which still holds title to the property. Plaintiffs allege the property has a fair market value of $90,000.00.

- Plaintiff **Kristina Govan** owed $45,350.00 in delinquent property taxes. The Oakland County Treasurer foreclosed, issued a tax deed in favor of the City of Southfield for the minimum amount due under the GPTA, and the City quit claimed the property to SNRI for $1.00, which still holds title to the property. Plaintiffs allege the property  "is worth in excess of the amount owed in taxes."

(Compl. ¶¶ 21-27, PageID.5-7.)

Plaintiffs assert that "[m]ost of the Plaintiffs had entered into delinquent property installment agreements [with the County]," even though "[t]he Treasurer knew the Circuit Court had already entered a Judgment of foreclosure prior to entering the delinquent property tax payment plans with Plaintiffs ... which purportedly prevented foreclosure." (*Id*. ¶¶ 31-32, PageID.7.) Plaintiffs claim that they "made a payment to the Treasurer with the promise that such payment would prevent tax foreclosure," and "in many instances ... made substantial payments of 1-2 years of property taxes prior to March 31st of the year of foreclosure," but that the County still foreclosed on their properties. (*Id.* ¶¶ 31, 33-34, PageID.7.)

As a result of the foreclosures, Plaintiffs lost all title and interest in their properties, and title in fee vested in the foreclosing government unit ("FGU"), in this case, the Oakland County Treasurer. (*Id*. ¶¶ 21-28, PageID.5-7.) *See* Mich. Comp. Laws § 211.78k(6). Pursuant to Mich. Comp. Laws § 211.78m(1) (as it existed at that time), the Oakland County Treasurer offered the properties to the City of Southfield under the City's right of first refusal. (*Id*. ¶ 29, PageID.7.) In each case, the City paid the Treasurer the minimum amount due under the statute – the delinquent tax amount – with funds provided by Defendant Southfield Nonprofit Housing Corporation ("SNPHC"). (*Id*. ¶¶ 21-27, 83(e), PageID.5-7, 16.) The City in

turn conveyed each of the properties to Defendant Southfield Neighborhood Revitalization Initiative, LLC ("SNRI") for $1.00. (*Id.*)

SNRI was created by Defendant SNPHC, and the SNPHC is the sole member of SNRI. (ECF No. 31, SNRI Defs.' Mot. at p. 3, PageID.182.) SNRI was formed for the purpose of purchasing tax foreclosed and other properties, improving such properties, selling such properties to persons of low to moderate income when possible, and improving housing and homeownership opportunities in the City of Southfield, and to otherwise restore tax-foreclosed properties on the tax-roll. (*Id.*, citing ECF No. 31-2, SNRI Operating Agreement.)

According to Defendants, under this initiative, SNRI entered into an agreement to work with Defendant Habitat for Humanity ("Habitat"), to rehabilitate the homes that are salvageable. (SNRI Defs.' Mot. at p. 3, PageID.182; ECF No. 24, Habitat Def.'s Mot. at p. 1, PageID.145.) Plaintiffs allege that Habitat received "close to $300,000 in funds from SNRI in 2016, [and] was paid over 1 million dollars from SNRI since its inception in June of 2016 by being the recipient of often needless repairs, as well as the conveyance of property from SNRI, City of Southfield, and the SNPHC for less than full consideration." (Compl. ¶ 46, PageID.9.)

Plaintiffs assert that the City of Southfield, SNPHC and the SNRI have identical and interchangeable governance. Plaintiffs allege that Southfield Mayor

8

Kenson Siver is a board member of SNPHC and that Southfield City Manager Fred Zorn is "a managing member of SNRI and ... also a board member of SNPHC." (Compl. ¶¶ 7, 49, PageID.3, 10.) Mayor Siver is listed as the President of SNPHC, which is the sole member of SNRI, and Zorn, Mitchell Simon (a CPA), and E'toile Libbett (a realtor) are listed as managers of SNRI. (SNRI Operating Agreement, PageID.210.) Plaintiffs allege that Defendants Siver, Zorn, City Attorney Susan Ward-Witkowski, and Gerald Witkowski "used power under the GPTA for personal economic gain," that they understood "that they would personally benefit and utilize their power to benefit the SNRI and SNPHC," and "knew their acts would remove the subject properties from the tax rolls of Southfield for the gain of SNRI." (Compl. ¶¶ 64, 67, 71, PageID.12-13.)

### B. The Michigan Supreme Court's Decision in *Rafaeli, LLC v. Oakland County*

On July 17, 2020, the Michigan Supreme Court issued its opinion in *Rafaeli, LLC v. Oakland County*, 505 Mich. 429 (2020). In *Rafaeli*, two former property owners brought an action against Oakland County and its Treasurer, Andrew Meisner, alleging due process and equal-protection violations as well as an unconstitutional taking by selling their tax-foreclosed properties at public auction in

9

satisfaction of their tax debts and then retaining the surplus proceeds from that sale of their properties. *Id.* at 438-40.

The Oakland County Circuit Court had previously granted summary disposition to defendants Oakland County and its treasurer, Andrew Meisner, finding that defendants did not "take" plaintiffs' properties "because plaintiffs forfeited all interests they held in their properties when they failed to pay the taxes due on the properties." *Id.* at 440. Plaintiffs appealed, and the Michigan Court of Appeals affirmed the circuit court's opinion and "rejected plaintiffs' argument that the GPTA's 'scheme' allows for unconstitutional takings," holding that "defendants acquired their interest in plaintiffs' properties 'by way of a statutory scheme that did not violate due process' and thus defendants were not required to compensate plaintiffs for property that was lawfully obtained." *Id.* at 441. Plaintiffs sought leave to appeal to the Michigan Supreme Court, which granted plaintiffs' application and ordered the parties to address the issue of "whether defendants violated the Takings Clause of the United States Constitution, the Michigan Constitution, or both by retaining the proceeds from the sale of tax-foreclosed property that exceeded the amount of the taxes, penalties, interest, and fees owed on the property." *Id.*

The Michigan Supreme Court concluded that a property owner does not lose all rights to the property during the tax foreclosure proceedings. The Court first

explained that "forfeiture" under the GPTA simply permits the county and county treasurer to seek a judgment of foreclosure, but "does not affect title, nor does it give the county treasurer ... any rights, titles, or interests to the forfeited property. Therefore, we reject the premise that plaintiffs 'forfeited' all rights, titles, and interests they had in their properties by failing to pay their real-property taxes." *Id.* at 448-49.

The Court next addressed plaintiffs' due process concerns, noting that "the GPTA explicitly states its intent to comply with minimum requirements of due process and not create new rights beyond those prescribed in the Constitutions of our nation or this state." *Id.* at 451. The Court stated:

> As long as defendants comply with these due-process considerations, plaintiffs may not contest the legitimacy of defendants' authority to foreclose on their properties for unpaid tax debts, *nor may plaintiffs contest the sale of their properties to third-party purchasers*.

*Id.* (emphasis added); *see id.* at 451 ("The remedy for a taking of private property is just compensation, while the remedy for being deprived of property without due process of law is the return of the property.").

