UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAWANDA HALL, et al.,

                Plaintiffs,              Case No. 20-12230

v.                               Paul D. Borman
                               United States District Judge
OAKLAND COUNTY TREASURER
ANDREW MEISNER, OAKLAND
COUNTY, SOUTHFIELD NON-
PROFIT HOUSING CORPORATION,
and CITY OF SOUTHFIELD, *et al*.,

                Defendants,
_____/

## OPINION AND ORDER GRANTING DEFENDANTS CITY OF SOUTHFIELD, FREDERICK ZORN, KENSON SIVER, SUSAN WARD-WITKOWSKI, GERALD WITKOWSKI, AND IRVIN LOWENBERG'S MOTION TO DISMISS (ECF NO. 34)

On August 18, 2020, Plaintiffs, former real property owners in the City of

Southfield, Michigan, filed a proposed class action complaint against 13 defendants.

The defendants can be separated into four groups: (1) Oakland County Treasurer

Andrew Meisner ("Treasurer") and Oakland County (collectively, the "Oakland

County Defendants"); (2) City of Southfield ("Southfield"), City Manager Frederick

Zorn, Mayor Kenson Siver, Former City Attorney Susan Ward-Witkowski, Gerald

Witkowski (Code Enforcement and Eviction Administrator for SNRI), and Treasurer

Irvin Lowenberg (collectively, the "Southfield Defendants"); (3) Southfield

Neighborhood Revitalization Initiative ("SNRI"), Southfield Nonprofit Housing Corporation ("SNPHC"), Director E' Toille Libbett ("Director SNRI"), and Mitchel Simon ("Treasurer SNPHC") (collectively, the "SNRI Defendants"); and (4) Habitat for Humanity of Oakland County, Inc. ("Habitat"). (ECF No. 1, Complaint.)

The Complaint contains seven counts: Count I – Taking Without Just Compensation – Fifth Amendment, under 42 U.S.C. § 1983, against the Oakland County Defendants and Southfield Defendants only; Count II – Inverse Condemnation – Fifth Amendment; Count III – Violation of the Takings Clause of the Michigan Constitution; Count IV – Eighth Amendment Violation – Excessive Fine Forfeiture, against Oakland County only; Count V – Procedural Due Process, against Southfield and Oakland County Treasurer only; Count VI – Substantive Due Process, against Southfield and Oakland County Treasurer only; and Count VII (mislabeled "Count VI") – Unjust Enrichment, against all Defendants except Oakland County. (Compl.) Plaintiffs ask the Court to award them the "taken and/or forfeited equity" in their foreclosed properties along with money damages for the alleged constitutional violations and claim of unjust enrichment. (*Id.*, Relief Requested, PageID.30-31.)

Now before the Court is Defendants City of Southfield, Frederick Zorn, Kenson Siver, Susan Ward-Witkowski, Gerald Witkowski, and Irvin Lowenberg's

2

(the "Southfield Defendants") Motion to Dismiss (ECF No. 34).[1] The Court held a hearing using Zoom videoconference technology on September 28, 2021, at which counsel for Plaintiffs and Defendants appeared. For the reasons that follow, the Court GRANTS the Southfield Defendants' Motion to Dismiss Complaint.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

The eight named Plaintiffs in this action allege that they previously owned real property located in the City of Southfield, Michigan. All named Plaintiffs failed to pay property taxes and their properties were foreclosed by Defendant Oakland County Treasurer on the basis of non-payment of taxes pursuant to Michigan's General Property Tax Act ("GPTA"), Mich. Comp. Laws § 211.1 *et seq.* (Compl. ¶ 1, PageID.2.)

The GPTA permits the recovery of unpaid real-property taxes, penalties, interest, and fees through the foreclosure and sale of the property on which there is a tax delinquency. *See* Mich. Comp. Laws § 211.1 *et seq*. Under the Act, the county

---

[1] The three other groups of Defendants also filed separate motions to dismiss. The Court granted Defendant Habitat of Humanity's Motion to Dismiss on April 20, 2021 (ECF No. 58), and the Oakland County Defendants' Motion to Dismiss on May 21, 2021. (ECF No. 62). The SNRI Defendants' motion to dismiss will be addressed separately by the Court. (See ECF No. 31, SNRI Defendants' Motion to Dismiss.)

treasurer may elect to act as the collection agent for the municipality where the property is located when taxpayers become delinquent on their property taxes. Mich. Comp. Laws § 211.78(8). After three years of delinquency, multiple notices and various hearings, tax-delinquent properties are forfeited to the county treasurer; foreclosed on after a judicial foreclosure hearing by the circuit court and title to the forfeited property is transferred to the county treasurer; and, if the property is not timely redeemed by March 31 of that year, fee simple title is vested absolutely in the county treasurer, without any further redemption rights available to the delinquent taxpayer. Mich. Comp. Laws § 211.78 *et seq.* As the Act applied during the time periods relevant to this action, after foreclosure, the property is then disposed of as follows:

(1) The state or municipality where the property is located has the right to claim the property in exchange for the payment to the county of unpaid taxes, interest and other costs (the "minimum bid");[2] or

---

[2] The longstanding ability for municipalities to purchase tax foreclosed properties for an amount equal to the taxes and penalties due and owing has since been eliminated as a result of a recent amendment to the GPTA, Mich. Comp. Laws § 211.78m, which became effective on January 1, 2021. The amended GPTA now allows the state and/or municipalities to purchase tax foreclosed properties "at the greater of the minimum bid or its fair market value[.]" Mich. Comp. Laws § 211.78m(1). While this amendment will affect the manner in which future tax foreclosure sales are handled, it does not provide a basis for liability against the defendants in this action. The Act provides that any retroactive effect is dependent upon a decision of the Michigan Supreme Court that "its decision in Rafaeli, LLC v.

4

(2) If the state or municipality does not exercise their right of first refusal, the property is put up for sale at a public auction in July and, if not sold, again in October.

Mich. Comp. Laws § 211.78m.

Plaintiffs in this case allege that a judgment of foreclosure was entered against each of them and pertaining to each Plaintiff's property, by the Oakland County Circuit Court. (Compl. ¶¶ 21-28, PageID.5-7.) Specifically, Plaintiffs allege:

- Plaintiff **Tawanda Hall** owed $22,642.00 in delinquent property taxes.[3] The Oakland County Treasurer foreclosed, issued a tax deed in favor of the City of Southfield for the minimum amount due under the GPTA, and the City quit claimed the property to SNRI for $1.00. The property was subsequently sold for $308,000.00.

- Plaintiff **Carolyn Miller** owed $29,759.00 in delinquent property taxes. The Oakland County Treasurer foreclosed, issued a tax deed in favor of the City of Southfield for the minimum amount due under the GPTA, and the City quit claimed the property to SNRI for $1.00. The property was subsequently sold for $120,000.00.

- Plaintiff **American Internet Group, LLC** owed $9,974.00 in delinquent property taxes. The Oakland County Treasurer foreclosed, issued a tax deed in favor of the City of Southfield for the minimum amount due under the GPTA, and the City quit claimed the property to SNRI for $1.00. The property was subsequently sold for $149,900.00.

---

Oakland County, docket no. 156849, applies retroactively." Mich. Comp. Laws § 211.78t(1)(b)(i). There has been no such decision from the Michigan Supreme Court.

[3] Plaintiffs plead that this amount includes the "delinquent property taxes, interest penalties, and fees." (Compl. ¶ 21, PageID.5.)

- Plaintiff **Anthony Akande** owed $2,415.00 in delinquent property taxes. The Oakland County Treasurer foreclosed, issued a tax deed in favor of the City of Southfield for the minimum amount due under the GPTA, and the City quit claimed the property to SNRI for $1.00. The property was subsequently sold for $152,500.00.

- Plaintiffs **Curtis Lee** and **Coretha Lee** owed $30,547.00 in delinquent property taxes. The Oakland County Treasurer foreclosed, issued a tax deed in favor of the City of Southfield for the minimum amount due under the GPTA, and the City quit claimed the property to SNRI for $1.00. The property was subsequently sold for $155,000.00.

