```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
 2                       SOUTHERN DIVISION

 3    TAWANDA HALL, CAROLYN MILLER,
      AMERICAN INTERNET GROUP, LLC,
 4    ANTHONY AKANDE, CURTIS LEE and
      CORETHA LEE, MARCUS BYERS and
 5    KRISTINA GOVAN, individually and
      all those similarly situated in
 6    the City of Southfield,

 7                   Plaintiffs,
                                            HON. PAUL D. BORMAN
 8       v.                                 No. 20-cv-12230

 9    OAKLAND COUNTY TREASURER ANDREW
      MEISNER, in his official and
10    individual capacities, OAKLAND COUNTY,
      SOUTHFIELD NEIGHBORHOOD REVITALIZATION
11    INITIATIVE, LLC, CITY OF SOUTHFIELD,
      FREDERICK ZORN, in his official and
12    Individual capacities, SOUTHFIELD
      MAYOR KENSON SIVER, in his official
13    and individual capacities, SOUTHFIELD
      NON-PROFIT HOUSING CORPORATION, HABITAT
14    FOR HUMANITY OF OAKLAND COUNTY INC.,
      SUE WARD-WITKOWSKI, in her former
15    official and individual capacities,
      GERALD WITKOWSKI, in his official
16    and individual capacities, TREASURER
      IRVIN LOWENBERG, in his official
17    and individual capacities, MITCHELL
      SIMON and E'TOILE LIBBETT,
18
                     Defendants.
19    _____/

20              DEFENDANTS' MOTION TO DISMISS
                  (Held Via Videoconference)
21
          BEFORE U.S. DISTRICT JUDGE PAUL D. BORMAN
22                231 West Lafayette Boulevard
                        Detroit, Michigan
23                   Tuesday, May 18, 2021
                          10:30 a.m.
24
            To Obtain Certified Transcript, Contact:
25    Leann S. Lizza, CSR-3746, RPR, CRR, RMR, CRC, RDR
                        (313) 234-2608
```

```
 1   APPEARANCES:

 2      For the Plaintiffs:          JAYSON E. BLAKE
                                     McAlpine, P.C.
 3                                   3201 University Drive
                                     Suite 100
 4                                   Auburn Hills, Michigan  48326
                                     (248) 373-3700
 5
                                     SCOTT F. SMITH
 6                                   Smith Law Group
                                     30833 Northwestern Highway
 7                                   Suite 200
                                     Farmington Hills, Michigan
 8                                      48334
                                     (248) 626-1962
 9

10      For the Oakland County       WILLIAM H. HORTON
        Defendants:                  Giarmarco, Mullins & Horton,
11                                     P.C.
                                     101 West Big Beaver Road
12                                   Tenth Floor
                                     Troy, Michigan  48084
13                                   (248) 457-7000

14      For Defendants Southfield    MATTHEW T. NICOLS
        Non-Profit Housing Corp.;    Pentiuk, Couvreur & Kobiljak,
15      Southfield Neighborhood        P.C.
        Revitalization Initiative,   2915 Biddle Avenue, Suite 200
16      LLC; Simon and Libbett:      Wyandotte, Michigan  48192
                                     (734) 281-7100
17

18

19

20

21

22

23

24

25
```

**TABLE OF CONTENTS**

Motion Hearing                                                    Page

  Argument by Mr. Horton                                          5

  Argument by Mr. Blake                                          11

  Further argument by Mr. Horton                                 25

  Ruling taken under advisement                                  28


Exhibits:                                                   Received

  (None offered.)

```
 1                                   May 18, 2021

 2                                   Detroit, Michigan

 3                           -    -    -

 4      (Court and Counsel present, 10:30 a.m.)

 5           THE COURT:  Okay.  Good morning.  This is Judge Paul

 6  Borman presiding in Hall, et al. v. Oakland County Treasurer

 7  and Oakland County, et al., Civil Case Number 20-12230.  Today

 8  is Tuesday, May 18th, 2021, 10:30 a.m.  Parties to this

 9  proceeding from the court are Court Deputy Deborah Tofil, Court

10  Reporter Leann Lizza, and Career Law Clerk Jennifer Eble.

11           Attorneys on this matter dealing with Oakland County

12  Defendants' motion to dismiss are plaintiff, please state your

13  name and spell your name.

14           MR. BLAKE:  Jayson Blake, Your Honor.  J-A-Y-S-O-N,

15  B-L-A-K-E, on behalf of all plaintiffs.

16           THE COURT:  Okay.  And for Oakland County defendants?

17           MR. HORTON:  Good morning, Your Honor.  William Horton

18  on behalf of Oakland County and its Treasurer Meisner.  Last

19  name is H-O-R-T-O-N.

20           THE COURT:  Okay.  Thank you.

21           Each side will have up to 30 minutes for argument.

22  The moving party in this case, the defendants, will have up to

23  five minutes for rebuttal.  Please speak slowly, loudly and

24  clearly.  If you mention a name other than a plaintiff's name

25  or defendant's name, or Jones or Smith or Borman, spell it.
```

