```
 1                     UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF MICHIGAN
 2                          SOUTHERN DIVISION

 3   TAWANDA HALL, CAROLYN MILLER,
     AMERICAN INTERNET GROUP, LLC,
 4   ANTHONY AKANDE, CURTIS LEE and
     CORETHA LEE, MARCUS BYERS and
 5   KRISTINA GOVAN, individually and
     all those similarly situated in
 6   the City of Southfield,

 7              Plaintiffs,
                                          HON. PAUL D. BORMAN
 8     v.                                 No. 20-cv-12230

 9   OAKLAND COUNTY TREASURER ANDREW
     MEISNER, in his official and
10   individual capacities, OAKLAND COUNTY,
     SOUTHFIELD NEIGHBORHOOD REVITALIZATION
11   INITIATIVE, LLC, CITY OF SOUTHFIELD,
     FREDERICK ZORN, in his official and
12   Individual capacities, SOUTHFIELD
     MAYOR KENSON SIVER, in his official
13   and individual capacities, SOUTHFIELD
     NON-PROFIT HOUSING CORPORATION, HABITAT
14   FOR HUMANITY OF OAKLAND COUNTY INC.,
     SUE WARD-WITKOWSKI, in her former
15   official and individual capacities,
     GERALD WITKOWSKI, in his official
16   and individual capacities, TREASURER
     IRVIN LOWENBERG, in his official
17   and individual capacities, MITCHELL
     SIMON and E'TOILE LIBBETT,
18
                Defendants.
19   _____/

20            DEFENDANTS' MOTIONS TO DISMISS
                 (Held Via Videoconference)
21
         BEFORE U.S. DISTRICT JUDGE PAUL D. BORMAN
22              231 West Lafayette Boulevard
                      Detroit, Michigan
23            Tuesday, September 28, 2021
                        2:12 p.m.
24
              To Obtain Certified Transcript, Contact:
25   Leann S. Lizza, CSR-3746, RPR, CRR, RMR, CRC, RDR
                       (313) 234-2608
```

```
 1   APPEARANCES:

 2      For the Plaintiffs:          JAYSON E. BLAKE
                                     McAlpine, P.C.
 3                                   3201 University Drive
                                     Suite 100
 4                                   Auburn Hills, Michigan  48326
                                     (248) 373-3700
 5
                                     SCOTT F. SMITH
 6                                   Smith Law Group
                                     30833 Northwestern Highway
 7                                   Suite 200
                                     Farmington Hills, Michigan
 8                                      48334
                                     (248) 626-1962
 9
        For the Oakland County       MATTHEW T. NICOLS
10      Defendants:                  Pentiuk, Couvreur & Kobiljak,
                                        P.C.
11                                   2915 Biddle Avenue, Suite 200
                                     Wyandotte, Michigan  48192
12                                   (734) 281-7100

13      For Defendants City of       MICHAEL A. KNOBLOCK
        Southfield, Zorn, Siver,     Seward Henderson, PLLC
14      Witkowski, Ward-Witkowski    210 East Third Street
        and Lowenberg:               Suite 212
15                                   Royal Oak, Michigan  48067
                                     (248) 733-3580
16

17

18

19

20

21

22

23

24

25
```

**TABLE OF CONTENTS**

Motion Hearing                                                    Page

  **Motion to Dismiss - Southfield Non-Profit Housing**          5

  **Corporation defendants**

    Argument by Mr. Nicols                                      5

    Argument by Mr. Smith                                      15

    Further argument by Mr. Nicols                             26

  **Motion to Dismiss - Southfield defendants**                 29

    Argument by Mr. Knoblock                                   29

    Argument by Mr. Smith                                      39

    Further argument by Mr. Knoblock                           49

  **Motions taken under advisement**                           51


Exhibits:                                                     Received

  (None offered.)

## MOTIONS TO DISMISS

```
 1                                  September 28, 2021

 2                                  Detroit, Michigan

 3                         -   -   -

 4       (Court and Counsel present; 2:12 p.m.)

 5          THE COURT:  Okay.  This is Judge Paul Borman presiding

 6   in Civil Case Number 20-12230, Tawanda Hall, et al. versus

 7   Oakland County, City of Southfield, et al.  The motions we're

 8   hearing today are the motion of -- against the Southfield

 9   Non-Profit Corporation, SNHC [sic]; Revitalization Initiative;

10   Mitchell Simon; and E'Toile, E, apostrophe, T-O-I-L-E,

11   Libbett's motion to dismiss the complaint.  And then we're also

12   going to hear the City of Southfield's motion to dismiss the

13   complaint.

14          We'll start with the one I referenced.  We'll call it

15   SNRI.  So we're going to -- and then after we hear the argument

16   on that, we'll go to the other one.  So for the first case

17   we're going to have Mr. Smith on behalf of plaintiffs and

18   Mr. Nicols on behalf of the defendant.  So why don't the

19   attorneys who are going to be arguing this afternoon identify

20   themselves for the record and who their clients are beginning

21   with the plaintiff.

22          MR. SMITH:  Oh, it's Scott Smith for the plaintiff,

23   Your Honor.

24          THE COURT:  Okay.  Thank you.

25          And for the Southfield Non-Profit Housing Corporation?
```

1          MR. NICOLS:  Yes.  Good afternoon.  Matthew Nicols

2    appearing on behalf of the defendants, for Southfield

3    Non-Profit Housing Corp., Southfield NRI, E'Toile Libbett, and

4    Mitchell Simon.

5          THE COURT:  Okay.  When you speak, speak slowly and

6    loudly.  If you mention a case name and it's other than Smith

7    or Freed or Jones, Freed spelling F-R-E-E-D, spell it out and

8    give a cite to that case as well.

9          So we'll begin with Mr. Nicols, please.  Thank you.

10          MR. NICOLS:  Thank you, Your Honor.  And before I

11    start, thank you to the -- to Your Honor and your staff for

12    being accommodating.  I apologize for throwing a wrench for

13    today's in-person hearing, but I wanted everyone to be fully

14    advised as to the situation.  So I appreciate --

15          THE COURT:  We appreciate your being up front with

16    that and allowing us to take this remedial action which because

17    we have an outstanding IT department here, particularly on this

18    matter, an outstanding clerk's department with -- and

19    outstanding chambers of mine, we're able to do this and proceed

20    today on these important motions.  So please proceed,

21    Mr. Nicols.

22          MR. NICOLS:  Thank you, Your Honor.

23          As it pertains to Southfield's Non-Profit Housing

24    Corporation defendants which include Southfield Neighborhood

25    Revitalization Initiative who I'd like to refer to as SNRI for

ARGUMENT BY MR. NICOLS

1    these proceedings, Defendants Libbett and Simon, we're really

2    just looking at a claim of unjust enrichment following a tax

3    foreclosure of real property that were previously owned by the

4    plaintiffs, and the SNRI defendants are -- well, SNRI is a

5    subsequent transferee of those tax foreclosed properties.  I

6    think the facts are rather --

7           THE COURT:  Why don't you [audio interrupted] how they

8    get to SNRI as a -- start, you know, just a little historical

9    with the foreclosure.  Please proceed.  Thanks.

10          MR. NICOLS:  Sure.  Your Honor, the plaintiffs all

11   failed to pay property taxes.  All of their homes were located

12   in the City of Southfield.  The Oakland County Treasurer

13   thereafter foreclosed on plaintiffs' properties pursuant to

14   Michigan's General Property Tax Act after which point the

15   Oakland County Treasurer obtained a judgment of foreclosure

16   from the Oakland County Circuit Court, and after that

17   foreclosure became final, the City of Southfield exercised its

18   right of first refusal and purchased the plaintiffs' properties

19   from the Oakland County Treasurer for the minimum bid.  That

20   was under the statute of MCL 211.78m(1).

21          From there the SNRI purchased those properties from

22   the City of Southfield.  The SNRI program was created by the

23   Southfield Non-Profit Housing Corporation as its sole member,

24   formed for the purpose of purchasing tax foreclosed homes,

25   restoring -- completely restoring and improving those homes and

ARGUMENT BY MR. NICOLS

1  selling those properties to new homeowners in the city to

2  provide homeownership opportunity throughout the city and

3  restoring blighted areas.

4         THE COURT:  Now, isn't the Mayor Siver, S-I-V-E-R, a

5  board member and the president of SNPHC which is the sole

6  member of SNRI?

7         MR. NICOLS:  I believe he is on the board of the

8  Non-Profit Housing Corporation, but he is not in -- he is not a

9  member of the SNRI.

