UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAWANDA HALL, CURTIS LEE,
CORETHA LEE, and KRISTINA
GOVAN,                                    Case No. 20-12230

                    Plaintiffs,           Paul D. Borman
                                          United States District Judge
v.

OAKLAND COUNTY,

                    Defendant,
_____/

**OPINION AND ORDER**
**(1) GRANTING DEFENDANT'S MOTION TO STRIKE CLASS
ALLEGATIONS IN PLAINTIFFS' COMPLAINT (ECF NO. 95);**
**(2) DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
AND APPOINTMENT OF CLASS COUNSEL AND CLASS
REPRESENTATIVE (ECF NO. 97); AND**
**(3) DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE
AMENDED CLASS ACTION COMPLAINT (ECF NO. 104)**

On August 18, 2020, Plaintiffs filed a putative class action complaint in this

case on behalf of taxpayers whose former properties in Southfield, Michigan were

foreclosed by Oakland County for Plaintiffs' failure to pay their property taxes.

Following the foreclosures, the City of Southfield claimed the Plaintiffs' properties

from Oakland County for the delinquent tax liability amount pursuant to then-

1

existing Michigan law, and so there was no public auction of the properties. The City then conveyed the properties for $1.00 to a for-profit entity, the Southfield Neighborhood Revitalization Initiative (SNRI), formed for the purpose of purchasing tax foreclosed and other properties, improving such properties, and selling such properties to persons of low to moderate income when possible.

Eight Plaintiffs initially brought this putative class action suit under 42 U.S.C. § 1983 against Oakland County, the City of Southfield, SNRI, the Southfield Non-Profit Housing Corporation (SNPHC), and certain officers of each organization, asserting claims under the Takings Clause of the Fifth Amendment, along with various other federal and state claims. Plaintiffs allege that Defendants have unconstitutionally taken the surplus equity in their properties without just compensation. In a series of decisions, this Court dismissed Plaintiffs' Complaint against all Defendants for failure to state a claim.

On appeal, the Sixth Circuit Court of Appeals reversed the dismissal of Plaintiffs Tawanda Hall, Curtis and Coretha Lee, and Kristina Govan's Fifth Amendment Takings claim against Defendant Oakland County only, but affirmed the dismissal of all remaining claims against Oakland County and all claims against the remaining defendants. The Sixth Circuit also affirmed the dismissal of all claims of Plaintiffs Carolyn Miller, Anthony Akande, American Internet Group, LLC,

Marcus Byers, and the Estate of Dell Johnson on *res judicata* and standing grounds. Thus, the only remaining claims in this case are Plaintiffs Hall, the Lees, and Govan's claims that Defendant Oakland County has unconstitutionally taken the surplus equity in their properties without just compensation.

In their Complaint, Plaintiffs seek to certify a class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(1)(A), (B), and 23(b)(3) on behalf of:

> [A]ll titleholders of real property and associated property rights including equity and/or surplus proceeds generated by the involuntary transfers orchestrated by Defendants in the City of Southfield during the relevant statutorily-limited time period who were subject to the unconstitutional forfeiture of their surplus or excess equity beyond the tax debt owning.

(ECF No. 1, Complaint, ¶ 78.)

Now before the Court are three motions: (1) Defendant Oakland County's Motion to Strike Class Allegations in Plaintiffs' Complaint (ECF No. 95); (2) Plaintiffs' Motion for Class Certification and Appointment of Class Counsel and Class Representative (ECF No. 97); and (3) Plaintiffs' Motion for Leave to File Amended Class Action Complaint (ECF No. 104). All three motions have been fully briefed and are ready for adjudication.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.    Background

The Plaintiffs in this action allege that they previously owned real property located in the City of Southfield, Michigan. The Plaintiffs failed to pay property taxes and their properties were foreclosed by Defendant Oakland County based on non-payment of taxes pursuant to the then-existing version of Michigan's General Property Tax Act (GPTA), Mich. Comp. Laws § 211.1 *et seq.*

The GPTA permits the recovery of unpaid real-property taxes, penalties, interest, and fees through the foreclosure and sale of the property on which there is a tax delinquency. *See* Mich. Comp. Laws § 211.1 *et seq.* Under the Act as it existed during the time period relevant to Plaintiffs' claims, the county treasurer may elect to act as the collection agent for the municipality where the property is located when taxpayers become delinquent on their property taxes. Mich. Comp. Laws § 211.78(8). After three years of delinquency, multiple notices and various hearings, tax-delinquent properties are forfeited to the county treasurer; foreclosed on after a judicial foreclosure hearing by the circuit court, and title to the forfeited property is transferred to the county treasurer; and, if the property is not timely redeemed by March 31 of that year, fee simple title is vested absolutely in the county treasurer, without any further redemption rights available to the delinquent taxpayer. Mich.

4

Comp. Laws § 211.78 *et seq.* As the Act applied during the time periods relevant to

this action, after foreclosure, the property is then disposed of as follows:

(1) The state or municipality where the property is located has the right to claim the property in exchange for the payment to the county of unpaid taxes, interest and other costs (the "minimum bid");[1] or

(2) If the state or municipality does not exercise their right of first refusal, the property is put up for sale at a public auction in July and, if not sold, again in October.

Mich. Comp. Laws § 211.78m.

Plaintiffs in this case plead that a judgment of foreclosure was entered against

each of them and pertaining to each Plaintiff's property, by the Oakland County

---

[1] The longstanding ability for municipalities to purchase tax foreclosed properties for an amount equal to the taxes and penalties due and owing has since been eliminated as a result of an amendment to the GPTA, Mich. Comp. Laws § 211.78m, which became effective on January 1, 2021. The amended GPTA now allows the state and/or municipalities to purchase tax foreclosed properties "at the greater of the minimum bid or its fair market value[.]" Mich. Comp. Laws § 211.78m(1). The Act provides that any retroactive effect is dependent upon a decision of the Michigan Supreme Court that "its decision in *Rafaeli, LLC v. Oakland County*, docket no. 156849, applies retroactively." Mich. Comp. Laws § 211.78t(1)(b)(i). There has been no such decision from the Michigan Supreme Court, although the Michigan Court of Appeals has ruled that "*Rafaeli* did not announce a new rule of law but returned the law to that which was recognized at common law and by the ratifiers of the Michigan Constitution of 1963, and should be given full retroactive effect." *Schafer v. Kent Cnty.*, 343 Mich. App. 462, 470 (2022) (internal citation omitted). The Michigan Supreme Court has granted leave to appeal the decision in *Shafer*, and that appeal remains pending. *Shafer v. Kent Cnty.*, 990 N.W.2d 876 (Mem) (Mich. June 9, 2023).

Circuit Court. (ECF No. 1, Compl. ¶¶ 21-28.) As a result of the foreclosures, Plaintiffs lost all title and interest in their properties, and title in fee vested in the foreclosing government unit (FGU), in this case, the Oakland County Treasurer. (*Id.* ¶¶ 21-28.) *See* Mich. Comp. Laws § 211.78k(6). Pursuant to Mich. Comp. Laws § 211.78m(1) (as it existed at that time), the Oakland County Treasurer offered the properties to the City of Southfield under the City's right of first refusal. (*Id.* ¶ 29.) In each case, the City paid the Treasurer the minimum amount due under the statute – the delinquent property tax amount – with funds provided by former-Defendant Southfield Non-Profit Housing Corporation (SNPHC). (*Id.* ¶¶ 21-27, 83(e).) The City in turn conveyed each of the properties to former-Defendant Southfield Neighborhood Revitalization Initiative, LLC (SNRI) for $1.00 each. (*Id.*)

Specifically, Plaintiffs allege:

- Plaintiff **Tawanda Hall** owed $22,642.00 in delinquent property taxes. The Oakland County Treasurer foreclosed, issued a tax deed in favor of the City of Southfield for the minimum amount due under the GPTA, and the City quit claimed the property to SNRI for $1.00. The property was subsequently sold for $308,000.00.

- Plaintiffs **Curtis Lee** and **Coretha Lee** owed $30,547.00 in delinquent property taxes. The Oakland County Treasurer foreclosed, issued a tax deed in favor of the City of Southfield for the minimum amount due under the GPTA, and the City quit claimed the property to SNRI for $1.00. The property was subsequently sold for $155,000.00.

6

- Plaintiff **Kristina Govan** owed $45,350.00 in delinquent property taxes. The Oakland County Treasurer foreclosed, issued a tax deed in favor of the City of Southfield for the minimum amount due under the GPTA, and the City quit claimed the property to SNRI for $1.00. Plaintiffs allege the property "is worth in excess of the amount owed in taxes." Defendant however states that Govan's property was in such disrepair that it had to be demolished and SNRI sustained a loss on the property of $91,457.

(ECF No. 1, Compl. ¶¶ 21-27.) None of the named Plaintiffs' properties were sold at a tax foreclosure auction.