The Michigan Supreme Court held that Michigan's "common law recognizes a former property owner's property right to collect the surplus proceeds that are realized from the tax-foreclosure sale of the property." *Id*. at 470. The Court also

found that Michigan's 1963 Constitution "protects a former owner's property right to collect the surplus proceeds following a tax-foreclosure sale under Article 10, § 2." *Id*. at 473. Because the common-law interest was protected by Michigan's Takings Clause, the GPTA could not abrogate that common law interest. *Id*. (explaining that "[w]hile the Legislature is typically free to abrogate the common law, it is powerless to override a right protected by Michigan's Takings Clause.").

Finally, the Michigan Supreme Court held that Oakland County's retention of the proceeds of the auction sale that exceeded the amount of property taxes owed and other charges and fees constituted an unconstitutional taking.

> Once defendants foreclosed on plaintiffs' properties, obtained title to those properties, and sold them to satisfy plaintiffs' unpaid taxes, interest, penalties, and fees related to the foreclosures, any surplus resulting *from those sales* belonged to plaintiffs. That is, after the sale proceeds are distributed in accordance with the GPTA's order of priority, any surplus that remains is the property of plaintiffs, and defendants were required to return that property to plaintiffs. Defendants' retention of those surplus proceeds under GPTA amounts to a taking of a vested property right requiring just compensation. To the extent the GPTA permits defendants to retain these surplus proceeds and transfer them into the county general fund, the GPTA is unconstitutional as applied to former property owners whose properties were sold at a tax-foreclosure sale for more than the amount owed in unpaid property taxes, interest, penalties, and fees related to the forfeiture, foreclosure, and sale of their properties.

*Id*. at 474-75 (emphasis added). *See also id.* at 476 (stating that the surplus proceeds of the sale "is a separate property right that survives the foreclosure process"). The

Court clarified that "a former property owner has a compensable takings claim *if and only if* the tax-foreclosure sale produces a surplus." *Id.* at 477 (emphasis added).

The Michigan Supreme Court defined "just compensation" as "the amount of surplus proceeds generated from the tax foreclosure sale." *Id.* at 481-82 ("mak[ing] clear, the property 'taken' is the surplus proceeds from the tax-foreclosure sale of plaintiffs' properties to satisfy their tax debts"). The Court expressly "reject[ed] the premise that just compensation requires that plaintiffs be awarded the fair market value of their properties so as to be put in as good of [a] position had their properties not been taken at all" because "this would run contrary to the general principle that just compensation is measured by the value of the property *taken*," and "plaintiffs are largely responsible for the loss of their properties' value by failing to pay their taxes on time and in full" and "[i]f plaintiffs were entitled to collect more than the amount of the surplus proceeds, not only would they be taking money away from the public as a whole, but they would themselves benefit from their tax delinquency." *Id.* at 483 (emphasis in original); *see also id.* fn. 134 ("[W]e are unaware of any authority affirming a vested right to equity held in property generally.").

> Accordingly, when property is taken to satisfy an unpaid tax debt, just compensation requires the foreclosing governmental unit to return any proceeds from the tax-foreclosure sale in excess of the delinquent taxes, interest, penalties, and fees reasonably related to the foreclosure and sale of the property – *no more, no less.*

13

*Id.* at 483-84 (emphasis added); *see id.* at 477 ("Indeed, a former property owner *only* has a right to collect the surplus proceeds from the tax-foreclosure sale; that is, a former property owner has a compensable takings claim *if and only if* the tax-foreclosure sale produces a surplus.") (emphases added).

The Michigan Supreme Court then held:

> Plaintiffs, former property owners whose properties were foreclosed and sold to satisfy delinquent real-property taxes, have a cognizable, vested property right to the surplus proceeds resulting from the tax-foreclosure sale of their properties. This right continued to exist even after fee simple title to plaintiffs' properties vested with defendants, and therefore, defendants' retention and subsequent transfer of those proceeds into the county general fund amounted to a taking of plaintiffs' properties under Article 10, § 2 of our 1963 Constitution. Therefore, plaintiffs are entitled to just compensation, which in the context of a tax-foreclosure sale is commonly understood as the surplus proceeds.

*Id.* at 484-85.

## C.   The SNRI Defendants' Motion to Dismiss

The SNRI Defendants filed a motion to dismiss in this case, arguing that Plaintiffs' claims against them, and specifically their claim for unjust enrichment, is legally and factually deficient and must be dismissed under Fed. R. Civ. P. 12(b)(6). (ECF No. 31, SNRI Defs.' Mot.) The SNRI Defendants initially argue that Plaintiffs Carolyn Miller, American Internet Group, LLC, and Anthony Akande's claims are

14

barred by res judicata for having previously litigated post-foreclosure claims against the SNRI Defendants relating to the loss of their properties, and that Plaintiff Marcus Byers lacks standing to bring any claims, because he did not own the subject property. The SNRI Defendants next argue that there is no basis for them to be liable to Plaintiffs under a theory of unjust enrichment, and further assert that Plaintiffs fail to state claims against Defendants SNPHC, Simon, and Libbett because those defendants are not named in any of the Counts in the Complaint.

Plaintiffs filed a Response in opposition to the SNRI Defendants' motion to dismiss. (ECF No. 47, Pls.' Resp.) Plaintiffs argue that Plaintiffs Tawanda Hall, Miller, American Internet Group, and Akande's claims are not barred by res judicata, and that Plaintiff Byers does have standing in this action because he had an "equitable interest" in the subject property. Plaintiffs further assert that they have stated a Fifth Amendment Takings claim and a claim under the Michigan Constitution against all SNRI Defendants (Counts I-III), as well as a claim under 42 U.S.C. § 1983 against these Defendants. Finally, Plaintiffs contend that they have stated an unjust enrichment claim against the SNRI Defendants as well.

The SNRI Defendants filed a reply brief in support of their motion to dismiss. (ECF No. 50, SNRI Defs.' Reply.) The SNRI Defendants argue that Plaintiffs fails to state an unjust enrichment claim against them post-tax foreclosure. The SNRI

Defendants further contend that Plaintiffs' takings claims fail because there is no claim under Michigan law for taking "surplus equity," and Plaintiffs fail to plead that the SNRI Defendants are "state actors." Finally, the SNRI Defendants state that Plaintiffs have abandoned their claims against SNPHC, Simon, and Libbett because they failed to respond to the SNRI Defendants' argument with regard to these defendants.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). The court "need not accept as true a legal conclusion couched as a factual allegation, or an

16

unwarranted factual inference." *Id*. at 539 (internal citations and quotation marks omitted); *see also Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue* Shield, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried* Chicken, 829 F.2d 10, 12 (6th Cir. 1987)). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is the defendant who "has the burden of showing that the plaintiff has failed to state a claim for relief." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015).

In ruling on a motion to dismiss, the Court may consider the complaint as well as: (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims; (2) matters of which a court may take judicial notice; (3) documents that are a matter of public record; and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated

without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (internal quotation marks and citations omitted); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings…. [C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies."); *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings). Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co*., 258 F.Supp.2d 718, 721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner v. Klais and Co., Inc*., 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002).