- Plaintiff **Marcus Byers** alleges he had "equitable title with his court appointed guardian" in the subject property and owed $4,113.00 in delinquent property taxes. The Oakland County Treasurer foreclosed, issued a tax deed in favor of the City of Southfield for the minimum amount due under the GPTA, and the City quit claimed the property to SNRI for $1.00, which still holds title to the property. Plaintiffs allege the property has a fair market value of $90,000.00.

- Plaintiff **Kristina Govan** owed $45,350.00 in delinquent property taxes. The Oakland County Treasurer foreclosed, issued a tax deed in favor of the City of Southfield for the minimum amount due under the GPTA, and the City quit claimed the property to SNRI for $1.00, which still holds title to the property. Plaintiffs allege the property "is worth in excess of the amount owed in taxes."

(Compl. ¶¶ 21-27, PageID.5-7.)

Plaintiffs assert that "[m]ost of the Plaintiffs had entered into delinquent property installment agreements [with the County]," even though "[t]he Treasurer knew the Circuit Court had already entered a Judgment of foreclosure prior to entering the delinquent property tax payment plans with Plaintiffs ... which

6

purportedly prevented foreclosure." (*Id*. ¶¶ 31-32, PageID.7.) Plaintiffs claim that they "made a payment to the Treasurer with the promise that such payment would prevent tax foreclosure," and "in many instances ... made substantial payments of 1-2 years of property taxes prior to March 31st of the year of foreclosure," but that the County still foreclosed on their properties. (*Id*. ¶¶ 31, 33-34, PageID.7.)

As a result of the foreclosures, Plaintiffs lost all title and interest in their properties, and title in fee vested in the foreclosing government unit ("FGU"), in this case, the Oakland County Treasurer. (*Id*. ¶¶ 21-28, PageID.5-7.) *See* Mich. Comp. Laws § 211.78k(6). Pursuant to Mich. Comp. Laws § 211.78m(1) (as it existed at that time), the Oakland County Treasurer offered the properties to the City of Southfield under the City's right of first refusal. (*Id*. ¶ 29, PageID.7.) In each case, the City paid the Treasurer the minimum amount due under the statute – the delinquent tax amount – with funds provided by Defendant Southfield Nonprofit Housing Corporation ("SNPHC"). (*Id*. ¶¶ 21-27, 83(e), PageID.5-7, 16.) The City in turn conveyed each of the properties to Defendant Southfield Neighborhood Revitalization Initiative, LLC ("SNRI") for $1.00. (*Id.*)

SNRI was created by Defendant SNPHC, and the SNPHC is the sole member of SNRI. (ECF No. 31, SNRI Defs.' Mot. at p. 3, PageID.182.) SNRI was formed for the purpose of purchasing tax foreclosed and other properties, improving such

properties, selling such properties to persons of low to moderate income when possible, and improving housing and homeownership opportunities in the City of Southfield, and to otherwise restore tax-foreclosed properties on the tax-roll. (*Id.*, citing ECF No. 31-2, SNRI Operating Agreement.)

According to Defendants, under this initiative, SNRI entered into an agreement to work with Defendant Habitat for Humanity ("Habitat"), to rehabilitate the homes that are salvageable. (SNRI Defs.' Mot. at p. 3, PageID.182; ECF No. 24, Habitat Def.'s Mot. at p. 1, PageID.145.) Plaintiffs allege that Habitat received "close to $300,000 in funds from SNRI in 2016, [and] was paid over 1 million dollars from SNRI since its inception in June of 2016 by being the recipient of often needless repairs, as well as the conveyance of property from SNRI, City of Southfield, and the SNPHC for less than full consideration." (Compl. ¶ 46, PageID.9.)

Plaintiffs assert that the City of Southfield, SNPHC and the SNRI have identical and interchangeable governance. Plaintiffs allege that Southfield Mayor Kenson Siver is a board member of SNPHC and that Southfield City Manager Fred Zorn is "a managing member of SNRI and ... also a board member of SNPHC." (Compl. ¶¶ 7, 49, PageID.3, 10.) Mayor Siver is listed as the President of SNPHC, which is the sole member of SNRI, and Zorn, Mitchell Simon (a CPA), and E'toile Libbett (a realtor) are listed as managers of SNRI. (SNRI Operating Agreement,

8

PageID.210.) Plaintiffs allege that Defendants Siver, Zorn, City Attorney Susan Ward-Witkowski, and Gerald Witkowski "used power under the GPTA for personal economic gain," that they understood "that they would personally benefit and utilize their power to benefit the SNRI and SNPHC," and "knew their acts would remove the subject properties from the tax rolls of Southfield for the gain of SNRI." (Compl. ¶¶ 64, 67, 71, PageID.12-13.)

## B. The Michigan Supreme Court's Decision in *Rafaeli, LLC v. Oakland County*

On July 17, 2020, the Michigan Supreme Court issued its opinion in *Rafaeli, LLC v. Oakland County*, 505 Mich. 429 (2020). In *Rafaeli*, two former property owners brought an action against Oakland County and its Treasurer, Andrew Meisner, alleging due process and equal-protection violations as well as an unconstitutional taking by selling their tax-foreclosed properties at public auction in satisfaction of their tax debts and then retaining the surplus proceeds from that sale of their properties. *Id.* at 438-40.

The Oakland County Circuit Court had granted summary disposition to defendants, finding that defendants did not "take" plaintiffs' properties "because plaintiffs forfeited all interests they held in their properties when they failed to pay the taxes due on the properties." *Id.* at 440. Plaintiffs appealed, and the Michigan

Court of Appeals affirmed the circuit court's opinion and "rejected plaintiffs' argument that the GPTA's 'scheme' allows for unconstitutional takings," holding that "defendants acquired their interest in plaintiffs' properties 'by way of a statutory scheme that did not violate due process' and thus defendants were not required to compensate plaintiffs for property that was lawfully obtained." *Id.* at 441. Plaintiffs sought leave to appeal to the Michigan Supreme Court, which granted plaintiffs' application and ordered the parties to address the issue of "whether defendants violated the Takings Clause of the United States Constitution, the Michigan Constitution, or both by retaining the proceeds from the sale of tax-foreclosed property that exceeded the amount of the taxes, penalties, interest, and fees owed on the property." *Id.*

The Michigan Supreme Court concluded that a property owner does not lose all rights to the property during the tax foreclosure proceedings. The Court first explained that "forfeiture" under the GPTA simply permits the county and county treasurer to seek a judgment of foreclosure, but "does not affect title, nor does it give the county treasurer ... any rights, titles, or interests to the forfeited property. Therefore, we reject the premise that plaintiffs 'forfeited' all rights, titles, and interests they had in their properties by failing to pay their real-property taxes." *Id.* at 448-49.

10

The Court next addressed plaintiffs' due process concerns, noting that "the GPTA explicitly states its intent to comply with minimum requirements of due process and not create new rights beyond those prescribed in the Constitutions of our nation or this state." *Id.* at 451. The Court stated:

> As long as defendants comply with these due-process considerations, plaintiffs may not contest the legitimacy of defendants' authority to foreclose on their properties for unpaid tax debts, *nor may plaintiffs contest the sale of their properties to third-party purchasers*.

*Id.* (emphasis added); *see id.* at 451 ("The remedy for a taking of private property is just compensation, while the remedy for being deprived of property without due process of law is the return of the property.").

The Michigan Supreme Court held that Michigan's "common law recognizes a former property owner's property right to collect the surplus proceeds that are realized from the tax-foreclosure sale of the property." *Id*. at 470. The Court also found that Michigan's 1963 Constitution "protects a former owner's property right to collect the surplus proceeds following a tax-foreclosure sale under Article 10, § 2." *Id*. at 473. Because the common-law interest was protected by Michigan's Takings Clause, the GPTA could not abrogate that common law interest. *Id*. (explaining that "[w]hile the Legislature is typically free to abrogate the common law, it is powerless to override a right protected by Michigan's Takings Clause.").

11

Finally, the Supreme Court held that Oakland County's retention of the proceeds of the auction sale that exceeded the amount of property taxes owed and other charges and fees constituted an unconstitutional taking.