ARGUMENT BY MR. HORTON

1    Also, spell case names and cite to them.

2         Counsel for defendant, please proceed.

3         MR. HORTON:  Thank you, Judge.  I appreciate the

4    opportunity to have 30 minutes, but I can guarantee you I won't

5    take anywhere near that amount of time.  The short version,

6    Judge, is that I know you carefully read these papers before we

7    get to this stage.  You know, this is a post-foreclosure

8    challenge to what occurred post-foreclosure because there was

9    actually a foreclosure case, and then as to some of the

10   plaintiffs there was -- they filed a separate case in Oakland

11   County Circuit Court which was dismissed and not appealed.  So

12   I really want to make just three points very briefly.

13        The first one is as to plaintiffs Miller -- there's a

14   corporate plaintiff named American Internet Group and an

15   individual by the name of Akande, A-K-A-N-D-E, and we believe

16   their claims are clearly barred by res judicata.  They were

17   plaintiffs in the post-foreclosure lawsuit in Oakland County,

18   and their claims were dismissed and they were unappealed and

19   they were final judgments.  We clearly believe that under the

20   Full Faith and Credit Act and under the full faith and credit

21   clause of the Constitution that this court needs to afford that

22   Oakland County judgment res judicata and it bars those persons'

23   claims.  Those are just some of the plaintiffs, Judge.  And by

24   the way, we've attached to our motion the papers that were

25   filed in Oakland County Circuit Court that results in the

HALL v. MEISNER, ET AL., 20-12230

ARGUMENT BY MR. HORTON

1    judgment in that case.

2         Second, Judge, there's a plaintiff by the name of

3    Byers, B-Y-E-R-S, and we claim that he lacks standing as

4    indicated by the papers, the complaint and the papers that are

5    attached to the plaintiffs' complaint.  In 2008, I believe it

6    was, according to the plaintiffs' complaint, the property was

7    conveyed by the bank which owned it, Wells Fargo, to Mr. Byers'

8    former wife, Debbie Byers.  And, geez, I'm having a hard time

9    reading the Page ID on this right now, Judge.  Oh, it's page 51

10   which is an exhibit to their complaint.  It clearly says that

11   on July 17th of 2008, ten years before the foreclosure, that

12   the property was conveyed to his wife.  There's never been any

13   dispute since then that, in fact, Debbie Byers, not the

14   plaintiff, I can't remember his first name, the -- Mr. Byers --

15         THE COURT:  That would be Marcus, M-A-R-C-U-S.

16         MR. HORTON:  Thank you, Judge.  There has never been

17   any evidence or claim to the contrary except in the response

18   brief by the plaintiffs.  They submitted a quitclaim deed from

19   Debbie Byers to Marcus Byers dated 2020, two years after this

20   foreclosure occurred.  Clearly I think under anybody's

21   understanding of real estate law, you can't give what you don't

22   have, and she didn't -- no longer had title to the property

23   because it had been foreclosed in 2018.  That really just deals

24   with these four plaintiffs or so, but there's additional

25   plaintiffs involved.  And as to all of the plaintiffs,

1    plaintiffs fail to state a claim against Oakland County or its

2    treasurer.  The basis for the claim, basically, Judge, is that

3    we foreclosed on the property.  Under the Michigan General

4    Property Tax Act the municipality where the property is

5    located, that being Southfield, is entitled to claim the

6    property for the amount of what we call the minimum bid which

7    is basically the amount of taxes that's owed, some fees, and

8    some penalties and some interest.  And Southfield, in fact, did

9    that in this case related to these -- all of the plaintiffs.

10   Southfield ex -- it's called -- under the statute it's called a

11   right of first refusal.  Southfield exercised its right of

12   first refusal and paid to Oakland County this minimum bid

13   amount which is the sum of those parts that I just mentioned.

14   And our -- the fundamental basis of our motion is that the

15   Michigan Supreme Court said in *Rafaeli versus Oakland County*

16   which is --

17           THE COURT:  Spell it.

18           MR. HORTON:  Yeah.  I'm sorry.  R-A-F-A-E-L-I versus

19   Oakland County established a right of foreclosed persons in

20   surplus proceeds that are produced at a tax auction, and says

21   basically -- they say not basically -- exactly what they say is

22   that the property owner only has a property interest in the

23   proceeds that are generated at a tax auction which exceed that

24   minimum bid.  And as the Supreme Court said, they are entitled

25   to no more or no less.  In fact, that's what happened here,

ARGUMENT BY MR. HORTON

1    Judge.  We received exactly what we were entitled to.  We

2    received the minimum bid.  And I think I put a little chart in

3    the -- in our brief that lays it out and has the page

4    references to the plaintiffs' complaint.  In other words, these

5    aren't our statements; these are the plaintiffs' statements.