10         THE COURT:  Okay.  Okay.  I see Mr. Zorn is a

11  registered agent for SNRI, and he is the city manager of

12  Southfield?

13         MR. NICOLS:  Yes, Your Honor.

14         THE COURT:  Okay.  Okay.  So go ahead.

15         MR. NICOLS:  SNRI, its managers, E'Toile Libbett --

16  Mitchell Simon was at one point.  He is no longer manager of

17  SNRI.  Mr. Zorn and Cory Moffitt have since replaced Mr. Simon.

18         THE COURT:  Can you re -- spell Moffitt's name to help

19  Mrs. Lizza, please.

20         MR. NICOLS:  Yes, Your Honor.  Your Honor, I do not

21  have the spelling in front of me.

22         THE COURT:  Well, we'll spell it M-O-F-F-I-T-T, and if

23  it's changed, you can let us know later.  Go ahead.

24         MR. NICOLS:  I will, Your Honor.  And if I find it, I

25  will.

ARGUMENT BY MR. NICOLS

1          THE COURT:  Okay.

2          MR. NICOLS:  As it relates to the City's right of

3     first refusal which was under MCL 211.78M(1), this Court has

4     already stated in its prior opinion granting Oakland County

5     Treasurer's motion to dismiss that the right of first refusal

6     and the subsequent amended statute itself does not provide a

7     basis for liability against the defendant as it pertains to the

8     tax foreclosure of this case.

9          The SNRI program is a lawful program.  There have been

10    similar programs throughout the State of Michigan where the

11    Court of Appeals has looked at those programs and has deemed

12    those lawful under Michigan law.  There's two main cases, the

13    first being *Rental Properties Owners Association of Kent County*

14    *versus Kent County Treasurer*.  The citation for that case, Your

15    Honor, is 308 Mich. App. 498, 2014.

16          THE COURT:  Thank you.

17          MR. NICOLS:  The second case, Your Honor, is *City of*

18    *Bay City versus Bay City County Treasurer*.  Citation for that

19    case, 292 Mich. App. 146 at page 166, year 2011.

20          THE COURT:  Thank you.

21          MR. NICOLS:  Under -- in those two cases both the

22    Court of Appeals found that programs very similar to SNRI

23    were -- tax foreclosed properties were being purchased to

24    rehabilitate and restore neighborhoods satisfied a public

25    purpose requirement under the then-statute.  That's really the

ARGUMENT BY MR. NICOLS

```
 1   basic facts of this case, Your Honor.
 2            As far as the legal basis for our motion to dismiss
 3   plaintiffs' claims, I believe that for the same reasons that
 4   this Court granted Oakland County's motions to dismiss on the
 5   basis of res judicata and lack of standing as plaintiffs
 6   Carolyn Miller, American Internet Group, Plaintiff Akande
 7   and --
 8            THE COURT:  Spell Akande to help Mrs. Lizza, please.
 9            MR. NICOLS:  Yes, Your Honor.  A-K-A-N-D-E.
10            THE COURT:  Thank you.
11            MR. NICOLS:  You're welcome.
12            I think the same reasons why Oakland County's motion
13   was granted based on res judicata and lack of standing apply no
14   differently in the claims against the SNRI defendant, the
15   Non-Profit Housing Corp. and Libbett and Simon.  Both -- the
16   SNRI were involved in the prior lawsuit, *Hayes versus Oakland*
17   *County Treasurer, et al.* in Oakland County Circuit Court, Case
18   Number 17-157366-CZ which was a case that involved claims
19   involving the same tax foreclosures, claims of discrimination
20   and housing practices, all again relating to same foreclosures
21   that the plaintiffs are litigating their current claims here
22   before this court.
23            THE COURT:  You're saying that SNRI was a party to
24   that --
25            MR. NICOLS:  Yes, Your Honor.
```

```
 1              THE COURT:  -- proceeding?

 2              MR. NICOLS:  And even if some of the defendants were

 3    not specifically named, the doctrine of res judicata would

 4    still apply based on the concept that the unnamed defendants

 5    are essential privies to the SNRI defendant who was named, so

 6    it should apply to those additional defendants as well.

 7              THE COURT:  How do you get the privy status to give

 8    them a wash?

 9              MR. NICOLS:  Well, Your Honor, I think it's based on a

10    relation or a relationship that the defendants are -- well,

11    it's actually the claims against the named defendant in the

12    prior action could have at that time been pled against the

13    unnamed defendant who is also in this action.

14              THE COURT:  So let's say SNRI was in there but SNPHC,

15    Simon, and Libbett were not named plaintiffs -- or defendants.

16    They weren't named parties in that prior state court action.

17    Right?  So --

18              MR. NICOLS:  But based on the -- that's correct, Your

19    Honor, but based on the -- I believe the relation of the

20    parties, their interests in the same subject matter would

21    create privy that would also -- that the concept and doctrines

22    of res judicata would also apply in those defendants.

23              THE COURT:  Okay.

24              MR. NICOLS:  Moving from that, Your Honor, I think

25    addressing the main claim of unjust enrichment against the SNRI
```

ARGUMENT BY MR. NICOLS

1   and Southfield Non-Profit Housing Corporation is that I think

2   you should first look to the *Rafaeli* ruling.  *Rafaeli*

3   essentially stated that --

4           THE COURT:  Let's just spell to help Mrs. Lizza.

5   Thank you.

6           MR. NICOLS:  Thank you, Your Honor.  *Rafaeli* is

7   R-A-F-A-E-L-I.

8           THE COURT:  Thank you.

9           MR. NICOLS:  The -- *Rafaeli*, the Supreme Court opinion

10  that a former owner of tax foreclosed properties as a

11  compensable takings claim, it's a takings claim if and only if

12  the taxed foreclosure sale produces a surplus.  Plaintiffs'

13  complaint and claims against the SNRI defendants here,

14  specifically unjust enrichment, seek to recover what they

15  define -- describe as surplus equity which is not -- which is

16  different from surplus proceeds.  In the *Rafaeli* case, that

17  property went to an auction and was sold for amounts that

18  exceeded the minimum bid or the amounts to redeem the property

19  from the Oakland County Treasurer.  In this case, completely

20  different; it's a right-of-first-refusal case.  So there was no

21  surplus proceeds after the tax foreclosure sale.  There just

22  weren't any.

23          *Rafaeli*, Justice Viviano in his concurring opinion,

24  did identify instances under Michigan's General Property Tax

25  Act where there could be instances where surplus proceeds are

1  not realized or recognized as a result of the way the statute

2  was drafted.  But no other justice of the Michigan Supreme

3  Court jumped onto that opinion, and the majority of the court

4  limited that compensable takings claim to only that amount that

5  exceeds the minimum bid or the surplus proceeds after the sale.

6      This -- the claim of unjust enrichment here looks to

7  or relies on the plaintiffs' theory that there is law that

8  establishes a property right to recover surplus equity.  But,

9  in fact, there is no case law to support that.  There's no law

10  that states that the former property owner of tax foreclosed

11  property has a right to recover surplus equity or essentially

12  the fair market value of their property less what they owed

13  taxes.  *Rafaeli* only dealt with claims against the foreclosing

14  governmental unit.  *Rafaeli* did not stand for the position that

15  a former owner of tax foreclosed property may assert a takings

16  claim or any other claim against the subsequent transferee of

17  tax foreclosed property.

18      I think Judge Tarnow in a recent opinion looked at

19  this unjust enrichment claim and summarized it quite well.  The

20  elements among unjust enrichment are twofold:  One, that a

21  defendant receive the benefit from the plaintiff, and, two,

22  that there's an inequity as a result to the plaintiff.

23      In addressing this -- the case of *Karaus* which is

24  spelled C-A-R-A-U-S [sic], that the party may have a claim for

25  unjust enrichment where the defendant did not confer a benefit

1    immediately from the plaintiff.  In the situations like that

2    that requires a plaintiff to allege evidence of misconduct,

3    wrongdoing or a scheme involving the loss of plaintiffs'

4    property.  And in his opinion in the *Estate of Dell Johnson*

5    *versus Andrew Meisner, et al.* which did include the same

6    defendants in this case, Your Honor --

7            THE COURT:  State the first name again.  Something

8    Bell?  Spell the first name before --

9            MR. NICOLS:  Yes.  The plaintiff was the Estate of

10   Dell, D, as in dog, E as echo, L-L.

11           THE COURT:  Thank you.

12           MR. NICOLS:  Johnson.  That is Case

13   Number 19-CV-11569, and the order I'm referring to is at ECF

14   Number 125.  And as it related to the Estate of Dell Johnson's

15   claim for unjust enrichment against those defendants,

16   Judge Tarnow stated that the "plaintiff has not plausibly

17   alleged such conduct.  The plaintiff's allegations are terse,

18   conclusory, and lack specific support to a claim.

19   Additionally, plaintiff's allegations merely amount to

20   defendants' lawful use of Michigan's foreclosure law."