### B.    Procedural History

On August 18, 2020, eight named Plaintiffs brought this putative class action suit under 42 U.S.C. § 1983 against Defendant Oakland County, the City of Southfield, and other defendants, asserting claims under the Takings Clause of the Fifth Amendment to the United States Constitution, along with various other federal and state claims. (ECF No. 1, Complaint.) In a series of Opinions and Orders, this Court dismissed Plaintiffs' Complaint against all Defendants for failure to state a claim, and Plaintiffs appealed.

On appeal, the Sixth Circuit Court of Appeals reversed and remanded on Count I of Plaintiffs' Complaint (Fifth Amendment Clause Takings) by Plaintiffs Hall, the Lees, and Govan against Defendant Oakland County only, and affirmed dismissal of the remaining claims and the remaining Defendants. *Hall v. Meisner*,

51 F.4th 185 (6th Cir. 2022), *reh'g denied*, No. 21-1700, 2023 WL 370649 (6th Cir. Jan. 4, 2023), *cert. denied sub nom., Meisner v. Tawanda Hall*, 143 S. Ct. 2639 (2023); *Hall v. Meisner*, Nos. 21-1700, 21-2956, 2022 WL 7478163 (6th Cir. Oct. 13, 2022). The Sixth Circuit concluded that although the sale of the Plaintiffs' properties had not generated any surplus proceeds from an auction sale, a homeowner's equitable interest in her property is an interest that is protected by the Takings Clause, and that by alleging that Oakland County took their property without compensating them for the equity in their home, the Plaintiffs stated a Takings Claim against Oakland County. *Hall*, 51 F.4th at 194-96.[2]

On August 10, 2023, Defendant Oakland County filed its Answer to Plaintiffs' Complaint. (ECF No. 94.)

The parties now bring the following motions:

**1. Defendant's Motion to Strike Class Allegations (ECF No. 97)**

On August 10, 2023, Defendant Oakland County filed its Motion to Strike Class Allegations. (ECF No. 95, Def. Mot.) Defendant argues that Plaintiffs' class allegations should be stricken for two reasons: (1) any properties which were sold

---

[2] The United States Supreme Court subsequently held in *Tyler v. Hennepin County, Minnesota*, 598 U.S. 631 (2023), that a plaintiff states a Fifth Amendment Takings Claim against a county when the county foreclosed on the plaintiff's home, sold it at a tax auction, and kept the surplus proceeds.

and generated "surplus proceeds" from an auction sale have been the subject of a certified class action which has been settled and any claims based on those facts were required to be made in that action; and (2) where properties were not sold at auction but were claimed by the City of Southfield, Plaintiffs cannot satisfy the class action requirements of Fed. R. Civ. P. 23 because it will be necessary, for each putative class member, for the Court to determine the fair market value of each property at the time of foreclosure and determine whether that value exceeds the amount of taxes and other fees then due on each property (the "Minimum Bid" amount).

Plaintiffs filed a Response in opposition to Defendant's Motion to Strike arguing that that Plaintiffs' proposed class does not include properties sold at a public auction, and that Defendant's motion should be denied because similar classes have been certified by other courts in this District. (ECF No. 98, Pls. Resp.)

Defendant filed a Reply brief in support of its Motion to Strike. (ECF No. 99, Def. Reply.)

### 2. Plaintiffs' Motion to Certify Class (ECF No. 97)

On September 5, 2023, the same day Plaintiffs filed their Response in opposition to Defendant's Motion to Strike, Plaintiffs filed their Motion for Class Certification and Appointment of Class Counsel and Class Representative. (ECF No.

97, Pls. Mot. Certify.) In that motion, Plaintiffs seek to certify the following class

pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3):

> All persons and entities that owned real property in Oakland County
> whose real property, during the relevant time period, was seized
> through a real property tax foreclosure and subsequently purchased via
> a local municipality's right of first refusal program (MCL 211.78m),
> which was worth more than the total tax delinquency taxes owed and
> were not refunded the surplus equity in excess of the delinquent tax
> amount.

(*Id.* PageID.2632.) Plaintiffs seek to appoint Mark L. McAlpine of McAlpine P.C.

and Scott F. Smith of the Smith Law Group, PPLC as Co-Lead Counsel, and Plaintiff

Tawanda Hall as class representative. (*Id.* PageID.2633.) Plaintiffs argue that similar

classes have been certified by other courts in this District and that the proposed class

meets the class action requirements of Fed. R. Civ. P. 23.

Defendant Oakland County filed a Response in opposition to Plaintiffs'

Motion to Certify arguing that Plaintiffs are improperly attempting to expand the

putative class from property owners in the city of Southfield to property owners

throughout Oakland County. Defendant further argues, as it did in its motion to strike

class allegations, that individual issues predominate with regard to determining the

fair market value of each property at the time of foreclosure, precluding class

certification. (ECF No. 102, Def. Resp. Certify.)

Plaintiffs filed a Reply brief in support of their Motion to Certify. (ECF No. 103, Pls. Reply Certify.)

### 3. Plaintiffs' Motion for Leave to Amend Complaint (ECF No. 104)

On October 27, 2023, the same day Plaintiffs filed their Reply brief in support of their Motion to Certify (and seemingly in response to Defendant's argument that Plaintiffs are improperly attempting to expand the class definition in their motion to certify), Plaintiffs filed a Motion for Leave to File Amended Class Action Complaint. (ECF No. 104, Pls. Mot. Amend.) Plaintiffs assert that they seek leave to (1) add additional plaintiffs who suffered the same injury caused by Oakland County, (2) expand the proposed class to include all residents of Oakland County and not just the City of Southfield, and (3) add a claim for unjust enrichment which arises out of the same unlawful conduct asserted against Oakland County in the original complaint. (*Id.* PageID.104.)[3]

Defendant Oakland County filed a Response in opposition to Plaintiffs' Motion to Amend. (ECF No. 105, Def. Resp. Amend.) Defendant argues that if the

---

[3] There is a substantially similar previously filed case currently pending before Judge Terrance Berg, *Sinclair v. Oakland County, et al.*, Case No. 18-cv-14042. In that case Plaintiff Marion Sinclair, represented by the same counsel as in this case, filed a complaint on December 26, 2018 against Oakland County and the Southfield Defendants related to the foreclosure of her property and subsequent sale to the city of Southfield for the minimum bid. That complaint was not styled as a class action.

Court grants Defendant's pending Motion to Strike the Class Allegations, Plaintiffs'

Motion to Amend should be denied as futile. Defendant further argues that Plaintiffs'

Motion to Amend should be denied because it improperly seeks to expand the

putative class and the requested expansion does not relate back to the date of the

original Complaint, and accordingly such additional claims would be time-barred.

(*Id.* PageID.3015.)

Plaintiffs filed a Reply in support of their Motion to Amend. (ECF No. 106,

Pls. Reply Amend.)

## II.  LEGAL STANDARDS

### A. Class Actions

"Class action lawsuits provide a vehicle by which similarly situated claimants

can litigate their causes of action in a single judicial forum. As such, they are

intended to promote judicial economy, efficiency in the adjudicatory process, and

---

Sinclair filed an amended complaint in February 2019, again not styled as a class action complaint. Sinclair then filed a motion for leave to file a second amended complaint in May 2021 to assert a putative class action claim with the class consisting of "all the owners of real property in Southfield." Judge Berg denied leave to amend as futile, and the Sixth Circuit reversed. On July 6, 2023, Sinclair filed a motion for leave to file a third amended complaint which seeks, as in this case, to expand the class definition to include "all the owners of real property in Oakland." That motion remains pending before Judge Berg and he has indicated that it will be determined without oral argument.

12

fairness to the participating claimants." *Uselmann v. Pop*, No. 19-cv-13562, 2023 WL 584123, at *3 (E.D. Mich. Jan. 27, 2023) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)). However, "[b]y enabling enormous aggregation of claims and parties, class actions represent a significant departure from 'our constitutional tradition of individual litigation[,]'" and thus class actions "are the exception, not the rule[.]" *In re Ford Motor Co.*, 86 F.4th 723, 725-26 (6th Cir. 2023) (citing *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016)). Accordingly, to ensure appropriate use of this litigation device, to certify a class, the court must conduct a "rigorous analysis" to determine whether a proposed class complies with the class action requirements of Federal Rule of Civil Procedure 23. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851 (6th Cir. 2013) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)). Rule 23 requirements are more than "a mere pleading standard." *Dukes*, 564 U.S. at 350. "There must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079 (quoting *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974)).