18

## III. ANALYSIS

**A.**  **Plaintiffs Miller, AIG, and Akande' Claims Against Defendant SNRI are Barred by Res Judicata, But Plaintiffs' Claims Against Defendants SNPHC, Simon and Libbett are not Barred**

The SNRI Defendants argue that the claims of three of the eight named Plaintiffs – Carolyn Miller, American Internet Group, LLC, and Anthony Akande – are barred by res judicata because those plaintiffs have previously litigated post-foreclosure claims in state court against the SNRI Defendants based on the "same facts and occurrences of the tax foreclosure of their properties." (SNRI Defs.' Mot. at pp. 4-8, PageID.183-87.) Plaintiffs respond that Plaintiffs Miller, American Internet Group, and Akande's claims are not barred by res judicata, asserting that their prior litigation "was an unfair housing case based on racial discrimination in 2018" and that the "scheme to strip Plaintiffs' equity" alleged in this case was "not known at the time of the state suit." (Pls.' Resp. at p. 6, PageID.1705.)

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). "The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action." *Adair v. State*, 470 Mich. 105, 121 (2004). Under Michigan law, "the doctrine bars a second, subsequent action when (1) the

19

prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Id.* Michigan thus "take[s] a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.*

In this case, Plaintiff Miller claims her property was foreclosed on for a $29,759.00 tax debt. (Compl. ¶ 22, PageID.5.) After foreclosure the City purchased the property from Oakland County for the $29,759.00 tax debt amount and deeded the property to the SNRI for $1.00. (Compl. PageID.39.) Plaintiff American Internet Group claims its property was foreclosed on for $9,974.00 of delinquent property taxes. (Compl. ¶ 23, PageID.5-6.) The City also purchased this property for the tax debt and transferred it to the SNRI for $1.00. (Compl. PageID.42.) Similarly, Plaintiff Akande's property was allegedly foreclosed for $2,415.00, and the City purchased the property for that amount and transferred it to the SNRI for $1.00. (Compl. ¶ 24, PageID.6, 45.)

The SNRI Defendants explain that, after the foreclosures and transfers in 2016, Plaintiffs Miller, American Internet Group, and Akande, and others, filed suit in Oakland County Circuit Court in 2017 against the Oakland County Treasurer, the

City of Southfield, and SNRI, alleging various discriminatory housing practices claims in relation to the foreclosure of their properties. (See ECF No. 34-2, Southfield Defs.' Mot Ex. 1, Complaint in *Ronald Hayes, et al. v. Oakland County Treasurer's Office, et al.*, Case No. 2017-157366-CZ (Michigan Sixth Judicial Circuit, 2017).) That state court complaint was based on the same premise as this case – that the County, City, and SNRI created a "scheme" to divest Southfield citizens of their homes and procure a profit through application of Michigan's tax-foreclosure process. (*See id.*, PageID.457.) That complaint alleged that "once certain properties owned by African-Americans were foreclosed upon for non-payment of delinquent real estate taxes, systematically the officials of the City of Southfield that designed this discriminatory scheme made sure that these properties were requested to be held-back from public auction by the Oakland County Treasurers Office and subsequently designated for purchase by the City of Southfield, Non-Profit Housing Corporation," and "[t]hat immediately upon the City of Southfield reacquiring the real estate foreclosed upon ... then after placed the properties out-of-the-reach of the previous owners by transferring by Quit Claim Deed to an agency known as the Southfield Neighborhood Revitalization Initiative, LLC, a for profit limited liability company...." (*Id*. ¶¶ 9-10, PageID.460-61 (emphasis in original).) The complaint further alleged "the City of Southfield through the scheme alleged in the common

21

allegations ... targeted [plaintiff's] homes for designation for non-bid transfer to the Southfield Non-Profit Housing Commission" and that "the transfer of these non-bid homes ... were actually transferred to a 'for profit' organization-SNRI, LLC, for the ultimate personal gain of yet to be exposed individuals." (*Id.* ¶¶ 43-44, PageID.467-68.) The complaint sought, in part, "the loss of equity (FMV) in their residential properties." (*Id.* PageID.469.)

Those state court plaintiffs then moved to amend the complaint to "remove the discrimination counts and add allegations that Plaintiffs made timely payments that were rejected by Defendant Oakland County Treasurer[.]" (ECF No. 32-4, State Court Motion to Amend, PageID.389-90.) In that motion to amend, the plaintiffs alleged that "Southfield did not purchase the property for the minimum bid. Southfield quit claimed its interest to SNRI for no consideration. SNRI's Directors and/or Officers are City of Southfield officials who used their inside knowledge about these mortgage-free properties to acquire the properties for their own personal benefit and not for public purpose." (*Id.* PageID.394.)

All of the state court defendants moved to dismiss that action, and the state court judge dismissed the case with prejudice because "the claims alleged are clearly unenforceable as a matter of law," and denied the plaintiffs' motion to amend because the plaintiffs failed to provide the court with a proposed amended complaint

and because any amendment would be futile. (SNRI Defs.' Mot. at p. 6, PageID.185, citing Ex. 3, ECF No. 31-4, Order on Summary Disposition, PageID.217-19.) This dismissal constitutes an adjudication on the merits for purposes of res judicata. *Chakan v. City of Detroit*, 998 F. Supp. 779 (E.D. Mich. 1998); *ABB Paint Finishing v. Nat'l Fire Ins.*, 223 Mich. App. 559 (1997).

The SNRI Defendants contend that "Plaintiffs' current claims arise from the exact set of facts and circumstances as their prior cases – their failure to pay taxes, subsequent foreclosure by the OCT and subsequent transfers of the tax foreclosed properties," and that their claims therefore are barred by res judicata because they "rely on the same core operative facts and issues.' (SNRI Defs.' Mot. at pp. 7-8, PageID.186.)

Plaintiffs respond that their present claims "were not known at the time of the state suit," that "the landscape of the law has shifted" and "[t]his action could have not been resolved at the time of the state court case because the Michigan Constitution had not established the right to the equity/surplus proceeds from a tax foreclosure," and that "the parties were not identical." (Pls.' Resp. at pp. 6-7, PageID.1705-06.)[4]

_____

[4] Plaintiffs rely, in part, on a state court order declining to accept reassignment of a class action from another court, to support their argument against res judicata in this

First, as previously found by this Court in its prior Opinion and Order (ECF No. 62, PageID.2198), Plaintiffs' state court lawsuit was based on essentially the same alleged "scheme" to induce tax foreclosures and transfer properties to SNRI for a profit. (*See* State Court Complaint, PageID.457 (alleging the "scheme" was to "re-direct foreclosure upon homes to a private '<u>for profit organization</u>' – Southfield Neighborhood Revitalization Initiative, LLC so as to deny African-Americans to bid at a public auction an opportunity to reacquire their homes") (emphasis in original).) That state court complaint alleged that "the City of Southfield through the scheme alleged in the common allegations ... targeted [plaintiff's] homes for designation for non-bid transfer to the Southfield Non-Profit Housing Commission" and that "the transfer of these non-bid homes ... were actually transferred to a 'for profit'

---

case. (Pls.' Resp. at p. 7, PageID.1706, citing Ex. G, ECF No. 42-7, PageID.797-98.) However, that state court order declining reassignment is not persuasive authority. In that case, the defendants moved to have the case reassigned from Judge Denise Langford-Morris to Judge Hala Jarbou because Judge Jarbou handled the 2017 foreclosure case. Judge Jarbou declined reassignment as improper under the local court rule regarding assignment of cases, finding "the instant action does not arise out of the same transaction and occurrent that was before th[at] Court in 2016 [a bulk foreclosure action]" because "not all of the Plaintiffs' properties were foreclosed in 2017 by this Court" and thus "the instant action does not 'arise out of the same transaction and occurrence.'" (ECF No. 42-7, PageID.797-98.) In this case, the properties at issue are identical.

organization-SNRI, LLC, for the ultimate personal gain of yet to be exposed individuals." (*Id.* ¶¶ 43-44, PageID.467-68.) The complaint sought as relief, in part, "the loss of equity (FMV) in their residential properties." (*Id.* PageID.469.) Moreover, when those state court plaintiffs moved to amend the complaint, the plaintiffs alleged that "Southfield did not purchase the property for the minimum bid. Southfield quit claimed its interest to SNRI for no consideration. SNRI's Directors and/or Officers are City of Southfield officials who used their inside knowledge about these mortgage-free properties to acquire the properties for their own personal benefit and not for public purpose." (Mot. to Amend, PageID.343.)