> Once defendants foreclosed on plaintiffs' properties, obtained title to those properties, and sold them to satisfy plaintiffs' unpaid taxes, interest, penalties, and fees related to the foreclosures, any surplus resulting *from those sales* belonged to plaintiffs. That is, after the sale proceeds are distributed in accordance with the GPTA's order of priority, any surplus that remains is the property of plaintiffs, and defendants were required to return that property to plaintiffs. Defendants' retention of those surplus proceeds under GPTA amounts to a taking of a vested property right requiring just compensation. To the extent the GPTA permits defendants to retain these surplus proceeds and transfer them into the county general fund, the GPTA is unconstitutional as applied to former property owners whose properties were sold at a tax-foreclosure sale for more than the amount owed in unpaid property taxes, interest, penalties, and fees related to the forfeiture, foreclosure, and sale of their properties.

*Id*. at 474-75 (emphasis added). *See also id.* at 476 (stating that the surplus proceeds of the sale "is a separate property right that survives the foreclosure process"). The Court clarified that "a former property owner has a compensable takings claim *if and only if* the tax-foreclosure sale produces a surplus." *Id.* at 477 (emphasis added).

The Michigan Supreme Court defined "just compensation" as "the amount of surplus proceeds generated from the tax foreclosure sale." *Id.* at 481-82 ("mak[ing] clear, the property 'taken' is the surplus proceeds from the tax-foreclosure sale of plaintiffs' properties to satisfy their tax debts"). The Court expressly "reject[ed] the

12

premise that just compensation requires that plaintiffs be awarded the fair market value of their properties so as to be put in as good of [a] position had their properties not been taken at all" because "this would run contrary to the general principle that just compensation is measured by the value of the property *taken*," and "plaintiffs are largely responsible for the loss of their properties' value by failing to pay their taxes on time and in full" and "[i]f plaintiffs were entitled to collect more than the amount of the surplus proceeds, not only would they be taking money away from the public as a whole, but they would themselves benefit from their tax delinquency." *Id.* at 483 (emphasis in original); *see also id.* fn. 134 ("[W]e are unaware of any authority affirming a vested right to equity held in property generally.").

> Accordingly, when property is taken to satisfy an unpaid tax debt, just compensation requires the foreclosing governmental unit to return any proceeds from the tax-foreclosure sale in excess of the delinquent taxes, interest, penalties, and fees reasonably related to the foreclosure and sale of the property – *no more, no less*.

*Id.* at 483-84 (emphasis added); *see id.* at 477 ("Indeed, a former property owner *only* has a right to collect the surplus proceeds from the tax-foreclosure sale; that is, a former property owner has a compensable takings claim *if and only if* the tax-foreclosure sale produces a surplus.") (emphases added).

The Michigan Supreme Court then held:

Plaintiffs, former property owners whose properties were foreclosed and sold to satisfy delinquent real-property taxes, have a cognizable, vested property right to the surplus proceeds resulting from the tax-foreclosure sale of their properties. This right continued to exist even after fee simple title to plaintiffs' properties vested with defendants, and therefore, defendants' retention and subsequent transfer of those proceeds into the county general fund amounted to a taking of plaintiffs' properties under Article 10, § 2 of our 1963 Constitution. Therefore, plaintiffs are entitled to just compensation, which in the context of a tax-foreclosure sale is commonly understood as the surplus proceeds.

*Id.* at 484-85.

### C.   The Southfield Defendants' Motion to Dismiss

The Southfield Defendants filed a motion to dismiss, arguing that Plaintiffs' claims against them are legally and factually deficient and must be dismissed under Fed. R. Civ. P. 12(b)(6). (ECF No. 34, Southfield Mot.) The Southfield Defendants argue that Plaintiffs Tawanda Hall, Carolyn Miller, American Internet Group, LLC, and Anthony Akande's claims are barred by res judicata for having previously litigated claims against the Southfield Defendants relating to the tax foreclosures and loss their properties, and that Plaintiff Marcus Byers lacks standing to bring any claims because he did not own the subject property. The Southfield Defendants contend that Plaintiffs have failed to state a Fifth Amendment Takings Claim against them because Plaintiffs have no cognizable interest in any "forfeited equity." They assert that Plaintiffs' Eighth Amendment claim fails because the Southfield

Defendants never took any action against Plaintiffs. These Defendants assert that Plaintiffs cannot state a substantive or procedural due process claim against them because Plaintiffs' asserted property interest – the alleged forfeited equity – is not cognizable under Michigan law, they have not pleaded a deprivation "at the hands of the Southfield Defendants," and Plaintiffs had adequate post-deprivation remedies. Finally, the Southfield Defendants argue that Plaintiffs' unjust enrichment claim fails because the Southfield Defendants never received a benefit from Plaintiffs, and no surplus proceeds were obtained by the County.

Plaintiffs filed a Response in opposition to the Southfield Defendants' motion to dismiss. (ECF No. 44, Pls.' Resp.) Plaintiffs argue that Plaintiffs Miller, American Internet Group, and Akande's claims are not barred by res judicata, that Plaintiff Byers does have standing in this action because he had an "equitable interest" in the subject property, and that Hall's prior dismissal was without prejudice and thus does not act as a res judicata bar. Plaintiffs further assert that they have stated a Fifth Amendment Takings claim and a claim under the Michigan Constitution against the Southfield Defendants for taking/retaining the surplus equity in their properties. Plaintiffs contend that they have stated an unjust enrichment claim against the Southfield Defendants because even though these Defendants did not directly retain any proceeds, they "orchestrated and participated in a scheme or conspiracy to strip

15

the equity of Plaintiffs' properties through concerted action." Plaintiffs further argue that if the Southfield Defendants' conduct did not violate the Fifth Amendment, they violated the substantive due process rights of Plaintiffs and violated the Eighth Amendment Excessive Fines clause.

The Southfield Defendants filed a reply brief in support of their motion to dismiss. (ECF No. 52, Southfield Reply.) The Southfield Defendants reassert that res judicata bars Plaintiffs Miller, Akande, American Internet Group, and Hall's claims, and that Plaintiff Byers lacks standing. They argue that Plaintiffs have failed to cite to any authority affirming a property right to "equity" in property generally after a tax foreclosure, and so Plaintiffs' takings and inverse condemnation claims fail. Defendants contend that Plaintiffs' unjust enrichment claim against the Southfield Defendants fails because Plaintiffs have failed to specifically plead how each Defendant allegedly "misled them." And, Plaintiffs' procedural and substantive due process claims fail because Plaintiffs have failed to identify a cognizable property interest, and have failed to show that the Southfield Defendants engaged in behavior that "shocks the conscience."

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. To state

a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Id*. at 539 (internal citations and quotation marks omitted); *see also Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue* Shield, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried* Chicken, 829 F.2d 10, 12 (6th Cir. 1987)). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the

defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is the defendant who "has the burden of showing that the plaintiff has failed to state a claim for relief." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015).

In ruling on a motion to dismiss, the Court may consider the complaint as well as: (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims; (2) matters of which a court may take judicial notice; (3) documents that are a matter of public record; and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (internal quotation marks and citations omitted); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings…. [C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies."); *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514

18

(6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings). Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co.*, 258 F.Supp.2d 718, 721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002).

### III.  ANALYSIS

### A.    Plaintiffs Hall, Miller, AIG, and Akande's Claims Against the Southfield Defendants are Barred by Res Judicata

The Southfield Defendants argue that the claims of Plaintiffs Tawanda Hall, Carolyn Miller, American Internet Group, LLC, and Anthony Akande are barred by res judicata. (Southfield Mot. at pp. 8-9, PageID.439-40.)