6    Let me find my little chart here.

7         On page 8 of our brief, Judge, it's Page ID 344, we

8    recited for each one of the plaintiffs the amount that they

9    claim that they owed in taxes and interest and penalties and

10   that sort of stuff.  And we also identified for you the portion

11   of their complaint which says the amount that we received, and

12   if you take a look at the little chart that we have in there,

13   we received exactly the same amount that the plaintiff admits

14   that were owed.

15        So the short version, Judge, is that Michigan Supreme

16   Court has said that if there are excess proceeds produced at a

17   tax auction beyond the amount of the minimum bid, the plaintiff

18   may have a claim against them.  But we received exactly that

19   which we were entitled and, as the Michigan Supreme Court said,

20   no more and no less.

21        Now, I understand also that the -- we've addressed

22   some of the individual counts, but it all -- they all arise out

23   of that basic premise, Judge.  They may have claims as to other

24   folks or different theories or something, but not as to Oakland

25   County because the property right is established by state law

ARGUMENT BY MR. HORTON

1    and the Michigan Supreme Court established it.  They said that

2    we're entitled to what we're owed, and the plaintiffs'

3    complaint, as we've shown you in our brief, shows that we

4    received exactly that what -- which we are owed.

5          Plaintiff has said -- and, Judge, I've had a lot of

6    these cases, as you can imagine, after the Michigan Supreme

7    Court decided this case.  And some of the plaintiffs, in fact,

8    counsel in this case where I've had other cases with him, has

9    said, well, it's just not fair that --

10          THE COURT:  Well, are you speaking about present

11    counsel?

12          MR. HORTON:  Yes.

13          THE COURT:  Or are you speaking about initial counsel,

14    Mr. Smith or the gentleman here, Mr. Blake?

15          MR. HORTON:  Well, a little bit of both, I guess,

16    Judge.

17          THE COURT:  Okay.

18          MR. HORTON:  Mr. Smith and I have litigated over a

19    number of years, and Mr. Blake is kind of the new kid on the

20    block, but he was involved in a case that Judge Lawson had

21    which is called *Rose versus Oakland County* as well.

22          But the -- what the plaintiffs have said in *Rose* and

23    in other cases and have suggested in this case is that, you

24    know, if the case does not go to a tax auction and the

25    municipality exercises its right of first refusal, it's just

ARGUMENT BY MR. HORTON

1    not fair because there are no surplus proceeds produced and,

2    geez, that's just not fair to us.  But this was something that

3    was addressed in the Michigan Supreme Court, Judge.  The

4    Michigan Supreme Court case, the *Rafaeli* case that we talked

5    about, there was a seven-zero opinion -- or judgment, but it

6    was two opinions.  There was six justices signed onto the

7    majority opinion, and Judge Viviano had a concurrence in the

8    judgment but wrote separately.  And he specifically addressed

9    this situation where a municipality exercises its right of

10   first refusal.  And Judge Viviano goes on for two or three

11   pages and says, you know, this is just not fair.  So this issue

12   was raised --

13        THE COURT:  You say it's not fair.  What do you mean

14   is not -- what is not fair?

15        MR. HORTON:  Judge, Justice Viviano was saying if the

16   property is valuable but the foreclosing governmental unit,

17   which is me, Oakland County, the city exercises its right of

18   first refusal, even though everybody believes that the property

19   is worth more than that minimum bid, it's just not fair that

20   the plaintiff can't try to recover that lost equity.  That

21   argument was expressly rejected by the Supreme Court, the

22   Michigan Supreme Court majority.

23        So my point, Judge, is that this isn't an issue that

24   was open and unaddressed or not -- and I was involved in the

25   Michigan Supreme Court court case as well with *Rafaeli* all the

ARGUMENT BY MR. BLAKE

1   way up.  And this was an issue that was hotly contested.  It

2   was addressed by Justice Viviano and it was addressed by the

3   other judges, and Justice Viviano's view of the world was

4   unsuccessful.  It was rejected by the majority, Judge.

5           So the short version is *Rafaeli* which, you know, as

6   you know, property rights are created by state law.  The

7   Michigan Supreme Court created a property right and

8   post-foreclosure surplus proceeds and defined it very clearly

9   and succinctly which is after a tax auction if the amount of

10  money received is in excess of the minimum bid, then the former

11  property owner has a right to claim it.  That is not the case

12  in this situation, Judge.  We received exactly what we're

13  entitled to.  It was foreclosed.  We received the minimum bid

14  from Southfield.  And there is no surplus proceeds.

15          So short version, Judge, based on the Plaintiffs'

16  complaint, papers attached to Plaintiffs' complaint show that

17  we received only exactly what we were due and there is no

18  surplus proceeds and there is no taking, and plaintiffs' claim

19  should be dismissed.  Thanks, Judge.