21           I think that's the important thing to focus in on,

22   Your Honor, is that what it really boils down to in the

23   plaintiffs' unjust enrichment is that they're complaining that

24   the defendants followed Michigan's foreclosure law.  That

25   law -- and the actions by those -- by these defendants were not

1    unlawful then, and they weren't unlawful now.

2         I think where I'd like to end off, Your Honor, is as

3    it relates to the Southfield Non-Profit Housing Corporation

4    defendant, Mitchell Simon and E'Toile Libbett, I think the

5    complaint fails to meet the basic pleading standard to raise

6    plausible inference of wrongdoing by them.  If we look to the

7    complaint, the allegations pled against these defendants appear

8    only in a few numbered paragraphs.  For example, in paragraph 6

9    the complaint merely states that the Southfield Non-Profit

10   Housing Corporation is a 501(c)(3) non-profit corp.  Similarly,

11   in paragraph 10, the plaintiffs allege that Defendant Mitchell

12   Simon is a CPA and treasurer of the Southfield Non-Profit

13   Housing Corp., and in paragraph 71 more general allegations

14   about removing properties from the tax rolls.  Those are the

15   only two allegations that involve Mitchell Simon.  Likewise,

16   with Defendant Libbett, he appears in 11, that he is a real

17   estate broker and a member of the SNRI.  Those allegations do

18   not support or show any wrongdoing to support any type of claim

19   against them and that those allegations alone, I mean based on

20   that, these defendants should be dismissed from the case.

21        So with that, Your Honor, I will rest.  I would

22   request a brief minute or two --

23        THE COURT:  You have an opportunity to reply since

24   you're the moving party.  So you can reply after the plaintiff

25   argues, sir.

**ARGUMENT BY MR. SMITH**

```
1            MR. NICOLS:  Thank you, Your Honor.
2            THE COURT:  Right.
3            Mr. Smith, please.
4            MR. SMITH:  Thank you, Your Honor.
5            Scott Smith for the plaintiff.
6            First let me start out, Mr. Nicols made an allegation
7     that there is no takings claim against his clients.  I don't
8     believe it's true.  Count 2 states the takings claim against
9     all his clients.  So basically my argument is going to focus on
10    two claims against Mr. Nicols' clients.  One is the unjust
11    enrichment claim, and one is takings claim.
12           THE COURT:  Where is the takings claim in the
13    complaint?
14           MR. SMITH:  It's Count 2.
15           THE COURT:  Okay.  Okay.  Very good.  And let's start
16    with takings.  What is that based upon?  Do you deny the
17    statute that permitted the county to foreclose the city to buy
18    from the county and then going further?  Do you deny those laws
19    create the we'll call that the structure of what we're dealing
20    with?
21           MR. SMITH:  Well, I don't think the laws were -- first
22    of all, those laws, I believe, are unconstitutional, the right
23    of first refusal, I believe that *Rafaeli* never dealt with this
24    specific issue.  The only judge that did deal with it was
25    Judge Viviano where he made a statement -- it may be better to
```

1  quote it so I don't mess it up.  He says, Judge Viviano says --

2  one second.

3          THE COURT:  Sure.  There's no rush.

4          MR. SMITH:  He says, "Consequently, I would not rule

5  out the possibility that 'just compensation' might require

6  something greater than the surplus in a particular case,

7  especially in cases in which the government purchased the

8  property for the minimum bid."  And he says, "We have no reason

9  to decide this issue in this case because, although the

10 plaintiffs nominally distinguish equity and surplus, they offer

11 no argument to suggest that the tax foreclosures here failed to

12 obtain a fair price for the properties."

13          Well, we're suggesting very strongly --

14          THE COURT:  Let me ask you this, Mr. Smith.  This

15 appears then to be dicta from Justice Viviano and also from a

16 justice who is one out of seven on the Michigan Supreme Court.

17 So how can that be authority to support your argument?

18          MR. SMITH:  Well, what I'm saying is, is that his

19 statement along with the facts that we had a case almost

20 identical to this remanded from the Michigan Supreme Court

21 which they said the behavior was unconscionable leads one to

22 believe that the Michigan Supreme Court have not really decided

23 this issue.  And also, as you know, as you noted in one of your

24 opinions, the legislature basically repealed this law and it

25 heavily implied it was repealed because it was

ARGUMENT BY MR. SMITH

1   unconstitutional.  That might be dicta, but in the prior law if

2   the State of Michigan had purchased the property which was a

3   consideration, they would have had to pay fair market value.

4          Now -- and this is in the right of first refusal.

5          So basically by not entertaining this takings claim --

6   and there's two ways to consider it, under Michigan in Takings

7   Clause, which *Rafaeli* only was determined under Michigan

8   Takings Clause, and the federal Fifth Amendment Takings Clause.

9          And so, accordingly, if you just try to limit by a

10  couple sentences that are always said, ignoring all the

11  background of the case that this only involved surplus from

12  a -- an auction and you don't consider when there's no auction,

13  you're basically making an unconstitutional former statute.

14  You have two classes of people.  You have people whose property

15  went to auction and property that was just taken by the State.

16  And the *Rafaeli* and other places talks about the legacy of the

17  Michigan common law under Judge Cooley -- Justice Cooley.

18         THE COURT:  And let me ask you this question,

19  Mr. Smith.  On page 7 of your response to the Defendants'

20  motion to dismiss, your brief states in the last four lines on

21  that page, "There still is no adequate remedy or procedure to

22  to address the unlawful conduct in this case until the Michigan

23  legislature finds *Rafaeli*, *LLC, supra* retroactive.  Even then,

24  ambiguity will persist (see Justice Viviano's concurrence in

25  *Rafaeli*, *LLC, supra*)."

1    Are you basically saying that right now there is no

2 adequate procedure and you're asking this court to create a

3 procedure even though we're not in the business of legislating

4 ever?

5    MR. SMITH:  No.  I understand that.  But the Court

6 could -- could ask -- could certify the question of Michigan

7 Supreme Court and the questions going back to the Michigan

8 Supreme Court because *Rafaeli* is on appeal again.  The law is

9 unsettled.  And it's because Oakland County Circuit

10 Judge Langford-Morris failed to find it retrospective even

11 though the decision was in that case and it's only applied

12 prospectively.

13    Furthermore, you're hitting upon another thread that I

14 think is a new development.  There's a case called *Harrison*

15 *versus Montgomery County* which was -- I'll give you a cite for

16 it.  It's so new it hardly has a cite, but it was decided

17 May 11th, 2021, and the cite so far is 2021 U.S. App. Lexis

18 13883.

19    THE COURT:  Which court is that, Mr. Smith, if you can

20 help us?

21    MR. SMITH:  It's the Sixth Circuit, United States

22 Sixth Circuit Court of Appeals.

23    THE COURT:  Okay.  So that's our court.  Okay.  And is

24 that -- you know if that's published or unpublished?  Does it

25 state that?  And the date you said was May 11th, 2021.  Okay.

 1          MR. SMITH:  Yes, I believe it's going to be published,

 2   that's my understanding.

 3          THE COURT:  Okay.

 4          MR. SMITH:  And it's really more analogous especially

 5   in the federal law to this case than any of the precedent so

 6   far because what it involved was looking at the SNRI's behavior

 7   in its best light is -- they're claiming it's a public purpose

 8   which is a statement of fact, keep people in their homes.

 9   Well, the people were already in their homes.  There's no --

10   if -- we state there's absolutely no blight.  A lot of these

11   houses are well above the median home price in Michigan.

12   They've done no work on them.  There's no public purpose.

13          But getting back to *Harrison*, *Harrison* was a case that

14   impacts this case in multiple ways.  First of all, it was about

15   a Ohio law which you could avoid a tax auction by the

16   determination that the house was in poor condition and they

17   would send it to a land bank --

18          THE COURT:  Does the fact that, sir -- does the fact

19   that it's Ohio law and we're dealing with Michigan law here

20   take it out of consideration by this court in Michigan?

21          MR. SMITH:  I don't believe so because the statute's

22   very similar.  And they're dealing -- and Justice Sutton, who

23   wrote this opinion, he made a number of points as far as

24   federal takings claims.