Fed. R. Civ. P. 23, the rule governing class actions, imposes four prerequisites to class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a). The party seeking class

certification bears the burden of proof to satisfy Rule 23 certification requirements, *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079, and must offer "'[s]ignificant' evidentiary proof that he can meet all four of those criteria, where they are contested." *In re Ford Motor Co.*, 86 F.4th at 726 (citations omitted). These four requirements are intended to assure that the claims of the class as a whole fit within the contours of the class representatives' claims. *In re Whirlpool Corp.*, 722 F.3d at 850. The requirements limit the class claims to those fairly encompassed by the named plaintiffs' claims, *Dukes*, 564 U.S. at 349, and "class representatives must share the same interests and injury as the class members." *Id.*

In addition, the proposed class must also satisfy at least one of the three requirements for class maintenance under Fed. R. Civ. P. 23(b). *See In re Whirlpool*, 722 F.3d at 850. Specifically, for Rule 23(b)(3) classes like the proposed class at issue in this case, the plaintiff must show predominance (that "the questions of law or fact common to class members predominate over any questions affecting only individual members"), superiority (that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy"), and ascertainability (an implied requirement that the putative class members can be readily identified based on the class definition). *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466, 471 (6th Cir. 2017).

At bottom, the district court has broad discretion in determining whether to certify a class, as it possesses the inherent power to manage and control its own pending litigation. *In re Whirlpool*, 722 F.3d at 850 (noting that the Sixth Circuit Court of Appeals "has described its appellate review of a class certification decision as 'narrow,' and as 'very limited.'" (internal citation omitted)).

## B. Motion to Amend Complaint

Federal Rule of Civil Procedure 15 governs the amendment of pleadings. As relevant here, Rule 15 allows a party to amend its pleading "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Although leave to amend should be freely given "when justice so requires," *id.*, leave "should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Dobronski v. Selectquote Ins. Servs.*, 462 F. Supp. 3d 784, 787 (E.D. Mich. 2020) (quoting *Carson v. U.S. Off. of Special Couns.*, 633 F.3d 487, 495 (6th Cir. 2011)). "To deny a motion to amend, a court must find 'at least some significant showing of prejudice to the opponent.'" *Ziegler v. Aukerman*, 512 F.3d 777, 786 (6th Cir. 2008) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986)). Whether to allow an amended pleading under Rule 15(a) is within the Court's discretion. *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 551 (6th Cir. 2008).

15

## III.  ANALYSIS

### A. Defendant Oakland County's Motion to Strike Class Allegations (ECF No. 95)

Defendant Oakland County argues that its Motion to Strike Class Allegations should be granted for two reasons: (1) any claims as to properties sold in a public auction are barred by the judgment in the *Bowles v. Oakland County, et al.* (Case No. 20-cv-12838) class action settlement; and (2) any claims as to properties not sold at auction but rather claimed by the city of Southfield pursuant to the GPTA are unable to meet the requirements of Fed. R. Civ. P. 23.

### 1.  Properties sold at public auction

A separate putative class action case was filed in this District against Oakland County and Wayne County alleging claims for both surplus proceeds arising from a tax foreclosure auction and also for surplus equity where plaintiffs allege that a home was sold at the tax auction for less than the asserted fair market value of the property and the County failed to compensate plaintiff for the alleged lost surplus equity. *Bowles v. Oakland Cnty., et al.*, (Case No. 20-cv-12838) (Parker, J.).

In that case, the plaintiffs and Oakland County settled all claims made by persons whose property had been sold at a public auction, with the settlement class defined as:

16

> All real property owners formerly owning real property within the County of Oakland who had their real property foreclosed for non-payment of taxes pursuant to the Michigan General Property Tax Act, MCL 211.78, *et. seq*., which was sold at tax auction for more than the amount owed in unpaid taxes, interest, penalties and fees and were not refunded the surplus amount. The period at issue is June 8, 2009 through June 30, 2022….

(ECF No. 95-3, *Bowles* Settlement Agreement, PageID.2566-67) (ECF No. 95-4, *Bowles* Preliminary Approval) (ECF No. 95-5, *Bowles* Final Judgment.) The *Bowles* Final Judgment required all members of the settlement class to look only to the settlement fund for relief and released Oakland County from all such claims which were or could have been brought. (ECF No. 95-5, *Bowles* Final Judgment ¶ 11, PageID.2622.)

Accordingly, the Court agrees that the *Bowles* Final Judgment bars any claim in this case related to property which had been sold at tax auction and generated "surplus proceeds." In accord with that ruling, Plaintiffs affirmatively state in their Response brief that their and the putative class members' claims do not involve properties that were sold at public auction, and thus their claims are not precluded by the *Bowles* Settlement Agreement.

### 2.  Properties not sold at public auction

Defendant argues that Plaintiffs' proposed class, as stated in Plaintiff's Complaint, fails to meet the class action requirements of Fed. R. Civ. P. 23. As

discussed above, Fed. R. Civ. P. 23 imposes four prerequisites to class certification:

(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.

Fed. R. Civ. P. 23(a). Under Rule 23(b)(3), a plaintiff must also show predominance,

superiority, and ascertainabilty.[4] Fed. R. Civ. P. 23(b)(3). Plaintiffs bear the burden

of proof to satisfy Rule 23's certification requirements. *In re Ford Motor Co.*, 86

F.4th at 726; *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079.

Defendant Oakland County does not separately address each of the Rule 23(a)

and Rule 23(b) requirements in its Motion to Strike. Defendant instead broadly

contends that "Plaintiffs cannot satisfy any element necessary for class certification"

and that "each property which was claimed by Defendant Southfield [for the

"Minimum Bid" under the GPTA] will require its own mini-trial to determine the

fair market value of the property on April 1 of the year of foreclosure to see if it

exceeds the Minimum Bid" for that property. (ECF No. 95, Def. Mot. Strike,

PageID.2553.) It appears however that Defendant is primarily challenging the Rule

23(b)(3) factors – arguing that individual issues regarding the valuation of each

---

[4] Plaintiffs' Complaint asserts Plaintiffs bring this action on behalf of Fed. R. Civ. P. 23(b)(1)(A), (B) in addition to Rule 23(b)(3). (ECF No. 1, Compl. ¶ 78.) However, the parties only address Rule 23(b)(3) in their briefing and thus appear to have waived reliance on Rule 23(b)(1)(A) and (B). Plaintiffs' Motion for Class Certification and Motion to Amend Complaint also both only seek certification pursuant to Rule 23(b)(3).

plaintiff's property predominate. (*See id.*) *See Tarrify Props., LLC v. Cuyahoga Cnty., Ohio*, 37 F.4th 1101, 1106 (6th Cir. 2022) (stating that the court was not "require[d] to dig too deep into the weeds of class action law because the key impediment to certifying the class – identification of proposed members of the class – haunts every [Rule 23] consideration."). As the Sixth Circuit recently explained in *Tarrify*, "[a]lthough our court typically analyzes each Civil Rule 23 requirement independently, *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 459-65 (6th Cir. 2020), the analysis may sometimes overlap. Over and over, courts have explained that elusive class composition often undermines efforts to meet the ascertainability, predominance, and superiority requirements." *Id.* (citing *Sandusky Wellness Ctr.*, 863 F.3d at 471-72 (collecting cases and noting how class identity problems can be analyzed under all three requirements)).

Defendant argues that the Sixth Circuit Court of Appeals in *Tarrify Properties, LLC v. Cuyahoga County, Ohio*, 37 F.4th 1101 (6th Cir. 2022) recently affirmed the district court's denial of class certification in an Ohio case identical to this one. In *Tarrify*, Cuyahoga County, Ohio foreclosed on the plaintiff's property, the plaintiff did not redeem it, and the County subsequently transferred title to the property to a land bank, the Cuyahoga County Land Reutilization Corporation. *Id.* at 1105. The plaintiff sued on its own behalf and on behalf of former owners of "tax-

foreclosed properties in which 'the total value of that property exceeded the amount of the impositions on that property at the time the transfer occurred.'" *Id*. The Ohio district court denied class certification, stating "whether Cuyahoga County violated the Fifth Amendment when transferring a given property depends on whether the property's tax delinquency exceeded its fair market value. So too does membership in Tarrify's proposed class." *Tarrify Props., LLC v. Cuyahoga Cnty.*, No. 1:19-cv-2293, 2020 WL 7490096, at *5 (N.D. Ohio Dec. 21, 2020). The Ohio district court stated that "the Court would essentially have to factually adjudicate each class plaintiff's claim to ascertain their class membership" and "resolving these necessarily individualized factual questions would represent the lion's share of the litigation, neutralizing any benefit of the class action vehicle." *Id.* (finding that "[t]he centrality of these fact-intensive inquiries undermines Tarrify's class certification motion on ascertainability, predominance, and superiority grounds.").