The Michigan Supreme Court "has taken a broad approach" to the question of whether the claims precluded were or could have been decided in the prior action, embracing the "transactional" test, under which res judicata "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair*, 470 Mich. at 121, 124. "[T]he determinative question is whether the claims in the instant case arose as part of the same transaction as did the claims in" the first action. *See id.* at 125. "Whether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time, space, origin or motivation*, [and] whether they form a convenient

25

trial unit...." *Id.* (citation omitted). Applying this framework, the Court here finds that the prior state court lawsuit and this suit involve the same core set of facts, and the issues in this case were, or could have been, resolved in the prior suit.

Second, Plaintiffs summarily assert that the parties in the two actions "were not identical," but they do not otherwise develop this argument. (Pls.' Resp. at p.7, PageID.1176.) The SNRI Defendants fail to otherwise argue that the parties to the prior litigation and this action are identical or substantially identical. (See SNRI Defs.' Mot. at pp. 6-8, PageID.185-87.) An undeveloped argument is deemed waived. *Hensley v. Gassman,* 693 F.3d 681, 688 n. 6 (6th Cir.2012); *Kennedy v. Comm r of Soc. Sec.*, 87 F. App'x. 464, 466 (6th Cir. 2003) ("issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived'") (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)). SNRI is a defendant in both actions. However, Defendants SNPHC, Simon and Libbett were not named parties in the prior state court action. Parties are substantially identical when a party in a second suit is "so identified in interest with [a party from the first suit] that he or she represents the same legal right." *Viele v. D.C.M.A.*, 167 Mich. App. 571, 580 (1988) (citation omitted). The SNRI Defendants have failed to meet their burden to demonstrate that SNRI, SNPHC, Simon, and Libbett are in privity through agency principles, and thus are

26

substantially identical for purposes of res judicata. *See Lyons v. Washington*, No. 212516, 2000 WL 33407429, at *1 (Mich. App. Aug. 18, 2000) (citing *Viele*, 167 Mich. App. at 580). Accordingly, the Court finds that Plaintiffs' claims against Defendants SNPHC, Simon, and Libbett are not precluded by res judicata.

Continuing as to Plaintiffs' claims against Defendant SNRI only, Plaintiffs argue that "the landscape of the law has shifted" and "[t]his action could have not been resolved at the time of the state court case because the Michigan Constitution had not established the right to the equity/surplus proceeds from a tax foreclosure." (Pls.' Resp. at pp. 7-8, PageID.1706-07.) Plaintiffs contend that, before the Michigan Supreme Court's decision in *Rafaeli, LLC v. Oakland County*, 505 Mich. 429 (2020), "there were no common law property rights that existed unambiguously in the equity/surplus proceeds after a property tax foreclosure," and "it would have been largely futile to bring most of the present claims." (*Id.*) However, "an intervening change of law" precludes the application of res judicata only when it "alters the legal principles on which the court will resolve the subsequent case.'" *In re Bibi Guardianship*, 315 Mich. App. 323, 334 (2016) (citation omitted). As discussed more fully *infra*, *Rafaeli* does not recognize a right to recover alleged equity in property after a foreclosure, and thus does not represent a change to the legal landscape regarding Plaintiffs' claims in this case.

27

Interestingly, in a seeming admission of the failure of their takings claim in this case, Plaintiffs admit in their Response that:

> There still is no adequate remedy or procedure to address the unlawful conduct in this case until the Michigan Legislature finds *Rafaeli, LLC, supra*, retroactive. Even then, ambiguity will persist (see Justice Viviano's Concurrence in *Rafaeli, LLC, supra*.[)]

(Pls.' Resp. at p. 7, PageID.1706.) As will be discussed further *infra*, Justice Viviano recognized in his concurrence that "the majority's view of the case would seemingly be that if the property does not sell at auction and is simply transferred to a governmental unit, the taxpayer is out of luck: no proceeds, let alone a surplus, have been produced or retained by the government." *Id.* at 518 (Viviano, J., concurring).[5]

Based on all the above, the Court finds that Plaintiffs Miller, American Internet Group, and Akande's claims against Defendant SNRI are barred by res judicata, but that Plaintiffs' claims against Defendants SNPHC, Simon, and Libbett are not so barred. However, even if these plaintiffs' claims were not barred by res judicata, they would nevertheless fail for the reasons stated *infra*.

---

[5] In addition, Plaintiffs' citation to Judge Tarnow's May 31, 2020 decision in *Johnson v. Meisner*, Case No. 19-11569 (E.D. Mich.), is misplaced because Judge Tarnow declined to apply res judicata to the plaintiffs' claims in that case because the prior dismissal was under Rule 12(b)(1), for lack of jurisdiction, not Rule 12(b)(6), and Rule 12(b)(1) dismissals are not dismissals on the merits and thus do not have preclusive effect. (ECF No. 42-9, PageID.900-01.)

### B. Plaintiff Marcus Byers Lacks Standing

Plaintiff Marcus Byers alleges that he held "equitable title" with his guardian in property that was foreclosed on for $4,113.00 in delinquent taxes. (Compl. ¶ 26, PageID.6.) However, the records Plaintiffs attach to the Complaint indicate that the property was owned by, and foreclosed under, the ownership of Debbie Byers, who is not a named Plaintiff. (Compl. PageID.51.) After the foreclosure, the property was sold to the City for the tax debt amount, and then transferred to SNRI for $1.00. (*Id.*)

To satisfy the Article III standing requirement in a civil forfeiture action, "a claimant must alleged a colorable ownership, possessory, or security interest in a least a portion of" the property in interest. *U.S. v. Real Prop. Located at 4527-4535 Michigan Ave., Detroit, Mich.*, 489 F. App'x 855, 857 (6th Cir. 2012) (citing *U.S. v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir. 1998)). The courts generally look to "the law of the jurisdiction that created the property right to determine the petitioner's legal interest." *U.S. v. Salti*, 579 F.3d 656, 668 (6th Cir. 2009) (citation omitted). In Michigan, "an interest in real property can only be created 'by act or operation of law, or by a deed or conveyance in writing.'" *Real Prop.*, 489 F. App'x at 857 (citing Mich. Comp. Laws § 566.106) (finding that the claimants lacked standing because the deed to the clubhouse property was not in their name and no other writing existed showing their interest in the property).