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75,

19

81 (1984). "The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action." *Adair v. State*, 470 Mich. 105, 121 (2004). Under Michigan law, "the doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Id.* Michigan thus "take[s] a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.*

### 1.    Plaintiff Tawanda Hall

In this case, Plaintiff Hall claims that her property was foreclosed on by the Oakland County Treasurer for a $22,642.00 tax debt. (Compl. ¶ 21, PageID.5.) After foreclosure, the City of Southfield exercised its right of first refusal under the GPTA and purchased the property for the amount of the tax debt (the statutory "minimum bid"), and then deeded the property to Defendant SNRI for $1.00. (*Id.*) Plaintiff claims that the property was subsequently sold for $308,000. (*Id.*)

In December 2018, after the property had been deeded to SNRI but before it had been sold for $308,000, Hall, proceeding pro se, filed suit in the Eastern District of Michigan (in this Court) against the Southfield Defendants (City of Southfield,

20

Frederick Zorn, Kenson Siver, Sue Ward-Witkowski, Gerald Witkowski, and Irvin Lowenberg) and other Defendants in this case. *Hall v. Meisner*, et al., Case No. 18-cv-14086 (Borman, J.). In that case, Hall made claims related to the foreclosure and subsequent sale of her tax-foreclosed property from Oakland County to the City of Southfield to the SNRI, alleging that "[t]his end run around Michigan law equates to a constitutional taking," and asserted claims for violation of the Fair Housing Act, due process, conspiracy and fraud under the RICO Act, and a state-law fraud claim. *Id.* ECF No. 9, Amended Complaint, PageID.76, 88-96. The Southfield Defendants filed a motion to dismiss Hall's claims in that case, and Hall agreed to the dismissal, through assistance from the Federal Pro Se Legal Assistance Clinic, and dismissed the Southfield Defendants with prejudice. *Id.* ECF No. 21, Stipulation for Voluntary Dismissal With Prejudice, PageID.251-52. "A voluntary dismissal with prejudice operates as a final adjudication on the merits and has a res judicata effect." *Warfield v. AlliedSignal TBS Holdings, Inc.*, 267 F.3d 538, 542 (6th Cir. 2001).

Plaintiffs first erroneously contend in their Response that "the actual Order of the Court was without prejudice." (Pls.' Resp. at p. 11, PageID.1180.) The voluntary stipulation of dismissal as to the Southfield Defendants in that case was *expressly* "with prejudice." *Hall v. Meisner, et al.*, Case No. 18-cv-14086, ECF No. 21. The

21

remaining, unserved, defendants were dismissed without prejudice. *Id.* ECF Nos. 19, 23.

Next, Plaintiffs' conclusory allegation that the stipulation of dismissal was somehow "ethically suspect" because she relied on the advice of a legal intern with the Pro Se Legal Assistance Clinic, who is now employed by the Southfield Defendants' counsel, is a non-starter. Defendants promptly noticed this Court of the potential conflict regarding Plaintiff Hall's prior suit and explained that the lawyer would be screened from any participation in this suit pursuant to the Michigan Rules of Professional Conduct. (ECF No. 9, Notice Pursuant to Mich. R. Pro. Conduct 1.10(B)(2).)

Plaintiffs do not otherwise dispute that the two actions involved the same parties or their privies or that the issues in this case were or could have been resolved in the first. Accordingly, the Court finds that Plaintiff Hall's claims against the Southfield Defendants are precluded by res judicata.

### 2. Plaintiffs Miller, American Internet Group, and Akande

In this case, Plaintiff Miller claims her property was foreclosed on for a $29,759.00 tax debt. (Compl. ¶ 22, PageID.5.) After foreclosure the City purchased the property from Oakland County for the $29,759.00 tax debt amount and deeded the property to the SNRI for $1.00. (Compl. PageID.39.) Plaintiff American Internet

Group claims its property was foreclosed on for $9,974.00 of delinquent property taxes. (Compl. ¶ 23, PageID.5-6.) The City also purchased this property for the tax debt and transferred it to the SNRI for $1.00. (Compl. PageID.42.) Similarly, Plaintiff Akande's property was allegedly foreclosed for $2,415.00, and the City purchased the property for that amount and transferred it to the SNRI for $1.00. (Compl. ¶ 24, PageID.6, 45.)

After the foreclosures and transfers in 2016, Miller, American Internet Group, and Akande, and others, filed suit in Oakland County Circuit Court in 2017 against the Oakland County Treasurer, the City of Southfield, and SNRI, alleging various discriminatory housing practices claims in relation to the foreclosure of their properties. (Southfield Mot. at p. 4, PageID.435, citing Ex. 1, ECF No. 34-2, *Ronald Hayes, et al. v. Oakland County Treasurer's Office, et al.*, Case No. 2017-157366-CZ (Michigan Sixth Judicial Circuit, 2017), State Court Complaint.) That state court complaint was based on the same premise as this case – that the County, City, and SNRI created a "scheme" to divest Southfield citizens of their homes and procure a profit through application of Michigan's tax-foreclosure process. (*See id.*, PageID.457.) That complaint alleged that "once certain properties owned by African-Americans were foreclosed upon for non-payment of delinquent real estate taxes, systematically the officials of the City of Southfield that designed this

discriminatory scheme made sure that these properties were requested to be held-back from public auction by the Oakland County Treasurers Office and subsequently designated for purchase by the City of Southfield, Non-Profit Housing Corporation," and "[t]hat immediately upon the City of Southfield reacquiring the real estate foreclosed upon ... then after placed the properties out-of-the-reach of the previous owners by transferring by Quit Claim Deed to an agency known as the Southfield Neighborhood Revitalization Initiative, LLC, a for profit limited liability company...." (*Id*. ¶¶ 9-10, PageID.460-61 (emphasis in original).) The complaint further alleged "the City of Southfield through the scheme alleged in the common allegations ... targeted [plaintiff's] homes for designation for non-bid transfer to the Southfield Non-Profit Housing Commission" and that "the transfer of these non-bid homes ... were actually transferred to a 'for profit' organization-SNRI, LLC, for the ultimate personal gain of yet to be exposed individuals." (*Id*. ¶¶ 43-44, PageID.467-68.) The complaint sought, in part, "the loss of equity (FMV) in their residential properties." (*Id*. PageID.469.)

Those state court plaintiffs then moved to amend the complaint to "remove the discrimination counts and add allegations that Plaintiffs made timely payments that were rejected by Defendant Oakland County Treasurer[.]" (ECF No. 32-4, State Court Motion to Amend, PageID.389-90.) In that motion to amend, the plaintiffs

alleged that "Southfield did not purchase the property for the minimum bid. Southfield quit claimed its interest to SNRI for no consideration. SNRI's Directors and/or Officers are City of Southfield officials who used their inside knowledge about these mortgage-free properties to acquire the properties for their own personal benefit and not for public purpose." (*Id*. PageID.394.)

All of the state court defendants moved to dismiss that action, and the state court judge dismissed the case with prejudice because "the claims alleged are clearly unenforceable as a matter of law," and denied the plaintiffs' motion to amend because the plaintiffs failed to provide the court with a proposed amended complaint and because any amendment would be futile. (ECF No. 34-3, Order Granting Summary Disposition.) This dismissal constitutes an adjudication on the merits for purposes of res judicata. *Chakan v. City of Detroit*, 998 F. Supp. 779 (E.D. Mich. 1998); *ABB Paint Finishing v. Nat'l Fire Ins.*, 223 Mich. App. 559 (1997).

The Southfield Defendants assert that the state court case involved the same core set of facts that are at issue in this case: (1) Plaintiffs' failure to pay property taxes, (2) the County's foreclosure on their properties due to the delinquent taxes, (3) the City's purchase of the properties after foreclosure pursuant to its statutory right of first refusal, and (4) the transfer of the properties from the City to SNRI. Both cases alleged a "scheme" whereby the County, City, and SNRI conspired to

take the homes of Southfield residents through the foreclosure process to procure a profit. (Southfield Mot. at p. 9, PageID.440) (State Court complaint, PageID.457, 460-61.) The Southfield Defendants assert that Plaintiffs could have brought the present claims in the state court proceedings, and are precluded from doing so now. (Southfield Mot. at p. 9, PageID.440.)