20          THE COURT:  Okay.  Thank you.

21          Okay.  Let me just get a sip of water and then I'll

22  proceed.

23          Okay.  Mr. Blake, please.

24          MR. BLAKE:  Good morning, Your Honor.  Once again,

25  Jayson Blake on behalf of all the plaintiffs appearing along

ARGUMENT BY MR. BLAKE

1    with our co-counsel, Scott Smith.

2         I will address the points made by Mr. Horton and

3    Oakland County in order, but first I want to make a global

4    statement clarifying what this case is about and what it's not

5    about.  I think that would be helpful.

6         The plaintiffs each owned homes in the City of

7    Southfield.  Those homes were paid off, owned free and clear

8    with no mortgage.  Those homes were not blighted.  They were

9    not eyesores.  They were lived-in homes.  And I looked, I just

10   checked yesterday, they're valued currently between 125 and

11   $385,000.

12        Unfortunately, those plaintiffs all fell behind on

13   their property taxes.  And the amounts they're owed are in the

14   complaint.  They range from $2,000 to $30,000, and there was

15   one outlier who owed a larger amount, 43,000.

16        So by simple math, each of these plaintiffs had

17   anywhere between 85,000 and one had $285,000 in equity in their

18   homes, a little bit less at the time the complaint was filed,

19   but we are talking about very significant sums of money here.

20        Oakland County foreclosed on those homes and took

21   title to those homes.  Those homes were then transferred to the

22   City of Southfield for the amount of the unpaid taxes under the

23   previous statute -- previous version of the statute

24   MCL 211.78m.  City of Southfield then transferred those homes

25   for a dollar to a for-profit entity, SNRI, which was controlled

1    in part by its mayor and its city manager.  Those properties

2    were then sold to the public --

3            THE COURT:  Why don't we just spell for the record,

4    Mr. Blake.  SNRI stands for Southfield Neighborhood

5    Revitalization Initiative.  Am I correct?

6            MR. BLAKE:  You are correct, Your Honor.

7            THE COURT:  Okay.  Just to help the record.  Okay.  Go

8    ahead.

9            MR. BLAKE:  So those properties were then sold to the

10   public for much higher amounts.  One of them was sold for --

11   Miss Hall's home was sold for $308,000 and the proceeds went to

12   the for-profit company.  And we don't know for sure how or to

13   whom those proceeds were ultimately distributed.  Our focus in

14   this case is on the loss of that equity.  Our focus is not on

15   the foreclosure.  It's on what happened after the foreclosure.

16   Anything in the complaint that seems to be complaining about

17   the foreclosure process, and there were some issues with it,

18   but that should be viewed as background for our claims today

19   which are about the equity.  We contend that the loss of that

20   equity was a taking under the Michigan and the U.S.

21   Constitution.

22           Now, as Mr. Horton pointed out, the Michigan Supreme

23   Court has found in the *Rafaeli*, R-A-F-A-E-L-I, *v. Oakland

24   County* case, which is 505 Mich. 429, that the government

25   retention of surplus proceeds from a tax auction constitutes a

ARGUMENT BY MR. BLAKE

1   taking without justification under the Michigan Constitution.

2   This case is a little different than *Rafaeli* in that the

3   property was never sold at a public auction.  And as we pointed

4   out, those properties were transferred, Your Honor, to the City

5   of Southfield under the right of first refusal under the former

6   statute.  We believe that process was just as unconstitutional

7   as the process that was followed in *Rafaeli*.  The Michigan

8   legislature recognized after --

9        THE COURT:  You're saying that process; you're talking

10  about the *Rafaeli* decision said, okay, you get no more, no

11  less.  Here they got, Oakland County got what they said was due

12  and then they're out of the picture, right?

13       MR. BLAKE:  Well, *Rafaeli* was dealing with a different

14  situation and it did say that in that situation where it went

15  to auction you get what it's paid at the auction.  I didn't

16  say -- it didn't foreclose another opportunity for somebody in

17  this situation.  It didn't really deal with this situation

18  directly that we're talking about right now other than in the

19  dissent, in the concurring opinion by Justice Viviano where he

20  talks about it and he says basically that this hasn't been

21  addressed, he says -- you know, what happens in this type of

22  situation.  He doesn't say that -- none of the opinions say

23  that somebody directly, that somebody under this particular

24  statute gets nothing.  It's not directly stated or there would

25  have been a quote, you know, put out here in front of you that

**ARGUMENT BY MR. BLAKE**

1   says that.

2        But after *Rafaeli*, the Michigan legislature recognized

3   that they had a problem because it changed the statute at issue

4   at the end of 2020 to require, first of all, the surplus

5   proceeds to be paid to the former homeowner, and the statute

6   mentions that it's curative in nature and it references

7   *Rafaeli.* But the legislature also changed the provision on the

8   right of first refusal.  It states that if the city wants to

9   obtain the property, it must now pay either the unpaid taxes or

10  the fair market value whichever is greater.