25          First of all, same exact situation where there was no

1   auction, that the legislature created a system where they could
2   bypass the auction process supposedly for public purpose.  Even
3   so, they said you can't do that; you have to give someone a
4   chance to get their equity under the United States Fifth
5   Amendment.
6           There was also the preclusion issue.  The res judicata
7   issue -- excuse me.  Res judicata issue which the court --
8   which clearly said that there was a trap, a catch-22 because
9   during the case, just as in this case, the *Knick* decision was
10  decided.
11          THE COURT:  Spell that.
12          MR. SMITH:  K-N-I-C-K.
13          THE COURT:  Okay.
14          MR. SMITH:  It's a Supreme Court decision of the
15  United States which basically got rid of the Williamson test of
16  ripeness.  During this case none of my clients had access to
17  federal court not only because of the ripeness thing, they
18  would have to go in state court where they had no right and
19  then it would be res judicata.  The Court in *Harrison versus*
20  *Montgomery County* said when your rights are impaired, you don't
21  have a clear choice.  Then if you proceed in the state system,
22  they can say it's res judicata.  It puts an impediment on your
23  access to the court.  This is exactly what happened here.  So
24  this undercuts their preclusion argument on res judicata.  It's
25  the same, exact situation.  And obviously the Sixth Circuit,

**ARGUMENT BY MR. SMITH**

1    the recent decisions, are trying to protect people's property

2    rights under the Fifth Amendment.  In this case it's absolutely

3    no ability.

4         Now, when this case goes back to the Supreme Court

5    whether by a federal circuit applying *Rafaeli* or by another

6    similar state case, the Supreme Court is going to have to

7    decide whether the new statute which would not permit this type

8    of inequity -- everyone agrees it's unfair; the question is --

9    many jurists have said that, from Judge Berg to Judge Shapero

10   in Michigan, to Judge Kethledge, I believe his name is.

11        THE COURT:  Kethledge.

12        MR. SMITH:  Thank you.  I'm sure you personally know

13   him; I don't.  Have said there's no question it's unfair; the

14   question is how do you enforce people's property rights.

15        So I mean we've covered a lot of different issues with

16   one case, but I do not agree as it sits right now, even people

17   whose houses went to auction within the statute of limitation

18   have no rights in Michigan at least in Oakland County, and

19   certainly my clients which is a finite set of people who --

20   let's talk about something.  You know, Mr. Nicols said a lot of

21   things except it's obviously true and it has been pled that the

22   Southfield government and his clients are totally intertwined.

23   And one's a private company.  And no one -- I don't think the

24   legislature, when they created them, most likely

25   unconstitutional right of first refusal under the old

ARGUMENT BY MR. SMITH

1   MCL 211.71m(1) were envisioning or the authorities that he

2   mentioned, Kent County, envisioned a private third party taking

3   these properties for no public purpose which is a issue of

4   fact, but for this motion it should be considered as true --

5           THE COURT:  When you say for no public purpose, aren't

6   they taking the properties to rehabilitate, to sell them and to

7   improve the city's housing?

8           MR. SMITH:  I have at least a score of clients who

9   still live in their houses.  They're valued at over $300,000.

10  They have no lien.  They only lost the house for sometimes as

11  little as four or five thousand dollars.  What public purpose

12  is that?  And meanwhile, under oath Mr. -- in the bankruptcy

13  court Mr. Zorn admitted that they had up to that point, a year

14  ago, netted over $14 million for themselves which they didn't

15  have to put back into the case.

16          And really the analysis here is more like a fraudulent

17  transfer analysis which there was a recent case by

18  Judge Nicholson of -- in the same fact situation called

19  Robinson versus the Southfield Neighborhood Revitalization

20  Initiative which found that this whole idea of selling these

21  houses was a constructively fraudulent conveyance because it

22  had no -- there's absolutely no way for these people to get any

23  value out of their homes.  That's a recent decision, July.

24  It's been remanded to the bankruptcy court.

25          And also, Your Honor, more directly on the argument,

ARGUMENT BY MR. SMITH

1  the defendants in this motion seem to conflate [indiscernible]

2  with an unjust enrichment claim.  Shall I proceed, Your Honor?

3       THE COURT:  Please.  Yes.

4       MR. SMITH:  There's -- obviously there's two separate

5  causes of action, unjust enrichment and a takings claim, but

6  it's interesting to note one of the bases of the *Rafaeli* case

7  to say that there was a common law right was an unjust

8  enrichment case when the government in the case called *Dean*,

9  it's on -- I think it's on page 32 of the *Rafaeli* decision --

10       THE COURT:  Spell *Dean*.  Spell *Dean*, please.

11       MR. SMITH:  D-E-A-N versus State of Michigan.

12       THE COURT:  Thank you.

13       MR. SMITH:  That's in the *Rafaeli* main decision.  And

14  the facts are is that in this case instead of giving it to a

15  city, the state took the property and sold it for $10,000.  The

16  court found that there was a viable unjust enrichment case, and

17  *Rafaeli* uses that as a basis to say that there is common law in

18  Michigan that represented people's property and that -- if the

19  state took the property without giving them an opportunity to

20  get surplus, and that was permitted.

21       More specifically, in the Eastern District of -- court

22  of -- the fact that the Southfield Neighborhood Revitalization,

23  LLC recorded a deed where they got the property for $1 isn't --

24  the first transferee is undercut by a case by Judge Leitman,

25  Matthew Leitman, in the *Kerrigan* decision.  It's in my brief,

ARGUMENT BY MR. SMITH

1   and which stands for the proposition that you can have an

2   unjust enrichment cause of action.  You can have that where the

3   beneficiary is unjustly enriched and has involvement or

4   misleads people.

5           This whole program of getting this -- these houses to

6   the LLC is misleading.  It serves no public purpose.  We should

7   have a right to develop a record on that -- on those issues.

8   We've had no discovery even though there are public resolutions

9   that make it perfectly clear.  Although they misstate the

10  facts, they say it's going to Habitat for -- of Humanity as

11  opposed to a insider-created Southfield Neighborhood

12  Revitalization Initiative.  So I think the law on unjust

13  enrichment both in the *Dean* State of Michigan case and as

14  interpreted by the Eastern District in the Kerrigan versus

15  Vi -- I don't know if I say this right, versus Visalus, I

16  believe.

17          THE COURT:  Spell it, please.

18          MR. SMITH:  I knew you were going to ask me to do

19  that.

20          THE COURT:  Well, you can come back to it later and

21  give us that when you argue the other side.  So, okay.

22          MR. SMITH:  I have five minutes.  There's a lot of

23  layers to this.

24          THE COURT:  Okay.  You have five more minutes on this

25  issue, then we'll go over to the brief reply and then we'll do

**ARGUMENT BY MR. SMITH**

1   the other case.

2          MR. SMITH:  Well, I think I've hit most of the points.

3   I mean the -- what the SNRI did is misleading because it says

4   it was going to fight blight and also because it was going to

5   prevent rentals, but they, in fact, just sold the house and

6   created -- they just stripped the equity, sometimes hundreds of

7   thousands of dollars.  It wasn't put back in the city; it

8   wasn't a public purpose.  It was misleading.

9          And I think just two more points.  I think you have to

10  make a distinction when a property is sold to pay the taxes at

11  an auction and where it's the actual government moving around

12  these properties and profiting.  I mean goes back to what

13  Justice Cooley said, that you -- the state should only take

14  what is needed to pay the taxes.

15         And, finally, I covered this in my brief, even though

16  the Southfield Neighborhood Revitalization Initiative and

17  Non-Profit and people who control those and those Southfield

18  officials who were -- the Michigan Court of Appeals said their

19  behavior was unconscionable and didn't give people faith in

20  government.  Beyond that I did -- in section 3 of my brief in

21  this matter, this has been awhile back, is a lot of case law

22  where a nongovernment official, an entity of -- acts in concert

23  with state officials, the public officials -- that they can be

24  held liable under 42 U.S.C. 1983, again, the Takings Clause.

25  One of the more recent cases is the Sixth Circuit case called

FURTHER ARGUMENT BY MR. NICOLS

1    *Siefert versus Hamilton County*, 951 F.3d 753, 2020.

2         So I think Southfield and Mr. Nicol's clients are

3    totally intertwined in something that doesn't serve a public

4    purpose.  It unjustly enriches them.  There's no

5    accountability.  There's tens of millions of dollars floating

6    out there.  Just -- and it's interesting, these houses, they

7    don't pay any taxes, property taxes, on these houses.  They say

8    that the SNRI is a part of a non-profit.  They take them off

9    the tax rolls.  How that's helping the City of Southfield, I

10   don't see how that's plausibly suggested.  So --

11        THE COURT:  Okay.

12        MR. SMITH:  So for those reasons, I think we've -- we

13   have two plausible counts.  Now --

14        THE COURT:  Okay.  You've argued those.  Okay.

15        MR. SMITH:  I thank you for your time, Your Honor.

16        THE COURT:  Okay.  Mr. Nicols, do you want to respond

17   briefly?