On appeal, the Sixth Circuit affirmed, stating that "the district court reasonably rejected this class-certification motion given the individualized nature of each inquiry into the fair market value of each property at the time of transfer." *Tarrify*, 37 F.4th at 1107. The Sixth Circuit held that the proposed class failed to meet the requirements of predominance, superiority, and ascertainability because "[w]hile the claimants share a common legal theory – that the targeted Ohio law does

not permit them to capture equity in their properties after the county transfers them to a land bank – they do not have a cognizable common theory for measuring the value in each property at the time of transfer." *Id.* at 1104. The court stated that "[t]he key impediment in this case is that the court must ask whether a given property's fair market value exceeds the taxes owed at the time of the transfer to determine who is in the class" and that "[d]etermining fair market value requires an independent and individualized assessment of each absent class member's property." *Id.* at 1006 ("Over and over, courts have explained that elusive class composition often undermines efforts to meet the ascertainability, predominance, and superiority requirements."). The Court explained that "the valuation of real property depends on many circumstances, including the size, location, use, and condition of the property and the relevant market conditions *at the time of the transfer*" resulting in the necessity of mini-trials to determine who is in and who is out of the class. *Id.* (emphasis added) (explaining that the market and physical conditions of each property will vary, as will the dates of each transfer and that "[i]f 'mini-trials' become necessary to determine who is in and who is out, the class-action vehicle imposes inefficiencies rather than ameliorates them."). The court stated that "a court must conduct an individualized, fact-intensive, and adversarial process to determine the fair market value for each property," and held that "the district court reasonably

rejected this class-certification motion given the individualized nature of each inquiry into the fair market value of each property at the time of transfer." *Id.* at 1106-07.

The Sixth Circuit Court of Appeals has since reaffirmed that reasoning when issuing an order granting interlocutory appeal in *In re Sabree*, 22-0111 (Mar. 15, 2023). (ECF No. 95-2, Order.) In that case, the Sixth Circuit entered an Order Granting Permission to Appeal a decision by the district court certifying a class which included "relief on behalf of property owners whose property 'was worth more … than the total tax delinquency and w[ere] not refunded the excess/surplus equity." The Sixth Circuit stated that "[o]ur opinion in *Tarrify* presents a significant obstacle to class certification in class actions like this one, in which plaintiffs are seeking surplus equity." (*Id.* PageID.2562.) The Court explained that "[l]ike in *Tarrify*, ascertaining who is in the class might require a valuation of each foreclosed property," and "this individualized factual inquiry might predominate over class issues and reduce the class action to 'myriad mini-trials' that defeat superiority." (*Id.*) The Sixth Circuit thus granted Wayne County leave to appeal the district court's order certifying the class.

And in *Fox v. Saginaw County, Michigan*, 67 F.4th 284 (6th Cir. 2023), the Sixth Circuit Court of Appeals vacated and remanded a district court's order

certifying a class of "[a]ll persons and entities that owned real property [in certain counties] … 'whose real property, during the relevant time period, was seized through a real property tax foreclosure, which was worth and/or which was sold at tax auction for more than the total tax delinquency and were not refunded the value of the property in excess of the delinquent taxes owed.'" *Fox*, 67 F.4th at 291; *see also Fox v. Cnty. of Saginaw*, No. 19-11887, 2020 WL 6118487, at *4 (E.D. Mich. Oct. 16, 2020), *vacated and remanded by* 67 F.4th 284 (6th Cir. 2023). The Sixth Circuit held, in part, that the district court had not conducted the required "rigorous analysis" showing that the predominance element was met. *Fox*, 67 F.4th at 301.[5] The Sixth Circuit stated that if the landowners seek damages in the form of "the difference between the fair market value of their homes and the taxes they owe," "this damages method necessitates fact-specific evidence about the worth of each class member's property on a property-by-property basis," which "could 'overwhelm' any common liability issues." *Id.* The Sixth Circuit noted that "[w]e made this precise point when upholding the denial of class certification" in *Tarrify*.

---

[5] The Sixth Circuit in *Fox* also held, as a matter of first impression, that the "juridical link doctrine" is not a viable basis to allow named plaintiffs to bring a class action suit against defendants who did not injure them, and thus the named plaintiff, Fox, lacked standing to sue any defendant Counties other than Gratiot County where he owned the tax-foreclosed and sold property. *Fox*, 67 F.4th at 300.

*Id.* The court explained that "[t]o certify a class action, … a district court must forecast how the parties will conduct the litigation from the certification stage through the trial to the final judgment." *Id.* at 302. (citation omitted).

Defendant argues that Plaintiffs' proposed class allegations here are no different than those in *Tarrify*, *Sabree*, and *Fox*, and that to determine whether there are any common issues, who is in the class and who is not, whether individual issues predominate, and whether there are individual defenses, will require individual "mini-trials" as to the fair market value of each property at the time of transfer to see if it exceeds the Minimum Bid for that property. Defendant argues that Plaintiffs' class allegations therefore should be stricken.

Plaintiffs first argue in Response that similar cases have already been certified by courts in the Eastern District of Michigan and that this Court should follow suit. Specifically, Plaintiffs point to the district courts' opinions in *Arkona, LLC v. County of Cheboygan*, No. 1:19-cv-12372, 2020 WL 4366027 (E.D. Mich. July 30, 2020) (Ludington, J.) and *Bowles v. Sabree*, No. 20-12838, 2022 WL 141666 (E.D. Mich. Jan. 14, 2022) (Parker, J.). Plaintiffs state that one of the named plaintiffs in *Arkona* was specifically seeking fair market value for its property. *See Arkona*, 2020 WL 4366027, at *4 (although Arkona's foreclosed property was sold at a tax auction, "Arkona demands to recover the alleged fair-market value, minus the tax

delinquency, including the amount over and above what the County received at sale.").

However, the classes in *Arkona* and *Bowles* are not the same as the proposed class in this case because the proposed classes in those two cases did not involve claims for solely lost equity based on the subject properties' fair market values when the properties were not sold at a tax auction. Both *Arkona* and *Bowles* involved classes in which the plaintiffs' foreclosed properties were "worth more and/or w[ere] sold at tax auction for more than the total tax delinquency," and plaintiffs "w[ere] not refunded the excess/surplus equity," and not a proposed class as in this case in which the properties were not sold at a tax auction and were instead purchased by the city of Southfield for the Minimum Bid.[6] In *Arkona*, both of the named plaintiffs' properties were sold at a tax auction, and thus the issue of surplus proceeds and whether a plaintiff was in or out of the class was more readily ascertainable. *Arkona*, 2020 WL 4366027, at *1. And in the district court's opinion certifying the class in *Bowles*, the court focused its certification analysis on properties sold at auction, again rendering the issue of whether a specific plaintiff was in or out of the class

---

[6] As Plaintiffs point out in their Response brief, although the district court in *Bowles* entered an order certifying the class as defined above, the Settlement Agreement Class only included properties that were sold at public auction. (ECF No. 98, Pl. Resp., PageID.2692.)

readily ascertainable. *See Bowles*, 2022 WL 141666, at *14-16 (noting that "[t]he Wayne and Oakland former property owners whose properties sold at tax auction and did not receive the surplus proceeds are suffering from the same injury," the claims are typical "where the same event, tax foreclosure sale with the retention of surplus proceeds, gives rise to the claims of each putative class member," and "each class members' interest would be the same, that is, if an auction sale occurred in which there were surplus proceeds, putative class members have an interest in return of those proceeds"). Further, as noted *supra*, in *Bowles*, Wayne County sought and was granted interlocutory appeal to address the issue of whether class certification was proper where there was no tax foreclosure sale, and the issue was whether the property was worth more than the taxes due. (ECF No. 95-2, *Bowles*, PageID.2562.)

First, this Court is not bound to follow the decisions of other district courts. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (quoting 18 J. Moore et al., MOORE'S FEDERAL PRACTICE § 134.02[1] [d], pp. 134-26 (3d ed. 2011)).

But more importantly, both the *Arkona* and *Bowles* unpublished district court class certification decisions Plaintiffs rely on were decided <u>before</u> the Sixth Circuit

26

Court of Appeals published its decision in *Tarrify*. So while those two district courts did state that a need for an individualized determination of damages as to amounts owed to former property owners for surplus proceeds did not preclude class certification as to liability in those cases, *Arkona*, 2020 WL 4366027, at *5; *Bowles*, 2022 WL 141666, at *14, 16, the Sixth Circuit Court of Appeals in *Tarrify* has since held that "the key impediment to certifying the class – identification of proposed members of the class – haunts every consideration" in the Rule 23 analysis as the court "must conduct an individualized, fact-intensive, and adversarial process to determine the fair market value for each property." *Tarrify*, 37 F.4th at 1106. The putative class in *Tarrify* is similar to the putative class in this case, and that published opinion by the Sixth Circuit Court of Appeals is controlling. *See Moore v. Detroit Sch. Reform Bd.*, 293 F.3d 352, 364 (6th Cir. 2002) ("[A] prior published opinion of this court is binding unless either an intervening decision of the United States Supreme Court requires modification of the prior opinion or it is overruled by this court sitting *en banc*."); *see also*; *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013) ("Where our circuit has answered the question, the district court is bound by our published authority.").