29

The SNRI Defendants explain that Plaintiff Marcus Byers' former spouse, and the former owner of the property at issue in this action (21666 Hidden Rivers Drive property), Debbie Byers, previously filed a lawsuit in the Oakland County Circuit Court against the Oakland County Treasurer and SNRI on February 25, 2019, challenging the tax foreclosure and seeking reinstatement of title. (SNRI Defs.' Mot. at p. 6, PageID.185, citing Ex. 4, ECF No. 31-5, Debbie Byers' Verified Petition, PageID.220-32.) The Circuit Court granted both defendants' motions for summary disposition, finding that Debbie Byers failed to state a claim against either defendant and that she received constitutionally proper notice of the foreclosure under the GPTA. (Ex. 5, ECF No. 31-6, Opinion and Order Granting Summary Disposition, PageID.233-39.) Debbie Byers appealed the circuit court's opinion, arguing that she was entitled to "just compensation," but the Michigan Court of Appeals denied her appeal on February 26, 2020. (SNRI Defs.' Mot. at pp. 6-7, PageID.185-86, citing Ex. 6, ECF No. 31-7, Debbie Byers' Appeal Packet, PageID.240-49, and Ex. 7, ECF No. 31-8, Court of Appeals Order Denying Application for Leave to Appeal, PageID.250.) Debbie Byers then filed for Chapter 13 bankruptcy on August 3, 2020, and initiated an Adversary Complaint against Defendants Oakland County Treasurer and SNRI on September 30, 2020. (SNRI Defs.' Mot. at p. 7, PageID.186, citing Ex. 8, ECF No. 31-9, Debbie Byers' Adversary Compl., PageID.251-68.) The adversary

complaint raises claims challenging the tax foreclosure, the subsequent conveyance of the property including SNRI's title, and a "Post Taking Claim for Just Compensation [] Under the Fifth Amendment – Inverse Condemnation," and seeks a monetary judgment of the "surplus equity" in the property. (*Id.*)[6]

The SNRI Defendants assert that Plaintiff Marcus Byers lacks standing to bring suit against them because he was not the owner of the Hidden Rivers Drive property. (SNRI Defs.' Mot. at pp. 8-9, PageID.187-88.) Rather, all former title and interest in that property prior to the tax foreclosure was held by Marcus Byers' former spouse, Debbie Byers, who purchased the property from Wells Fargo Bank in 2008 and who is presently litigating claims in Bankruptcy Court. (*Id.* citing Ex. 9, ECF No. 31-10, Deed, PageID.269-70, Ex. 10, ECF No. 31-11, Judgment of Divorce, PageID.271-73.)

Plaintiffs respond only that Marcus Byers has a closed head injury since 1998 and that Debbie Byers "purchased a house with his money and has been his legal guardian," that "[t]he equity in or from the property belongs to Mr. Byer[s]," and "Byers' equitable interest meets the threshold for standing as an injury in fact." (Pls.'

---

[6] The SNRI Defendants argue that Debbie Byer's claims would be barred by res judicata. However, Debbie Byers is not a plaintiff in this action and so that argument need not be addressed.

Resp. at pp. 9-10, PageID.1708-09.) Plaintiffs rely on expired guardianship papers naming "Kiara Napier" as Byers' guardian and an unrecorded Quit Claim deed from Debbie Byers to herself and Marcus Byers, dated July 30, 2020, to try to assert that Byers somehow had an interest in the property in 2018. (*Id.* citing Ex. L, ECF No. 42-12, PageID.928-31).

However, Debbie Byers could only convey the interest she had in 2020, which, following the 2018 foreclosure of the property, was none. Without an interest in the subject property when the foreclosure and transfer occurred, the Court finds that Plaintiff Marcus Byers lacks standing in this case and dismisses his claims with prejudice.

## C. Plaintiffs' Unjust Enrichment Claim Against the SNRI Defendants

The SNRI Defendants contend that Plaintiff's only claim against them appears to be the unjust enrichment claim in Count VII. (SNRI Defs.' Mot. at p. 10, PageID.189.) The Defendants argue that Plaintiffs fail to state such a claim. (*Id.* at pp. 10-17, PageID.189-96.)

Plaintiffs' unjust enrichment claim in Count VII of their complaint alleges that "SNRI obtained the surplus equity and or equity from the tax foreclosure" "in a prearranged transfer for inadequate value," and that "[t]he retention of the benefits [surplus equity] by SNRI (or subsequent non-bona fide purchasers) of the property

rights, equity and/or surplus equity amounts to unjust enrichment to the SNRI."
(Compl. ¶¶ 145-48, PageID.29.) Plaintiffs allege that "[t]he surplus equity and or
equity in justice and equity belongs to the Plaintiffs[] individually and to the Class
Members," and that "Plaintiffs[] individually and as class representatives have been
damaged by their loss of equity." (*Id.* ¶¶ 149-50, PageID.30.)

Under Michigan law, "[u]njust enrichment is defined as the unjust retention
of money or benefits which in justice and equity belong to another." *Tkachik v.
Mandeville*, 487 Mich. 38, 48 (2010) (citation omitted). A plaintiff alleging unjust
enrichment must establish two elements: "(1) the receipt of a benefit by defendant
from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of
the benefit by defendant." *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App.
463, 478 (2003).

The SNRI Defendants first contend that Plaintiffs have failed to show that the
SNRI Defendants received a "benefit" from Plaintiffs. They argue that the Michigan
Supreme Court in *Rafaeli* did not establish a cause of action for Plaintiffs to sue the
SNRI Defendants in this case for the return of "surplus equity." (SNRI Defs.' Mot.
at p. 10, PageID.189.) They explain that the Michigan Supreme Court in *Rafaeli*
limited the plaintiffs' claims in that case against the county and the county treasurer
to the excess proceeds realized from the tax foreclosure sale (the auction) (i.e., the

proceeds realized in excess of the delinquent taxes, interest, penalties, and fees), "no more, no less." (*Id.*, citing *Rafaeli*, 505 Mich. at 484). *See also Rafaeli*, 505 Mich. at 477 ("[A] former property owner has a compensable takings claim *if and only if* the tax-foreclosure sale produces a surplus.") (emphasis added).

In this case, the Plaintiffs' properties were not sold at auction, but were purchased after foreclosure from the Oakland County Treasurer by the City of Southfield for the minimum bid. Accordingly, it is undisputed that no "surplus proceeds" were realized from a "tax-foreclosure sale," and Plaintiffs have failed to demonstrate a property right or amount or benefit that was "unjustly" taken from them by anyone, much less than by the SNRI Defendants, the subsequent transferee who properly acquired the properties from the City after proper tax-foreclosure proceedings. The Michigan Supreme Court made clear in *Rafaeli* that a plaintiff's only "property interest" surviving a tax-foreclosure is not in the real property itself, but only in the surplus proceeds resulting from the tax-foreclosure sale, if any, resulting from the sale of the property at an auction. In this case, there are no such surplus proceeds.

The SNRI Defendants next contend that Plaintiffs seek to create a cause of action that would allow former property owners to claim monetary damages from a subsequent transferee of property previously foreclosed on the basis of non-payment

of taxes. (SNRI Defs.' Mot. at p.12, PageID.191.) Such a theory, they assert, "would in fact yield unjust results to any party obtaining tax foreclosed property, and result in perpetual uncertainty as to the insurability of title with respect to [] tax foreclosed properties" by "enabl[ing] those who have failed to pay real property taxes and failed to timely redeem the assessed real estate after entry of a judgment of foreclosure to maintain an interest in the property notwithstanding the foreclosure process." (*Id.* at pp. 12-13, PageID.191-92.) The SNRI Defendants state that their program, in which they worked with Habitat to rehabilitate buildings which are salvageable, is a lawful program and consistent with the public policy for the GPTA:

> The legislature finds that there exists in this state a continuing need to strengthen and revitalize the economy of this state and its municipalities by encouraging the efficient and expeditious return to productive use of property returned for delinquent taxes. Therefore, the powers granted in this act relating to the return of property for delinquent taxes constitute the performance by this state or a political subdivision of this state of essential public purposes and functions.