Plaintiffs respond that these their claims are not barred by res judicata because (1) the alleged "scheme to strip Plaintiffs' equity" was not known at the time of the state court suit, (2) the parties are not identical, and (3) the "landscape of the law has shifted." (Pls.' Resp. at pp. 7-10, PageID.1176-79.)[4]

---

[4] Plaintiffs rely, in part, on a state court order declining to accept reassignment of a class action from another court, to support their argument against res judicata in this case.  (Pls.' Resp. at p. 8, PageID.1177, citing ECF No. 44-7, PageID.1269-70.) However, that state court order declining reassignment is not persuasive authority. In that case, the defendants moved to have the case reassigned from Judge Denise Langford-Morris to Judge Hala Jarbou because Judge Jarbou handled the 2017 foreclosure case. Judge Jarbou declined reassignment as improper under the local court rule regarding assignment of cases, finding "the instant action does not arise out of the same transaction and occurrent that was before th[at] Court in 2016 [a bulk foreclosure action]" because "not all of the Plaintiffs' properties were foreclosed in 2017 by this Court" and thus "the instant action does not 'arise out of the same transaction and occurrence.'" (ECF No. 43-3, PageID.996-97.) In this case, the properties at issue are identical.

First, as previously found by this Court in its prior Opinion and Order (ECF No. 62, PageID.2198), Plaintiffs' state court lawsuit was based on essentially the same alleged "scheme" to induce tax foreclosures and transfer properties to SNRI for a profit. (State Court Complaint, PageID.457 (alleging the "scheme" was to "re-direct foreclosure upon homes to a private '<u>for profit organization</u>' – Southfield Neighborhood Revitalization Initiative, LLC so as to deny African-Americans to bid at a public auction an opportunity to reacquire their homes") (emphasis in original).) That state court complaint alleged that "the City of Southfield through the scheme alleged in the common allegations ... targeted [plaintiff's] homes for designation for non-bid transfer to the Southfield Non-Profit Housing Commission" and that "the transfer of these non-bid homes ... were actually transferred to a 'for profit' organization-SNRI, LLC, for the ultimate personal gain of yet to be exposed individuals." (State Court Complaint, ¶¶ 43-44, PageID.467-68.) The complaint sought as relief, in part, "the loss of equity (FMV) in their residential properties." (*Id.* PageID.469.) Moreover, when those state court plaintiffs moved to amend the complaint, the plaintiffs alleged that "Southfield did not purchase the property for the minimum bid. Southfield quit claimed its interest to SNRI for no consideration. SNRI's Directors and/or Officers are City of Southfield officials who used their inside knowledge about these mortgage-free properties to acquire the properties for

their own personal benefit and not for public purpose." (Mot. to Amend.,
PageID.394.)

The Michigan Supreme Court "has taken a broad approach" to the question of
whether the claims precluded were or could have been decided in the prior action,
embracing the "transactional" test, under which res judicata "bars not only claims
already litigated, but also every claim arising from the same transaction that the
parties, exercising reasonable diligence, could have raised but did not." *Adair*, 470
Mich. at 121, 124. "[T]he determinative question is whether the claims in the instant
case arose as part of the same transaction as did the claims in" the first action. *See
id.* at 125. "Whether a factual grouping constitutes a transaction for purposes of res
judicata is to be determined pragmatically, by considering whether the facts are
related in *time, space, origin or motivation*, [and] whether they form a convenient
trial unit...." *Id.* (citation omitted). Applying this framework, the Court finds that the
prior state court lawsuit and this suit involve the same core set of facts, and the issues
in this case were, or could have been, raised in the prior suit.

Second, the parties in the two actions are substantially identical. Parties are
substantially identical when a party in a second suit is "so identified in interest with
[a party from the first suit] that he or she represents the same legal right." *Viele v.
D.C.M.A.*, 167 Mich. App. 571, 580 (1988) (citation omitted). The Southfield

28

Defendants explain that the additional defendants in this suit – Oakland County, SNPHC, Habitat for Humanity, and individual officials from the City, SNRI and SNPHC – share the same interest and rights as the named defendants. (Southfield Reply at pp. 1-2, PageID.2003-04.) The Court finds that the City of Southfield and its officials are in privity through agency principles, and thus are substantially identical for purposes of res judicata. *See Lyons v. Washington*, No. 212516, 2000 WL 33407429, at *1 (Mich. App. Aug. 18, 2000) (citing *Viele*, 167 Mich. App. at 580).

Third, Plaintiffs argue that "the landscape of the law has shifted" and "[t]his action could have not been resolved at the time of the state court case because the Michigan Constitution had not established the right to the equity/surplus proceeds from a tax foreclosure." (Pls.' Resp. at p. 7, PageID.1176.) Plaintiffs contend that, before the decision in *Rafaeli*, "there were no common law property rights that existed unambiguously in the equity/surplus proceeds after a property tax foreclosure," and "it would have been largely futile to bring most of the present claims." (*Id.*) However, "an intervening change of law" precludes the application of res judicata only when it "alters the legal principles on which the court will resolve the subsequent case.'" *In re Bibi Guardianship*, 315 Mich. App. 323, 334 (2016) (citation omitted). As discussed more fully in this Opinion, *Rafaeli* does not

recognize a right to recover alleged equity in property after a foreclosure, and thus

does not represent a change to the legal landscape regarding Plaintiffs' claims in this

case.

Interestingly, in a seeming concession of the failure of their takings claim in

this case, Plaintiffs admit in their Response that:

> There still is no adequate remedy or procedure to address the unlawful
> conduct in this case until the Michigan Legislature finds *Rafaeli, LLC,*
> *supra*, retroactive. Even then, ambiguity will persist (see Justice
> Viviano's Concurrence in *Rafaeli, LLC, supra*.[)]

(Pls.' Resp. at p. 8, PageID.1177.) As will be discussed further *infra*, Justice Viviano

recognized in his concurrence that "the majority's view of the case would seemingly

be that if the property does not sell at auction and is simply transferred to a

governmental unit, the taxpayer is out of luck: no proceeds, let alone a surplus, have

been produced or retained by the government." *Id.* at 518 (Viviano, J., concurring).[5]

Based on all the above, the Court find that Plaintiffs Miller, American Internet

Group, and Akande's claims against the Southfield Defendants are barred by res

---

[5] Plaintiffs' citation to Judge Tarnow's May 31, 2020 decision in *Johnson v.*
*Meisner*, Case No. 19-11569 (E.D. Mich.), is misplaced because Judge Tarnow
declined to apply res judicata to the plaintiffs' claims in that case because the prior
dismissal was under Rule 12(b)(1), for lack of jurisdiction, not Rule 12(b)(6), and
Rule 12(b)(1) dismissals are not dismissals on the merits and thus do not have
preclusive effect. (ECF No. 44-9, PageID.1372-73.)

judicata. However, even if these plaintiffs' claims were not barred by res judicata, they would nevertheless fail for the reasons stated *infra*.

## B. Whether Plaintiff Marcus Byers Lacks Standing

Plaintiff Marcus Byers alleges that he held "equitable title" with his guardian in property that was foreclosed on for $4,113.00 in delinquent taxes. (Compl. ¶ 26, PageID.6.) However, the records Plaintiffs attach to the Complaint indicate that the property was owned by, and foreclosed under, the ownership of Debbie Byers, who is not a named Plaintiff. (Compl. PageID.51.) After the foreclosure, the property was sold to the City for the tax debt amount, and then transferred to SNRI for $1.00. (*Id.*)

To satisfy the Article III standing requirement in a civil forfeiture action, "a claimant must alleged a colorable ownership, possessory, or security interest in a least a portion of" the property in interest. *U.S. v. Real Prop. Located at 4527-4535 Michigan Ave., Detroit, Mich.*, 489 F. App'x 855, 857 (6th Cir. 2012) (citing *U.S. v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir. 1998)). The courts generally look to "the law of the jurisdiction that created the property right to determine the petitioner's legal interest." *U.S. v. Salti*, 579 F.3d 656, 668 (6th Cir. 2009) (citation omitted). In Michigan, "an interest in real property can only be created 'by act or operation of law, or by a deed or conveyance in writing.'" *Real Prop.*, 489 F. App'x at 857 (citing Mich. Comp. Laws § 566.106) (finding that the

31

claimants lacked standing because the deed to the clubhouse property was not in their name and no other writing existed showing their interest in the property).