11       THE COURT:  Now, that legislation came after all of

12  these transactions had occurred previously.

13       MR. BLAKE:  It did, Your Honor.

14       THE COURT:  Okay.  And the Court has not decided

15  retroactive application of *Rafaeli*.

16       MR. BLAKE:  Nobody has decided that although the

17  statute mentions that it means it's something that's going to

18  need to be decided at some point maybe in this case.

19       But our argument is if it's unconstitutional to take

20  real property at foreclosure, sell it at auction and retain the

21  proceeds as it clearly is under *Rafaeli*, that it should be

22  equally unconstitutional to take the property but decline to

23  hold an auction and transfer it to the city for only unpaid

24  taxes and then depriving the homeowner of any chance of

25  creating surplus proceeds.

1            We also contend that it is unjust enrichment for it to

2    be transferred to the for-profit companies and they sold it,

3    but that's not against Oakland County.  So we hope that this

4    case will establish this also as an unconstitutional process.

5    Our core claims here are takings under the U.S. and the state

6    Constitution and the unjust enrichment.  The rest of the claims

7    in the complaint are pled in the alternative.

8            I'll address the arguments in the motion to dismiss

9    and maybe I'll come back to what I think the Court is perhaps

10   troubled by.  First of all, as to res judicata, some of the

11   plaintiffs but not all of them did bring a civil action against

12   some but not all the defendants in February of 2017.  The state

13   court action lists only one case of racial discrimination in

14   the foreclosure process.  It doesn't address anything happening

15   after the foreclosure, and so it's not the same claims.  And

16   the current claims that we're making were not known to the

17   plaintiffs at that time.  Several of them hadn't even had their

18   property transferred to Oakland County like Plaintiffs Hall,

19   Plaintiff Byers.  Plaintiff Govan's property had just

20   transferred --

21           THE COURT:  Let's spell the name.  We got -- after

22   Byers -- you did Hall, you did Byers and now you're talking

23   about which plaintiff?  Kristina Govan, K-R-I-S-T-I-N-A, and

24   G-O-V-A-N, correct?

25           MR. BLAKE:  Correct.

 1          THE COURT:  Okay.  Okay.

 2          MR. BLAKE:  Also, the *Rafaeli* case had not been

 3   decided yet at that point, so -- which makes clear that there

 4   was a viable cause of action.  So you would be expecting these

 5   lay people who were facing eviction of their homes to pursue a

 6   cause of action that had not even been formally recognized yet

 7   at that time.  Many of these plaintiffs had -- they were --

 8   had not been evicted yet.  They weren't -- the whole process

 9   hadn't played out yet that we've set forth.  They weren't aware

10   of what would happen to their equity.  They didn't understand

11   yet that it had been taken from them and they wouldn't get

12   nothing from their paid-off homes.  And if you look in the

13   complaint which I did, the original state court complaint, the

14   word "equity" never appears.  It never talks about anything

15   after the foreclosure.  These were people that were trying to

16   avoid being kicked out of their homes is what that case was

17   about.

18          So this is a very different thing.  Now we're past

19   that, we're past the foreclosure, and we're talking about what

20   happens to the money that's in the home.

21          As far as the standings argument of Plaintiff Byers,

22   we have contended in our complaint that he was the equitable

23   owner of the home.  His then-wife was appointed as his guardian

24   in 1999 and she purchased it with his money and we pled that

25   was held for him in a constructive trust.  Now, that intent was

ARGUMENT BY MR. BLAKE

1    shown by the quitclaim deed that was attached to the response.

2    And now I agree, that as of 2020 the property was already

3    foreclosed and lost, so she couldn't really convey it back to

4    him.  But I think that that shows the intent, that the intent

5    is that it was held by her in the constructive trust.  It's

6    what we pled.  And if we need to add the ex-wife directly as a

7    party, we can try to seek permission to do that.  But that's

8    what we pled is the constructive ownership.

9         So Counts 1 and 3 of the complaint are different

10   iterations of our takings claims.  We say, of course, this is

11   [audio interrupted].  Plaintiffs were derived of their property

12   and the equity without just compensation.  Oakland County says

13   it can't be a taking because they only kept what was owed to

14   them for the taxes.  But the focus of the takings law and

15   takings cases is not on what the takings party realized; it's

16   on what the injured party lost.  So it doesn't matter what they

17   did with it or how they benefited from it; our plaintiffs still

18   lost between 85 and $285,000 in equity.

19        Oakland County didn't have to put that money into

20   their own pocket or into their own coffers in order for it to

21   be an unconstitutional taking.  And the fact that they

22   transferred the property to Southfield after taking it

23   shouldn't absolve them if it was an unconstitutional process.