18        MR. NICOLS:  Yes, Your Honor.

19        THE COURT:  Yes.

20        MR. NICOLS:  Two, maybe three quick points.

21   Addressing plaintiffs' assertion that they have raised the

22   takings claim against the Southfield NRI, the Non-Profit

23   Housing Corp., that is just not what the pleadings indicate.

24   In fact, in their Count 2 of Plaintiffs' complaint, the only

25   named defendants that appear in any of these allegations are

27

1   Defendants Oakland County and Defendant Southfield.  If the

2   county -- Oakland County Treasurer and the City of Southfield.

3   Nowhere in any of their factual allegations or any counts

4   involving the takings claim do they include any statements or

5   allegations against the SNRI or the Non-Profit Housing

6   Corporation.

7           Furthermore, in response to the argument that the SNRI

8   or the Non-Profit Housing Corp. are state actors, I disagree.

9   I think you have to look at who was the entity that's enforcing

10  the most important order here.  In the plaintiff's case that's

11  the judgment of foreclosure and that's the general --

12  Michigan's General Property Tax Act.  The defendant who was

13  enforcing that law and those judgments of foreclosure was the

14  Oakland County Treasurer.  The Non-Profit Housing Corporation,

15  SNRI, or Defendants Simon or Libbett had zero involvement in

16  the tax foreclosure process, Plaintiffs' obligation to pay

17  taxes, their failure to pay taxes and the resulting foreclosure

18  of their properties on that basis.  And furthermore, there's --

19  the entwinement series is not pled in the complaint.

20          Quick point number two about the bankruptcy case --

21          THE COURT:  It is pled in Mr. Smith's response to your

22  motion, the entwinement matter.

23          MR. NICOLS:  It's in the brief, Your Honor.

24          THE COURT:  It was.

25          MR. NICOLS:  And we did address that in our reply --

FURTHER ARGUMENT BY MR. NICOLS

1      THE COURT:  Right.

2      MR. NICOLS:  -- that I submitted to the Court.

3      THE COURT:  Gotcha.  Okay.

4      MR. NICOLS:  Regarding the bankruptcy case that

5  counsel mentioned, *In Re Patrice Robinson*, that case involves a

6  claim that can only be brought under the bankruptcy code, the

7  constructive fraudulent transfer under 11 U.S.C. Section 548.

8  That has no bearing with any of the claims, facts or

9  allegations in this case.  That's a bankruptcy court case.  The

10  bankruptcy court claim and that case is still being litigated

11  before the United States bankruptcy court in the Eastern

12  District of Michigan.  There's been no final determination on

13  the merits of that claim for constructive fraudulent transfer.

14      And then lastly, Your Honor, as relates to unjust

15  enrichment, I think that *Rafaeli* ever -- I recall in the

16  *Rafaeli* opinion, you know, they indicated that when addressing

17  a situation where -- I think they were addressing the

18  plaintiff's argument for unjust enrichment, and the reason why

19  they rejected that theory was that if they -- if defaulting

20  taxpayers were able to recover fair market value of their

21  properties, they would be benefitting, they themselves would be

22  benefitting from their failures to pay property taxes.  So with

23  the theory of unjust enrichment, I think the plaintiffs are

24  trying to essentially flip things around and benefit themselves

25  from their own failure to pay property taxes.

ARGUMENT BY MR. KNOBLOCK

1              And with that, Your Honor, I'll turn it over to

2    counsel for the City.

3              THE COURT:  We're going to take a humanitarian break

4    for Mrs. Lizza and a couple others.  So why don't we --

5    Mrs. Lizza, ten?

6              THE REPORTER:  Ten minutes is fine, Judge.

7              THE COURT:  Okay.  We'll take a ten-minute break and

8    then resume with the second motion.  Thank you.

9              MR. SMITH:  Thank you, Your Honor.

10        (Court in recess; 3:04 p.m. to 3:14 p.m.)

11             THE COURT:  Counsel for the City of Southfield, et

12   al. to proceed and then Mr. Smith will respond.  Please

13   proceed, sir.

14             MR. KNOBLOCK:  Yes, thank you, Your Honor.  And good

15   afternoon.  Michael Knoblock appearing on behalf of the City of

16   Southfield, Frederick Zorn, Kenson Siver, Sue Ward-Witkowski,

17   Gerald Witkowski, and Irvin Lowenberg.

18             THE COURT:  Thank you.

19             MR. KNOBLOCK:  And Mr. Nicols mentioned in his

20   argument this court has already decided the Oakland County's

21   motion to dismiss, and in that opinion and order this court

22   addressed many of the same issues that are dispositive to our

23   motion as well --

24             THE COURT:  If you speak a little slower -- if you

25   speak a little slower, that will help Mrs. Lizza.  Thank you,

1   sir.

2         MR. KNOBLOCK:  Certainly, Your Honor.

3         Under the doctrine of the law of the case, a decision

4   on an issue that's made by the court at one stage of the case

5   should be given effect in successive stages of the same

6   litigation.  And this court recognized that in its opinion in

7   *McNulty*, M-C-N-U-L-T-Y, *versus Arctic Glacier, Incorporated*.

8   That's number 08-CV-13178, 2016, Westlaw 465490 at page 17, and

9   that's a February 8th, 2016, order of this court.

10        And this court also recognized that a court's power to

11   reach a result inconsistent with prior decision reached in the

12   same case is to be exercised very sparingly and only under

13   extraordinary circumstances.

14        As it pertains to the issue of res judicata, this

15   court found in its opinion granting Oakland County's motion to

16   dismiss that the state court complaint filed by plaintiffs

17   Miller, American Internet Group, and Akande were based on the

18   same allegations in this case, and that's in the court's

19   opinion at Page ID 2195.

20        This court also found that it was an adjudication on

21   the merits for purposes of res judicata, and that's at

22   Page ID 2197.

23        This Court further found that the prior lawsuit and

24   this suit involved the same core set of facts and the issues in

25   this case were or could have been raised in that prior suit.

ARGUMENT BY MR. KNOBLOCK

1   And that's at page 2200.

2        The Court also found that the parties were

3   substantially identical, and it relied on *Lyons versus*

4   *Washington*.  Lyons spelled L-Y-O-N-S, and that's Number 212516,

5   citation is 2000 Westlaw 33407429, and that's a Michigan

6   Appellate Court decision from 2000.  And relying on that case

7   it found that the parties are substantially identical even

8   though I believe it was only Mr. Meisner was named in the

9   original state court suit because under that case companies and

10  employees can be found in privity.  And the same applies here

11  for Southfield and any of its employees.

12       The Court further found that *Rafaeli* was not an

13  intervening change in law that would preclude the application

14  of res judicata, and that was at Page ID 2201.  So here the law

15  of the case applies and res judicata precludes Miller, American

16  Internet Group, and Akande's claims.

17       For similar reasons, Miss Hall's claims are also

18  precluded by res judicata.  This is Miss Hall's second lawsuit

19  in this case that involves the same parties and the same core

20  set of facts, and that was in her first lawsuit, 18-CV-14086,

21  and her complaint is at ECF Number 9.

22       That first lawsuit she agreed to dismiss with

23  prejudice under Rule 41, and that's at ECF Number 21 in that

24  case, and under the case of *Warfield versus Allied Signal PBS*

25  *Holding*, Warfield spelled W-A-R-F-I-E-L-D, versus Allied

ARGUMENT BY MR. KNOBLOCK

1   Signal, A-L-L-I-E-D, S-I-G-N-A-L.  That's a final adjudication

2   on the merits and has a res judicata effect.  So for that

3   reason Miss Hall is also precluded under the doctrine of

4   res judicata.

5          This Court also addressed Mr. Byers -- yes, I'm sorry,

6   Mr. Byers' standing in its orders dismissing Oakland County,

7   and it found -- and recognized that an interest in real

8   property under Michigan law can only be created by act or

9   operation of law or by a deed or conveyance in writing pursuant

10  to *U.S. versus Real Property Located at 4527 to 4535 Michigan

11  Avenue,* and the citation for that is 489 Federal Appendix 855

12  at page 857.

13         The Court found that Mr. Byers had no interest in the

14  subject property when foreclosure and transfer occurred and

15  therefore he lacks standing, and that's at Page ID 2204.

16         As to Counts 1 and 3 which are -- all relate to this

17  alleged taking of equity in the property, this court cited to

18  *Nelson versus City of New York* --

19         THE COURT:  If you slow down -- if you slow down, that

20  will help Mrs. Lizza because you know it but we're learning it,

21  at least Mrs. Lizza is.  I've had the pleasure of doing it

22  already, as has opposing counsel, but to help Mrs. Lizza, just

23  slow down a little.  Thank you.

24         MR. KNOBLOCK:  Certainly, Your Honor.  I apologize.  I

25  just get so excited about this.  Again, that's *Nelson versus*

1    *City of New York*, 352 U.S. 103, and that's a 1956 case.  And in

2    this case the court recognized that a property interest in

3    surplus exists only if provided from an independent source such

4    as state law and federal law does not recognize a former

5    property owner's interest in potential equity after a

6    foreclosure.  That was at Page ID --

7         THE COURT:  Let me ask a question.  I'm not seeing

8    Mrs. Lizza, any light on around her.  Is there something

9    that -- now, it's getting better.