Moreover, as discussed *supra*, the Sixth Circuit stated again subsequent to *Tarrify* when granting leave for interlocutory appeal in *Bowles* that "[o]ur opinion

27

in *Tarrify* presents a significant obstacle to class certifications in class actions like this one, in which plaintiffs are seeking surplus equity." (ECF No. 95-2, *Bowles* Order, PageID.2562.) The *Bowles* court cited to *Tarrify* for the rule that "[t]he individual inquiry necessary to establish the 'total value' of each member's foreclosed property was fatal to multiple Rule 23 requirements." (*Id.* citing *Tarrify*, 37 F.4th at 1106-07.) The Sixth Circuit stated that ascertaining who is in the proposed class seeking "excess/surplus equity" in the foreclosed properties "might require a valuation of each foreclosed property like in *Tarrify*." (*Id.*)

Plaintiffs criticize Defendant's reliance on *Tarrify*, *Fox*, and *Bowles* as "a handful of self-serving cases." (ECF No. 98, Pls. Resp., PageID.2693.) Plaintiffs contend that determination of the fair market values of the properties in *Tarrify* was "hindered" because the proposed class included abandoned properties and because the court relied on the "general rule in Ohio that the assessed valuation of property is not evidence of value for non-tax purposes" for its holding that tax assessments cannot be utilized as evidence of a property' fair market value. *See Tarrify*, 37 F.4th at 1108 (internal quotes omitted). Plaintiffs state that Michigan is part of the minority of jurisdictions that do not abide by that general rule, but instead allow tax assessments to be introduced as evidence for non-tax purposes, such as condemnation proceedings. (ECF No. 98, Pls. Resp., PageID.2694-95, citing *In re*

28

*Memorial Hall Site,* 316 Mich. 215 (1946) (holding city's valuation admissible in eminent domain proceedings) and *Chamberlin v. Wagar* 272 Mich. 594 (1935) (a case involving a question of insolvency, in which it was stated that the amount at which a property is assessed has some probative force).) Plaintiffs argue that because Michigan properties are assessed yearly (in contrast to the properties in *Tarrify* which were assessed every six years), and Michigan follows the minority rule that property assessments can be used for non-tax purposes, this matter would not involve mini-trials and *Tarrify* does not control in this case.

However, while the Michigan Supreme Court in *In re Memorial Hall Site* did recognize that the assessed valuation of real property "does have a material bearing on the issue as to what is the … fair market value of the property," that court stated that the assessed valuation nevertheless "does not determine with finality the fair market value in [a] condemnation case[.]" 316 Mich. at 362; *see also In re Grand Haven Highway*, 357 Mich. 20, 28-29 (1959) ("[T]he determination of value in condemnation proceedings is not a matter of formula or artificial rules but of sound judgment and discretion based upon a consideration of all relevant facts in a particular case."); *City of Muskegon v. Berglund Food Stores, Inc.*, 50 Mich. App. 305, 311 (1973) (considering, in addition to the tax assessment, "the estimations of value by recognized and admittedly qualified appraisers."). As the Michigan Court

29

of Appeals found in *City of Muskegon*, "[a] careful appraiser considers, accepts, or rejects the utilization of approaches to value and is therefore far more likely to produce a fair 'market value' than wholesale estimates generally found in assessments." 50 Mich. App. at 309. (noting that "[p]roperty owners prefer low assessment rates for tax purposes and a high evaluation for condemnation purposes. Those involved in eminent domain cases are aware that seldom, if ever, are assessments current."). Similarly, the Sixth Circuit Court of Appeals in *Tarrify* recognized that the value of a property for tax purposes "represents a potential starting point, in truth a data point, for ascertaining fair market value, not a conclusive answer," and thus also required expert appraisals. *Tarrify*, 37 F.4th at 1107, 1109 (declining to "resolve whether the district court should have permitted the tax valuations to be considered in resolving the class-certification motion" because "[a]dmissible or not, they do not show that this class should have been certified.").

As the Michigan Court of Appeals subsequently explained in another case, "[i]n Michigan, the primary goal in assessments for Ad valorem taxation is the principle of equal treatment *regardless of the actual 'true cash value' involved*." *In re Urban Mass Transp. Facilities Project Michigan-UTG-4*, 28 Mich. App. 529, 531 (1970) (emphasis added). That court went on to explain that "[a] realistic comparison

30

of the different purposes for which valuations are made for Ad valorem property tax assessments and condemnation awards impels the conclusion that the standards fixed in the former may not arbitrarily be assumed synonymous with those utilized in the latter." *Id.* at 532. Thus, the Michigan Court of Appeals held, the state equalized value (SEV) used for tax valuation in Michigan is not controlling even in a condemnation proceeding because it "does not determine with finality the fair market value" of a property. *Id.* (noting that, in that case, the tax valuation was offered into evidence along with expert appraisals offered by both parties, and the court held that "[w]here the jury's award is within the minimum-maximum appraisals presented, … this Court will not disturb that finding."). As Defendant correctly notes, it was the property owner in *Urban Mass Transportation* who appealed and argued that SEV should not have been admissible because it was too low, and the property was worth more than two times the SEV. Thus, in Michigan, while the taxable SEV is one factor that may be considered by courts in determining just compensation in a condemnation proceeding; it is not the controlling factor and is considered with other evidence, such as expert appraisals of the value of the property at the time of taking. *Urban Mass*, 28 Mich. App. at 532.

Defendant acknowledges that under the current GPTA, Oakland County now requires a municipality to pay two times the SEV in order to exercise the right of

first refusal. Plaintiffs contend that the Court therefore can just use this same calculation – two times the SEV – to determine the fair market value of each property in this case, negating the need for mini-trials. Plaintiffs nevertheless further contend that they "believe that a higher multiple to determine the [fair market value] is appropriate." (ECF No. 103, Pls. Reply Certify, PageID.2956.) However, as Defendant explains, it only uses this calculation under the current GPTA because two times the SEV is almost certainly the highest possible value of the property (because most foreclosed properties have significant deferred maintenance) and for ease in administration, so that the County does not need to obtain an individual appraisal on each property as this stage of the statutory process.

The Court finds, for the same reasons discussed above by the Michigan state courts, that the assessed valuation, or SEV, of a foreclosed property is not an ultimate determination of the fair market value of that property for the purposes of determining just compensation for the taken property, but instead is just a measure of taxable value and one factor for the Court to consider along with other data, such as expert appraisals, in determining a property's fair market value. *See In re Urban Mass Transp. Facilities Project Michigan-UTG-4*, 28 Mich. App. at 531-32. As Defendant correctly observes, if this were not the case, then trials in Michigan

takings and condemnation cases would be unnecessary, as the courts could just rely

on the SEV, but that is not the case.[7]

Therefore, a property's tax assessed valuation, or SEV, is not controlling here

in determining the fair market value of the Plaintiffs' properties at the time of

---

[7] In its Reply brief, Defendant offers two examples of where individual appraisals would likely reveal a value much less than the assessed value. One property had a partially collapsed roof and much of the plumbing had been broken or stripped by the time of foreclosure, and another property with $27,639 in owed taxes had a partially caved in roof and the house was dilapidated, necessitating repairs in the amount of $134,000. That property has competing appraisals as of the date of foreclosure of $132,000 and $45,000. (ECF No. 99, Def. Reply, PageID.2705, citing Exs. A-D at ECF Nos. 99-2 to 99-5.) Defendant asserts that such disputes over valuation will be commonplace in the putative class.

Defendant also points out that the governing Bulletin from the Michigan Tax Commission only "recommends," but does not require, that local governments "inspect 20% of properties" annually, and this "inspection" is a "record card review" only which does not mandate inspection of the interior of the property. (ECF No. 99, Def. Reply, PageID.2708, citing ECF No. 99-6, Bulletin, PageID.2921-22.) The Sixth Circuit in *Tarrify* similarly noted that "[t]he mass appraisal methodology used by counties, most notably, does not consider the interior conditions of each property," and thus "they use a rough justice method for valuing property." *Tarrify*, 37 F.4th at 1107, 1109 (concluding therefore that *"[a]dmissible or not*, [the tax valuations] do not show that this class should have been certified") (emphasis added).

Further, as Defendant also explains in its Reply brief, many foreclosed properties are worth less than the Minimum Bid. Under the GPTA, if a property is not claimed by the municipality before auction, the Minimum Bid is the starting bid at the July auction. If the Minimum Bid is not met, the property is put up for a second auction in October without a minimum starting bid. Mich. Comp. Laws 211.78m. Defendant contends that at that October auction most properties sell for less than the Minimum Bid and some do not sell at all. (ECF No. 99, Def. Reply, PageID.2706 fn.1.)

transfer of title to the County. Rather, as with determining just compensation in condemnation proceedings in Michigan, individual expert appraisals will be required in addition to the SEV for each property to determine the property's "fair market value" at the time of each property's transfer so the Court can determine whether that value exceeded the tax delinquency of each property. This will necessitate mini-trials to determine the value of each property at the time of the transfer to determine whether each putative class member is a member of the class or not. *See Tarrify*, 37 F.4th at 1107-09.