Mich. Comp. Laws § 211.78(1). In fact, the SNRI Defendants point out that the City of Southfield/SNRI program and partnership is not unique, as other communities have engaged in similar programs, which have been upheld by Michigan courts. (SNRI Defs.' Mot. at pp. 13-14, PageID.192-93.)

For example, the City of Grand Rapids entered into an agreement with the Kent County Land Bank Authority ("KCLBA") to purchase tax-foreclosed

properties from the Kent County Treasurer, whereby the KCLBA placed money in escrow for the City to purchase properties from the Treasurer for the minimum bid, which were then transferred to the KCLBA for that same amount, plus the cost of recording fees. *See Rental Props. Owners Ass'n of Kent Cnty. v. Kent Cnty. Treasurer*, 308 Mich. App. 498, 505-06 (2014). The plaintiffs in that case argued that the process through which the KCLBA obtained title to the foreclosed properties was in violation of the law. *Id.* at 507-08. The plaintiffs argued that "Grand Rapid's purchase of the properties was a 'ruse' to disguise the violation, that the KCLBA inappropriately funded Grand Rapid's purchase of the properties from the Kent County Treasurer, and that the Legislature did not intend for local governmental units to act as a 'straw man' to avoid a public sale of the properties." *Id.* at 515. The Michigan Court of Appeals disagreed and concluded that:

> Grand Rapids purchased the properties as part of its obligation to provide for the health, safety, and welfare of its community and then conveyed them to the KCLBA to fulfill the public purpose of restoring blighted properties and neighborhoods and to provide housing on tax-foreclosed properties. Language cannot be read into MCL 211.78m to proscribe how Grand Rapids chooses to effectuate the public purpose. Although Grand Rapids entered into an agreement with the KCLBA before purchasing the properties from the Kent County Treasurer, and the KCLBA placed the money in escrow for Grand Rapids to purchase the properties from the Kent County Treasurer, it does not follow from the *Rutland Twp.* analysis that the transactions should be invalidated under MCL 124.755(6) as a "sham."

36

*Id.* at 516. "Other than the restriction that the purchase be for a public purpose, the Legislature did not restrict in any way how Grand Rapids may convey the property thereafter. MCL 211.78m." *Id.* at 517. *See also City of Bay City v. Bay Cnty. Treasurer*, 292 Mich. App. 156, 159, 167 (2011) (finding the City's stated public purpose – "to reduce the number of vacant tax reverted properties within [its] limits thereby minimizing the real and present dangers they present and to remove certain blighted conditions present on the subject properties" and thus "ensure a healthy and growing tax base" – sufficient, noting " it is not for the courts to read into MCL 211.78m(a) restrictions or conditions on what constitutes a public purpose that are not within the language of the statute itself and that essentially usurp the Legislature's authority to determine what constitutes a public purpose").

The GPTA creates a scheme whereby the foreclosing governmental unit must offer the tax-foreclosed properties for sale to the state first, then the city, village, or township (as in this case), then the county in which the property is located. MCL 211.78m(1). Any purchase by the city, village, township, or county must be for a public purpose. MCL 211.78m(1). The Michigan Court of Appeals explained in *Rental Properties Owners* that the GPTA otherwise does not "place restrictions on, or even address, a local governmental unit's use or subsequent sale of such properties." *Id.* at 514. As the SNRI Defendants explain in their reply brief, "there

37

was nothing unlawful with the OCT's tax foreclosure of Plaintiffs' properties, the City's exercise of its right of first refusal, or SNRI's purchase of the Properties [from the City]." (SNRI Defs.' Reply at p. 2, PageID.1975.)

The SNRI Defendants thus contend that there is no legal basis for a claim of unjust enrichment against them because they acquired the subject properties through the actions of the Oakland County Treasurer and the City, not from the Plaintiffs, and thus did not receive a benefit from Plaintiffs. They rely in part on *Karaus v. Bank of New York Mellon*, 300 Mich. App. 9 (2012), for the proposition that when a defendant receives a benefit from a third party, and not through the actions of the plaintiff directly, there is no receipt of a benefit by the defendant from the plaintiff as required for a claim of unjust enrichment. (SNRI Defs.' Mot. at pp. 15-16, PageID.194-95.)[7] However, courts have found that this *Karaus* holding "does not

---

[7] In *Karaus*, a homeowner borrowed money from a bank to finance construction on his house and, in return, the homeowner granted a mortgage to the bank. The plaintiff performed construction work on the home, but the homeowner did not pay the plaintiff in full. The plaintiff then brought an unjust enrichment claim against the bank that held the mortgage. The Michigan Court of Appeals affirmed judgment in favor of the bank on the grounds that the bank did not obtain a benefit directly from the plaintiff. *Karaus*, 300 Mich. App. at 23. The court noted that the bank was "completely uninvolved" with the agreement between the plaintiff and the homeowner, and it found no evidence that the bank "requested any of the work performed by plaintiff or misled plaintiff to receive any benefit." *Id.* ("The mere fact that a third person benefits from a contract between two other persons does not make such third person liable in quasi-contract, unjust enrichment, or restitution").

stand for the proposition that a plaintiff may prevail against a defendant on an unjust enrichment theory only if the plaintiff directly conferred the benefit upon the defendant. On the contrary, the court in *Karaus* recognized the possibility that a plaintiff may recover from a defendant upon whom he did not confer a benefit if the defendant has engaged in misleading conduct that led to the plaintiff's loss." *Kerrigan v. Visalus, Inc.*, 112 F. Supp. 3d 580, 614 (E.D. Mich. 2015).

Defendants contend that Plaintiffs have pleaded no allegations of misconduct, wrongdoing or misleading conduct by the SNRI Defendants, but instead complain of Defendants' lawful use of the Michigan foreclosure law. Plaintiffs claim that "the recipients of the 'unjust consideration' were not only involved with the transfer of the surplus proceeds/equity from Plaintiffs, but orchestrated and participated in a scheme or a conspiracy to strip the equity of plaintiffs' properties through concerted action." (Pls.' Resp. at p. 22, PageID.1721.) However, Plaintiffs offer only conclusory allegations in support of their unjust enrichment claim. To the extent Plaintiffs assert that the SNRI Defendants are liable to them for unjust enrichment because they were involved in a "scheme" or "conspiracy" to "strip the equity from Plaintiffs' properties," that claim fails because, as explained above, there is nothing improper or unlawful with the Oakland County Treasurer's foreclosure of Plaintiffs' properties, the City's exercise of its statutory right of first refusal, or SNRI's

39

purchase of the properties. *See Rental Prop. Owners*, 308 Mich. App. at 516-17. "There must be more than a benefit received by a party, the party 'is liable to pay therefore only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it.'" *Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662, 669 (E.D. Mich. 2008) (quoting *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 546 (1991)). Accordingly, for all of these reasons, Plaintiffs fail to state an unjust enrichment claim against the SNRI Defendants, and that claim is dismissed.