The Southfield Defendants assert that Plaintiff Marcus Byers lacks standing to bring suit against Defendants because he was not the owner of the Hidden Rivers Drive property. (Southfield Mot. at pp. 11-12, PageID.442-43.) Rather, all former title and interest in that property prior to the tax foreclosure in 2018 was held by Marcus Byers' former spouse, Debbie Byers, who purchased the property from Wells Fargo Bank in 2008 (and who, according to the SNRI Defendants, is presently litigating claims in Bankruptcy Court related to that property). (*Id.* citing Ex. 8, ECF No. 34-9, Deed, PageID.560.) Without an ownership interest, Plaintiff Marcus Byers was not injured and lacks standing.

Plaintiffs respond only that Marcus Byers has a closed head injury since 1998 and his ex-wife Debbie Byers "purchased a house with his money and has been his legal guardian," that "[t]he equity in or from the property belongs to Mr. Byer[s]," and "Byers' equitable interest meets the threshold for standing as an injury in fact." (Pls.' Resp. at pp. 10-11, PageID.1179-80.) Plaintiffs rely on expired guardianship papers naming "Kiara Napier" as Byers' guardian and an unrecorded Quit Claim deed from Debbie Byers to herself and Marcus Byers, dated July 30, 2020, to try to

assert that Byers somehow had an interest in the property in 2018. (*Id.* citing Ex. K, ECF No. 44-13, PageID.1400-03).

However, as Defendants point out in their Reply, Debbie Byers could only convey the interest she had in 2020, which, following the 2018 foreclosure of the property, was none. (Southfield Reply, at p. 3, PageID.2005.) Without an interest in the subject property when the foreclosure and transfers occurred, the Court finds that Plaintiff Marcus Byers lacks standing in this case and dismisses his claims with prejudice.

### C.     Plaintiffs' Takings Claims Against the Southfield Defendants

Plaintiffs assert a Fifth Amendment Takings claim and a takings claim under the Michigan Constitution in Counts I-III of their Complaint against the Oakland County and Southfield Defendants. (Compl., PageID.18-25.) The Court previously found that Plaintiffs failed to state a takings claim against the Oakland County Defendants (ECF No. 62, PageID.2205-12), and similarly find that Plaintiffs fail to state a takings claims against the Southfield Defendants.

The Takings Clause of the Fifth Amendment prohibits taking "private property ... for public use, without just compensation." U.S. Const. amend. V. The clause applies to state governments through the Fourteenth Amendment. *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001). The Sixth Circuit has articulated a two-

33

part test in evaluating claims that a governmental action constitutes a taking of private property without just compensation. First, "the court must examine whether the claimant has established a cognizable property interest for the purposes of the Just Compensation Clause." *Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 481 (6th Cir. 2004) (internal quotation marks omitted); *see also Raceway Park, Inc. v. Ohio*, 356 F.3d 677, 683 (6th Cir. 2004) ("[T]here is no taking if there is no private property in the first place."). Second, "where a cognizable property interest is implicated, the court must consider whether a taking occurred." *Coalition for Gov't Procurement*, 365 F.3d at 481. "[T]he existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source such as state law." *Phillips v. Washington Legal Found.*, 524 U.S. 156, 164 (1998) (internal quotation marks omitted).

The Southfield Defendants argue that Plaintiffs cannot state a takings claim against them because Plaintiffs fail to identify a cognizable property interest, and because no state-created right exists under Michigan law for "surplus equity" in a foreclosed property. (Southfield Mot. at pp. 13-14, PageID.444-45.) The Southfield Defendants also argue that Plaintiffs cannot show that the Southfield Defendants took any property from them because the Oakland County Treasurer is the foreclosing governmental unit under the GPTA, not the City. (Southfield Mot. at p.

14, PageID.445.) Plaintiffs here seek the "taken and/or forfeited equity" in their property. (Compl., Relief Requested, PageID.30.) Defendants explain that the Michigan Supreme Court in *Rafaeli* limited a plaintiff's claim to the excess proceeds realized from the tax foreclosure sale (the auction) (i.e., the proceeds realized in excess of the delinquent taxes, interest, penalties, and fees), "no more, no less." (Southfield Mot. at p. 14, PageID.445.) *See Rafaeli*, 505 Mich. at 484; *see also id.* at 477 ("[A] former property owner has a compensable takings claim *if and only if* the tax-foreclosure sale produces a surplus.") (emphasis added). Indeed, the Michigan Supreme Court expressly rejected "the premise that just compensation requires that plaintiffs be awarded the fair market value of their properties so as to be put in as good of position had their properties not been taken at all." *Id.* at 483.

Plaintiffs cite to *Coleman v. District of Columbia*, 70 F. Supp. 3d 58 (D.C. Cir. 2014) as applying the Fifth Amendment to property tax sales. (Pls.' Resp. at p. 14, PageID.1183.) However, Plaintiffs' reliance on *Coleman* is misplaced, as the plaintiff's property interest in that case stemmed from Washington D.C. law. *Coleman*, 70 F. Supp. 3d at 81 (recognizing that "such an interest may be created by a statute that requires the refunding of surplus equity after a tax sale."). Moreover, the D.C. Circuit Court declined to address the viability of the plaintiff's takings claim because the district court below had not addressed this issue. *Id.*

35

In *Nelson v. City of New York*, 352 U.S. 103 (1956), the United States Supreme Court recognized that former property owners have an interest in surplus only to the extent it is provided under some other source, such as state law, and that federal law does not recognize a former property owner's property interest in potential equity that exists after a tax foreclosure. *See id.* at 110 ("What the City of New York has done is to foreclose real property for charges four years delinquent and, in the absence of timely action to redeem or to recovery any surplus, retain the property or the entire proceeds of its sale. We hold that nothing in the Federal Constitution prevents this where the record shows adequate steps were taken to notify the owners of the charges due and the foreclosure proceedings.").[6] In *Rafaeli*, the Michigan Supreme Court found that Michigan's common law recognizes a

---

[6] The Supreme Court in *Nelson* recognized that the New York law was a "harsh statute," but explained that "relief from the hardship imposed by a state statute is the responsibility of the state legislature and not of the courts, unless some constitutional guarantee is infringed." *Nelson*, 352 U.S. at 111.

As explained above, since the Michigan Supreme Court's decision in *Rafaeli*, the Michigan Legislature has amended the GPTA, which now allows the state and/or municipalities to purchase tax foreclosed properties "at the greater of the minimum bid or its fair market value[.]" Mich. Comp. Laws § 211.78m(1). While this amendment will affect the manner in which future tax foreclosure sales are handled, it does not provide a basis for liability against the Defendants in this action. The Act provides that any retroactive effect is dependent upon a decision of the Michigan Supreme Court that "its decision in Rafaeli, LLC v. Oakland County, docket no. 156849, applies retroactively." Mich. Comp. Laws § 211.78t(1)(b)(i). There has been no such decision by the Michigan Supreme Court.

former property owner's property right to collect the surplus proceeds that are realized from the tax-foreclosure sale of property, "no more, no less." *Rafaeli*, 505 Mich. at 470, 484.

In this case, the Plaintiffs' properties were not sold at auction, but were purchased from the Oakland County Treasurer, the FGU, by the City of Southfield for the minimum bid – the amount of the delinquent taxes, interest, penalties, and fees. Accordingly, it is undisputed that no "surplus proceeds" were generated with regard to any of the subject properties, and Plaintiffs have failed to demonstrate a vested property right or amount that was "unjustly" taken from them by anyone. The City of Southfield exercised its statutory right of first refusal to acquire the properties for the minimum bid under the GPTA, and paid that amount to the Oakland County Treasurer. The Michigan Supreme Court made clear in *Rafaeli* that a plaintiff's only "property interest" surviving a tax-foreclosure is not in the real property itself, but only in the surplus proceeds resulting from the tax-foreclosure sale, if any, resulting from the sale of the property at an auction. The *Rafaeli* court stated that it is "unaware of any authority affirming a vested property right to equity held in property generally." *Id.* at 484 n. 134; *see also Freed*, 2021 WL 942077, at *3-4 ("Plaintiff has failed to cite any law – Constitutional, statutory, precedential, or otherwise – that supports his equity-based argument" "that the property taken was the home's equity

minus the debt owed"). Justice Viviano recognized in his concurrence that "the majority's view of the case would seemingly be that if the property does not sell at auction and is simply transferred to a governmental unit, the taxpayer is out of luck: no proceeds, let alone a surplus, have been produced or retained by the government." *Rafaeli*, 505 Mich. at 518 (Viviano, J. concurring).