24   Now, maybe that seems unfair to Oakland County.  They say they

25   were only following the law.  But it's more unfair to our

ARGUMENT BY MR. BLAKE

1    plaintiffs.  For most of these people this equity of their home

2    was their entire life's savings.  And Oakland County has sold

3    many properties at auction and retained the surplus proceeds in

4    other cases.

5         And Mr. Horton alluded he's had a lot of these other

6    cases.  So because they didn't do it here, it doesn't mean that

7    they're blameless people.  And, also, there's no requirement

8    that we find a certain statement of mind in order to have a

9    takings case.  In many takings cases the taking parties, the

10   governmental entity, is doing a good thing.  They're taking

11   property for some type of public use, and that's still a taking

12   though.  It doesn't matter what their reasoning was.  We don't

13   have to find them to be bad actors.

14        Now, in this case we have alleged some bad acts on

15   behalf of Oakland County.  We've alleged that they worked in

16   concert with the City of Southfield to help identify properties

17   with significant equity and no mortgage in order for Southfield

18   to exercise their right of first refusal and they and the

19   individuals we named all worked together in this process to

20   essentially strip the equity.  So I don't think that's enough

21   to say, well, we just only realized what was owed to us

22   because, again, the focus should be on what was taken from our

23   clients not what they ultimately received.  Unjust enrichment,

24   that's important if they didn't actually get enriched.  And

25   that's why we didn't sue Oakland County for unjust enrichment

ARGUMENT BY MR. BLAKE

1   because we don't think the money came to their pockets.  We

2   sued the other parties who actually got the money for unjust

3   enrichment.

4           So when we go back to the *Rafaeli* case, it holds, of

5   course, that there is a property right to surplus proceeds

6   after foreclosure.  It holds that their proceeds are free from

7   unlawful interference from the government entities, and the

8   retention of those surplus proceeds is a taking.  It wouldn't

9   make sense for the law to permit them, the government, to

10  circumvent someone's property right in their surplus equity by

11  transferring it to a city and then refusing to hold an auction,

12  saying, well, geez, I'm sorry, we would have given the money if

13  we had an auction but we didn't have an auction, I guess you're

14  out of luck.  That's what they're essentially saying here, and

15  I don't think that holds under the Constitution especially when

16  there's so much money that they've gotten here.

17          Now, this is something that probably will need to be

18  decided in some cases.  We have Mr. -- or Justice Viviano

19  bringing up this issue in the concurring opinion.  We have

20  another case in Oakland County, the *Jackson* case, which is the

21  same factual pattern, the plaintiff lost at the trial court.

22  He lost at the Court of Appeals, and then it went to the

23  Supreme Court.  Supreme Court remanded it for reconsideration

24  in light of *Rafaeli*.  Now, if *Rafaeli* didn't -- and we can

25  infer and maybe we'll ultimately be wrong, but we can infer

ARGUMENT BY MR. BLAKE

1   that the Court thought that *Rafaeli* had some application to

2   that case, to this fact pattern, and I think it does.  So

3   there's also a footnote in the *Freed* opinion, and I don't have

4   the citation, but the remand *Freed* opinion from Justice -- or

5   I'm sorry from Judge Friedman, Friedman --

6           THE COURT:  Wait, let's talk about *Freed* just to get

7   the citation.  *Freed* is spelled F-R-E-E-D, *v. Thomas*,

8   T-H-O-M-A-S, and it's 976 F.3d 729, Sixth Circuit, 2020, and it

9   was an appeal from Judge Bernard Friedman in this case.  Okay.

10  Just to get that record straight.  Okay, Mr. Blake.  Please

11  continue.

12          MR. BLAKE:  Okay.  I appreciate that.

13          I think there's ultimately going to have to be a

14  decision made by some case somewhere.  Nobody has directly

15  dealt with this head on and said either these claims are good

16  claims and they can proceed or that they're not good claims.

17  But there are cases percolating out there including this one

18  and including other ones.  I think ultimately somebody's going

19  to need to make a decision on this and Your Honor is as good as

20  any to do that.

21          THE COURT:  Thank you.

22          MR. BLAKE:  We also think that there could possibly be

23  a time and maybe this is the case where this question gets

24  certified to the Michigan Supreme Court as to what happens in

25  this case, how does *Rafaeli* -- what happens in a case where

ARGUMENT BY MR. BLAKE

1    there's not a public auction held because of that right of

2    first refusal.  And we're open to that as well.

3         I'm going to quickly go through the remaining counts

4    because, as I said, those things are our alternative counts.

5    For instance, Count 4, the Eighth Amendment, that's pled in the

6    alternative to the taking of the equity constitutes excessive

7    fines for the crime of not paying the property taxes.  That's

8    an alternative claim in this.