10      (The court reporter clarifies.)

11        THE COURT:  Sorry to interrupt, sir.  Talking about

12   the *Nelson* case, Mr. Knoblock.

13        MR. KNOBLOCK:  Certainly.  Thank you, Your Honor.  And

14   that was at Page ID 2209 of this court's decision.

15        Recognizing that such a property interest has to flow

16   from an independent source such as state law, the court

17   recognized that Michigan Supreme Court in *Rafaeli* found that

18   only property interest in surplus proceeds from a foreclosure

19   sale if any is what survived the tax foreclosure, and that was

20   at Page ID 2207.

21        Applying this law of the case, plaintiff has failed to

22   state a claim in Counts 1 through 3 because they've not

23   identified any independent source of law that gives them this

24   property right that they claim to have in this alleged equity.

25        Importantly, *Rafaeli* also provides no basis for

1    asserting these claims against the subsequent purchaser of

2    foreclosed tax property like the City of Southfield.  Under

3    MCL 211.78(8)(a), Oakland County is the foreclosing

4    governmental unit under the GPTA not the City of Southfield.

5    The City of Southfield has no involvement in the foreclosure

6    process.  Moreover, for takings, a person must be the property

7    owner at the time of the taking.  And that's pursuant to *U.S.*

8    *versus Dow*, D-O-W, 357 U.S. 17, pages 20 to 21 and that's a

9    1958 case.

10         When the City of Southfield exercised its right of

11   first refusal pursuant to the GPTA, plaintiff no longer owned

12   the property and therefore has no taking claim against the City

13   of Southfield.  When the government like Oakland County takes

14   control of the property, it loses its characteristic as private

15   property and becomes public to the extent that it's not subject

16   to a takings claim, and that was stated in *State of North*

17   *Carolina versus the United States*, 725 F. Supp. 874 at pages

18   876 to 877, and that's an Eastern District of North Carolina,

19   1989, case.

20         Also, in the *Estate of Dell Johnson* case that

21   Mr. Nicols mentioned at page 12, Judge Tarnow recognized that

22   plaintiff has not shown and the court has not found authority

23   stating the recipients of property from a governmental agency

24   which took property from the owner can be held liable under the

25   Takings Clause.  I, too, had spent many hours looking for such

ARGUMENT BY MR. KNOBLOCK

1   a connection or the ability to state a claim to somebody in

2   that position, and I've not been able to locate any either.

3           Now, as it relates to the due process claims which

4   would be Count 5 procedural, Count 6 substantive, we run into

5   issues again of this property interest because a requirement

6   for either a procedural due process or a due process claim

7   requires identifying a property interest.  Here there is none

8   which this court has already found, so those claims fail on

9   that alone.

10          As far as the procedural due process claim, first of

11  all, there are no allegations in the complaint regarding the

12  Southfield defendants.  The only allegations that are in the

13  complaint relate to these alleged payment plans that the

14  plaintiffs had with the Oakland County Treasurer before the

15  foreclosure process.  The City of Southfield and the other

16  Southfield defendants had no involvement in the foreclosure or

17  any of these payment plans.  So they've failed to state any

18  factual basis for this claim against the City of Southfield.

19          THE COURT:  Okay.

20          MR. KNOBLOCK:  Also, this court recognized in its

21  prior decision at pages 2212 and 2213 that for a procedural due

22  process claim they need to recognize the protected property

23  interest, a deprivation of that interest and a failure to

24  provide adequate procedural rights before that deprivation

25  occurred.  Here again, they've not identified the property

ARGUMENT BY MR. KNOBLOCK

1    interest nor are there any allegations of any of the Southfield

2    defendants depriving them of that interest or that the City of

3    Southfield failed to provide any kind of procedural rights

4    prior to the foreclosure which it already has zero involvement.

5         As it relates to the substantive due process claim,

6    this court recognized that -- pages 2216 to 2217 that other

7    courts have considered similar substantive due process claims

8    regarding this equity that are arbitrary and shock the

9    conscience.  And the Court recognized that these type of claims

10   cannot be used basically as a stand-in for a takings claim.

11   And, in fact, in *Ostipow*, O-S-T-I-P-O-W, *versus Federspiel*,

12   F-E-D-E-R-S-P-I-E-L, and that's 824 Federal Appendix 336 at

13   page 345, the court stated that substantive due process claims

14   are viewed with a dose of skepticism and cannot be used as a

15   stand-in to address a failed takings claim --

16        THE COURT:  Which Court of Appeals is *Ostipow*?

17        MR. KNOBLOCK:  I'm sorry.  That's a Sixth Circuit case

18   and that's from 2020.

19        THE COURT:  Okay.  Thank you.  Okay.

20        MR. KNOBLOCK:  You're welcome, Your Honor.

21        That's exactly what plaintiffs are attempting to do

22   here, is basically here's our takings claim and even if you

23   don't want to find that, find our substantive due process

24   claim, and they can't do that.  As it relates to, I'll call it

25   Count 7, it was a second Count 6 in the complaint, is an unjust

1  enrichment claim.  Again, there's no allegations regarding the

2  Southfield defendants in the complaint.  If you look to the

3  complaint, it states that SNRI obtained equity, SNRI obtained

4  equity through a transfer of inadequate value and that SNRI

5  retained that equity resulting in this, quote, unjust

6  enrichment to the SNRI, unquote.  So clearly there are no

7  allegations in the complaint as it relates to the Southfield

8  defendants being unjustly enriched.  And the Court has already

9  found no cognizable interest in the alleged property equity, so

10  there's nothing that the defendants could be enriched by or

11  anything to unjustly take from the plaintiffs.

12        Moreover, when a defendant receives a benefit from the

13  third party not directly from the plaintiff, there's no receipt

14  of the benefit from the plaintiff that's required for this

15  claim.  And that's pursuant to *Karaus*, that's K-A-R-A-U-S,

16  *versus Bank of New York Mellon*, 300 Mich. App. 9 at page 23,

17  and that's a 2012 case.

18        Now, plaintiff said --

19        THE COURT:  That was previously -- just to help

20  Mrs. Lizza, I think when -- in the previous argument *Karaus*,

21  they stated it was with a C, but it's with a K, that's correct.

22  Thank you.  As in Knoblock.  Okay.

23        MR. KNOBLOCK:  Thank you.

24        Now, the plaintiff has said that, well, hold on a

25  second, you can be liable as a third party for unjust

ARGUMENT BY MR. KNOBLOCK

1   enrichment if you actively mislead somebody, and that's rely --

2   they rely on the *Kerrigan* case that Mr. Smith discussed.

3   However, there's also another case, *Reid versus Bank of*

4   *America*, Reid spelled R-E-I-D.  That's number 18-CV-12099, and

5   that's 2019 Westlaw 355655 at page 5.

6           In order to sustain that type of claim, the plaintiff

7   must allege facts to show how or when someone was misled for

8   *Kerrigan* to apply.  Here, plaintiff is only pointing to actions

9   that were taken pursuant to a lawfully enacted Michigan

10  statute, the GPTA, as it relates to the City exercising its

11  right of first refusal.  And the court recognized this at

12  page 2209 of its decision granting Oakland County's motion to

13  dismiss where this court stated, "It is undisputed that the

14  properties were foreclosed on by the Oakland County defendants

15  and then transferred to the City of Southfield pursuant to and

16  in full compliance with the GPTA.  Plaintiff's conclusory

17  allegations of some scheme to the contrary are insufficient."

18  And that's very apt because that's exactly what they're trying

19  to propose to this court, conclusions.  Mr. Smith believes that

20  it was wrong.  Mr. Smith believes that it's illegal yet he

21  points to no authority to support these claims.  All they are,

22  conclusory allegations that are not entitled to the truth under

23  the 12(b)(6) standard.

24          THE COURT:  Let me ask a question with regard to

25  *Kerrigan.*  Is it with a C or a K?

**ARGUMENT BY MR. SMITH**

1          MR. KNOBLOCK:  I'm sorry.  *Kerrigan* is with a K.

2          THE COURT:  Thank you.  Okay.  Go ahead.

3          MR. KNOBLOCK:  And that's all I have, Your Honor,

4     unless you have any questions for me.

5          THE COURT:  No.  You're the moving party, so I'll give

6     you an opportunity to respond after -- to reply after the

7     plaintiff responds.  Thank you.