Finally, Plaintiffs argue that a potential for individualized damages determinations alone is not a bar for class certification under Rule 23(b)(3). However, as discussed above, the Sixth Circuit Court of Appeals found in *Tarrify* that the individual inquiry necessary to establish the fair market value of each class member's foreclosed property impacts *multiple* Rule 23 requirements in addition to how damages may be calculated, including who is in and who is out as a member of the class and whether the proposed class members have a common claim, which requires variable proof as to whether each property includes surplus equity at the time of its transfer. Further, as the Sixth Circuit cautioned in *Fox*, "the district court should consider to what extent the Counties have unique defenses against class members." *Fox*, 67 F.4th at 301 (citations omitted). The *Fox* court noted that "[w]hen

34

we decided *Hall*, for instance, we affirmed the dismissal of several landowners' claims on grounds of res judicata and standing. *See Hall v. Meisner*, 2022 WL 7478163, at *1–2 (6th Cir. Oct. 13, 2022)." *Id.* (noting "we have no idea how many class members might face these or similar defenses.").

Based on the above analysis, the Court GRANTS Defendant Oakland County's Motion to Strike Plaintiffs' Class Allegations (ECF No. 95).

**B. Plaintiffs' Motion for Class Certification (ECF No. 97)**

On September 5, 2023, the same day Plaintiffs filed their Response in opposition to Defendant's Motion to Strike Class Allegations, Plaintiffs filed their Motion for Class Certification and Appointment of Class Counsel and Class Representative. (ECF No. 97, Pls. Mot. Certify.) In their motion to certify, Plaintiffs define their proposed class as:

> All persons and entities that owned real property in Oakland County whose real property, during the relevant time period, was seized through a real property tax foreclosure and subsequently purchased via a local municipalities' right of first refusal program (MCL 211.78m), which was worth more than the total tax delinquency taxes owed and were not refunded the surplus equity in excess of the delinquent tax amount.

(*Id.* PageID.2646.) Plaintiffs argue that this proposed class satisfies all of the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3), that Mark L. McAlpine and Scott

F. Smith should be appointed as Co-Lead Class Counsel, and that Plaintiff Tawanda Hall should serve as Class Representative.

Defendant Oakland County filed a Response in opposition to Plaintiffs' motion to certify, arguing first that Plaintiffs' motion is primarily a recitation of the arguments raised in the completed briefing on Defendant's motion to strike the class allegations. (ECF No. 102, Def. Resp. Certify.) Defendant adopts the arguments in that prior briefing. Defendant further argues that Plaintiffs improperly attempt to expand the putative class from property owners in the city of Southfield to property owners throughout Oakland County. Defendant goes on to argue that, even considering Plaintiffs' proposed, expanded class, individual issues predominate and determining the fair market value of each property at the time of foreclosure will require individual mini-trials, and thus Plaintiffs' motion should be denied.

### 1. Whether Plaintiffs improperly attempt to expand the class definition in their Motion to Certify

As stated *supra*, Plaintiffs' original Complaint defines the putative class as former property owners in the city of Southfield, stating:

> [A]ll titleholders of real property and associated property rights including equity and/or surplus proceeds generated by the involuntary transfers orchestrated by Defendants *in the City of Southfield* during the relevant statutorily-limited time period….

36

> [A]ll eligible property owners who during the relevant statutorily-limited period, had a property seized by the Oakland County Treasurer *which was transferred to the [City of] Southfield and thereafter transferred to the SNRI* for $1.00 for unpaid property taxes.

(ECF No. 1, Compl. ¶¶ 78-79 (emphases added).)

Defendant argues that Plaintiffs through their motion to certify now improperly attempt to expand the class to include "all persons and entities that owned real property *in Oakland County*" whose property was seized in a tax foreclosure and claimed under "a local municipality's" statutory right of first refusal. Defendant contends that "'[t]he Court is bound to class definitions provided in the complaint and, absent an amended complaint, will not consider certification beyond it.'" (ECF No. 102, Def. Resp. Certify, PageID.2931, citing *Costelo v. Chertoff*, 258 F.R.D. 600, 604-05 (C.D. Cal. 2009).)

"'Courts have different views on whether a plaintiff may seek to certify a class that is broader than the class defined in the complaint,'" and "[m]any courts require plaintiffs to amend their complaint before considering certification of an expanded class." *Deutsch v. My Pillow, Inc.*, No. 20-cv-00318, 2023 WL 3125549, at *31 (D. Minn. Apr. 27, 2023) (internal and end citations omitted). Indeed, courts within the Sixth Circuit have refused a plaintiff's attempt to expand class definition via a motion to certify and have required a motion to amend the complaint. *See, e.g.,*

*McDonald v. Franklin Cnty., Ohio*, 306 F.R.D. 548, 553-54 (S.D. Ohio 2015) (rejecting plaintiff's attempt to expand class definition via a motion to certify instead of a motion to amend the complaint); *Eager v. Credit Bureau Coll. Servs., Inc.*, Nos. 1:13-CV-30, 1:13-CV-84, 1:13-CV-173, 1:13-CV-261, 2014 WL 3534949, at *8 (W.D. Mich. July 16, 2014) (refusing to certify expanded class because plaintiff failed to move to amend complaint to include that broader class); *Grubb v. Marcum*, No. Civ.A. 6:05-498-DCR, 2006 WL 625148, at *3 (E.D. Ky. Mar. 9, 2006) ("Where, as here, the Plaintiffs seek to expand their class prior to certification, the Court believes the better route would be for plaintiffs to file an Amended Complaint laying out the grounds for the expanded class of Plaintiffs.").

In Reply, Plaintiffs contend that district courts have broad discretion to modify class definitions, but Plaintiffs only cite to cases in which the courts "tinkered with" or limited or modified the class definition, not cases which expanded the class definition to the same extent as Plaintiffs attempt to do here. *See Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 618 (6th Cir. 2007) (modifying the class definition to exclude certain individuals); *In re Flint Water Cases*, 558 F. Supp. 3d 459, 486 (E.D. Mich. 2021) (redefining the class definition "to provide narrower class-based relief").

In any event, Plaintiffs admit that they seek to expand the class definition and note that they filed, contemporaneously with their Reply brief, a Motion for Leave to File Amended Class Action Complaint. (See ECF No. 104, Pls. Mot. Amend.) Plaintiffs argue that their proposed Amended Complaint, which expands the class definition to include all persons and entities that owned real property in Oakland County whose property was foreclosed and transferred via a municipality's right of first refusal, and also seeks to add a claim for unjust enrichment, satisfies Fed. R. Civ. P. 15(a)(2) and (c). Plaintiffs assert that any new allegations in the proposed Amended Complaint relate back to the original filing of the Complaint in this case because the proposed Amended Complaint alleges the same wrongful conduct by Defendant Oakland County.

Defendant Oakland County argues that any proposed amendment asserting a claim on behalf of property owners outside the city of Southfield would be futile because such claims are time-barred.

As discussed more fully below in Section III.C. of this Opinion and Order, the Court will deny Plaintiffs' Motion for Leave to Amend Class Action Complaint to assert an expanded class definition as futile. The Court therefore declines to consider Plaintiffs' proposed expanded class definition set forth in their Motion to Certify

that includes all property owners in Oakland County. *See McDonald*, 306 F.R.D. at 553-54; *Eager*, 2014 WL 3534949, at *8; *Grubb*, 2006 WL 625148, at *3.

### 2.  Whether individual issues predominate

Even considering the expanded class definition, Defendant Oakland County argues that Plaintiffs' Motion to Certify should be denied for the reasons articulated in its Motion to Strike Class Allegations – because individual issues will predominate and require mini-trials to determine the fair market value of each putative plaintiff's property at the time of transfer to the municipality. Defendant contends that the named Plaintiffs' properties illustrate this point. Specifically, Defendant asserts that Plaintiff Tawanda Hall's property was in such poor condition that $233,079 in renovation expenses were required for lead abatement, concrete removal, and a new roof, garage, appliances, electrical wiring, fixtures, flooring, and chimney repairs. (ECF No. 102, Def. Resp. Certify, PageID.2935-36, citing Ex. A at ECF No. 102-2, Spreadsheet, PageID.2942.) Plaintiffs Curtis and Coretha Lee's property required $109,085 in renovation expenses before it could be sold, including replacement of all floors, walls, and ceilings, new cabinets and countertops, a sump pump, hot water heater, and furnace, and new appliances and plumbing fixtures. (*Id.* citing Ex. D as ECF No. 102-5, Spreadsheet, PageID.2950.)

Finally, Plaintiff Kristina Govan's property was in such disrepair that it had to be demolished and SNRI sustained a loss on the property of $91,457. (*Id.* citing Ex. B at ECF no. 102-3, Pictures, and Ex. C at ECF No. 102-4, Spreadsheet, PageID.2944-46, 2948.) Defendant argues that this property emphasizes why class certification should be denied as Govan's property was worth less than the tax delinquency.