### D.   Whether Plaintiffs Have Stated Any Claims Against Defendants SNPHC, Simon and Libbett Individually

The SNRI Defendants further assert that Plaintiffs' Complaint must be dismissed against Defendants SNPHC, Simon and Libbett because there is not a single reference to these three defendants in any of Plaintiffs' Counts in their Complaint. (SNRI Defs.' Mot. at pp. 18-20, PageID.197-99.) The SNRI Defendants contend that there is in fact only limited, one or two paragraph references to these three defendants throughout the Complaint. (*Id.*)

Plaintiffs failed to respond to this argument. (See Pls.' Resp.) The SNRI Defendants argue that Plaintiffs therefore have abandoned their claims against SNPHC, Simon and Libbett by failing to respond to this argument. (SNRI Defs,'

Reply at pp. 6-7, PageID.1979-80.) *See Cruz v. Capital One, N.A.*, 192 F. Supp. 3d 832, 838-39 (E.D. Mich. 2016) ("A plaintiff abandons undefended claims.") (citing *Doe v. Bredesen*, 507 F.3d 998, 1007-08 (6th Cir. 2007)); *Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 797 (E.D. Mich. 2010) (explaining that where a plaintiff fails to respond to an argument in a motion to dismiss, "the Court assumes he concedes this point and abandons the claim.").

First, Defendants are correct that there is no reference to Defendants SNPHC, Simon or Libbett in any of the Counts in Plaintiffs' Complaint. The SNRI Defendants are also correct that Defendants Simon and Libbett are only mentioned in two paragraphs each in Plaintiffs' 150 paragraph Complaint. Specifically, Defendant Simon appears when discussing the parties' identities in paragraph 10 ("Defendant Mitchell Simon is a CPA and the Treasurer of the SNPHC and Board member of SNPHC.") and in the General Allegations in paragraph 71 ("Meisner, Zorn, Simon, Susan Ward - Witkowski and Siver knew that their acts would remove the subject properties from the tax rolls of Southfield for the gain of SNRI."). (Compl. ¶¶ 10, 71, PageID.3, 13.) Defendant Libbett appears only in paragraph 11 ("Defendant E'toile Libbett is a real estate broker and board member of SNRI.") and paragraph 68 ("Defendants Zorn, Siver, Libbett entered into a conspiracy which to engage in a scheme that conducted a pattern of unlawful activity affecting interstate

commerce."). (Compl., ¶¶ 11, 68, PageID.3, 12.) Further, Defendants Simon and Libbett's names are only even mentioned one time each in the body of Plaintiffs' Response brief, at page 3 ("Former Southfield official Gerald Witkowski as well as SNPHC Treasurer Mitchell Simon received proceeds from the equity of Plaintiffs' properties."), and at page 24 ("Likewise, the SNRI has as its three members Zorn, Siver and a politically connected Realtor Defendant E'Toile Libbett."). (Pls.' Resp. at pp. 3, 24, PageID.1702, 1723.)

The Court agrees with Defendants that these limited, conclusory allegations as to Defendants Simon and Libbett fail to state a claim against these two defendants. A plaintiff's complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Plaintiffs' Complaint does not meet these standards with respect to their allegations against Defendants Simon and Libbett. Plaintiffs' Complaint fails to plead how either defendant is allegedly liable to Plaintiffs under any of the claims pleaded, and Plaintiffs' claims against Defendants Simon and Libbett therefore are dismissed.

42

However, while the SNRI Defendants contend in their motion that "the only reference to Defendant SNPHC appears when discussing the parties' identities" and that "[t]his lone allegation is no basis to impose liability against the SNPHC, let alone sufficient to state a cause of action against," (SNRI Defs.' Mot. at p. 18-19, PageID.197-98), that is not correct. While it is true that Defendant SNPHC is not named in any of the Counts in Plaintiffs' Complaint, SNPHC is named in multiple paragraphs in the General Allegations section of Plaintiffs' Complaint, generally alleging that SNPHC provided funds to the City of Southfield to purchase foreclosed properties pursuant to its statutory right of first refusal, and complaining of the City officials' involvement with SNPHC. (Compl. ¶¶ 44, 46, 48-50, 61, 67, and 83(e), PageID.9-10, 12, 16.) Defendant SNPHC is also discussed in Plaintiffs' Response brief, primarily with regard to allegations that SNPHC provided funds to the City of Southfield to purchase foreclosed properties from the Oakland County Treasurer, which were then transferred to Defendant SNRI, as part of a "scheme" to unconstitutionally take Plaintiffs' property rights. (See Pls.' Resp. at pp. 2, 3, 14, 15, 18, 19, 24, PageID.1701-02, 1713-14, 1717-18, 1723.)

Although the Court could find that Plaintiffs waived any opposition to Defendants' motion with regard to Defendant SNPHC by failing to respond to it, *see Mekani*, 752 F. Supp. 2d at 797 (explaining that where a plaintiff fails to respond to

an argument in a motion to dismiss, "the Court assumes he concedes this point and abandons the claim."), the Court finds that, even though Plaintiffs failed to specifically include allegations against Defendant SNPHC in any of Plaintiffs' Counts, they have sufficiently alleged SNPHC's involvement with the other defendants in the General Allegations section of their Complaint, and thus will decline to dismiss Defendant SNPHC on this basis.

### E. Whether Plaintiffs Have Stated a Takings Claim Against the SNRI Defendants Under the United States or Michigan Constitutions

Plaintiffs argue in their Response brief that they have stated a Fifth Amendment Takings claim and a claim under the Michigan Constitution against all SNRI Defendants. (Pls.' Resp. at pp. 10-21, PageID.1709-20.) Plaintiffs' counsel stated that the hearing that they assert this claim in Count II of their Complaint. The Court notes that while the takings claim in Count I (Fifth Amendment and Fourteenth Amendment/§ 1983 claim) is expressly asserted "Against Oakland County, Andrew Meisner, City of Southfield, Fred Zorn, Ken Siver, Susan Witkowski and Gerald Witkowski Only" (Compl. PageID.18), Count II (Post Taking Claim for Just Compensation Under the Fifth Amendment – Inverse Condemnation) is not similarly expressly limited. However, Count II only contains allegations against the Oakland County and Southfield Defendants, and does not include any

44

allegations against any of the SNRI Defendants, and this takings claim could be dismissed against the SNRI Defendants for this reason.[8]

Assuming that Plaintiffs have asserted a constitutional taking claim against the SNRI Defendants in their Complaint, those defendants contend that such a claim fails for several reasons: (1) there is no recognizable claim for taking of "surplus equity;" (2) Plaintiffs failed to plead the SNRI Defendants are state actors; and (3)

---

[8] The Court further notes that Count II is titled as a "Post Taking Claim for Just Compensation Under the Fifth Amendment – Inverse Condemnation." Section 1983 is the "exclusive remedy for constitutional violations," *Foster v. Michigan*, 573 F. App'x 377, 391 (6th Cir. 2014), and Plaintiffs cannot proceed "directly" against these defendants under the Fifth and Fourteenth Amendments. *Thomas v. Shipka*, 818 F.2d 496, 499 (6th Cir. 1987) (holding that "in cases where a plaintiff states a constitutional claim under 42 U.S.C. § 1983, that statute is the exclusive remedy for the alleged constitutional violations"), *vacated and remanded on other grounds*, 488 U.S. 1036 (1989); *Woods Cove, III, LLC v. City of Akron*, No. 5:16-CV-1016, 2018 WL 4104186, at *5 n.15 (N.D. Ohio Aug. 29, 2018) ("Therefore, to the extent plaintiffs are attempting to assert a direct constitutional claim under the Fifth Amendment, that is grounds enough for failure of the claim."). Count II thus can be dismissed on this basis, or can be subsumed with Count I.