Here, based on the law as it stands after *Rafaeli*, there are no such surplus proceeds in this case, and the Court finds that Plaintiffs therefore fail to state a takings claim against the Southfield Defendants. Like the United States Supreme Court stated in *Nelson*, this application of the Michigan GPTA is "harsh," but "relief from the hardship imposed by a state statute is the responsibility of the state legislature and not of the courts, unless some constitutional guarantee is infringed." *Nelson*, 352 U.S. at 111. And, as another Court in this District recently found when dismissing a takings claim against Southfield, "Plaintiff has not shown, and the Court has not found, any authority stating that the recipients of property from a government agency which took the property from the owner, can be held liable under the Takings clause." *The Estate of Dell Johnson v. Meisner*, No. 19-11569, 2021 WL 3680479, at *5 (E.D. Mich. Aug. 18, 2021). Accordingly, the takings claims against the Southfield Defendants are dismissed.

**D.      Eighth Amendment Claim Against the Southfield Defendants**

In their Complaint, Plaintiffs expressly plead that their claim for an Eighth Amendment violation is "against Oakland County only." (Compl. Count IV, PageID.25-26.) However, Plaintiffs allege within that Count that "[t]o the extent the actions of Defendants Oakland County and Southfield conduct [sic] is found to be a forfeiture the Eighth Amendment is applicable." (Compl. Count IV, PageID.25-26.) Plaintiffs plead that "[b]y imposing and retaining all the surplus equity in Plaintiffs' property Defendants violated the Eighth Amendment right to be free of excessive fines." (*Id.* ¶ 119, PageID.25.)

The purpose of the Eighth Amendment generally is "to limit the government's power to punish." *Austin v. United States*, 509 U.S. 602, 609 (1993). "The Excessive Fines Clause limits the government's power to extract payments, whether in case or in kind, 'as punishment for some offense.'" *Id.* at 609-10 (citation omitted). Thus, when analyzing government actions under the Excessive Fines Clause, the issue is "whether it is punishment." *Id.* at 610. In *Rafaeli*, the Michigan Supreme Court addressed this issue and found that the GPTA "is not punitive in nature. Its aim is to encourage the timely payment of property taxes and to return tax-delinquent property to their tax-generating status, not necessarily to punish property owners for failing to pay their property taxes." *Rafaeli*, 505 Mich. at 449.

The Southfield Defendants argue that Plaintiffs fail to state an Eighth Amendment Excessive Fines claim against them because the Oakland County Treasurer took actions to foreclose Plaintiffs' property, not the Southfield Defendants, who took no actions against Plaintiffs. (Southfield Mot. at pp. 15-16, PageID.446-47.) In response, Plaintiffs argue that, if there was no taking by the Southfield Defendants, then "the Eighth Amendment Excessive Fines Clause prohibits the forfeiture of Plaintiffs' entire equity because it is grossly disproportionate to any act or omission." (Pls.' Resp. at pp. 27-28, PageID.1196-97, citing *United States v. Bajakajian*, 524 U.S. 321, 324 (1998), and *United States v. Certain Real Prop. Located at 11869 Westshore Dr., Putnam Twp., Livingston Cnty., Mich.*, 70 F3d 923, 927 (6th Cir. 1993).) The Southfield Defendants reply that the cases Plaintiffs rely on are distinguishable because they involved forfeitures of property because of a criminal act. (Southfield Reply at p. 7, PageID.2009.) Here, the Southfield Defendants purchased the properties from the Oakland County Treasurer, pursuant to the terms of the GPTA, for the minimum bid.

As explained above, in *Rafaeli*, the Michigan Supreme Court addressed "forfeiture" under the GPTA and explained that "the purpose of civil-asset forfeiture is different than the purpose of the GPTA provisions at issue here," and while civil forfeiture "serves, at least in part, to punish the owner...[,] the GPTA is not punitive

in nature." *Rafaeli*, 505 Mich. at 449. The District courts that have considered the same argument made here – that the forfeiture of proceeds/equity in foreclosed property is punitive in nature and therefore governed by the Excessive Fines Clause – have unanimously rejected such a claim, finding the Michigan Supreme Court's interpretation of the GPTA controlling. *See Arkona, LLC v. Cnty. of Cheboygan*, No. 19-CV-12372, 2021 WL 148006, at *9 (E.D. Mich. Jan. 15, 2021); *Fox v. Cnty. of Saginaw*, No. 19-CV-11887, 2021 WL 120855, at *13-14 (E.D. Mich. Jan. 13, 2021); *Grainger v. Cnty. of Ottawa*, No. 1:19-cv-501, 2021 WL 790771, at *12 (W.D. Mich. Mar. 2, 2021). This Court similarly finds that Plaintiffs fail to state an Eighth Amendment claim against the Southfield Defendants.

### E.    Due Process Claim

Plaintiffs allege a substantive due process claim "against Southfield and Oakland County Treasurer only." (Compl. PageID.28-29.)[7] Plaintiffs allege that

---

[7] Plaintiffs also purport to allege a procedural due process claim "against Southfield and Oakland County Treasurer only." (Compl. Count V, PageID.26-28.) However, Plaintiffs' procedural due process claim focuses on the property tax installment plans Plaintiffs allege they entered into with the Oakland County Treasurer, and thus do not appear to be asserted against the Southfield Defendants, who are not mentioned in any of the allegations in Count V. In fact, Plaintiffs do not address their procedural due process claim at all in their Response to the Southfield Defendants' motion. The Court therefore finds that Plaintiffs fail to state a procedural due process claim against the Southfield Defendants.

Defendants "denied Plaintiffs their constitutional right to fair and just treatment during executive acts and deceptive communications from site officials who intentionally acted and deprived Plaintiffs of their property." (*Id.* ¶ 136, PageID.28.) Plaintiffs further allege that they "were led to believe by the Oakland County [sic] and by Southfield and their respective officials that they had the ability to maintain their property rights" and that "government officials including the named Defendants herein engaged in unconscionable fraud against Plaintiffs" and "engaged in conduct that 'shocked the conscience' in the constitutional sense." (*Id.* ¶¶ 138-40, PageID.28-29.)

The Southfield Defendants argue that to properly assert a substantive due process claim, Plaintiffs must first identify a protected liberty or property interest and show how they were deprived of that interest. (Southfield Mot. at p. 16, PageID.447, citing *Wojcik v. City of Romulus*, 257 F.3d 600, 609 (6th Cir. 2001).) These Defendants argue that Plaintiffs' substantive due process claim fails because their asserted property interest – the alleged forfeited equity in the properties – is not cognizable under Michigan law. (*Id.* at pp. 17-18, PageID.448-49.) For the reasons discussed above, the Court agrees that Plaintiffs do not have a cognizable property interest in the alleged lost equity in their former properties. The Southfield Defendants further argue that Plaintiffs fail to plead that the Southfield Defendants

themselves deprived Plaintiffs of any alleged property right because the Southfield Defendants did not foreclose on Plaintiffs' properties. (*Id.*)

Plaintiffs argue in response that Defendants' alleged scheme to "use the municipalities right of first refusal under M.C.L. § 211.78m to act as a conduit to transfer the properties to SNRI for $1.00" "shocks the conscience." (Pls.' Resp. at p. 22, PageID.1191.) Plaintiffs contend that "[t]he intended and obtained result was that Plaintiffs' properties were taken without 'just compensation' and by means of intentional conduct by officials." (*Id.* at p. 23, PageID.1192.)

However, substantive due process claims may not be asserted "as a stand-in to address a failed takings claim." *Ostipow v. Federspiel*, 824 F. App'x 336, 345 (6th Cir. 2020) (citing *Hillcrest Prop., LLP v. Pasco Cnty.*, 915 F.3d 1292, 1304 (11th Cir. 2019) (Newsom, J., concurring in the judgment)); *Grainger*, 2021 WL 790771, at *13 (dismissing substantive due process claim because "Plaintiffs cannot meaningfully distinguish this substantive due process claim from his takings claim"); *Fox*, 2021 WL 120855, at *15 ("Plaintiff's substantive due process claim is precluded by his *prima facie* takings claim.").