9         Count 5 is a procedural due process.  Now, that claim,

10   I think, should be because the defendants didn't provide

11   adequate notice to plaintiffs that they would be taking the

12   equity and they didn't provide a process by which the

13   plaintiffs could collect it or make a claim.  They didn't

14   provide a process by which they could realize the surplus

15   proceeds by action.  The way it's pled now, and Your Honor

16   knows we just came into the case, but the way it's pled now

17   complains about the way the foreclosure avoidance agreements

18   were handled preforeclosure.  That's not the claim we want to

19   make for procedural due process.  It's good background

20   information about the equity stripping scheme that we're

21   alleging, but the procedural due process should really deal

22   with the equity.

23        Count 6, the substantive due process claim, is also

24   claimed in the alternative.  If the retention of the equity is

25   found not to be a taking, then it's substantive due process.

**ARGUMENT BY MR. BLAKE**

1   And there was an argument about whether or not behavior shocks

2   the conscience or not and they say, well, it could be possibly

3   because here we are following the law and that's all we're

4   doing.  The Michigan Court of Appeals in the *Jackson* case,

5   state court case that we -- that I referenced, and I wish -- I

6   don't have the cite, maybe I can find it in a minute -- wrote

7   in that case that the behavior as alleged by the -- at least of

8   the Southfield entities would shock the conscience.  And I

9   think that it would if, in fact, as we allege the city

10  officials are working using that position, then they're also in

11  a non -- I'm sorry, a for-profit company and they're realizing

12  proceeds that way, that that's something that would shock the

13  conscience.

14        And, finally, the unjust enrichment claim, we haven't

15  made that case against Oakland County because, as Mr. Horton

16  has said, the money didn't go into their pocket.  So the other

17  defendants though it did and that's who we pled that to.

18        Finally, I just want to make a couple general

19  comments.  As you said, we are new to this case.  We signed on

20  as co-counsel with Mr. Smith on a number of cases.  We're also

21  signed on as co-counsel in the *Edwards* case which is

22  administratively stayed right now.  But I think there may be

23  some consolidation.

24        We would like to litigate this case and the issues in

25  this case with precision and pursue these claims efficiently.

ARGUMENT BY MR. BLAKE

1   To the extent that the Court dismisses any claims, we would ask

2   that you consider at least allowing us leave to file a motion

3   to amend not to started adding more and more claims and

4   expanding this but to really refine these claims with precision

5   to get the right parties in the case and only the right parties

6   and so forth.

7           And as I mentioned before, this may be a case where

8   the question is appropriate to be certified with the Michigan

9   Supreme Court, and we would potentially support the Court in

10  doing that.  We think this case has important issues of public

11  policy as well as its obvious importance to the residents who

12  lost their equity.

13          There are about 150 people in Southfield that we know

14  of who had this happen to them.  That's why I think this one

15  has been pled as a potential class action, but we're asking the

16  Court to allow us to move forward with these cases on their

17  behalf.  This is something that's happened to a lot of people.

18  It's decimated their lives and their life savings.  Certainly

19  people have to pay taxes, we understand that.  And if they

20  don't, there has to be a mechanism to get those taxes.  But

21  this went far beyond that and took way more money.  It is the

22  logical next extension of the *Rafaeli* decision.  There's

23  nothing that prevents these people from pursuing these claims.

24  There are cases -- this is the next step, this is the next

25  frontier.

FURTHER ARGUMENT BY MR. HORTON

```
 1              So I will be happy to try to answer any questions the
 2    Court has, but those are my remarks for today.
 3              THE COURT:  No, don't have any questions.  Very
 4    thorough.  Thank you.
 5              Okay.  Rebuttal?  Let me just get a drink of water and
 6    then we'll go to rebuttal.
 7              Okay.  Mr. Horton, please.
 8              MR. HORTON:  Thank you, Judge.
 9              Very briefly, I just want to touch on a couple of
10    things.  Judge, as you know, the state law creates property
11    law, and I actually looked up a couple of items here.  The
12    United States Supreme Court has repeatedly said that the United
13    States Constitution does not create property rights but,
14    rather, protects them.  Property rights are determined by state
15    law, and that is a state law does not establish a property
16    right.  There is no taking in its loss.  I can give you the
17    cites to those cases if you'd like, Judge.
18              THE COURT:  Put them on the record.  Go ahead.
19              MR. HORTON:  Sure.  For example, as to the protection
20    rather than creation of property interests is *Phillips versus*
21    *Washington Legal Foundation*, 524 U.S. 156 at page 164.  The
22    cases --
23              THE COURT:  Is that the normal spelling, Phillips,
24    P-H-I-L-L-I-P-S?
25              MR. HORTON:  That's right, Judge.
```

FURTHER ARGUMENT BY MR. HORTON

1    THE COURT:  Versus?

2    MR. HORTON:  Washington Legal Foundation.

3    THE COURT:  Thank you.

4    MR. HORTON:  And --

5    THE COURT:  And the year?  The year of that case?

6    MR. HORTON:  1998.

7    THE COURT:  Thank you.

8    MR. HORTON:  As to the proposition that property

9 rights are determined by state law, there's a number of cases,

10 but I'll just cite to you, it's kind of a funny name, *Stop the*

11 *Beach Renourishment*, R-E-N-O-U-R-I-S-H-M-E-N-T, *versus Florida*

12 *Department of Environmental Protection*, 560 U.S. 702 at page

13 707, and that's a 2010 decision.