8          MR. KNOBLOCK:  Thank you, Your Honor.

9          MR. SMITH:  Thank you, Your Honor.  Scott Smith for

10    the plaintiffs.  I believe Mr. Knoblock gave you the cite you

11    asked for previously, *Kerrigan*.

12          THE COURT:  Right, right.

13          MR. SMITH:  A number of points.  What counsel did not

14    mention which I believe is a game changer is the *Harrison*

15    *versus Montgomery* case and -- which talks about the

16    res judicata issues, and unless for the record you want me to

17    go over those, I would stand on what I said previously in my

18    last motion about --

19          THE COURT:  Okay.  It is in the record and fortunately

20    Mr. Knoblock was here when it was discussed so you can proceed

21    further.  Thank you, Mr. Smith.

22          MR. SMITH:  Okay.  And then another theme of the

23    Southfield Defendants' defense is they talk a lot about the

24    title to the property, and then which is sort of, you know,

25    hypocritical.  Then they talk about reliance on a Supreme Court

1  case, *Rafaeli,* which says that title has nothing to do with the

2  rights.  So they're trying to make a res judicata argument

3  where, A, there's different defendants; B, where the timing of

4  the right where they say doesn't exist for our clients is

5  different.  To make it a little more concrete, normally a

6  takings claim occurs at the foreclosure when people -- the

7  property owners lose the right to the property.  What *Rafaeli*

8  seemed to say was in that fact situation, which is different

9  than this fact situation, that the harm comes, the cause of

10  action comes when the property is sold at auction for more than

11  the taxes.  So if the Court wants to use *Rafaeli* as the basis

12  of a conclusion, doctrine of res judicata, we're talking about

13  two different moments in time with different parties and

14  under --

15       THE COURT:  Well, let me ask this question, Mr. Smith.

16  The takings that occurred in the foreclosure by the county on

17  the property; is that correct?  That's when the official taking

18  occurred.  And thereafter the transfers, you're saying those

19  are new takings?  Because the taking was when the county

20  foreclosed on the properties, end of story.  But you're saying

21  it's not the end of the story.

22       MR. SMITH:  No, I don't -- what you say is rational,

23  but I don't think it's where the law is right now.  Under -- or

24  there's contradictory threads to it.

25       Under federal law, under the *Knick* case --

ARGUMENT BY MR. SMITH

```
 1              THE COURT:  Say that, the name of that case again.
 2              MR. SMITH:  It's Knick, K-N-I-C-K, versus I think
 3   Scott Township, Pennsylvania, United States Supreme Court in
 4   2019.  I don't have the numbers in front of them.  But under
 5   federal law of Knick, United States Supreme Court, the taking
 6   happens when you lose the right to your property.  And if under
 7   Michigan law, under Rafaeli, you can't have a taking until it's
 8   sold at auction for more than [indiscernible], and that's what
 9   Judge Viviano is saying creates, I don't know, absurd results,
10   possibly.  But the court isn't finished -- I don't believe the
11   Michigan Supreme Court's finished adjudicating these rights.
12              But for the purpose of preclusion doctrine, in
13   Michigan, if Mr. Knoblock's arguing that this was already
14   decided because the county took the title, that's not Michigan
15   law of -- the property right happens somewhere down the road or
16   in our case it never happens.  So how could that be precluded?
17   It's sort of like -- it's sort of convoluted, but that's where
18   we're at.
19              So I think there's a point worth noting.  But then
20   again, I get back to the Harrison versus Montgomery case.
21   These people never really had a chance.  Under existing
22   Michigan law at the time they couldn't go to federal court and
23   they could only sue on due process rights.  And if -- well,
24   that's one issue.
25              The other thing to understand is the talk about unjust
```

ARGUMENT BY MR. SMITH

```
 1    enrichment, there were -- the Southfield officials and the
 2    Southfield Non-Profit officials and the people, they were the
 3    same people.  You know, there was no -- they were definitely
 4    intertwined.  And there are allegations that, you know, we've
 5    had discovery, but there are allegations that Southfield
 6    officials were being paid money from the SNRI.  Even the
 7    Michigan Court of Appeals in Jackson versus Oakland County
 8    found that there were conflicts of interest and it was
 9    unconscionable conduct.  But that was pre-Rafaeli, and then
10    that case was remanded.  So I don't think the story is over on
11    that.
12              THE COURT:  Do you have the cite again for Jackson
13    versus Oakland County?
14              MR. SMITH:  I believe it's -- that's the court of --
15    there's two cases --
16              THE COURT:  Michigan Court of Appeals?
17              MR. SMITH:  Yeah.  The Court of Appeals, there's also
18    the remand.  I believe they're part of the record, both of
19    them.
20              THE COURT:  Okay.
21              MR. SMITH:  I don't have them.
22              THE COURT:  Okay.
23              MR. SMITH:  Counsel did a great job of getting all the
24    cites.  I commend him for that.
25              So, Your Honor, there are allegations that these
```

ARGUMENT BY MR. SMITH

1    people were paid money for taking these houses.  They said that

2    they were going to get the houses for -- to get rid of rentals,

3    to help the housing start, but, in fact, the City of Southfield

4    and there's resolutions that are wrong, they list the wrong

5    entity of which -- and they say that they're going to give them

6    to habitat of humanity.  Well, they did a few of them for show.

7    But the City of Southfield is really a mere conduit as far as

8    the titles go.  As far as getting -- and these are factual

9    allegations.  And they're more than plausible on the public

10   record.  The City of Southfield, their officials did pay

11   employees with proceeds from these houses.  They'd use city

12   officials --

13           THE COURT:  Wait.  Are you saying -- you're saying

14   that the Southfield officials were paying employees of what

15   entity, Southfield employees?  And to do what?  I didn't --

16           MR. SMITH:  Two things.  The City of Southfield was

17   using their employees to do the work of the nonprofits like to

18   evict people for one, to go to their house and make sure they

19   went out, got out of their house, to serve them process.  And

20   they --

21           THE COURT:  Was this based upon the foreclosure sale

22   that the county did and, therefore, the people were required to

23   leave the house?

24           MR. SMITH:  No.  This was based -- this happened way

25   after the foreclosure.  This happened after the SNRI,

```
 1    Mr. Nicols' client got title for paying $1 for the property and
 2    then the -- people worked for the housing department would --
 3    they would get paid to do tasks for the SNRI --
 4            THE COURT:  Is that in the complaint?  Is that in the
 5    complaint anywhere?
 6            MR. SMITH:  Honestly, Your Honor, I've done so many
 7    complaints on these issues, I can't recall the paragraph.  If
 8    that becomes an issue, I would ask leave to amend.
 9            THE COURT:  We're not going there.  We have tons of
10    stuff on this case.  You know, I'm just saying what we have so
11    far that I've read which is what's before the Court.  But
12    you're saying that they used -- like SNRI used city people --
13    city employees to evict people who were in the house that had
14    been foreclosed upon and that title had gone from them so they
15    were living there without justification?
16            MR. SMITH:  I believe the complaint is talking -- what
17    I'm saying is that Southfield employees in paragraphs 63, 64,
18    65, 67 about the Southfield employees would do the -- would
19    do -- they would do a number of things.  The building
20    department would basically find these properties and make sure
21    there was no code problems.  If you remember, there was no
22    mortgages on any of these properties and --
23            THE COURT:  Well, wait, let's stop.  Stop one second.
24    I'm reading paragraph 63.  You're saying that Siver, Zorn, and
25    Susan Ward-Witkowski wrongfully used their offices and
```

```
 1   implemented the scheme under color of official right.  64,
 2   those people abused the power under the GPTA for personal
 3   economic gain and to augment their power.  And then you're
 4   saying that -- I don't see anything about using city employees,
 5   stuff like that in those --
 6            MR. SMITH:  They are city employees.  Identified Zorn.
 7   Susan Ward-Witkowski was a city employee at the time, and her
 8   husband Gerald was.  And these people were paid, and they were
 9   paid money from the city -- --
10            THE COURT:  They were paid salaries from the city,
11   right?  They got salaries from the city for their jobs.
12            MR. SMITH:  They got additional checks also from the
13   SNRI, checks while they were working for the city.
14            THE COURT:  Is there anything in the complaint that
15   says that?
16            MR. SMITH:  It specifically --
17            THE COURT:  That's, you know, a significant factual
18   issue that's not in the complaint.  So, anyway, go ahead
19   further.
20            MR. SMITH:  Well, it's implied.  I don't remember
21   reading it in discovery.  But in other cases I found checks and
22   bank accounts which will prove what I'm saying.
23            And Miss Rivid (phonetic), who is on SNRI, she is a
24   real estate broker.  She got paid by them.  I talk about in
25   paragraph 65 obtained favors, graft.  I mean there's enough
```

1    here certainly to make -- connect the dots, I think.