Further, as discussed *supra*, expert appraisals would be necessary of Plaintiffs Hall and the Lees properties to determine the value of each property as of the date of foreclosure. The Court notes that Plaintiffs even concede in their Motion to Certify that each property's fair market value would be determined in part by "relying on modern appraisal method reports." (ECF No. 97, Pls. Mot. Certify, PageID.2654.) As stated above, a need for expert appraisals for each putative plaintiff's property will necessarily devolve into a series of mini-trials to ascertain each property's fair market value at the time of foreclosure and determine whether there is surplus equity in the property at the time of foreclosure.

The Court finds, for the reasons stated above, that individual issues predominate and therefore DENIES Plaintiffs' Motion to Certify (ECF No. 97).

**C. Plaintiffs' Motion for Leave to File Amended Complaint (ECF No. 104)**

On October 27, 2023, the same day Plaintiffs filed their Reply brief in support of their Motion to Certify the Class, and in response to Defendant's argument that Plaintiffs' Motion to Certify improperly seeks to expand the class definition as stated in the controlling Complaint, Plaintiffs filed their Motion for Leave to File Amended Complaint. (ECF No. 104, Pls. Mot. Amend.) Plaintiffs seek leave to file an Amended Class Action Complaint to (1) add additional plaintiffs, (2) expand the proposed class to include all residents of Oakland County and not just the City of Southfield, and (3) add a claim for unjust enrichment against Oakland County arising out of the allegedly same unlawful conduct asserted against Oakland County in the original Complaint. (*Id.* citing ECF No. 104-1, Proposed Amended Complaint.)

Defendant Oakland County filed a Response in opposition to Plaintiffs' motion, arguing that, if the Court grants Defendant's motion to strike the class allegations based on the existing complaint, the motion to amend should be denied because amendment would be futile. (ECF No. 105, Def. Resp. Amend.) Defendant argues alternatively that the motion to amend should be denied because the proposed amended complaint improperly seeks to expand the putative class from property owners in Southfield to property owners throughout Oakland County, and the

42

requested expansion does not relate back to the date of the original Complaint and so claims by property owners outside the city of Southfield, made for the first time on October 27, 2023, are time-barred.

### 1. Amendment is futile because Defendant's Motion to Strike Class Allegations will be granted

Defendant argues that if the Court grants Defendant's Motion to Strike the Class Allegations (ECF No. 95), Plaintiffs' proposed amendment to the Complaint would be rendered futile because the proposed Amended Complaint would suffer from the same infirmities as the original Complaint. The Court agrees.

Plaintiffs argue in response that the proposed amendment is viable because class certification is proper. Plaintiffs contend that the alleged "mini-trial" concerns are no longer legitimate because Oakland County admitted that it currently determines fair market value under the amended GPTA simply by doubling the state equalized value, and that this calculation can be applied on a class-wide basis to uniformly determine damages for the class.

For the reasons set forth in Section III.A. of this Opinion and Order, the Court denies Plaintiffs' proposed Amended Complaint as futile because it, like Plaintiffs' original Complaint, fails to meet the requirements of predominance, superiority and ascertainability and thus a class cannot not be certified. The individualized nature of

each inquiry into the fair market value of each putative plaintiff's property at the time of transfer to the municipality will dominate the proceedings, "and run the risk of undercutting the efficiencies and ease of administration that otherwise might favor classwide resolution of the claims." *See Tarrify*, 37 F.4th at 1107.

### 2. In addition, the proposed Amended Complaint's expanded class allegations would not "relate back" to the date of the original Complaint

Defendant asserts that the filing of a putative class action tolls the limitations period only "as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." (ECF No. 105, Def. Resp. Amend, PageID.3020-21, citing *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1074).) As the Sixth Circuit Court of Appeals has explained, "*American Pipe* tolling is the product of a 'careful balancing of the interests of plaintiffs, defendants, and the court system,'" and "aims to protect the putative class members' reliance interests, satisfy the need for defendants to have fair notice of claims being brought against them, and promote judicial efficiency." *Potter v. Comm'r of Soc. Sec.*, 9 F.4th 369, 377 (6th Cir. 2021) (internal and end citations omitted). To that end, the United States Supreme Court instructed in *American Pipe* that:

> The policies of ensuring essential fairness to defendants and of barring a plaintiff who 'has slept on his rights,' are satisfied when, as here, a named plaintiff who is found to be representative of a class commences

a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation, whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional intervenors.

*American Pipe*, 414 U.S. at 554-55 (internal citation omitted).

Defendant contends that courts have allowed plaintiffs to amend a putative class action to expand the class, with the amendment relating back to the original filing, if (1) the original complaint gave the defendant adequate notice of the claims of the newly-proposed plaintiffs, (2) the relation back does not unfairly prejudice the defendant, and (3) there is an identity of interests between the original plaintiffs and the newly-proposed plaintiffs. (ECF No. 105, Def. Resp. Amend, PageID.3021.) *See Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1132 (11th Cir. 2004) (discussing this three-part judicially-created test when adding plaintiffs) (citing *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 935 (9th Cir. 1996)).

Plaintiffs seek to add eight new plaintiffs in their proposed Amended Complaint. Six of the newly proposed plaintiffs owned property in Southfield and were foreclosed. (ECF No. 104-1, Proposed Amended Compl. ¶¶ 13, 16-18, PageID.2996-97.) However, two of the newly proposed plaintiffs owned property in

Oak Park – Linda Dunwoody and DeShawn Williams. (*Id.* ¶¶ 14-15, PageID.2996-97.) Both Oak Park plaintiffs were foreclosed in February 2017. (*Id.* ¶¶ 46-47, PageID.3003-04.) Because both of those foreclosures occurred more than six years ago, their Takings and unjust enrichment claims are time-barred unless those Oak Park plaintiffs' claims could be found to relate back to Plaintiffs' original Complaint. The statute of limitations for a § 1983 Takings claim arising out of conduct in Michigan is three years, *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005); *Estate of Majors v. Gerlach*, 821 F. App'x 533, 537 (6th Cir. 2020), and the statute of limitations for an unjust enrichment claim in Michigan is six years. *Estate of Tyner by Hickman v. O'Bey*, No. 351784, 2021 WL 2769820, at *5 (Mich. Ct. App. July 1, 2021) (holding "the normal six-year statute of limitations for breach of contract claims applies to unjust enrichment claims.").

Because Plaintiffs' motion to amend was filed on October 27, 2023, it could only cover claims outside the city of Southfield back to October 2020, which bars any claims that accrued before 2020, unless those new claims can be deemed to "relate back" to the filing of Plaintiffs' original Complaint. The Sixth Circuit Court of Appeals has stated that a Takings claim accrues for purposes of Plaintiffs' claims on April 1 of the year the foreclosure becomes final and title vests with the County Treasurer. *Hall*, 51 F.4th at 196 (stating that the taking occurred when the County

46

acquired "absolute title to the plaintiffs' homes."). Defendant asserts that there are no foreclosure claims from 2020 forward because Oakland County did not foreclose on any properties in 2020 and 2021 as a result of the COVID-19 pandemic. (ECF No. 105, Def. Resp. Amend, PageID.3019, citing Ex. A, ECF No. 105-1, "Meisner Minute," PageID.3028-29.) Further, the Michigan Legislature amended the GPTA in December 2020 requiring municipalities wishing to exercise the right of first refusal to pay the greater of the minimum bid or the fair market value of the property. Mich. Comp. Laws 211.78m. Thus, the last foreclosures under the old statute that allowed a municipality to claim foreclosed properties from the County Treasurer without a process for the taxpayer to recover surplus equity was in 2019, more than four years ago and thus outside the three-year statute of limitations for a Takings claim.