To the extent Plaintiffs seek to assert an inverse condemnation claim under state law, such a claim is encompassed by Count III of Plaintiffs' Complaint, asserting a taking claim under the Michigan Constitution, Article X, Section 2. *See Biff's Grills, Inc. v. Michigan State Highway Comm'n*, 75 Mich. App. 154, 156-57 (1977) (recognizing that an inverse condemnation claim is the "means of enforcing the constitutional ban on uncompensated takings of property"); *see also Fox v. Cnty. of Saginaw*, No. 19-CV-11887, 2021 WL 120855, at *13 (E.D. Mich. Jan. 13, 2021) (reaching the same conclusion); *Arkona, LLC v. Cnty. of Cheboygan*, No. 19-CV-12372, at *9 (E.D. Mich. Jan. 15, 2021) (same). Count II can be dismissed for this reason as well.

Plaintiffs failed to plead that SNRI Defendants deprived Plaintiffs of any constitutional right. (SNRI Defs.' Reply at pp. 3-6, PageID.1976-79.)

The Takings Clause of the Fifth Amendment prohibits taking "private property ... for public use, without just compensation." U.S. Const. amend. V. The clause applies to state governments through the Fourteenth Amendment. *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001). The Sixth Circuit has articulated a two-part test in evaluating claims that a governmental action constitutes a taking of private property without just compensation. First, "the court must examine whether the claimant has established a cognizable property interest for the purposes of the Just Compensation Clause." *Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 481 (6th Cir. 2004) (internal quotation marks omitted); *see also Raceway Park, Inc. v. Ohio*, 356 F.3d 677, 683 (6th Cir. 2004) ("[T]here is no taking if there is no private property in the first place."). Second, "where a cognizable property interest is implicated, the court must consider whether a taking occurred." *Coalition for Gov't Procurement*, 365 F.3d at 481. "[T]he existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source such as state law." *Phillips v. Washington Legal Found.*, 524 U.S. 156, 164 (1998) (internal quotation marks omitted).

46

First, as discussed above, and as explained in this Court's prior Opinion and Order (ECF No. 62), the Michigan Supreme Court made clear in *Rafaeli* that a plaintiff's only "property interest" surviving a tax-foreclosure is not in the real property itself, but only in the surplus proceeds, if any, resulting from the post-foreclosure sale of the property at an auction. *Rafaeli*, 505 Mich. at 484. *Rafaeli* did not confer a cause of action for a taking as to "surplus equity," explaining that "when property is taken to satisfy an unpaid tax debt, just compensation requires *the foreclosing government unit* to return any proceeds from the tax-foreclosure sale *in excess* of the delinquent taxes, interest, penalties, and fees reasonably related to the foreclosure and sale of the property – *no more, no less*." *Id*. at 483-84 (emphases added). The Court expressly "reject[ed] the premise that just compensation requires that plaintiffs be awarded the fair market value of their properties so as to be put in as good of position had their properties not been taken at all." *Id.* at 483. The Court noted that the *Rafaeli* plaintiffs (like the Plaintiffs here) "conflate equity with surplus proceeds," but that the Court is "unaware of any authority affirming a vested property right to equity held in property generally." *Id.* at 484 n.134 ("The question presented is whether a former property owner retains the ability to collect any surplus proceeds that might result after the government seizes title to real property for failure to pay taxes *and then sells that property for more than the tax delinquency*.")

(emphasis added). Plaintiffs concede in their Response brief that *Rafaeli* "does not address the exact fact situation that is presented by the instant action because it did not opine on the remedy for a taking violation when there is no auction." (Pls.' Resp. at p. 13, PageID.1712.)

In this case, the Plaintiffs' properties were not sold at an auction (like in *Rafaeli*) and no "surplus proceeds" were generated when the Oakland County Treasurer sold the properties to the City of Southfield for the minimum bid. The Oakland County Treasurer, the "foreclosing government unit," thus did not obtain any "surplus proceeds" that should be returned to Plaintiffs under *Rafaeli*. Plaintiffs allege that the City then conveyed the properties to SNRI for $1.00. (Compl. ¶¶ 21-27, PageID.5-7.) Some, but not all, of the subject properties were then rehabilitated and sold by Defendant SNRI, one to two years later, to individual buyers. Plaintiffs cite no authority for permitting them to recover proceeds from the sale of the properties, years after the foreclosure and after rehabilitation and repair of the properties by the non-profit Defendants.

Plaintiffs have failed to plead that the SNRI Defendants denied Plaintiffs a right guaranteed by the United States or Michigan Constitutions, and thus fail to state a takings claim against the SNRI Defendants.[9]

---

[9] In light of this ruling, the Court need not address the SNRI Defendants' argument that Plaintiffs have failed to plead or allege that Defendants SNRI, SNPHC, Simon or Libbett are state actors.

49

## IV.  CONCLUSION

For the reasons set forth above, the Court **GRANTS** the SNRI Defendants'

Motion to Dismiss and **DISMISSES WITH PREJUDICE** Plaintiffs' claims against

Defendants Southfield Neighborhood Revitalization Initiative ("SNRI"), Southfield

Nonprofit Housing Corporation ("SNPHC"), Director E' Toille Libbett, and

Mitchell Simon.[10]

IT IS SO ORDERED

Dated: October 4, 2021                    s/Paul D. Borman
                                          Paul D. Borman
                                          United States District Judge

---

[10] The Court concurs, for the most part, with the Michigan Court of Appeals in footnote 6 in *Jackson v. Southfield Neighborhood Revitalization Initiative, LLC, Fred Zorn, Etoile Libbett, Michael A. Mandelbaum, City of Southfield, Ken Siver, Oakland County Treasurer, Southfield Non-Profit Housing Corporation, Susan Ward Witkowski, Gerald Witkowski, and Andrew Meisner*, No. 344058, 2019 WL 6977831 (Mich. Ct. App. Dec. 19, 2019), *vacated in part by the Michigan Supreme Court*, 953 N.W.2d 402 (Mich. 2021), that "[a]lthough we find no basis for plaintiffs' substantive due process claims, we can appreciate their suspicion surrounding defendants' behavior. While the record before us does not provide evidentiary support for plaintiffs' claim that defendants sought to defraud these plaintiffs out of equity in their homes, the fact that elected officials were using their political status … by obtaining properties before they could go to auction following tax foreclosure is, at a minimum, troubling. Clearly, defendants, particularly the elected officials, have even attempted to avoid the appearance of impropriety, as a clear conflict of interest exists regarding their involvement with SNPHC and SNRI. This type of behavior is not only shocking to the consc[ience], but also rightfully breeds distrust among their electorate. Regardless, the instant lawsuit is regrettably the incorrect vehicle to further explore the legality of defendants' actions."