Further, the Due Process Clause of the Fourteenth Amendment protects individuals from the arbitrary actions of government employees, but "only the most egregious official conduct can be said to be arbitrary in the constitutional sense."

43

*County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (quotation omitted). Generally, conduct that "shocks the conscience" is conduct that is so brutal and offensive that it does not comport with traditional notions of fair play and decency. *Puckett v. Lexington-Fayette Urban Cnty. Gov't*, 566 F. App'x 462, 472 (6th Cir. 2014). As the Southfield Defendants note, the Sixth Circuit has resisted applying that standard except in cases involving physical force. *See, e.g., id.* ("Generally, the 'shocks the conscience' strain of successful substantive due process claims is recognized 'in the exclusive context of cases involving physical abuse.'"). This case does not involve any allegations of physical force, and Plaintiffs have failed to allege that the Southfield Defendants, exercising their statutory right of first refusal to purchase the subject properties for the minimum bid, engaged in arbitrary conduct lacking any rational basis.

Accordingly, the Court finds that Plaintiffs fail to state a substantive due process claim against the Southfield Defendants, and that claim is dismissed.

## F.     Unjust Enrichment

Plaintiffs' unjust enrichment claim (Count VII), alleges that "SNRI obtained the surplus equity and or equity from the tax foreclosure" "in a prearranged transfer for inadequate value" and that "[t]he retention of the benefits [surplus equity] by SNRI (or subsequent non-bona fide purchasers) of the property rights, equity and/or

surplus amounts to unjust enrichment to the SNRI." (Compl. ¶¶ 145-48, PageID.29.) Plaintiffs allege that "[t]he surplus equity and or equity in justice and equity belongs to the Plaintiffs[] individually and to the Class Members," and that "Plaintiffs[] individually and as class representatives have been damaged by their loss of equity." (*Id.* ¶¶ 149-50, PageID.30.) There is an absence of any specific factual allegations in Plaintiffs' Complaint, Count VII, Unjust Enrichment, that the Southfield Defendants have been unjustly enriched. Thus, on its face, Plaintiffs' Complaint fails to factually plead an unjust enrichment claim against the Southfield Defendants (or indeed, any Defendants other than SNRI), and the Southfield Defendants could be entitled to dismissal of Plaintiffs' unjust enrichment claim on this basis. However, even considering this claim against the Southfield Defendants, it nevertheless fails.

Under Michigan law, "[u]njust enrichment is defined as the unjust retention of money or benefits which in justice and equity belong to another." *Tkachik v. Mandeville*, 487 Mich. 38, 48 (2010) (citation omitted). A plaintiff alleging unjust enrichment must establish two elements: "(1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 478 (2003).

The Southfield Defendants argue that, as established by the Michigan Supreme Court in *Rafaeli*, Plaintiffs had no cognizable property interest in the alleged equity in the property, and thus Plaintiffs have failed to show that the Southfield Defendants received a benefit from Plaintiffs. Defendants rely on *Karaus v. Bank of New York Mellon*, 300 Mich. App. 9 (2012), for the proposition that when a defendant receives a benefit from a third party, and not through the actions of the plaintiff directly, there is no receipt of a benefit by the defendant from the plaintiff as required for a claim of unjust enrichment.[8] (Southfield Mot. at pp. 20-21, PageID.451-52.) The Southfield Defendants assert that the City of Southfield purchased the properties from the Treasurer, pursuant to the City's legal right of first refusal under the GPTA, Mich. Comp. Laws § 211.78m, not the Plaintiffs, and thus

---

[8] In *Karaus*, a homeowner borrowed money from a bank to finance construction on his house and, in return, the homeowner granted a mortgage to the bank. The plaintiff performed construction work on the home, but the homeowner did not pay the plaintiff in full. The plaintiff then brought an unjust enrichment claim against the bank that held the mortgage. The Michigan Court of Appeals affirmed judgment in favor of the bank on the grounds that the bank did not obtain a benefit directly from the plaintiff. *Karaus*, 300 Mich. App. at 23. The court noted that the bank was "completely uninvolved" with the agreement between the plaintiff and the homeowner, and it found no evidence that the bank "requested any of the work performed by plaintiff or misled plaintiff to receive any benefit." *Id*. ("The mere fact that a third person benefits from a contract between two other persons does not make such third person liable in quasi-contract, unjust enrichment, or restitution").

46

they received no benefit from the Plaintiffs. (*Id.* at p. 21, PageID.452.) These Defendants further contend that the County obtained no surplus funds. (*Id.*)

However, courts have found that this *Karaus* holding "does not stand for the proposition that a plaintiff may prevail against a defendant on an unjust enrichment theory only if the plaintiff directly conferred the benefit upon the defendant. On the contrary, the court in *Karaus* recognized the possibility that a plaintiff may recover from a defendant upon whom he did not confer a benefit if the defendant has engaged in misleading conduct that led to the plaintiff's loss." *Kerrigan v. Visalus, Inc.*, 112 F. Supp. 3d 580, 614 (E.D. Mich. 2015). "There must be more than a benefit received by a party, the party 'is liable to pay therefore only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it.'" *Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662, 669 (E.D. Mich. 2008) (quoting *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 546 (1991)). Plaintiffs must plead how each Defendant specifically misled them and when, and how each defendant is unjustly enriched, which they fail to do. Plaintiffs instead offer only conclusory allegations in support of their unjust enrichment claim. (See Compl. ¶¶ 63-68, PageID.12.)

Plaintiffs claim in their Response that the Defendants "were not only involved with the transfer of the surplus proceeds/equity from Plaintiffs, but also orchestrated

and participated in a scheme or a conspiracy to strip the equity of Plaintiffs' properties through concerted action." (Pls.' Resp. at p. 19, PageID.1188.) However, there is nothing unlawful with the Oakland County Treasurer's foreclosure of Plaintiffs' properties, the City's exercise of its statutory right of first refusal, or SNRI's subsequent purchase of the properties.[9]

Accordingly, Plaintiffs fail to state an unjust enrichment claim against the Southfield Defendants, and that claim is dismissed.

---

[9] The Court concurs, for the most part, with the Michigan Court of Appeals in footnote 6 in *Jackson v. Southfield Neighborhood Revitalization Initiative, LLC, Fred Zorn, Etoile Libbett, Michael A. Mandelbaum, City of Southfield, Ken Siver, Oakland County Treasurer, Southfield Non-Profit Housing Corporation, Susan Ward Witkowski, Gerald Witkowski, and Andrew Meisner*, No. 344058, 2019 WL 6977831 (Mich. Ct. App. Dec. 19, 2019), *vacated in part by the Michigan Supreme Court*, 953 N.W.2d 402 (Mich. 2021), that "[a]lthough we find no basis for plaintiffs' substantive due process claims, we can appreciate their suspicion surrounding defendants' behavior. While the record before us does not provide evidentiary support for plaintiffs' claim that defendants sought to defraud these plaintiffs out of equity in their homes, the fact that elected officials were using their political status … by obtaining properties before they could go to auction following tax foreclosure is, at a minimum, troubling. Clearly, defendants, particularly the elected officials, have even attempted to avoid the appearance of impropriety, as a clear conflict of interest exists regarding their involvement with SNPHC and SNRI. This type of behavior is not only shocking to the consc[ience], but also rightfully breeds distrust among their electorate. Regardless, the instant lawsuit is regrettably the incorrect vehicle to further explore the legality of defendants' actions."

## IV. CONCLUSION

For the reasons set for the above, the Court **GRANTS** the Southfield Defendants' Motion to Dismiss and **DISMISSES WITH PREJUDICE** Plaintiffs' claims against Defendants City of Southfield, Frederick Zorn, Ken Siver, Susan Ward-Witkowski, Gerald Witkowski, and Treasurer Irvin Lowenberg.

IT IS SO ORDERED.

                                          s/Paul D. Borman
Dated: October 4, 2021                    Paul D. Borman
                                          United States District Judge

49