14    And the Sixth Circuit case that clearly states that if

15 state law does not establish a property right, there is no

16 taking is *Raceway Park*, R-A-C-E-W-A-Y, Park *versus Ohio*, 356

17 F.3d 677 682.

18    The short version of all that, Judge, is that property

19 rights are created by state law, and the Michigan Supreme Court

20 has directly addressed that.  What counsel indicates that he

21 says, well, geez, I've lost my equity or my fair market value,

22 the Michigan Supreme Court directly addressed that and

23 expressly rejected that claim.  At page 483 of the *Rafaeli*

24 decision the Michigan Supreme Court said, "We reject the

25 premise that just compensation requires that plaintiffs be

1   awarded the fair market value of their properties."

2          And the second piece, Judge, is that Justice Viviano,

3   there was some comment about it was just done in this some kind

4   of abstract -- this right of first refusal was just addressed

5   in the abstract.  But that's not true.  Justice Viviano at

6   page 518 of his concurrence, here's the -- he goes on for about

7   two pages.  But here's the bottom line of what he says,

8   "Consequently, the majority's view of the case would seemingly

9   be that if the property does not sell at auction and is simply

10  transferred to a governmental unit, the taxpayer is out of luck

11  because there are no proceeds."

12         That's exactly what they're claiming about here,

13  Judge.  Justice Viviano tried to make that the majority opinion

14  but he lost six-one.  That's not the law in the State of

15  Michigan.

16         Finally, Judge, and I think I mentioned this to you,

17  there's a case that Judge Lawson had called *Rose versus Oakland*

18  *County* and he just issued an opinion, similar situation.  It's

19  an exercise of a municipality's right of first refusal and he

20  refused to reopen the case, and he said that it's undisputed

21  that there were no surplus proceeds from the foreclosure

22  because the City of Southfield used its right of first refusal

23  to purchase the property.  And here's what Judge Lawson's

24  bottom line is.  He says the *Rafaeli* decision offers no

25  prospect of relief for the plaintiff under these circumstances.

FURTHER ARGUMENT BY MR. HORTON

1    And he denied their motion to reopen.

2         THE COURT:  Can you set the cite for Judge Lawson's

3    case?  I know it's Oakland County.

4         MR. HORTON:  I can.

5         THE COURT:  Okay.

6         MR. HORTON:  19-CV-13066.  And I'm reading from ECF

7    Number 60, Page ID 2134.  And he just issued that --

8         THE COURT:  Is there a Westlaw?  Is there a Westlaw on

9    that?

10         MR. HORTON:  You know, I don't know, Judge.  Quite

11    frankly, [indiscernible] --

12         THE COURT:  Okay.

13         MR. HORTON:  He just issued that about ten days ago.

14         THE COURT:  Okay.  Wait a minute.  I just want to help

15    Mrs. Lizza.  So it's *Rose versus Oakland County*, Judge Lawson,

16    19-CV-13066.  And do you have the date of that decision?

17         MR. HORTON:  Yes.  It's 4-28-21, April 28th.

18         THE COURT:  4-28.  Okay, thank you so much.

19         MR. HORTON:  And I'm reading from page 6 of that

20    opinion.  I mean that's -- I don't want to keep repeating

21    myself, Judge.  We got what we were entitled to and nothing

22    more, and plaintiffs failed to state a claim against us.  Thank

23    you.

24         THE COURT:  Okay.  Thank you.  The Court wants to

25    congratulate both counsel for excellent oral argument.  The

**FURTHER ARGUMENT BY MR. HORTON**

```
 1   Court will take it under advisement, render an opinion.  Thank
 2   you all.  We are concluded.
 3            MR. HORTON:  Thank you, Judge.
 4            MR. BLAKE:  Thank you, Your Honor.
 5         (Proceedings concluded, 11:11 a.m.)
 6                        -   -   -
 7                   CERTIFICATION OF REPORTER
 8
 9      I, Leann S. Lizza, do hereby certify that the above-entitled
10   matter was taken before me remotely via videoconference at the
11   time and place hereinbefore set forth; that the proceedings
12   were duly recorded by me stenographically and reduced to
13   computer transcription; that this is a true, full and correct
14   transcript of my stenographic notes so taken; and that I am not
15   related to, nor of counsel to either party, nor interested in
16   the event of this cause.
17
18
19   S/Leann S. Lizza_____  11-30-2021
20   Leann S. Lizza, CSR-3746, RPR, CRR, RMR, RDR    Date
21
22
23
24
25
```