2         So I mean these outfits were connected.  Zorn was on

3    both boards.  The city of -- the city was -- the city didn't

4    even put up the money to pay the taxes on the house which is

5    highly unusual, or did the SNRI.  The non-profit did, and then

6    the money's intermingled between SNRI and Southfield non-profit

7    housing association which was started for benevolent purposes

8    by real estate investors like Gilbert Silverman which has been

9    totally overtaken and used as just a means to amass equity of

10   people.  Has no public purpose.

11        Southfield -- Southfield is a privity under the old

12   act with Oakland County, and the focus of a takings claim isn't

13   necessarily what the government gets, it's what they take away

14   from the people, and the interactions which could amount to a

15   civil conspiracy between the SNRI Southfield was definitely --

16   had the result of depriving citizens of their property and not

17   for a public purpose, for a private -- supposedly private

18   company which wasn't really independent.  There's like

19   collusion and conflict of interest all over the place.

20        So and just one other -- a few other points that

21   Mr. Knoblock touched on.  Miss Hall was a defendant who is

22   represented by legal aid, and then the person who represented

23   her was a law student, then became a member of his firm that

24   was brought to the attention to the Court a long time ago.  The

25   actual -- I think he's right, she did sign a document under the

 1   law student's direction to dismiss the case --

 2          THE COURT:  Wait a minute.  The law student directed

 3   somebody to do something?  I think there was an affidavit

 4   saying that the student did not participate in any aspect of

 5   the case.  Wasn't there?

 6          MR. SMITH:  No.  Well, the way I understood it is that

 7   the student joined Mr. Knoblock's law firm and when she joined

 8   the firm, she didn't participate, but she did represent

 9   Miss Hall and it was disclosed, which it was supposed to be,

10   under the local court rules.  And I believe I filed a paper, I

11   [indiscernible] to the Court's direction, whether it was

12   proper.

13          My point is that the actual dismissal order was

14   without prejudice.  Whether it was just a technicality, I

15   mean -- and another thing, there's no final judgment in this

16   case.  To the extent that there is controlling authority like

17   *Montgomery* on the *Harrison versus Montgomery County* under --

18   which affects the res judicata decisions, the Court could

19   change its mind at this point.  That's why it's not without

20   prejudice.  And so the -- so I think the preclusion arguments

21   are no longer valid and they don't affect all the plaintiffs.

22          And then, finally, there's a discussion of *Nelson v.*

23   *New York*.  *Nelson versus New York* actually supports our

24   position.  It doesn't hurt our position.  And in *Nelson* the

25   Supreme Court of the United States, 1956, was interpreting a

ARGUMENT BY MR. SMITH

1    New York statute that allowed a former property owner to redeem
2    and then sue for their equity.  They never took advantage of
3    that, so the ruling was basically that they -- a municipality,
4    in this case it was New York, had to give a property owner a
5    reasonable chance to get their equity under the Fifth
6    Amendment.  And even *Rafaeli*, when it talked about the case
7    ended up with the conclusion, it said on page 487, 505 Mich. --
8    well, I'm sorry, 505 Mich. 519, it says, "The better view under
9    the law described is that the property taken is the taxpayer's
10   equity, that this occurs when title vests in the government
11   with no opportunity for redemption."  In that circumstance, if
12   the government retains the property, the taxpayer would be able
13   to seek compensation for the deprivation of his or her equity.
14          THE COURT:  Now, here, didn't the title vest in
15   Oakland County initially?  --
16          MR. SMITH:  It did, but there was no cause of action
17   certainly under the federal Constitution and under the Michigan
18   Constitution.  Under *Rafaeli* there's no cause of action until
19   it was sold at auction, and we're circling back to the same
20   argument.  What -- the Court didn't rule on the situation where
21   there was no auction, and so by all the principles of the
22   common law from the Magna Carta on down, there was a property
23   right, it just hadn't been resolved to anyone's satisfaction.
24   What happens when a government entity holds onto it.  Well,
25   under the new law, we know it happens to get fair market value.

1   And as the Court knows, an issue of fair market value even in

2   the basic situation where it's sold at auction, that's on

3   appeal to the Sixth Circuit as well.  I mean I could see if the

4   Court wanted to stay this case because there's two cases at the

5   Sixth Circuit that may impact this case, the *Freed versus*

6   *Thomas* case and the *Fox versus Saginaw County* case.

7         I appreciate your time, Your Honor.

8         THE COURT:  Okay.  Just to help Mrs. Lizza, *Freed* is

9   F-R-E-E-D.  Okay.  Thank you, Mr. Smith.

10        Let me ask if the moving party wishes to respond --

11  reply, I should say, briefly.

12        MR. KNOBLOCK:  Yes, just briefly, Your Honor, thank

13  you.  And, again, Michael Knoblock on behalf of the Southfield

14  defendants.

15        Even after pointing out through briefing, through oral

16  argument, and in other cases that no legal authority has been

17  cited that states that there's a property interest in this

18  alleged equity, we still are not being given that authority

19  because no legal authority exists for that.  I think that's the

20  very central important part of this issue, and Mr. Smith wants

21  to get bogged down in different details and facts that he did

22  not plead in his complaint, but the fact of the matter is these

23  claims fall like a house of cards without that property

24  interest.  And the only two things I heard him refer to in his

25  response was a brief mention of something about the Magna Carta

FURTHER ARGUMENT BY MR. KNOBLOCK

1   and extending *Rafaeli* and relying on Justice Viviano's

2   dissent -- concurring opinion, rather.  One of the seven

3   justices with the other majority going against what he said

4   knowing full well that that was his position in rejecting.  So

5   I think it's important to focus on the point that they have not

6   identified that they have any right to this alleged equity in

7   the property.

8           Now, as far as, you know, the process of when, you

9   know a taking occurs and something like that, the Supreme Court

10  in *Rafaeli* recognized that title vests absolutely in the

11  Oakland County Treasurer after the property's foreclosed and

12  the redemption period passes.  After that there's no further

13  redemption rights available to the delinquent taxpayer, and

14  that's 505 Mich. at 445.  They went on to hold that the only

15  potential remaining interest that remains with the former

16  property owner is in surplus proceeds from a tax foreclosure

17  sale to the extent that they exist, no more, no less.  And

18  that's at pages 483 to 484 and note 134.

19          So, again, Your Honor, without identifying what the

20  property interest is legally, their claims fail.  And as far as

21  any other issues that this Court has already decided in Oakland

22  County's motion to dismiss, that's the law of the case and the

23  Court should follow those holdings accordingly.  Thank you.

24          THE COURT:  What about the claims of the dual

25  loyalties?  One, Mr. -- Mayor Siver, and Mr. Zorn, their

FURTHER ARGUMENT BY MR. KNOBLOCK

1   loyalty to the city and then loyalty to an entity that the city

2   transfers property to.  Does that create a due process issue?

3            MR. KNOBLOCK:  I don't believe that it does, and going

4   back, first of all, again, that's sort of putting the cart

5   before the horse because that's getting more to the arbitrary-

6   and-shocks-the-conscious analysis.  Before you can even get

7   that analysis, you have to identify property interest which

8   they have not done.  Further, any of these allegations that

9   Mr. Smith just recited are not in the complaint and I haven't

10  seen any authority that he has cited or given any legal basis

11  to this court that's showing that, you know, wearing these dual

12  hats creates some sort of substantive due process claims.

13           THE COURT:  Okay.  Thank you.

14           MR. SMITH:  Your Honor, could I make one --

15           THE COURT:  No, we've gone through it and we have it

16  all, and I don't want to extend further.

17           So the Court thanks the parties.  It's been a very

18  interesting case, still is, and the Court will take these

19  motions under advisement and render an opinion, but I want to

20  thank counsel on both sides in both cases for highlighting

21  their particular points.  And good afternoon to all.  We are

22  adjourned.  Thank you.

23           MR. KNOBLOCK:  Thank you, Your Honor.

24           MR. NICOLS:  Thank you.

25      (Proceedings concluded, 4:00 p.m.)

**FURTHER ARGUMENT BY MR. KNOBLOCK**

```
 1                    -   -   -

 2                CERTIFICATION OF REPORTER

 3

 4    I, Leann S. Lizza, do hereby certify that the above-entitled

 5  matter was taken before me at the time and place hereinbefore

 6  set forth; that the proceedings were duly recorded by me

 7  stenographically and reduced to computer transcription; that

 8  this is a true, full and correct transcript of my stenographic

 9  notes so taken; and that I am not related to, nor of counsel to

10  either party, nor interested in the event of this cause.

11

12

13  S/Leann S. Lizza                              11-30-2021

14  Leann S. Lizza, CSR-3746, RPR, CRR, RMR, RDR     Date

15

16

17

18

19

20

21

22

23

24

25
```