In is Response brief, Defendant cites to cases where the court did not allow relation back for time-barred claims when the plaintiffs sought to amend their complaint and expand the class definition, like in this case. For example, in *Cliff v. Payco General American Credits, Inc.*, 363 F.3d 1113 (11th Cir. 2004), the plaintiff student loan borrower initially asserted a putative class of all persons in Florida in their original complaint. The plaintiffs subsequently sought to amend the class complaint to assert a nationwide class. The Eleventh Circuit Court of Appeals

affirmed the district court's denial of the plaintiffs' motion to amend the class action complaint to allege a nationwide class. The Eleventh Circuit stated that although "[i]t goes without saying that the claims [plaintiff] asserts in the Amended Complaint arose out of the same conduct as the claims alleged in the original complaint" – which were the student loan borrower's claims to recover for defendant debt collector's alleged violation of the Fair Debt Collection Practices Act (FDCPA) – "the district court did not clearly err when it concluded that [plaintiff's] original complaint did not provide [defendant] with adequate notice of the nationwide class, nor did it clearly err when it concluded that relation back would unfairly prejudice [defendant]." *Id.* at 1131 n.14, 1132; *see id.* at 1133 (noting that "[plaintiff] made the strategic decision to limit the class to individuals residing in one state, and subsequently decided – after the statute of limitations had run – that he wished to expand his suit to encompass individuals in all fifty states.").[8] *See also Arneil v.*

---

[8] The court in *Cliff* noted that Fed. R. Civ. P. 15(c) provides that when an amendment seeks to change a party against whom a claim is asserted, amendment requires consideration of more than just a showing that the claim arose out of the same conduct or transaction originally pleaded. Rather, an amendment to change or add a defendant also requires considerations of prejudice and notice to defendant. *Cliff*, 363 F.3d at 1131. Courts have found that this Rule extends to amendments involving changing or adding plaintiffs, as Plaintiffs seek to do here. *Id.* at 1132 (collecting cases); *McClelland v. Deluxe Fin. Servs., Inc.*, 431 F. App'x 718, 724 (6th Cir. 2011) ("The same general standard of notice applies regardless of whether a litigant seeks to add defendants, plaintiffs, or claims.")' *see also* Fed. R. Civ. P. 15 advisory

*Ramsey*, 550 F.2d 774, 782 (2d Cir. 1977) (denying attempt by investors to relate back claims to an earlier class action complaint in which the investors were not defined class members, because doing so "would not accord with one of the rationales of *American Pipe*," namely that "commencement of the class action adequately notifies the defendants … 'of the number and generic identities of the potential plaintiffs who may participate in the judgment.'") (quoting *American Pipe*, 414 U.S. at 554); *cf. Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40, 72 (E.D.N.Y. 2015) (finding that plaintiffs were permitted to add claims that did not relate back to the original complaint (i.e., claims by persons from additional states) only so long as they were timely as of the day plaintiffs informed defendant of their intent to amend the complaint).

Plaintiffs do not address the cases cited by Defendant, other than to broadly dismiss them because they are outside of the Sixth Circuit and not binding on this Court. Although not binding on this Court, those opinions can be considered by this Court as persuasive authority. Plaintiffs instead rely on two Sixth Circuit decisions that are readily distinguishable. Plaintiffs assert that the Court in *Norfolk County*

---

committee's note to 1966 amendments (stating "the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs").

*Retirement System v. Community Health System, Inc.*, 877 F.3d 687 (6th Cir. 2017), permitted the plaintiffs' proposed class to be expanded pursuant to Fed. R. Civ. P. 15(c)(1)(B) because the original and amended complaints alleged the same "general conduct" and "general wrong." In *Norfolk County*, the plaintiffs initially filed a complaint alleging that the defendants inflated share prices through false and misleading statements and that the class consisted of persons who held shares between July 27, 2006 and April 8, 2011. *Id.* at 692. Two years later, plaintiffs amended the complaint to expand the class to include anyone who held the stock shares until October 26, 2011. *Id.* The district court dismissed the new allegations as untimely, and the Sixth Circuit reversed. The Sixth Circuit found that the new claims related back to the original complaint because "[a]ll the misrepresentations served the same fraud." *Id.* at 694. The Sixth Circuit noted that "most of those allegations [in the amended complaint] were already in the original complaint, which recites the defendants' allegedly misleading responses to Tenet's complaint," and while "the amended complaint did expand the class definition to include investors that held their stock until October 2011, rather than until only April 2011," "that change only conformed the class definition to the scope of the same fraud 'set out' in the original complaint." *Id.* (stating that "[t]he amended complaint built on [plaintiffs' original claim] by alleging more expressly that, after the Tenet suit was filed, the defendants

engaged in a series of lulling misrepresentations that were designed to preserve the fraud's effect.").

Here, Plaintiffs do not seek to amend the complaint merely to "conform[] the class definition to the scope of the same [conduct] 'set out' in the original complaint," but to expand the identities and scope of the plaintiffs bringing suit from certain foreclosed taxpayers in the city of Southfield to foreclosed taxpayers throughout Oakland County. Such new claims outside the city of Southfield are time barred, and those new plaintiffs outside the city of Southfield were not "asserted members" of the original putative class. "When the statute of limitations ran" on Plaintiffs' alleged Takings claims, Defendant "had been placed on notice of only its obligation to defend itself against claims" involving properties in the city of Southfield, and thus Plaintiffs' original Complaint did not provide Defendant with adequate notice of a county-wide class, and relation back would unfairly prejudice Defendant. *See Cliff*, 363 F.3d at 1132; *see also McClelland*, 431 F. App'x at 730 (finding second amended complaint did not relate back to earlier complaint because it "included a set of new and separate allegations implicating a wider set of facts, witnesses, and proofs" and "'[t]he fact that both [complaints] involve[d] allegations of racial discrimination does not alter [this] conclusion.'") (citation omitted).

51

Plaintiffs also cite to *Durand v. Hanover Insurance Group, Inc.*, 806 F.3d 367 (6th Cir. 2015). However, in *Durand*, the court found that the plaintiffs' newly added claims in their amended complaint did not relate back to the original complaint and thus were time barred. The court noted that "[i]n determining whether the new claims arise from the same 'conduct transaction or occurrence,' our analysis is guided by 'whether the party asserting the statute of limitations defense had been placed on notice that he could be called to answer for the allegations in the amended pleading.'" *Id.* at 375 (citation omitted). The Sixth Circuit in *Durand* found that the newly added claims "challenged distinct aspects of the [ERISA] Plan's administration," and thus because "the two claims challenge different plan policies, which were adopted at different times, as illegal under distinct provisions of ERISA," the newly added claims do not relate back to the original complaint. *Id.* at 375-76. *Durand* does not support a finding here that Plaintiffs' proposed Amended Complaint expanding the class definition and adding new plaintiffs who were not members of the putative class in the original Complaint should relate back to the filing of the original Complaint.

Rather, the Court finds the Eleventh Circuit Court of Appeals' analysis in *Cliff* highly persuasive. Like in *Cliff*, Plaintiffs here seek to amend the complaint, after the expiration of the three year applicable statute of limitations for a § 1983 claim,

to include claims by a much broader class of individuals. Plaintiffs specifically asserted claims by persons with properties seized by Oakland County in the city of Southfield, and now seek to expand that class to all persons throughout Oakland County. Plaintiffs have failed to show that Defendant "had been placed on notice that [it] could be called to answer for the allegations in the amended pleading." *Durand*, 806 F.3d at 375. Specifically, Plaintiffs have failed to point to anything in the original Complaint that would have put Defendant on notice that it would be "called to answer" for claims made by tax-foreclosed property owners throughout Oakland County, instead of only the city of Southfield. The newly added plaintiffs were not "asserted members" of the original class, and the limitations periods have expired for the two proposed new Oak Park plaintiffs Dunwoody and Williams. Defendant asserts that it has relied on the fact that the claims by others outside the city of Southfield for the designated time period have been "laid to rest" and that "Plaintiffs should not be rewarded for having 'slept on their rights.'" (ECF No. 105, Def. Resp. Amend., PageID.3024.) The Court agrees.

In *Fox v. County of Saginaw*, No. 1:19-cv-11887, 2023 WL 6978518 (E.D. Mich. Oct. 23, 2023) (Ludington, J.), following the Sixth Circuit's vacation of the district court's order certifying a class of all persons in 27 Michigan counties whose property was foreclosed and sold at a tax auction because the named plaintiff lacked

standing to sue 26 of the counties, the district court allowed the plaintiff to amend the complaint to add 23 additional plaintiffs and omit one named defendant County. *Id.* at *4. But in that case, the district court noted that the claims raised in the amended complaint are identical to those in the original complaint, and "most importantly, though this case has been pending since 2019, amending the Complaint to add 23 plaintiffs does not prejudice the County Defendants' because "[t]hese counties have been on notice of the claims against them for *four years*" and "[a]dding additional plaintiffs to remedy the standing issue identified by the Sixth Circuit does not change the nature of the claims against [defendants]" and "[t]hey are, indeed, the same eight claims Plaintiff brought in his September 2019 Amended Complaint against 26 Defendants." *Id.* Thus, the plaintiff in *Fox* did not seek to expand the class, as Plaintiffs do here.

The Court will exercise its discretion under Fed. R. Civ. P. 15 and DENY Plaintiffs' motion to amend the complaint.

## IV. CONCLUSION

For the reasons set forth above, the Court:

(1) **GRANTS** Defendant's Motion to Strike the Class Allegations in Plaintiffs' Complaint (ECF No. 95);

(2) **DENIES** Plaintiffs' Motion for Class Certification and Appointment of Class Counsel and Class Representative (ECF No. 97); and

(3) **DENIES** Plaintiffs' Motion for Leave to File Amended Class Action Complaint (ECF No. 104.)

Accordingly, this case will proceed only on the Fifth Amendment Taking claims of Plaintiffs Hall, Govan, and the Lees against Defendant Oakland County.

IT IS SO ORDERED.


Dated: January 19, 2024                    s/ Paul D. Borman
                                           Paul D. Borman
                                           United States District Judge